**RECEIVED**

FEB 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOLANDA C. GIBSON-MICHAELS<br>Plaintiff, | ) <br> ) <br> ) |
| v. | ) Civil Action Nos.**1:06CV01940** |
| | ) |
| SHELA C. BAIR, et.al.<br>Defendants | ) <br> ) |

### PLAINTIFFS REPLY TO DEFENDANT SECURIGUARD, INC. AND USEC CORPORATION'S RESPONSE TO MOTION TO STAY COMPLAINT WITHOUT PREJUDICE TO ENTER SETTLEMENT NEGOTIATIONS

Now Comes, Yolanda C. Gibson-Michaels (prose), Plaintiff in the above-entitled

complaint and files a Reply to Defendant Securiguard, Inc. ("Securiguard") and USEC Services

Corporation ("USEC") set forth the following:

1.    Defendant Securiguard, Inc. ("Securiguard") and USEC Services Corporation

("USEC") argument is moot.

2.    Patricia Del Marvil, CEO, Securiguard and USEC Services Corporation

were aware that Douglas R. Fahey was unlicensed and was not employed with

Securiguard. The General Services Administration (GSA) confirmed that Securiguard's

contract with the Federal Deposit Insurance Corporation (FDIC) did not contract

"Investigators".  Securiguard only contracted **GUARD SERVCIES** under **GS-07F-**

**0291N**. Securiguard and USEC Services Corporation were aware, had knowledge,

allowed, and permitted Douglas R. Fahey impersonation of an unlicensed prohibited

investator.

3.      On **October 11, 2004**, FDICs EEO investigator Mr. Barry Cohen

confirmed by his own investigative report that Douglas R. Fahey was employed by USEC

Services Corporation; not Securiguard contract.  USEC Corporation confirmed Douglas

R. Fahey's employment with USEC not Securiguard.  **(See Exhibit A)**

4.      Securiguard's CEO **Patricia Del Marvil** had a duty to ensure that security

guard undergo a full back ground check.  Securiguard breached its duty of care to provide

a safe environment for FDIC Federal employees.  Plaintiff had a right to be free from

harassment, retailaiton, reprisal, age, race, sexual harassment, and egregious deprivation

of rights, property, rights secured under the U.S. Constitution. Securiguard by is own

advertisement stated, in part that:

> **"Securiguard of services of licensed and bonded armed and unarmed
> security officers.  Each member of the Securiguard team undergoes a
> complete background investigation prior to being hired.  Personnel are
> selected for high standards of personal conduct, dependability, and proven
> experience."**

5.      Securiguard's and USEC Corporation selection of so-called guards with

high standards was exemplified by Douglas R. Fahey's negligence, incompetence, and

decision to ignore a Federal Theft.  Douglas Fahey stated, in part, that:

> **"Please understand this interview is not being conducted for the purpose of
> uncovering facts that would help determine the guilt or innocence of anyone
> as it relates to the theft of money involving Jenekia Johnson and Kristian
> Beard. Rather, this interview will focus on the allegation of Ms. Johnson that
> your comments to her about the stolen money left her feeling threaten by
> you."** (See Exhibit A)

2

**Government Contractor Defense – Defendant's Argument is Moot**

Defendants attempt to assert a "governmental contractor defense," is moot. See Scainetti v. United States, __ F.3d __, NYLJ Dec. 26, 2002, p. 32, cols. 1-3 (S.D.N.Y. 2002). Securiguard's CEO Patricia Del Marvil, and USEC Services Corporation CEO Davil Del Marvil engaged into **gross negligence, willful misconduct**, Title VII, age, race among other violations of Plaintiff rights by and through its reckless and negligent hiring practices

6.    Plaintiff was held against her will for well over 3 hours by Douglas R. Fahey (impersonator), false arrest (detention), denied counsel, interrogated. Interrogations require invocation of "Miranda Rights"

7.    Plaintiff provided evidence to his Honorable Court that: (1) Douglas R. Fahey was unlicensed; (2) USEC Corporation confirmed that Douglas R. Fahey was not employed by Securiguard, (3) DOJ Criminal Division confirmed that Douglas R. Fahey did not have a Court order, (4) Metropolitan Police Department confirmed that Douglas R. Fahey was unlicensed. Defendants **violated Plaintiff** under Title VII, Parental Rights, Age, race, sex, harassment, false arrest, were **negligent**, and are liable to Plaintiff.

8.    In 1986, Congress amended Title III by enacting the Electronic Communications Privacy Act of 1986. Specifically, Congress added a new category of covered communications, i.e., "**electronic communications**," **which would now be protected**, and **whose interception would be regulated, by Title III. Electronic communications** See 18 U.S.C. § 2510(12).

