# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YOLANDA C. GIBSON-MICHAELS            )
      Plaintiff,                          )
                                          )
      v.                                  )   Civil Action Nos.**1:06CV01940**
                                          )   **Documents No.: 8,9,14,18**
SHELA C. BAIR, et.al.                 )
      Defendants                          )

## PLAINTIFFS MOTION TO VACATE JUDGE RICARDO M. URBINA'S ORDER DATED MAY 3rd, 2007, GRANTING DEFENDANT'S SECURIGUARD CORPORATION, USEC, DOUGLAS FAHEY, AND WORKFORCE VIOLENCE INSTITUTE MOTION TO DIMISS

Now Comes, Yolanda C. Gibson-Michaels (prose), Plaintiff in the above-entitled

complaint and files a Motion to Vacate Judge Ricardo M. Urbino's Order Dated **May 3rd, 2007**.

Plaintiff complaint contained violations of statutory and constitutional laws. This

Court governed by requirements of **Certification by the Court**

The U.S. District Court had a duty to **_apply Rule 5.1_**. Constitutional Challenge to

a Statute - Notice, Certification, and Intervention before issuance of a ruling,  states that

**the court must, under 28 U.S.C. § 2403, certify to the Attorney General of the**

**United States that there is a Constitutional challenge to a Federal Statute**.

## II. Intervention- Final Decision on the Merits

The rules states that: "Unless the court sets a later time, the attorney general may

intervene within 60 days after the notice of **constitutional question is filed** or after the

**court certifies the challenge.**

The U.S. District Court had a duty to follow provisions which required that: In such a proceeding from any court of the United States, as defined by 28 U.S.C. § 451, the initial document also shall state whether that court, pursuant to 28 U.S.C. § 2403(a), certified to the Attorney General the fact that the **Constitutionality of an Act of Congress was drawn into question**. See Rule 14.1(e)(v).

## I.    **JURISDICTION AND VENUE**

This Court has both subject matter jurisdiction over this action and personal jurisdiction over Plaintiffs' claims pursuant to Electronic Communication Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848, Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. III, §§ 801–804, 82 Stat. 211, 9-7.100 Authorization of Applications for Wire, Oral, and Electronic Interception Orders; Privacy Act, 5 U.S.C. § 552a. A motion to dismiss under Rule 12(b) (6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).

Judge Urbino stated on page 4 of the May 3rd Order that: **"Although the complaint is prolix, repetitive and confusing at times, its does provide specific details and provides adequate notice o the basis of the plaintiff's claims. The plaintiff's statutory citations and factual allegations provide sufficient notice to the defendants and, thus, the complaint satisfies the requirements of Rule 8(a)"**

The U.S. District Court civil docket confirmed that named Defendant Jenekia J. Johnson was served by summons on **December 7, 2006**; entered by initials **(JF)** on **December 8, 2006**.

2

However, Judge Urbina asserted on page 5 of Plaintiff's complaint filed under case number **06-cv-1933** that Johnson was not served. Plaintiff also filed a motion to vacate Judges Order under both case numbers **06-cv-1940** and **06-cv-1933**.

Courts have ruled that the issue on a motion to dismiss "is not whether . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims in which all allegations within her Complaint must be taken as true. See Scheuer, 416 U.S. at 236.

## II.    **BREACHED DUTY**

It's indisputable that defendants Patricia Del Marvil CEO, (Securiguard), David Marvil, USEC Services Corporation, Steve Kaufer, CEO, Workforce Violence Institute, Douglas Fahey, Jenekia Johnson, et.al. owed Plaintiff a duty of care to conform to a standard of conduct in the retention, hiring of guard personnel. Defendants Securiguard and USEC Services Corporation hired Douglas R. Fahey (unlicensed security guard) whom targeted Plaintiff by acting under the color law in violation of Plaintiff's civil, constitutional, privacy, age, race; parental rights etc.

## III.    **STANDARD OF CARE**

It's indisputable that the Federal Deposit Insurance Corporation (FDIC) and named Defendants owed Plaintiff a high standard of care to perform fitness and integrity checks of all contract employees allowed onto the premises of a Federal Agency.

FDIC failed to exercise the "highest" degree of care during the retention, screening, and hiring of unlicensed Security Guard personnel whom were only contracted to provide "Guard Services" in accordance to the General Services Administration (GSA)

## IV. **CAUSATION**

It is indisputable that the Federal Deposit Insurance Corporation (FDIC) and named Defendants (tortfessors) breach and violation of a standard of care caused injuries to Plaintiff. FDIC, Securiguard and USECs employment of Douglas R. Fahey (unlicensed) contractor violated

Plaintiff's right under Title VII, age, race, FMLA, disparate treatment, negligence and other

violations of Plaintiffs civil and constitutional rights under the law, due process, and other claims

filed before the Court.

**V.   FDIC, SECURIGUARD, USEC CORPORATION, AND THE WORKFORCE VIOLENCE INSTITUTE (STEVE KAUFER) VIOLATED MANDATORY CONTRACT PROCEDRUES**

a)      Background Investigation Questionnaire For Contractors

b)      Part 366 - Minimum Standards of Integrity and Fitness for an FDIC Contractor

c)      Contractor Confidentiality Agreement

d)      Contractor Past Performance RFP Reference Check Questionnaire

e)      FDIC Contractor Representations and Certifications

f)      FDIC Integrity and Fitness Representations and Certifications

g)      Notice & Authorization for the Fair Credit Reporting Act

h)      Background Investigation Questionnaire for Contractor Personnel & Subcontractors

4

## VI.    INDEMNIFICATION

Defendants attempt to shield itself from **intentional negligent actions**, defamation of

Plaintiff character, Title VII, due process, and constitutional protections afforded to Plaintiff.