**Wherefore**, Plaintiff provided to this Honorable Court evidence throughout her pleadings upon which relief may be granted. Thank you.

Respectfully submitted,

Yolanda C. Gibson-Michaels (prose)
2210 Anvil Lane
Temple Hills, Maryland 20748
(301) 630-5062

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ~~9~~ _10th_ **day of February 2007**, a copy of the

foregoing Plaintiff Reply to Defendant Douglas R. Fahey Response was mailed by

regular mail delivery to the following:

**Copies to**:

David Zachary Kaufman, Esq.
Kaufman Law Firm, A Professional Corporation
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030
Counsel for Defendants Securiguard, Inc.
  and USEC Corporation

Scott D. Helsel (D
Walton & Adams, PC
1924 Isaac Newton Square
Reston, Virginia 20190

Shelia C. Bair
Federal Deposit Insurance Corporaiton (FDIC)
550 17th Street, N.W. MB-6029
Washington, D.C. 20429

Kathleen Gunning, Counsel and Tina Lamoreaux, Counsel
Federal Deposit Insurance Corporation (FDIC)
3501 North Fairfax Drive
Arlington, Virginia

Jenekia J. Johnson, Prose Defendant
1414 Colony Road
Oxon Hill, Maryland 20748

Douglas R. Fahey
3716 Dalebrook Drive
Dumfries, Virginia 22015-1804

Patricia Del Marvil
Chairman CEO
Securiguard Incorporation
6858 Old Dominion Drive – Suite 307
McLean, Virginia 22101

4

David L. Marvil
Chairman CEO
USEC Corporation
7531 Leesburg Pike – Suite 402
Falls Church, Virginia  22101

Robert Feldman, Executive Secretary
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C.  20429

Mr. Wan Kim
Assistant Attorney General
Civil Rights Division
Office of the Assistant Attorney General
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

Claire Whitaker
Assistant U.S. Attorney
555 4th Street, N.W. Room E-4204
Washington, D.C.  20530

Jeffery A. Taylor
Assistant U.S. Attorney
555 4th Street, N.W. Room E-4204
Washington, D.C.  20530

Rudolph Contreras
Assistant U.S. Attorney
555 4th Street, N.W. Room E-4204
Washington, D.C.  20530

5

Ex. A

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**METROPOLITAN POLICE DEPARTMENT**
Security Officers Management Branch

January 11, 2005

Mrs. Yolanda C. Gibson-Michaels
1717 H Street Northwest  Room H-3081
Washington, D.C.  20001

Dear Mrs. Gibson-Michaels:

This letter will confirm your conversation on December 22, 2004, with Ms. Gray, staff member of the Security Officers Management Branch.  As previously stated, researching our files Mr. Douglass Fahey is not certified or pending certification through this branch as a Private Investigator.

It should also be noted that the Security Officers Management Branch has no jurisdiction on Federal contract sites.

If you have any additional questions or concerns, please feel free to contact a staff member on (202) 671-0500.

Sincerely,

Sergeant Peter C. McGrath
Assistant Branch Manager

November 9, 2005


D.C. Wire Tap Office
Washington, D.C.

Re: **Expedited FOIA Request – Wire tap on Yolanda Gibson-Michaels**

In accordance to the Freedom of Information Act (FOIA), immediately upon request, provide a copy of:

(1) The wire tap court order secured by Douglas Fahey, contract investigator hired by the Federal Deposit Insurance Corporation (FDIC); contract by Securiguard on **April 14, 2004** and **April 15, 2004** to conduct a wire tap against Yolanda C. Gibson-Michaels on April 15, 2004.


(2) Provide a copy of all wire tap request by Douglas Fahey, contractor with securiguard for years 2003, 2004, and 2005.

(3) All copies of wire tap request by Federal Deposit Insurance Corporation against Yolanda C. Gibson-Michaels on April 14, 2004 and April 15, 2004.

(4) Provide a copy of sworn (affidavit) statement of Douglas Fahey before the U.S. Superior Court magistrate to conduct a wire tap against Yolanda Gibson-Michaels on April 14, 2004 and April 15, 2004.

(5) Provide a copy of sworn (affidavit) statement of an Federal Deposit Insurance Corporation (FDIC) official before the U.S. Superior Court magistrate to conduct a wire tap against Yolanda Gibson-Michaels on April 14, 2004 and April 15, 2004.