Defendant's contractual Indemnification agreements, license requirements, warrants, bonds,

certifications are clearly articulated in both **Securiguard** and **USEC Corporation** contractual

agreement with the Federal Deposit Insurance Corporation, under Article XI. Indemnification,

page 16 of the USEC Corporation contract clear states, in part, that:

> "**Contractor agrees to indemnify, Hold Harmless, and Defend the FDIC in all of its
> capacities, and all of its officers, directors, and employees against any and all claims,
> losses, penalties, fines, forfeitures, amounts paid in settlement, judgments,
> reasonable attorneys' fees and related litigation, costs, fees, expenses which result
> from any act or omission constituting negligence, willful misconduct or breach of
> fiduciary duty by any officer, director, agents or employees of Contractor or its
> subcontractors in connection with Contractor's performance under this contract.**"

Plaintiff's original complaint and opposition to defendant's motion to dismiss, clearly

provided evidence that Douglas R. Fahey **did not have a licensed, was paid under both**

**Securiguard** and **USEC Corporation contracts**, and violated Articles I, VII, **Scope, suitability,**

**standards of conduct** to and including other articles under the Securiguard contract and Steve

Kaufer (CEO), Consultant for the Workforce Violence Institute had no right to accept evidence

from an unlicensed security guard, publish, comment, provide a professional psychoanalysis

against Plaintiff, publish personal information regarding plaintiff's family members.

## VII.    Misapplication of Negligence and Defamation Claims

Plaintiff's claims of ***Negligenc Prose***, ***Defamation Prose*** and an unauthorized

***Interception of Oral Communications*** are violations of the Omnibus Crime Control and

Safe Streets Act of 1968. Title III, §§ 801–804, 82 Stat. 211, 9-7.100, Oral, Wire,

Electronic Interception Orders; Privacy Act, 5 U.S.C. § 552a. Federal Trade Commission

Act (FTCA) § 618.

Courts mandate as a matter of law that a violation of the ***statute*** will constitute **negligence per se**. As such a violation of the statute requires the Court to apply principals of **Negligence per se** and **Defamation per se** in its application of the rules of law. See **Randall David Fischer** v. **Mt. Olive Lutheran Church**, et al. 207 F. Supp.2d 914 (W.D. Wis., March 28, 2002). Specifically, Courts have ruled that a dismissal without an Evidentiary Hearing offends due process is a **"Reversible Error"**. See, Haines vs. Kerner, 404 US 519 (1972) 405 US 948 (1972).

In the instant case, the courts refused to dismiss the Plaintiffs claims. The court ruled that…. **"Depending on what actually occurred, the defendants should have stopped listening to the telephone call when they discovered it was personal in nature.** The court refused to dismiss plaintiff's **privacy act claims** because plaintiff may have had a **[reasonable expectation of privacy]** in the telephone call if his claim that he made the call from a place his employer designated for private personal calls was true." The Supreme Court declared that a Federal court ***may not*** apply a heightened pleading standard to a complaint alleging ***statutory violations***. See Branch v. Tunnell, 14 F.3d 449, 450, (9th Cir. 1994). The Supreme Court has ruled that the "[t]he touchstone of due process is protection of the individual against arbitrary action of **government** and **private parties**." See County of Sacramento v. Lewis, 523 U.S. 833.

Courts have ruled that a **plaintiff may prevail** when **deprived of rights secured by the United States Constitution** or **Federal Statutes**. U.S.CONST. Amended. XIV, §1. The Fourteenth Amendment Due Process clause is a limitation on state power, while the Fifth Amendment Due Process clause limits Federal power. Halinger v. Davis, 146 U.S. 314, 319 (1892). Paul v. Davis, 424 U.S. 693, 701 (1976).

6

## VIII.  **Plaintiff Established Defamation Per Se**

Plaintiff's original complaint provided evidence, statute, case law, and facts to support that Defendant Douglas Fahey (unlicensed) impersonated a **United States Federal investigator** (**Acting Under the Color of Law**) by which he stated Plaintiff caused Johnson (Defendant) a so-called "Feeling of Threat"  See Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d 569, 573 (Minn. 1987).

Courts have ruled that **defamation per se** are allegations of **serious sexual misconduct**; [*allegations of serious criminal misbehavior*]; or *allegations that a person is afflicted with a loathsome disease*.  Plaintiff provided evidence that she is and continues to be labeled as a **Threat** but for the willful negligence and defamation of Plaintiff's character and reputation by Douglas R. Fahey whom impersonated a United States officer while acting under the color of law.  See Gobin v. Globe Publishing Co., 232 Kan. 1, 649 P.2d 1239, 1244 (1982); Swanson v. American Hardware Mutual Ins. Co., 359 N.W.2d 705, 707 (Minn. App. 1984).