Send request to the attention of    Yolanda.Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland 20748
301 650-5062



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                                    *Washington, D.C. 20530*

CRM-200501151P

Ms. Yolanda Gibson-Michaels                    DEC  8 2005
2210 Anvil Lane
Temple Hills, Maryland 20748

Dear Ms. Gibson-Michaels:

This is in response to your request of November 9, 2005, pursuant to the Privacy Act, for access to records concerning you and the wire tap request/order described in paragraphs 1-5 of your request.

We did not find any Criminal Division records within the scope of your request.

If you consider this response to be a denial of your request, you have a right to an administrative appeal of this determination. Department regulations provide that such appeals must be filed within sixty days of your receipt of this letter. 28 C.F.R. 16.45. Your appeal should be addressed to: Co-Director, Office of Information and Privacy, Flag Building, Suite 570, United States Department of Justice, Washington, D.C. 20530. Both the envelope and the letter should be clearly marked with the legend "FOIA Appeal." If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,

Thomas g. mcIntyre
by KMS

Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit



October 12, 2004

Mr. Douglas Fahey
C/O USEC Corporation
7531 Leesburg Pike
Suite 402
Falls Church, VA
22043

Dear Mr. Fahey,

     I am a Contract EEO Investigator who is investigating the EEO Complaint of FDIC employee Yolanda Gibson-Michaels. I am attaching my Letter of Authorization from FDIC to investigate Ms. Gibson-Michaels' Complaint. I would appreciate if I can speak to you about your role as a FDIC Contract Investigator regarding Accepted Issues One and Two in the Letter of Authorization. Ms. Gibson-Michaels has alleged that she was discriminated against due to her African-American race, black color, female gender, age and religion in connection with her Complaint. Without your statement the official record may be incomplete. My home number is█████████. Thank you for your cooperation.

                Yours truly,

                Barry Cohen

# MEMORANDUM

TO: Official File

FROM: Contract Investigator B. Cohen

SUBJECT: Investigatory Memorandum Regarding Efforts To Locate Mr. Doug Fahey

DATE: October 31, 2004

During my interview with Mr. Kmetz, he informed me that Mr. Fahey was working with the FBI and undergoing training. Mr. Kmetz informed that Mr. Fahey had worked as a contractor for Securiguard. On October 12, 2004, I called Securiguard in an effort to locate Mr. Fahey. I was told that Mr. Fahey was not employed by Securiguard and was told to contact USEC Corporation. I contacted USEC Corporation and was told that Mr. Fahey was no longer employed by USEC Corporation and that USEC Corporation would not provide me with Mr. Fahey's home telephone number. I asked if USEC Corporation would forward a letter to Mr. Fahey's home. The USEC employee stated they would forward my letter to Mr. Fahey. On October 12, 2004, I sent the attached letter to USEC Corporation. On October 12, 2004, I sent the attached letter to Mr. Fahey at the Federal Bureau of Investigation.

I was informed by a FDIC employee that she thought that Mr. Fahey lived in northern Virginia. There was a telephone listing for a Douglas Fahey in northern Virginia. I made two telephone calls to the number listed and left messages on an answering machine for Douglas Fahey.

To date, Mr. Fahey has not responded to any of my inquiries.

2

**FILE NUMBER: WASHINGTON**          Incident Number: 0-0000000186

_____

I again contacted JOHNSON and arranged to meet her in the lobby of 1717 H St. NW at 12:10Hrs. on 15 April 2004. We met at that time and then moved to vacant FDIC office space on the 1st floor. I placed a Sony cassette recorder with a 90 minute tape (45+ minutes per side) into her purse. I attached an omni directional power condenser microphone to the recorder and positioned the microphone so that it extended slightly, but unobtrusively from her purse. I suggested the way in which she could begin a conversation with GIBSON-MICHAELS might be to tell her she had been thinking about what she told her the day before. JOHNSON then advised me that just before coming downstairs to meet me in the lobby, she walked past GIBSON-MICHAELS' cube, and GIBSON-MICHAELS poked her head out and asked her if she had thought about what they talked about. JOHNSON told me she told GIBSON-MICHAELS no, that she was trying not to think about it. I then allowed JOHNSON to look at some notes I had handwritten on a piece of paper with potential ideas on how to begin a conversation with GIBSON-MICHAELS. After looking at the suggestions, JOHNSON came up with her own idea. She asked if she could just go to her and tell her that she felt threatened by her the day before. She said that was how she really felt. I agreed that expressing her true feelings would probably be the easiest way for her to succeed in beginning a dialogue. I turned the recorder to the "record" position and recorded a brief introduction, saying the date (April 15) and the time was 12:20Hrs. and that it was the beginning of the tape. At that time, JOHNSON left the room enroute to the 3rd floor of the building to locate GIBSON-MICHAELS. The tape subsequently revealed that approximately 10 minutes after leaving the room, JOHNSON located GIBSON-MICHAELS and began a conversation with her. The tape continued to run and record their conversation for approximately the next 37 minutes. I located JOHNSON at 13:20Hrs. on the third floor and accompanied her back to the 1st floor where I then recovered the recorder and tape from her purse. JOHNSON reported that the tape ended before their conversation did. She reported that at the end of the conversation, [off tape] GIBSON-MICHAELS hugged her. JOHNSON remarked that GIBSON-MICHAELS was "a lot nicer than yesterday." I asked JOHNSON if there were any witnesses to the conversation they just had and she stated, no.