Plaintiff established that she has proven impairment of a liberty interest by named defendant's false statements with the filing of evidence in the original complaint. See Codd, 429 U.S. at 627-28. Both requirements have been met by the plaintiffs, as detailed throughout her pleadings.   Liberty interests arise if an employee is terminated in a manner that **'stigmatizes'** them by impugning their reputations or foreclosing their future employment opportunities," Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C.Cir. 1995), citing Roth, 408 U.S. at 572-73, or, as explained above, when an applicant is denied employment. See e.g., Larry v. Lawler, 605 F.2d 954, 956 (7th Cir. 1978); Velger v. Cawley, 525 F.2d 334, 336 (2d Cir. 1975).

7

[T]he principal recent cases from this court in which a government-imposed stigma by its actions or actions of its agents or contractors it was found to have deprived the stigmatized person of a liberty interest involved either loss of employment or foreclosure of a right to be considered for government contracts in common with all other purposes. See Mosrie, 718 F.2d at 1161. Plaintiff presented that these are all factual issues that are totally inappropriate to resolve in an initial **Motion to Dismiss**, especially before any discovery has taken place or a hearing before the district court.

Plaintiff has sufficiently demonstrated that the defendants' Motion to Dismiss should be denied, this Court should permit Plaintiff the opportunity to immediately commence discovery. Courts addressing the type of case set forth herein permit plaintiffs to commence discovery as a routine matter. See e.g., O'Donnell, 148 F.3d at 1139; Orange, 59 F.3d at 1275; Kartseva, 37 F.3d at 1530. Furthermore, because most of the evidence relating to the plaintiffs' claims are "likely to be exclusively in the possession of the government, it would seem appropriate to accord [plaintiffs] the discovery necessary to this issue." Britt v. Naval Investigative Service, 886 F.2d 544, 551 (3d Cir. 1989).

**Whereas**, Plaintiffs has demonstrated that she is legally entitled to proceed with her complaint before this Honorable Court for its consideration prior to any final judgment being issued.

Respectfully submitted,

Yolanda C. Gibson-Michaels (prose)
2210 Anvil Lane
Temple Hills, Maryland 20748
(301) 630-5062

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **18day of May 2007**, a copy of the foregoing

Plaintiffs' Opposition to Defendants' Motion to Dismiss was mailed Federal Express

mailed to named defendants:


**Copies to:**

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, N.W. – Suite 600
Washington, DC 20006

David Zachary Kaufman, Esq.
Kaufman Law Firm
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030
Securiguard, Inc./USEC Corporation

Scott D. Helsel
Walton & Adams,
1924 Isaac Newton Square
Reston, Virginia 20190

Claire Whitaker, U.S. Attorney
555 4th Street, N.W. E-4204
Washington, D.C. 20530

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YOLANDA C. GIBSON-MICHAELS | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Nos.**1:06CV01940** |
| | ) **Documents No.: 8,9,14,18** |
| SHELA C. BAIR, et.al. | ) |
| Defendants | ) |

## <u>ORDER</u>

It is upon consideration of Plaintiff's Motion to Vacate Judges Order Dated

May 3, 2007 is hereby by Granted on this _____ day of _____, 2007.


_____
Judge


<u>Copies to</u>:

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, N.W. – Suite 600
Washington, DC  20006

David Zachary Kaufman, Esq.
Kaufman Law Firm
11350 Random Hills Road – Suite 800
Fairfax, Virginia  22030

Scott D. Helsel
Walton & Adams,
1924 Isaac Newton Square
Reston, Virginia  20190

Claire Whitaker, U.S. Attorney
555 4th Street, N.W. E-4204
Washington, D.C.  20530

10



# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## METROPOLITAN POLICE DEPARTMENT
### Security Officers Management Branch

January 11, 2005

Mrs. Yolanda C. Gibson-Michaels
1717 H Street Northwest  Room H-3081
Washington, D.C.  20001

Dear Mrs. Gibson-Michaels:

This letter will confirm your conversation on December 22, 2004, with Ms. Gray, staff member of the Security Officers Management Branch.  As previously stated, researching our files Mr. Douglass Fahey is not certified or pending certification through this branch as a Private Investigator.

It should also be noted that the Security Officers Management Branch has no jurisdiction on Federal contract sites.

If you have any additional questions or concerns, please feel free to contact a staff member on (202) 671-0500.

Sincerely,

Sergeant Peter C. McGrath
Assistant Branch Manager

(2-N514-6117 (FAX)

November 9, 2005

D.C. Wire Tap Office
Washington, D.C.

Re: **Expedited FOIA Request – Wire tap on Yolanda Gibson-Michaels**

In accordance to the Freedom of Information Act (FOIA), immediately upon request, provide a copy of:

(1) The wire tap court order secured by Douglas Fahey, contract investigator hired by the Federal Deposit Insurance Corporation (FDIC); contract by Securiguard on **April 14, 2004** and **April 15, 2004** to conduct a wire tap against Yolanda C. Gibson-Michaels on April 15, 2004.

(2) Provide a copy of all wire tap request by Douglas Fahey, contractor with securiguard for years 2003, 2004, and 2005.

(3) All copies of wire tap request by Federal Deposit Insurance Corporation against Yolanda C. Gibson-Michaels on April 14, 2004 and April 15, 2004.

(4) Provide a copy of sworn (affidavit) statement of Douglas Fahey before the U.S. Superior Court magistrate to conduct a wire tap against Yolanda Gibson-Michaels on April 14, 2004 and April 15, 2004.

(5) Provide a copy of sworn (affidavit) statement of an Federal Deposit Insurance Corporation (FDIC) official before the U.S. Superior Court magistrate to conduct a wire tap against Yolanda Gibson-Michaels on April 14, 2004 and April 15, 2004.