On **15 April 2004**, at 13:44Hrs., GIBSON-MICHAELS sent JOHNSON and BEARD an e-mail with a subject, LIE DETECTOR TEST. The e-mail read:

"This is a suggestion to get to the truth regarding your situation. Lie Detector test are 100 percent accurate. You both might want to consider taking a lie detector test; or volunteer since both of you are 100% certain that it wasn't you. Also, taking a lie detector to determine that it was someone other than yourselves will give both of you a chance to resume your good friendship. Or the investigator might request that you are both tested regarding the facts surrounding your situation. The test only cost sometimes between $20.00 or $40.00 dollars.

FDIC might be able to administer the test free. Since there is a possibility that there could have been someone other than yourselves; then you both should take the test together or separate and apart. If you are telling the **TRUTH**…then there shouldn't be a problem with taking a **LIE** detector test to save your friendship. (SMILE)… " (end of e-mail)

On **15 April 2004**, at 14:11Hrs., GIBSON-MICHAELS sent JOHNSON an internet link regarding polygraphs. The subject was, Information regarding the Polygraph (Lie Detector Test). JOHNSON forwarded that message to me on 19 April, stating that she wasn't able to review the link due to a virus warning.

On **16 April 2004**, at 10:20Hrs., I left a voice message for JOHNSON to call me. At 14:20Hrs., I had a telephone conversation with her. I asked her to reflect on the conversation she had with GIBSON-MICHAELS the day before and tell me how she was feeling about all of this. JOHNSON stated she wouldn't be as comfortable with GIBSON-MICHAELS from now on and

4

FDICs wrote Description of Illegal Interception of Oral communications

FDIC Refused to turn over Original illegal tape Recording Intercept by unlicensed contractor w/out a court order. Required by Law!

Gibson michals suspected for duty 5 days Based On Bible Quotes inside a Closed Door Office. (Resume expectations of privacy established here)

INDEX 12/07/05

A DUPLICATE RECORDING of ELECTRONIC EAVESDROP Fax 04/15/04   B

CERTRON

SUBJECT:

DATE:

FDIC Lied to Federal Probation services Tapes were not Lost!!

Sony Corp Did not get my permission to use or Approve for FDIC to use a Sony tape recorder.

Sony had no right to Approve the FDIC, Douglas Fahey or Jennetta Johnson to engage in to illegal intercepts of my oral communications over a Bible verse.

Faxed to FISA court on 7/18/06 and 7/17/06 and sent certified mail to FBA and white hse

Please understand this interview is not being conducted for the purpose of uncovering facts that would help determine the guilt or innocence of anyone as it relates to the theft of money involving Jenekia Johnson and Kristian Beard. Rather, this interview will focus on the allegation of Ms. Johnson that your comments to her about the stolen money left her feeling threatened by you.

Specifically, Ms. Johnson reported feeling threatened by you in the following ways:

1.) You allegedly tried to get Ms. Johnson to confess to something she said she did not do and then involved her daughter in the situation. In doing so, Ms. Johnson reported you had a conversation with her in the project room shortly after 11:22AM on April 14, in which it is alleged that:

   a. You repeatedly said to Ms. Johnson that she took the money, and after she told you many times she didn't, you told her something bad was going to happen to her and if it didn't, it would happen to her daughter, Jayda.
   b. That you repeatedly asked Ms. Johnson if she loved her daughter.
   c. That you kept asking her to send the Investigator a false e-mail telling me that she and Ms. Beard found their money and to drop the case.
   d. That you told her if she didn't drop the case, you would bring up some notes you had on Ms. Johnson about days she wasn't at work and didn't put a leave slip in.
   e. That you wanted Ms. Johnson to take a $300 loan from the credit union to pay back Ms. Beard or, to pay back Ms. Beard the money out of pay period #7 and pay period #8.
   f. That if she didn't pay back the money, you told her God would punish her