Send request to the attention of Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland 20748
- 301 650-5062



U.S. Department of Justice

Criminal Division

Office of Enforcement Operations

Washington, D.C. 20530

CRM-200501151P

Ms. Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland 20748

DEC 8 2005

Dear Ms. Gibson-Michaels:

This is in response to your request of November 9, 2005, pursuant to the Privacy Act, for access to records concerning you and the wire tap request/order described in paragraphs 1-5 of your request.

We did not find any Criminal Division records within the scope of your request.

If you consider this response to be a denial of your request, you have a right to an administrative appeal of this determination. Department regulations provide that such appeals must be filed within sixty days of your receipt of this letter. 28 C.F.R. 16.45. Your appeal should be addressed to: Co-Director, Office of Information and Privacy, Flag Building, Suite 570, United States Department of Justice, Washington, D.C. 20530. Both the envelope and the letter should be clearly marked with the legend "FOIA Appeal." If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,

Thomas J. McIntyre
by krs

Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit

*[handwritten at top: Conspiracy, Illegal by unlicensed Investigator]*

**FILE NUMBER: WASHINGTON**                    Incident Number: 0-0000000186

*[handwritten left margin: Douglas Fahey Unlicensed Contractor]*

*[handwritten left margin: Sony Corp will be sued. Sony had no right to give FDIC or Sedgwick permission to use it. Sony Corp employees are saying Sony didn't have a court order to approve tape (Illegal) Interviews by unlicensed Contractor]*

*[handwritten right margin: Jenckens Johnson ←]*

I again contacted JOHNSON and arranged to meet her in the lobby of 1717 H St. NW at 12:10Hrs. on 15 April 2004. We met at that time and then moved to vacant FDIC office space on the 1st floor. I placed a Sony cassette recorder with a 90 minute tape (45+ minutes per side) into her purse. I attached an omni directional power condenser microphone to the recorder and positioned the microphone so that it extended slightly, but unobtrusively from her purse. I suggested the way in which she could begin a conversation with GIBSON-MICHAELS might be to tell her she had been thinking about what she told her the day before. JOHNSON then advised me that just before coming downstairs to meet me in the lobby, she walked past GIBSON-MICHAELS' cube, and GIBSON-MICHAELS poked her head out and asked her if she had thought about what they talked about. JOHNSON told me she told GIBSON-MICHAELS no, that she was trying not to think about it. I then allowed JOHNSON to look at some notes I had handwritten on a piece of paper with potential ideas on how to begin a conversation with GIBSON-MICHAELS. After looking at the suggestions, JOHNSON came up with her own idea. She asked if she could just go to her and tell her that she felt threatened by her the day before. She said that was how she really felt. I agreed that expressing her true feelings would probably be the easiest way for her to succeed in beginning a dialogue. I turned the recorder to the "record" position and recorded a brief introduction, saying the date (April 15) and the time was 12:20Hrs. and that it was the beginning of the tape. At that time, JOHNSON left the room enroute to the 3rd floor of the building to locate GIBSON-MICHAELS. The tape subsequently revealed that approximately 10 minutes after leaving the room, JOHNSON located GIBSON-MICHAELS and began a conversation with her. The tape continued to run and record their conversation for approximately the next 37 minutes. I located JOHNSON at 13:20Hrs. on the third floor and accompanied her back to the 1st floor where I then recovered the recorder and tape from her purse. JOHNSON reported that the tape ended before their conversation did. She reported that at the end of the conversation, [off tape] GIBSON-MICHAELS hugged her. JOHNSON remarked that GIBSON-MICHAELS was "a lot nicer than yesterday." I asked JOHNSON if there were any witnesses to the conversation they just had and she stated, no.

*[handwritten right margin: Initiated by James Cook. A Bit Later I asked Jan did she Feel threatened? Because she said!!]*

On **15 April 2004**, at 13:44Hrs., GIBSON-MICHAELS sent JOHNSON and BEARD an e-mail with a subject, LIE DETECTOR TEST. The e-mail read:
          "This is a suggestion to get to the truth regarding your situation. Lie Detector test are 100 percent accurate. You both might want to consider taking a lie detector test; or volunteer since both of you are 100% certain that it wasn't you. Also, taking a lie detector to determine that it was someone else other than yourselves will give both of you a chance to resume your good friendship. Or the investigator might request that you are both tested regarding the facts surrounding your situation. The test only cost sometimes between $20.00 or $40.00 dollars.
          FDIC might be able to administer the test free. Since there is a possibility that there could have been someone other than yourselves; then you both should take the test together or separate and apart. If you are telling the TRUTH...then there shouldn't be a problem with taking a LIE detector test to save your friendship. (SMILE)... " (end of e-mail)

On **15 April 2004**, at 14:11Hrs., GIBSON-MICHAELS sent JOHNSON an internet link regarding polygraphs. The subject was, *Information regarding the Polygraph (Lie Detector Test)*. JOHNSON forwarded that message to me on 19 April, stating that she wasn't able to review the link due to a virus warning.