2.) You allegedly again tried to get Ms. Johnson to confess to something she said she did not do and again involved her daughter in the situation. In doing so, Ms. Johnson reported you had a conversation with her at your desk shortly after 12:25PM on April 14, in which it is alleged that:

   a. You told her she and Ms. Beard were the only ones who knew where the key was and since it wasn't Ms. Beard it was Ms. Johnson who stole the money.
   b. You stated to Ms. Johnson again that even if she was telling the truth, she should still give Ms. Beard $300 out of her account so that the Investigator would leave the case alone.
   c. You told Ms. Johnson that she was going to be found the one telling the lie and Ms. Johnson would be given 10 years in jail and a bad reputation in the government.
   d. You asked Ms. Johnson if she would drop the case and when she said no, you told her you knew she was lying because she was not able to look at her in the eye.
   e. You asked Ms. Johnson if she wanted her daughter Jayda to grow up without a mother in her life and told her that is just what is going to happen.

3.) You allegedly again spoke with Ms. Johnson, on the telephone, at about 2:45PM on April 14, and made additional comments indicating Ms. Johnson should take responsibility for the stolen money. While doing so, Ms. Johnson alleged that you:

   a. Told her if she was a good friend, she should still give Ms. Beard a loan of $300
   b. Told her that Ms. Beard said she would forgive Ms. Johnson if Ms. Johnson gave Ms. Beard a loan of $300.
   c. Told her that Ms. Beard said if Ms. Johnson gave her a loan of $300, the Investigator would drop the case.

she felt threatened. I told her that if she just told the truth, God will forgive you. We ended with a hug, or-an embrace. We hugged and smiled.

On April 21, Ms. Johnson informed me that she didn't bring charges against me. She stated Mr. Fahey asked her if she had spoken with anyone regarding the investigation. She told me yes, she had spoken with me. She said Mr. Fahey instructed her not to speak to anyone. She indicated to me that Mr. Fahey asked her how did you feel after speaking to Yolanda. She said I felt threatened but after I spoke to Yolanda on the 15, I no longer felt threatened now after speaking with Yolanda on the 15th. Ms. Johnson said she did not bring any charges against me verbally or in writing that that Mr. Fahey had brought forth the charges.

I have read this statement which consists of _____ pages and state that I have answered each question asked of me honestly to the best of my knowledge.

Yolanda Gibson-Michaels

_____          _____
                                                Date/Time

(Witness) Donna Schull
_____          _____
                                                Date/Time

(Investigator) Douglas Fahey
_____          _____
                                                Date/Time

After completing the prepared questions, GIBSON-MICHAELS wanted to add a narrative to the statement as shown above. After completing the narrative, I printed two copies of the complete statement. I instructed GIBSON-MICHAELS to read the statement over carefully and advise me if there were any corrections needed to it. SCHULL used the other copy to read over the statement. After reading the statement, GIBSON-MICHAELS only wanted to make some changes to the narrative portion. I printed out a draft copy of the changes and she concurred that it was what she wanted to convey. I then printed out a final, complete copy of the statement which consisted of seven pages. I asked GIBSON-MICHAELS and SCHULL to read over the entire 7 pages of the final copy to be sure it was correct, and they did so. GIBSON-MICHAELS initialed the bottom of each page of the questions indicating that the content was correct.

I asked GIBSON-MICHAELS to read out loud the final sentence before the signature line, and fill in the number of pages of the statement. She did so, and at 11:36Hrs., affixed her signature, the date and time to the statement, followed by SCHULL and me.

At that point, I thanked everyone for their cooperation and announced that this completed phase 1 of the interview. I suggested we break for approximately 30 minutes and reconvene for phase 2. SCHULL asked what phase 2 was going to be, but I did not provide specifics.

Phase 2 of the interview began at 12:20Hrs. I stated that on April 15, 2004, JOHNSON had been wired for sound when she spoke with GIBSON-MICHAELS and that I had a recording of the conversation. I stated there were some inconsistencies that needed to be cleared up pertaining to the answers that GIBSON-MICHAELS provided in her statement, to what she said on tape. GIBSON-MICHAELS maintained that JOHNSON started out the April 15 conversation by telling her that "she lied" to her. Upon review of the audio tape, it was determined that was exactly what JOHNSON did tell GIBSON-MICHAELS before they went to the project room. (I subsequently asked JOHNSON about this remark and she explained it in an e-mail dated April 28, 2004. Refer to this e-mail explanation later in this report.)

Securiguard, Inc.