On **16 April 2004**, at 10:20Hrs., I left a voice message for JOHNSON to call me. At 14:20Hrs., I had a telephone conversation with her. I asked her to reflect on the conversation she had with GIBSON-MICHAELS the day before and tell me how she was feeling about all of this. JOHNSON stated she wouldn't be as comfortable with GIBSON-MICHAELS from ▓▓▓▓ on and



ISA Court
on 7/14/06
7/11/06 on our
Suit contested
mail to FBA
and whistleblowe

INDEX 12/07/05 —

[A] Duplicate
Recording of
Electronic EavesDrop
from 2/15/04

[B]

SUBJECT:

DATE:

CERTRON

FBIC Lied to Federal Probate sequired
tapes were NOT Lost!!

Sorry Corp Did not get my
permission to use or expose the
FBIC to use A Sony tape recorder.

Sony had no right to Approve the
FBIC, Douglas Fishy or Jennekis
Johnson to engage in to illegal
intercepts of my oral communions
over a Bible Verse.

FBIC's Wrote
Description of
illegal Into
of oral C.
FBIC Refused
over Origin
tape Recording
by unlicensed contras
w/out BJ order
Required by Law!!

Gibson michels Suppoled
fun duty 5-Days Based
on Bible Quote inside
a Closed box office
( Reasonable Expectation
of Privacy) conspiratical



**Incident Number: 0-0000000186**      **File Number: WASHINGTON**      **Security Level: FDIC Security**

## Incident Details

| | | | |
|---|---|---|---|
| **Category:** | Threats | **Subcategory:** | By Employee |
| **Type:** | Workplace Violence | **Loss/Damage Type:** | |
| **Security Level:** | FDIC Security | **Status:** | Ref. to Management |
| **Police File:** | No | **Police File Number:** | |
| **Occurred From Date:** | 4/14/2004 | **Occurred From Time:** | 11:22:00AM |
| **Occurred To Date:** | | **Occurred To Time:** | |
| **Reported Date:** | 4/14/2004 | **Reported Time:** | 11:59:00AM |
| **Reporting Person:** | Fahey, Douglas | **Supervisor:** | |
| **Org. Rollup 1:** | | **Org. Rollup2:** | |
| **Building Name:** | 1717 H St. NW | | **Org. Rollup3:** |
| **Legal Description:** | | **Number:** | |
| **Local Phone Number:** | | | |
| **Street Address:** | | | |
| **City:** | | | |
| **Country:** | | **State/Province:** | |
| **Geo. Rollup1:** | | **Zip/Postal Code:** | |
| **Location:** | 3rd Floor | **Geo. Rollup2:** | |
| **Location Details:** | | | **Geo. Rollup3:** |

**Incident Summary:**    Intern felt threatened by words used by employee. *Feelings of Threat induced by James T. Lantelme Frame up of Yolanda Gibson Michaels on April 14, 2004.*

## Incident Persons

| | | | | | |
|---|---|---|---|---|---|
| **Person Name:** | Gibson-Michaels, Yolanda | **Salutation:** | Ms. | **Person Status:** | |
| **Incident Person Type:** | Employee | **Company Employee:** | Yes | **Barring Notice:** | No |

**Comments:**

## Incident Person Details    *(For more Person Details please see the Person Profile Report)*

| | | | | | |
|---|---|---|---|---|---|
| **Sex/Gender:** | Female | **Date of Birth:** | | **Age:** | |
| **Home Address:** | | | | | |
| **City:** | | | | | |
| **Country:** | | **State/Province:** | | | |
| **Home Phone:** | | **Zip/Postal Code:** | | | |
| **Clothing Type:** | | **Business Phone:** | | | |
| **Feature Type:** | | **Clothing Description:** | | | |
| | | **Feature Description:** | | | |
| **Injured:** | No | **Hospitalized:** | No | | |
| **Injury Type:** | | **Injury Description:** | | | |
| **Hospital Name:** | | **Treated By:** | | | |
| **First Aid:** | | **Cause:** | | | |
| **Work Time Lost From:** | | **Work Time Lost To:** | | | |

Incident Report                Printed: 12/27/2004 1:43 pm                Page 1 of 3

**FILE NUMBER: WASHINGTON**                    **Incident Number: 0-0000000186**

After asking GIBSON-MICHAELS to explain some of the specific inconsistencies, THORSTEINSON stopped the interview at 12:55Hrs. and asked for my assurance that nothing from this interview would be used in any potential future criminal proceeding against GIBSON-MICHAELS. I was not able to give him that assurance and we all agreed to contact James LANTELME regarding that issue. I contacted LANTELME by telephone and put him on speakerphone. THORSTEINSON addressed this issue with LANTELME, who stated he would checked with a labor relations attorney and call back. At 13:05Hrs., LANTELME called back and while on speakerphone, said that Jimmy LAWRENCE gave an assurance that nothing from this administrative interview would be used against GIBSON-MICHAELS in any future criminal proceeding. This assurance satisfied THORSTEINSON and the interview resumed.

In all, I addressed the following eleven questions from my interview with GIBSON-MICHAELS. Reference information as to where the relevant transcript information can be found on the tape is included. KEY: JJ = Jenekia Johnson; YGM = Yolanda Gibson-Michaels.

*40. Didn't she tell you she felt very threatened by you because you said that if nothing happens to her, then things would roll over to Jayda.*
ANS: No.

<u>Approximate tape reference information</u>
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

*[handwritten: Private Bible Discussion inside a closed door Office]*

Relevant Transcript:
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over to me if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

<u>DISCUSSION on QUESTION 40:</u>
After listening to the tape, GIBSON-MICHAELS maintained her answer to the question was no, saying that JOHNSON said "believing me or not."