# SECURIGUARD, INC.

*Professional Security with Integrity*

Search our site... 🔍

- ↳ **The Securiguard Solution**
- ↳ Choose Securiguard
- ↳ Training

---

- ˅ Company Profile
- ˅ Securiguard Service
- ˅ Human Resources
- ˅ GSA Schedule
- ˅ News Room
- ˅ Directions
- ˅ Contact Us

Home > Securiguard Service > The Securiguard Solution

## The Securiguard Solution

### ONE SOLUTION TO ALL OF YOUR SECURITY NEEDS

Securiguard has built its reputation by providing quality personnel and services to meet the needs of each client. We carefully analyze our client's security requirements, then design and execute programs to ensure site security, as efficiently as is feasible. Securiguard is able to provide high quality security services to government and private sector clients on a very cost-effective basis.

### Highly Qualified Personnel

Securiguard offers the services of licensed and bonded armed and unarmed security officers. We provide the appropriate complement of security personnel to meet the requirements of each client. Securiguard has continuously demonstrated its ability to provide exceptionally well-qualified personnel, many with former military and law enforcement backgrounds. Each member of the Securiguard team undergoes a



complete background investigation prior to being hired. Personnel are selected for high standards of personal conduct, dependability, and proven experience.

## Unequaled Training Capabilities



Securiguard's training school. The Institute of Criminal Justice and Security, is approved by the United States General Services Administration and by state authorities as a certified security services personnel training school. The Institute exceeds state licensing requirements, and provides ongoing training for Securiguard personnel. Special blocks of instruction can be tailored to meet the needs of individual clients.

## Total Quality Management (TQM)

As a provider of high quality professional security services, Securiguard is actively dedicated to Total Quality Management (TQM) throughout the organization. The goal is to provide an environment for our employees that is conducive to positive improvement. In addition, TQM provides a framework for improvements to be identified and acted upon in every level of the organization. More effective methods and procedures are instituted by using the free flow of information, and by acting upon our employees suggestions and ideas.

© 2003 Securiguard, Inc. All rights reserved. Website powered by Timberlake Publishing.

**Modification No. 5**
**To Contract No. 99-00086-C-J3**
**Page 3 of 4**

C.    Effective March 1, 2000, the FDIC hereby adds a new Investigator position to the Contract.
As a result, the Statement of Work is modified to include the following language as Section
10.3.9:

"<u>Qualifications</u>. The Investigator shall have completed an accredited law enforcement academy
and possess a minimum of 3 years investigative experience. The Investigator shall have a
private investigator (PI) license for Washington, DC and Virginia unless otherwise waived by
the FDIC Oversight Manager.

"<u>Duties</u>. The Investigator's duties shall include, but not be limited to the following:

- Conduct long-term, short-term, and odd hour investigations;
- Conduct interviews;
- Develop and follow leads;
- Take statements;
- Gather information and facts;
- Research records;
- Analyze and evaluate information;
- Prepare narrative reports;
- Prepare statistical reports;
- Institute and maintain databases;
- Coordinate FDIC's security awareness day;
- Develop FDIC's security awareness program;
- Evaluate crime prevention programs;
- Develop and recommend changes to current FDIC programs; and
- Travel to FDIC field offices for investigative or information purposes, as requested by the
  FDIC Oversight Manager.

This is a plain clothes, unarmed position. The Investigator shall carry a cell phone. The
Investigator shall work 8 hours per day, 5 days per week, excluding holidays.

D.    Section 3.1 of the Contract ("<u>Key Personnel</u>") is modified to change the names of the Key
Personnel as follows:

Delete:

| "<u>Name</u> | <u>Title</u> | <u>Effective Date</u> |
|------|-------|----------------|
| Douglas Fahey | Project Manager | June 1, 1999 |
| Archie Moses | Site Supervisor (Washington, DC location) | April 25, 1999 |
| Ernest Brooks | Site Supervisor (Arlington, VA location) | May 17, 1999 |
| Patrick Devine | Security Operations Center Supervisor | May 17, 1999" |

And replace with:

| "<u>Name</u> | <u>Title</u> | <u>Effective Date</u> |
|------|-------|----------------|
| Charles Boring | Project Manager | October 6, 1999 |
| Joseph Ortman | Site Supervisor (Washington, DC location) | December 1, 1999 |
| Archie Moses | Site Supervisor (Arlington, VA location) | December 1, 1999 |
| Douglas Fahey | Investigator | March 1, 2000" |

_NOT employed By Securigard_ PAID By Securigard USEC contract

Federal Deposit Insurance Corporation
**Division of Administration, Acquisition and Corporate Services Branch**
**1700 Pennsylvania Avenue, NW, Room 4104**
**Washington, DC 20006**

## MODIFICATION OF CONTRACT

| 1.   Modification Number: | 2.   Effective Date: |
|---|---|
| 2 | See Block No. 6 below |

| Vendor's Name and Address: | Modification of Contract/Order Number: |
|---|---|
| Securiguard, Inc.  ✓<br>Attn: Fred Williamson<br>6858 Old Dominion Drive, Suite 307<br>McLean, Virginia  22101 | **Contract No. 99-00086-C-J3**<br>("FDIC Security Services")<br><br>Dated:     April 25, 1999 |

**This Modification is Issued Pursuant To:**

☐  Authority of the FDIC Contracting Officer.     ☑  Mutual Agreement of the Parties Hereto.