*39. In fact Mrs. Gibson-Michaels, Ms. Johnson told you that she felt very threatened by you didn't she?*
ANS: No. She never felt threatened by me. She said she felt threatened by her sins. I don't know what sins she was talking about.

<u>Approximate tape reference information</u>
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

Relevant Transcript:
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you

**FILE NUMBER: WASHINGTON**

**Incident Number: 0-0000000186**

believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like, you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

## DISCUSSION on QUESTION 39:

After listening to the tape, GIBSON-MICHAELS initially maintained her answer was still no to this question. She first said she believed JOHNSON told her she felt very very threatened yesterday "by you believing me or not" instead of "believe it or not." After review of the tape, SCHULL believed JOHNSON said "believe it or not." GIBSON-MICHAELS subsequently changed her answer to, "Yes, she told me that."

NOTE: No where on the tape does JOHNSON talk about her sins or feeling threatened by anything or anyone other than GIBSON-MICHAELS. .

*31. Did you tell Ms. Johnson that you believed Hecht's could have been threatening her for the money she owed them?*
ANS: No.

### Approximate tape reference information
Tape Counter Number: 136 and 147
Time into tape: 14 minutes 28 seconds and 15 minutes, 29 seconds

Relevant Transcript (136):
YGM: I was thinking it could have been Hecht's. Cause sometimes people [indistinguishable] threaten people?
JJ: You mean Hecht's?
YGM: Yea, I was thinking. Maybe, I said maybe she had to pay her Hecht's? Cause I don't, Kristian was saying you owe six hundred dollars to Hecht's.

Relevant Transcript (147):
YGM: Okay but you know how everyone's going to look at things the way I look at things. I look at this in fact. The fact well the only thing I'm thinking well maybe you could've gotten into a situation where Hecht's was threatening you or something (indistinguishable)
JJ: No, cause I'm not, haven't been late on a payment and I have never, I haven't been in that situation.

## DISCUSSION on QUESTION 31:

After listening to the tape, GIBSON-MICHAELS maintained her answer to that question was still no. She said the question wasn't worded properly; that I should have used the word "situation" in my question to her.

*14. Did you suggest to Ms. Johnson that she take a $300 loan from the credit union and pay back Ms. Beard?*
ANS: No.

### Approximate tape reference information

19

**FILE NUMBER: WASHINGTON**  **Incident Number: 0-0000000186**

conversation, Yolanda asked "did I think about what she said to me the day before", this was to confess to something that I did not do. I also told her that I went home and tried to think nothing of it.

During a conversation that I had with you 10 minutes later, you asked me was there any contact with Yolanda, from the last time we had spoke. I told you then, that I had just ran into her before I met with you. You asked me what was said by her, and I told you then, that all she said was "did I think about what she said yesterday and I said No". You then gave me a piece of paper which had writing on it, on how you wanted me to approach Yolanda. While you were placing the wire in my purse, you asked me to think of another way of approaching Yolanda. My way was to say hello Yolanda, I'm sorry that I lied to you, and yes I did think about what you has said to me yesterday." (end of e-mail)

Therefore, in summary, the "lie" JOHNSON was referring to on the tape referenced her telling GIBSON-MICHAELS that she had not thought about their previous conversation, when in fact, she had thought about it.

The original tape recording and original statement by GIBSON-MICHAELS were stored as evidence in the Operations Center.

CONCLUSION

There is evidence to suggest that GIBSON-MICHAELS did make inappropriate comments to JOHNSON, which supports her allegations that she felt threatened by GIBSON-MICHAELS. A copy of this report, a copy of the recorded tape, and a copy of GIBSON-MICHAELS' statement were provided to LANTELME on 3 May 2004.

*(handwritten left margin)* FDFC "4Use" illegal Wire 18 USC 119

*(handwritten right margin)* Bible verse saying I love you swear to me in the partial business inside a closed door office is not a Threat!

*(handwritten)* Bible verse inside a closed door OFFICE (Privacy) is not inappropriate. James T. Lantelme manifested introduced Feelings of threat to Frame-up Yolanda Gibson-Michaels in Violation OF 18 U.S.C.

24

*[handwritten: FDIC/defendants violated]*

*[handwritten: FDIC Reported to U.S. Congress & Senate]*

# Table 1
## Jurisdictions With Statutes Authorizing the Interception of Wire, Oral, or Electronic Communications
### Effective During the Period January 1 Through December 31, 2004*