**Description of Modification**

The purpose of this Modification is to:

1) Change the names of the Key Personnel;
2) Re-incorporate the requirement for completing GSA Form 139; and
3) Confirm that incumbent Security Officers who have been certified in Adult CPR Initial Training are not required to re-certify prior to working on this Contract.

As a result, Contract No. 99-00086-C-J3 is modified as stated on the following pages.

☐  Contractor is not required to sign this document     ☑  Contractor is required to sign this document and return 2 copies to issuing office.

| 3. Contractor:  Securiguard, Inc. | 4.   Federal Deposit Insurance Corporation: |
|---|---|
| By: _(signature)_ | By: _(signature)_ |
| Name and Title (type or print). | Name of Contracting Officer: |
| Patricia De L. Marvil, Chairman/CEO | _Carolyn Follin_ |
| 5.Date Signed: ___June 25, 1999___ | 6. Date Signed: ___7/7/99___ |

Modification No. 5
To Contract No. 99-00086-C-J3
Page 3 of 4

C.    Effective March 1, 2000, the FDIC hereby adds a new Investigator position to the Contract.
      As a result, the Statement of Work is modified to include the following language as Section
      10.3.9:

      "Qualifications.  The Investigator shall have completed an accredited law enforcement academy
      and possess a minimum of 3 years investigative experience.  The Investigator shall have a
      private investigator (PI) license for Washington, DC and Virginia unless otherwise waived by
      the FDIC Oversight Manager.

      "Duties.  The Investigator's duties shall include, but not be limited to the following:

      ▪  Conduct long-term, short-term, and odd hour investigations;
      ▪  Conduct interviews;
      ▪  Develop and follow leads;
      ▪  Take statements;
      ▪  Gather information and facts;
      ▪  Research records;
      ▪  Analyze and evaluate information;
      ▪  Prepare narrative reports;
      ▪  Prepare statistical reports;
      ▪  Institute and maintain databases;
      ▪  Coordinate FDIC's security awareness day;
      ▪  Develop FDIC's security awareness program;
      ▪  Evaluate crime prevention programs;
      ▪  Develop and recommend changes to current FDIC programs; and
      ▪  Travel to FDIC field offices for investigative or information purposes, as requested by the
         FDIC Oversight Manager.

      This is a plain clothes, unarmed position.  The Investigator shall carry a cell phone.  The
      Investigator shall work 8 hours per day, 5 days per week, excluding holidays.

D.    Section 3.1 of the Contract ("Key Personnel") is modified to change the names of the Key
      Personnel as follows:

      Delete:

| "Name | Title | Effective Date |
|-------|-------|----------------|
| Douglas Fahey | Project Manager | June 1, 1999 |
| Archie Moses | Site Supervisor (Washington, DC location) | April 25, 1999 |
| Ernest Brooks | Site Supervisor (Arlington, VA location) | May 17, 1999 |
| Patrick Devine | Security Operations Center Supervisor | May 17, 1999" |

      And replace with:

| "Name | Title | Effective Date |
|-------|-------|----------------|
| Charles Boring | Project Manager | October 6, 1999 |
| Joseph Ortman | Site Supervisor (Washington, DC location) | December 1, 1999 |
| Archie Moses | Site Supervisor (Arlington, VA location) | December 1, 1999 |
| Douglas Fahey | Investigator | March 1, 2000" |

**Modification No. 2**
**To Contract No. 99-00086-C-J3**
**Page 2 of 4**

Contract No. 99-00086-C-J3 is modified as follows:

## *Changes to the Contract:*

1.  Article 3.1 (*"Key Personnel"*) is modified to change the names of the Key Personnel, as follows:

    *Delete:*

    | <u>Name</u> | <u>Title</u> | <u>Effective Date</u> |
    |---|---|---|
    | J. Stephen Johnson | Project Manager | May 17, 1999 |

    *Replace with:*

    | <u>Name</u> | <u>Title</u> | <u>Effective Date</u> |
    |---|---|---|
    | Douglas Fahey | Project Manager | June 1, 1999 |