*[handwritten left: FDIC violated]*

*[handwritten right: DEFendants violated]*

| Jurisdiction | Statutory Citation** | Reported Use of Wiretap in 2004 | Number of Orders Authorized in 2004 |
|---|---|---|---|
| Federal | 18:2510 - 2520 | | |
| Alaska | 12.37 | Yes | 730 |
| Arizona | ARS 13-3010 - 13-3018 | No | - |
| California | Penal Code Sections 629.50-629.98 | Yes | 10 |
| Colorado | 16-15-102 | Yes | 180 |
| Connecticut | 54-41a - 54-41t | No | - |
| Delaware | 11 Del.C.Chap.24 | No | - |
| District of Columbia | 23-541 - 23-556 | Yes | 4 |
| Florida | 934.01 - 934.10 | No | - |
| Georgia | 16-11-64 | Yes | 72 |
| Hawaii | 803-41 - 803-48 | No | - |
| Idaho | 18-6701 - 18-6710 | No | 33 |
| Illinois | 720 ILCS SEC.5/108B | No | - |
| Indiana | 35-33.5-3-1 | Yes | 21 |
| Iowa | 808B.1 - 808B.9 | No | - |
| Kansas | 22-2514 - 22-2516 | No | - |
| Louisiana | Act No. 121 3B No.233 15:1308(A)(2) | No | - |
| Maine | 15 M.R.S.A. Sec 709 et seq. | No | - |
| Maryland | 10-401 - 10-411 | No | - |
| Massachusetts | 272.99 | Yes | 34 |
| Minnesota | 626A.01 - 626A.21 | Yes | 23 |
| Mississippi | 41-29-501 | Yes | 1 |
| Missouri | 33-542.400 - 542.424 | Yes | 3 |
| Nebraska | 86-290 - 86-294 | No | - |
| Nevada | 179.410 - 179.515, NRS 200.620 | No | - |
| New Hampshire | 570-A:1 - A:11 | Yes | 8 |
| New Jersey | 2A-156A-1 - 156A-34 | Yes | 13 |
| New Mexico | 30-12-2 - 30-12-11 | Yes | 144 |
| New York | CPL Article 700 | No | - |
| North Carolina | N.C.G.S. 15A-286 | Yes | 347 |
| North Dakota | 29-29.2 | No | - |
| Ohio | 2933.51 - 2933.66 | No | - |
| Oklahoma | 13 O.S. 176.1 - 176.14 | No | - |
| Oregon | ORS 133.721 - 133.739 | Yes | 1 |
| Pennsylvania | 18 Pa.C.S. Sec 5701-5726 | Yes | 16 |
| Rhode Island | 12-5.1-1 - 12-5.1-16 | No | - |
| South Carolina | SC Code Section 17-30-10 et seq. | Yes | 32 |
| South Dakota | 23A - 35A | No | - |
| Tennessee | 40-6-301 - 40-6-311 | No | - |
| Texas | Crim. Proc. Sec. 18.20 | No | - |
| Utah | 77-23a-1 - 77-23a-16 | Yes | 36 |
| Virgin Islands | 5 V.I.C. Sec 4101-4107 | No | - |
| Virginia | 19.2-61 | No | - |
| Washington | 9.73 | No | - |
| West Virginia | 62-1D-11 | No | - |
| Wisconsin | 968.27 - 968.33 | No | - |
| Wyoming | 7-3-701 - 7-3-712 | Yes | 2 |
| | | No | - |

* Pursuant to provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2519.
** Includes only those jurisdictions that enacted legislation during or before calendar year 2004.

14

*FDIC*
*Ignored Law*

**Gibson-Michaels, Yolanda C.**

| | |
|---|---|
| From: | Lawrence, James R. |
| Sent: | Wednesday, June 02, 2004 5:33 PM |
| To: | Gibson-Michaels, Yolanda C. |
| Subject: | RE: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS |

Thanks for the information.    I enjoyed speaking with you.

-----Original Message-----
From: Gibson-Michaels, Yolanda C.
Sent: Wednesday, June 02, 2004 5:23 PM
To: Lawrence, James R.
Subject: FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Subject: RE: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Additional information...

# US federal wiretapping laws as of Jan. 2000

Contents:

- CRIMES:
  - 18 USC, PART I, CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS (includes 18 USC 2510-2522)
  - 18 USC, PART I, CHAPTER 121 - STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS (incl. 18 USC 2701-2711)
- CRIMINAL PROCEDURE:
  - 18 USC, PART II, CHAPTER 205 - SEARCHES AND SEIZURES (incl. 18 USC 3117, "Mobile tracking devices"; non-wiretapping sections elided)
  - 18 USC, PART II, CHAPTER 206 - PEN REGISTERS AND TRAP AND TRACE DEVICES (incl. 18 USC 3121-3127)
- TELEGRAPHS, TELEPHONES, AND RADIOTELEGRAMS
  - 47 USC, CHAPTER 9 - INTERCEPTION OF DIGITAL AND OTHER COMMUNICATIONS (incl. 47 USC 1001-1021; most CALEA provisions are in this part)

**From:** Bovenzi, Erica F.
**To:** Gibson-Michaels, Yolanda C.
**Sent:** Monday, June 21, 2004 4:57 PM
**Subject:** Read: FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Your message

**To:** Bovenzi, Erica F.
**Subject:** FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS
**Sent:** 6/9/2004 3:20 PM

was read on 6/21/2004 4:57 PM.

1

*[handwritten: my right to incriminate self refuse]*
*[handwritten: my right to An Attorney]*

**FDIC**
Federal Deposit Insurance Corporation

Legal Division

April 21, 2004

**TO:**   Yolanda Gibson-Michaels
          Information Specialist

**FROM:** James T. Lantelme
          Assistant General Counsel

*[handwritten: Co Director]*

**SUBJECT:** Mandatory Attendance at Investigatory Meeting

Mr. Douglas Fahey, an investigator with the Division of Administration, notified you by an e-mail on Monday, April 19, 2004, of his need to meet with you for purposes of an investigative interview. Via return e-mail, you stated that "I will not subject myself to any form of investigatory interviews". Instead, you provided him with a written statement.