## *Changes to the Statement of Work:*

2.  The FDIC is modifying the Statement of Work to re-incorporate the requirement for completing GSA Form 139. FDIC will revert back to relying on both Contractor's electronic personnel timekeeping system and the GSA Form 139's to verify Contractor Personnel time and attendance for billing purposes. As a result of this change, Sections 4.4.2, 5.1, 5.5.1, and 9.1 of the Statement of Work are modified as follows:

    A.  Section 4.4.2 (*"Records"*) is modified to add the words, "GSA Form 139". Therefore, the last sentence of this Section is deleted in its entirety and replaced with the following:

        "Records shall include but not be limited to: Incident Reports, Operations Logs, Patrol Officer Reports, TAS Reports, Weapons Inventory and Maintenance Forms, FDIC Equipment Inventory, GSA Form 1051, Visitor Logs, GSA Form 139 and Contractor Personnel data."

Douglas Faby Page 8
And FDIC reported
officials engaged into
False Applications Fraud FDIC
color of Law subjected FDIC
Federal Employees to False
Arrest/Detention by FAKE Investigators
Profiling is a Federal violation/wire tape
etc.

10/13/06
mr. Ginder
confirmed no.
as TASK ORDER
← Not contract
Number.

# FDIC SECURITY SERVICES CONTRACT

## CONTRACT NUMBER 03-00303-C-CF

GS-07F-9178S
9346S

← Real contract → GS-07F-9346-S ←
Confirmed contract number
by mr. Lawrence Ginder
FT. Worth, Texas
817-574-2444

2/17/03 confirmed
Securguard only Hired ←
Security Guards Not
investigators under
contract GS-07F-0291N
contract officer is
ms. Jamie Davis
FT. Worth Texas
817-574-2302

Lindsayemacher
consuly.com →
Contract Schedules are available online
at GSA.GOV

Contract
Version 3.5
July 2003

Modification No. 2
To Contract No. 99-00086-C-J3
Page 2 of 4

Contract No. 99-00086-C-J3 is modified as follows:

## *Changes to the Contract*:

1.  Article 3.1 (*"Key Personnel"*) is modified to change the names of the Key Personnel, as follows:

    *Delete*:

    | Name | Title | Effective Date |
    |------|-------|----------------|
    | J. Stephen Johnson | Project Manager | May 17, 1999 |

    *Replace with*:

    | Name | Title | Effective Date |
    |------|-------|----------------|
    | Douglas Fahey | Project Manager | June 1, 1999 |

## *Changes to the Statement of Work*:

2.  The FDIC is modifying the Statement of Work to re-incorporate the requirement for completing GSA Form 139. FDIC will revert back to relying on both Contractor's electronic personnel timekeeping system and the GSA Form 139's to verify Contractor Personnel time and attendance for billing purposes. As a result of this change, Sections 4.4.2, 5.1, 5.5.1, and 9.1 of the Statement of Work are modified as follows:

    A.  Section 4.4.2 (*"Records"*) is modified to add the words, "GSA Form 139". Therefore, the last sentence of this Section is deleted in its entirety and replaced with the following:

        "Records shall include but not be limited to: Incident Reports, Operations Logs, Patrol Officer Reports, TAS Reports, Weapons Inventory and Maintenance Forms, FDIC Equipment Inventory, GSA Form 1051, Visitor Logs, GSA Form 139 and Contractor Personnel data."

FDIC EEO Investigator confirmed Fahey was not employed by Securiguard. Fahey was paid by Securiguard and USGC

## A. DIRECTORS

Chairman: Patricia DeL. Marvil (mother) Subcontractor to USEC (son)

Address: 6858 Old Dominion Dr, Suite 307, McLean, VA 22101

Vice Chairman: _____

Address: _____

Director: _____

Address: _____

Director: _____

Address: _____

## B. OFFICERS

President: David L. Marvil

Address: 6858 Old Dominion Dr, Suite 307, McLean, VA 22101

Vice President: Frederick M. Williamson (Executive Vice President for Administration)

Address: 6858 Old Dominion Dr, Suite 307, McLean, VA 22101

Secretary: David L. Marvil (Son)

Address: 6858 Old Dominion Dr, Suite 307, McLean, VA 22101

Treasurer: Patricia DeL. Marvil

Address: 6858 Old Dominion Dr, Suite 307, McLean, VA 22101

NOTE: If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13. _____
       (Signature of Director or Officer listed in number 12 of the application)

14. Frederick M. Williamson, Executive Vice President for Administration
       (Typed or printed name and capacity of person signing application)

FL819 - 2/11/03 C T System Online