Please be advised that attendance at this investigative interview is mandatory. As a member of the bargaining-unit, you may bring a union representative to the interview. By this memorandum, I direct you to meet with Mr. Fahey at his office for purposes of the interview he has requested, and I direct you to cooperate in the interview. He is available on Friday, April 23rd at 2:00pm. I direct you to contact him to confirm the time for your appointment.

*[handwritten: Threat also to incriminate illegal]*

Failure to attend the interview and cooperate will result in disciplinary action being taken against you.

*[handwritten: Threat]*

Cc: Douglas Fahey
    William Kmetz
    Robert Wooding
    Carl Polvinale

*[handwritten: Denied Due Process!!]*
*[handwritten: 1st, 2nd, 4th Due process, procedural Due poss Miranda rights]*



**FDIC**

**Federal Deposit Insurance Corporation**

Legal Division

April 26, 2004

**TO:**      Yolanda Gibson-Michaels
             Information Specialist

**FROM:**    James T. Lantelme
             Assistant General Counsel

**SUBJECT:**  <u>Mandatory Attendance at Investigatory Meeting</u>

Due to an excused absence, you were unable to attend an investigative interview with Mr. Douglas Fahey, an investigator with the Division of Administration, scheduled for Friday, April 23rd at 2:00pm. Mr. Fahey has notified you by an e-mail on Friday, April 23, 2004, that he has rescheduled your interview to Wednesday, April 28th, 2004 at 9:30am at his office in the F Street building, room 1C27C.

Please be advised that attendance at this investigative interview is mandatory. As a member of the bargaining-unit, you may bring a union representative to the interview. By this memorandum, I <u>direct</u> you to meet with Mr. Fahey at his office for purposes of the interview he has requested, and I <u>direct</u> you to cooperate in the interview. I <u>direct</u> you to contact him to confirm the time for your appointment.

Failure to attend the interview and cooperate will result in disciplinary action being <u>taken against</u> you.

Cc:  Douglas Fahey
     William Kmetz
     Robert Wooding
     Carl Polvinale

# Gonzales Hospital Episode Detailed

## Ailing Ashcroft Pressured on Spy Program, Former Deputy Says

*By Dan Eggen and Paul Kane*
*Washington Post Staff Writers*

On the night of March 10, 2004, as Attorney General John D. Ashcroft lay ill in an intensive-care unit, his deputy, James B. Comey, received an urgent call.

White House Counsel Alberto R. Gonzales and President Bush's chief of staff, Andrew H. Card Jr., were on their way to the hospital to persuade Ashcroft to reauthorize Bush's domestic surveillance program, which the Justice Department had just determined was illegal.

In vivid testimony to the Senate Judiciary Committee yesterday, Comey said he alerted FBI Director Robert S. Mueller III and raced, sirens blaring, to join Ashcroft in his hospital room, arriving minutes before Gonzales and Card. Ashcroft, summoning the



James Comey,
above, testified of
a hospital visit to
John Ashcroft.

strength to lift his head and speak, refused to sign the papers they had brought. Gonzales and Card, who had never acknowledged Comey's presence in the room, turned and left.

The sickbed visit was the start of a dramatic showdown between the White House and the Justice Department in early 2004 that, according to Comey, was resolved only when Bush overruled Gonzales and Card. But that was not before Ashcroft, Comey, Mueller and their aides prepared a mass resignation, Comey said. The domestic spying by the National Security Agency continued for several weeks without Justice approval, he said.

"I was angry," Comey testified. "I thought I just witnessed an effort to take advantage of a very sick

See GONZALES, A4, Col. 1

---

March 10, 2004  U.S. Justice Department
terminated domestic surveillance as Illegal!!

2007 DOJ represents the FDIC in the
US District Court, Washington in violation
of 18 USC-119 Case Nos. 06-CV-1940, 33,
38 & 39.

cc: US Senate
congress
DOJ
Office of Special Counsel
Ethics comite Senate/House

NO MAN IS
Above the Law !!

NO MAN ABOVE
THE LAW!!

# Judge Rules Against Wiretaps

## NSA Program Called Unconstitutional

By Dan Eggen and Dafna Linzer
Washington Post Staff Writers

A federal judge in Detroit ruled yesterday that the National Security Agency's warrantless surveillance program is unconstitutional, delivering the first decision that the Bush administration's effort to monitor communications without court oversight runs afoul of the Bill of Rights and federal law.

U.S. District Judge Anna Diggs Taylor ordered a halt to the wiretap program secretly authorized by President Bush in 2001, but both sides in the lawsuit agreed to stay that court action until a Sept. 7 hearing. Legal scholars said Taylor's decision is likely to receive heavy scrutiny from the U.S. Court of Appeals for the 6th Circuit, where the Justice Department appeals, and some criticized her ruling as poorly reasoned.

Ruling in a lawsuit brought by the American Civil Liberties Union and other advocacy groups in the Eastern District of Michigan, Taylor said that the NSA wiretapping program violated privacy rights and free speech rights and the constitutional separation of powers among the three branches of government. She also found that the wiretapping violated the Foreign Intelligence Surveillance Act, which requires law institutes to provide judicial oversight of clandestine surveillance within the United States.

"It was never the intent of the framers to give the president such unfettered control, particularly where his actions blatantly disregard the parameters clearly enumerated in the Bill of Rights," Taylor wrote in her 43-page opinion. "... There are no hereditary Kings in America and no powers not created by the Constitution. So all 'inherent powers' must derive from that Constitution."