# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **YOLANDA GIBSON-MICHAELS** | ) |
|  | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Case Number: 1:06CV01940 - RMU** |
|  | ) |
| **SHEILA C. BAIR, et al.** | ) |
|  | ) |
| **Defendants.** | ) |

_____)

## <u>MOTION TO DISMISS OR FOR SUMMARY JUDGMENT</u>

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure,

Defendant, Sheila C. Bair, Chairman of the Federal Deposit Insurance Corporation,

respectfully moves to dismiss the complaint in this case. Alternatively, Defendant moves

for summary judgment pursuant to Fed. R. Civ. P. 56. As set forth in the Memorandum

of Points and Authorities in support of this motion, Plaintiff has failed to state a claim

upon which relief can be granted. Alternatively, there are no material facts in genuine

dispute and Defendant is entitled to judgment as a matter of law. Wherefore, Defendant

respectfully requests that Plaintiff's complaint be dismissed with prejudice or summary

judgment entered in Defendant's behalf.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

TINA A. LAMOREAUX, Counsel
FEDERAL DEPOSIT INSURANCE CORPORATION
LEGAL DIVISION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**YOLANDA GIBSON-MICHAELS**             )
                                        )
            **Plaintiff,**              )
                                        )
        **v.**                          )   **Case Number: 1:06CV01940 - RMU**
                                        )
**SHEILA C. BAIR, et al.**              )
                                        )
            **Defendants.**             )
_____)


## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Yolanda Gibson-Michaels ("Gibson-Michaels" or "Plaintiff"), a former employee of the Federal Deposit Insurance Corporation ("FDIC"), alleges: (1) racial, sexual and religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; (3) retaliation in violation of Title VII and the ADEA; and (4) sexual harassment. Compl. at p. 2 (Docket Entry No. 1). Two other claims, (1) disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C.§ 791 ("Rehabilitation Act"), and (2) violation of the Plaintiff's rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. have already been dismissed by this Court on May 3, 2007. *See* Memorandum Opinion granting Defendants' Motions to Dismiss. Docket Entry No. 61, p. 5. Because many of the Plaintiff's claims are subject to dismissal on exhaustion grounds, including her five day suspension and removal from office, dismissal of these

claims is appropriate.  The claims that are not subject to dismissal on exhaustion grounds are either not adverse personnel actions or a legitimate non-discriminatory reason exists for the actions taken.  Accordingly, Defendant, Sheila C. Bair, in her official capacity as Chairman of the FDIC moves for dismissal of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), or for summary judgment pursuant to Federal Rules of Civil Procedure 56(c).

## II. BACKGROUND

The Court is respectfully referred to Defendant's statement of material facts not in dispute.  Briefly stated, the facts are as follows:  Plaintiff is a 48-year-old, African American female.  Compl. at p. 4.  During the relevant period, she was employed with the FDIC as a Grade 11, Information Specialist.  Compl. at pp. 3, 9.  She alleges claims against the Defendant spanning a period from September 11, 2002 – March 31, 2006.  Compl. at ¶ 14 through ¶ 115.  However, there were only three EEOC claims pursued administratively:

### A. <u>EEOC Complaint No. FDICEO – 040039</u>

Plaintiff initiated informal EEO Counseling on April 30, 2004, in EEO complaint 040039 (hereinafter EEO 39). Exhibit ("Ex."), attached hereto as Ex. 1 at p. 1.  In EEO 39, she raises claims of discrimination based on race, sex, age, reprisal, and hostile work environment grounded on five alleged incidents occurring between September 2002 and October 20, 2004.  Ex. 1 at pp. 3-7 & Ex. 4.  Plaintiff added a claim of religious discrimination by amendment, dated July 29, 2004.  *Id. at* Ex. 3.  Her prior EEO activity occurred in 1997 and 1998 and was later settled in June 2003.  Ex. 1 at p. 1.

The incidents leading to these claims were:

1. **The Nigro Incident**: Plaintiff alleges that in about September 2002, a co-worker and Caucasian male, Frank Nigro, engaged in threatening behavior and despite her complaint, he was not held accountable for his actions. Ex. 1 at p. 6. This claim was not pursued within 45 days of the incident alleged and is therefore untimely. *See* Ex. 1.

2. **The Hopkins Investigation**: Plaintiff alleges that, on August 12, 2003, her second level supervisor, James Lantelme, Assistant General Counsel, discriminatorily initiated an investigation after a co-worker, Terry Hopkins, alleged she felt threatened by Plaintiff's conduct during a verbal exchange they had concerning approval of Plaintiff's leave request. *See* Ex. 1, p. 5. This claim was not pursued within forty-five days of the incident and is likewise untimely. *Id.*

3. **The Johnson Investigation:** Plaintiff alleges that in April 2004 she was the subject of another investigation initiated by Mr. Lantelme after a student intern and co-worker, Jenekia Johnson, reported that she felt threatened by statements made by the Plaintiff. Ex. 1, p.3. As part of that investigation, Ms. Johnson was interviewed by FDIC contract investigator Douglas Fahey. *Id.* To aid the investigation, Ms. Johnson carried a concealed tape recorder to record her conversation with Plaintiff.[1] *Id.* at p. 4; *see also* Compl, Document 1-3, p. 35. Plaintiff asserts that Mr. Lantelme initiated the investigation in furtherance of the disparate treatment and in retaliation of her prior EEO activity. Because the claim was pursued within forty-five days of the incident it is timely and properly before this Court. *Id.*

Plaintiff's EEO complaint was again amended on October 20, 2004. Ex. 4. Two additional claims were accepted for investigation. The two accepted claims alleged that Plaintiff was discriminated against on the basis of reprisal based on the following (*Id.* at pp. 2-3):[2]

---

[1] Mr. Fahey was dismissed as a defendant in this action on May 3, 2007. *See* Order Granting the Nonfederal Defendants' Motions to Dismiss, Docket Entry No. 60.

[2] A claim identified as # 4 involving the alleged sending of a blind copy of an email addressed to Plaintiff from one supervisor to another was not accepted. Ex. 4 at pp. 2-4.

5. **Hanas Incident:** On October 20, 2004, Plaintiff's first level supervisor, Stephen M. Hanas, Senior Counsel, allegedly sexually harassed and verbally assaulted Plaintiff by telling her to "get the hell out of my office." This claim was pursued within forty-five days of the incident; accordingly, it is timely. *Id.* at p. 2.

6. **Lantelme Incident**: On October 20, 2004, Mr. Lantelme allegedly sexually harassed and physically assaulted Plaintiff by grabbing her arm. This claim was added to Plaintiff's complaint and is timely. *Id.* at p. 3.

With regard to Accepted Claim # 5, Mr. Hanas testified that he did not sexually harass Plaintiff or verbally assault her on October 20, 2004, or at any time. Ex. 21, pp. 1-2. He indicated that he "calmly" asked her to leave his office after a discussion about her failure to submit leave forms. *Id.* at p. 3.   With regard to Accepted Claim #6, Mr. Lantelme denies that he harassed or physically assaulted Plaintiff. Ex. 22, p. 3. According to Mr. Lantelme, Ms. Gibson-Michaels came into his office on October 20, 2004, to ask to be placed under his direct supervision. Ex. 22, p. 2. During the conversation, Plaintiff discussed several issues including leave and then told him that she believed that he would go to jail for permitting the tape recording incident with Jenieka Johnson. Mr. Lantelme finally asked Ms. Gibson-Michaels to leave his office; in fact, he asked her to do so three times before she did. Ex. 22, p. 2.  Should the Court give credence to these two alleged incidents, Defendant notes that Plaintiff has presented no evidentiary support for these incidents and, at most, they were singular events by her first and second line supervisors who, at that point in time, had no knowledge of her prior EEO activity, but were both frustrated about her conduct. *See* Ex. 21, p.1, and Ex. 22, p. 1.

In August 2004, FDIC managers believed that the "Johnson investigation" demonstrated that disciplinary action against Gibson-Michaels was warranted and, as a

4

result, Plaintiff received a five-day suspension from duty on August 3, 2004, for

unprofessional and inappropriate behavior towards Ms. Johnson.  Ex. 5; Compl. at ¶ 62.

As noted in the notice of suspension memorandum issued by Erica Bovenzi, Deputy

General Counsel, FDIC, Ms. Bovenzi personally investigated the charges and determined

that Plaintiff had attempted to intimidate an employee and impede an internal

investigation. Ex. 5 at p. 1.  Mr. Lantelme, upon speaking to Ms. Johnson, who was

visibly upset by Plaintiff and afraid something would happen to her child after talking to

Plaintiff about a theft of money, followed FDIC policy and contacted the FDIC Security,

who then conducted the investigation and found that Ms. Gibson-Michaels attempted to

interfere in the theft investigation and lie to the investigators. Ex. 16 at pp. 2-3.

On September 14, 2004, pursuant to the FDIC's Collective Bargaining Agreement

("CBA") with the National Treasury Employees Union ("NTEU"), Plaintiff elected to

file a grievance regarding the five-day suspension and the recording of her conversation

with Ms. Johnson *instead of* a Title VII claim.[3]  Ex. 8, *see also* Compl. at ¶ 70.  The

FDIC denied her grievance on October 22, 2004, and the NTEU did not invoke

arbitration.[4]  A copy of the Grievance Response is attached to Exhibit 8.  Plaintiff did not

seek counseling for the five-day suspension.

---

[3] Plaintiff was represented in the proceedings by the NTEU, the labor union for FDIC
employees. NTEU is the exclusive representative for bargaining unit employees.
Plaintiff was a member of the bargaining unit while employed at the FDIC.  A copy of
Plaintiff's grievance and the agreement are attached as Exhibits 8 and 9.

[4] NTEU, not the grievant, has the exclusive right to invoke arbitration. A grievant has no
recourse against the FDIC if the NTEU does not invoke arbitration. *See* Ex. 9, Article 48,
Section 1 A.

**B. EEOC Complaint No. FDICEO – 040056**

On September 23, 2004, Plaintiff sought EEO counseling on a second set of claims. Ex. 7 (Acceptance of Formal Discrimination Complaint, dated 11/19/04) at p. 1. She raised claims of sexual harassment, reprisal and FMLA violations which were directed toward her supervisor Stephen Hanas. *Id.* at p. 2.  The following are some of the alleged discriminatory and retaliatory events that Plaintiff discussed with her EEO counselor (Ex. 6, p. 3):

> (1) On October 18, 2004, September 17, 2004, and August 20, 2004, Plaintiff was denied advanced sick leave;
>
> (2) On September 22, 2004, Plaintiff was notified that her requests for advanced sick leave would not be approved as long as she had use/lose annual leave balance;
>
> (3) On September 1, 2004 and September 22, 2004, Plaintiff's telework requests were denied.
>
> (4) On August 30, 2004, Plaintiff's flex work schedule was closely scrutinized when her supervisor ordered Plaintiff to provide updated leave statements for certain dates.
>
> (5) On August 20, 2004, Plaintiff learned that based on an impromptu 3-year audit her annual leave was charged for approved sick leave she had used in 2002, 2003, and 2004.
> . . . .

On November 4, 2004, Plaintiff filed a formal complaint identified as EEO complaint FDICEO – 040056, (hereinafter EEO 56)  Ex. 10.[5]  Based on Gibson-

---

[5] The EEOC later consolidated EEO 39 and 56 into one matter for processing and hearing.  They were resolved by Settlement Agreement on January 14, 2005, which was later rescinded. *See infra* p. 9.

6

Michaels' formal complaint and subsequent emails concerning Plaintiff's failure to

comply with leave policies, the following claims were also identified by the Agency:

> i.      Whether Gibson-Michaels was subjected to continuing harassment resulting in a *hostile work environment* on the bases of race, color, sexual orientation, age and reprisal when:
>
>> a. On November 1, 2004, Mr. Hanas issued two memoranda to Gibson-Michaels. One memo discussed her failure to comply with FDIC time and attendance policies and the second memo discussed her numerous instances of disruptive behavior in the workplace.
>>
>> b. Mr. Hanas allegedly continuously subjected her to ridicule, verbal insults, disparagement and sexual harassment since he became her supervisor on July 12, 2004.
>>
>> c. Mr. Hanas allegedly subjected her to an unwritten time and attendance sign-in procedure.
>
> ii.     Whether Gibson-Michaels was discriminated against on the basis of *reprisal* on November 7, 2004, when Mr. Hanas and Mr. Lantelme denied her requests for FMLA leave.  (Note: this Court has already dismissed plaintiff's FMLA claims.)  Ex. 7, p. B3-2.
>
> iii.    Whether Gibson-Michaels was discriminated against and subjected to *harassment* on the bases of race, sex, and reprisal when the following incidents occurred on November 23, 2004 and December 1, 2004:
>
>> a. Mr. Hanas placed Gibson-Michaels on absence without leave ("AWOL") status;
>>
>> b. Mr. Hanas denied Gibson-Michaels' FMLA leave. Mr. Hanas allegedly charged time to her official time and attendance record without justification;
>>
>> c. Mr. Hanas required Gibson-Michaels provide duplicate time sheets and leave slips for pay periods 21-23.

*See* Ex. 7, B4-1 to B4-2 (acceptance letter); *see also* Compl. at ¶ 80.

The two leave memoranda are attached to Plaintiff's EEO complaint in EEO 56 at

Ex. 10, pp. 5-8.  The first outlined performance expectations and time and attendance

issues involving Ms. Gibson-Michaels. *Id.* at pp. 5-6.  In the memorandum, Mr. Hanas

referenced Plaintiff's lack of compliance with FDIC time and attendance rules.  He noted

that although Plaintiff's hours were from 8 am to 4:45 pm, she routinely came in late and

rarely called to indicate that she would not be on time. *Id.* at p. 5.  She also failed to

submit written leave requests when she returned from leave.  Mr. Hanas also instructed

her that if she were late, that she call him directly.  He cautioned her that if she failed to

follow FDIC policies, she would be placed on absence without leave ("AWOL"). Ex. 17;

¶12 (she continued to draw leave when she had none).  Mr. Hanas eventually had to

charge her with AWOL.  *Id.* at ¶15 & ¶ 20.

    The second memorandum outlined workplace behavior issues involving Plaintiff.

Ex. 10, pp. 7-8.  Mr. Hanas referenced numerous incidents of disruptive behavior by

Plaintiff which had a detrimental impact on FDIC staff.  For instance, when attending a

meeting with her EEO counselor, Plaintiff also "walked through that office suite,

disrupted staff who were working there, telling a number of Administrative Unit

employees to 'tell the truth.'". *Id.* at p. 7.  Mr. Hanas suggested that she participate in the

WorkLife Program at FDIC.  *Id.* at p. 8.  Mr. Lantelme also testified that Plaintiff did not

comply with FDIC leave policies and was appropriately placed on AWOL. Ex. 23, pp. 3-

4.

    In sum, there were legitimate nondiscriminatory reasons for the imposition of

restrictions on Plaintiff's use of leave and Mr. Hanas' actions and the cautionary

statements made to her.

8

**D. EEO 39 and 56 were Settled but Later Rescinded.**

On January 14, 2005, the Plaintiff, the FDIC and the NTEU signed a Settlement Agreement resolving, *inter alia*, EEO 39 and 56. Ex. 11. Plaintiff agreed to resign, to withdraw with prejudice her two EEO complaints, and waive any potential employment-related complaints arising before the date of settlement. The FDIC agreed that it would withdraw the pending proposed removal action against Plaintiff, expunge the prior five-day suspension and AWOL from her records, and offer her a buyout (50% of her salary) under the employee buyout program. *Id.*

On April 20, 2005, the FDIC notified Plaintiff that the settlement agreement she signed did not meet the requirements of the Older Workers Benefit Protection Act for a valid release of her ADEA rights. Ex. 18. The FDIC gave Plaintiff the opportunity to ratify the waiver, but she elected not to do so. *Id.* She claimed that the settlement agreement was void and asked to be reinstated. The agency disagreed and notified Plaintiff that it would reinstate her EEO age claims but that the invalid ADEA waiver did not affect her waiver of her Title VII and other non-age based claims. Ex. 24.

In response, Plaintiff filed at the MSPB an individual right of action ("IRA") appeal on June 29, 2005, claiming she engaged in protected whistle blowing activity and that she was coerced into resigning and settling her claims against the FDIC. On July 14, 2005, her involuntary resignation appeal was docketed as a separate appeal from her whistle blower claim. *Gibson-Michaels v. Fed. Deposit Ins. Corp.,* MSPB Docket No. DC-0732-05-0633-I1.[6]

---

[6] Plaintiff alleged, among other things, that she was improperly charged annual leave, denied a promotion, threatened with removal and suspended for five days in August 2004 in reprisal for whistle blowing disclosures. The IRA appeal was subsequently dismissed

9

In a November 14, 2005 decision, the AJ issued a ruling on Plaintiff's involuntary resignation appeal, finding that the FDIC had constructively removed Gibson-Michaels and ordered the agency to cancel her resignation and reinstate her to the position of Grade 11 Information Specialist effective January 21, 2005, with appropriate back pay, interest on back pay, and benefits. The reinstatement decision resulted in the cancellation of the Settlement Agreement, returning the parties to the *status quo ante*.[7]

On December 19, 2005, Plaintiff reported to work and the FDIC issued her a letter of proposed removal based on her failure to follow her supervisor's instructions, disrespectful and/or inappropriate conduct, and actions designed to intimidate her supervisors and coworkers, making it difficult or impossible to supervise her or work with her on a daily basis.[8]

_____

for lack of jurisdiction because Plaintiff had not made non-frivolous allegations that she engaged in protected whistle blowing activity. *Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC-1221-06-0413-W-1 (Initial Decision, March 2, 2006). Plaintiff filed with the MSPB a petition for review of the Administrative Judge's (AJ) initial decision which was denied on July 11, 2006.

[7] Thereafter, Plaintiff filed two enforcement actions regarding her reinstatement and the calculation of her back pay. Gibson-Michaels claimed the FDIC did not pay her the correct amount of back pay because the buyout payment was deducted from her back pay award. The MSPB found in the FDIC's favor in both cases. Plaintiff appealed these rulings to the U.S. Court of Appeals for the Federal Circuit. *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket Nos. DC-0752-05-0633-C-1 (Final Order, October 26, 2006); DC-0752-05-0633-C-2 (Final Order, October 26, 2006); *appeals dismissed per motion to withdraw petitions for review*, Nos. 07-3080; 07-3081 (Fed. Cir. June 4, 2007). Ex. 15. Significantly, she did not appeal her discrimination claims on these issues. *See* Ex. 26.

[8] Under the terms of the settlement agreement, the FDIC had agreed not to propose Plaintiff's termination. Because the agreement was now void and the parties returned to the *status quo ante*, the FDIC reinstated Plaintiff at full pay and benefits and placed her on administrative leave pending a decision on the proposal to remove her from federal service. The charges and specifications in the proposed removal action were unrelated to the MSPB's previous finding of constructive removal.

10

By letter dated March 27, 2006, the deciding official, Acting Deputy General

Counsel, Henry R. F. Griffin, informed Plaintiff that after a full review of the record, that

her disrespectful and inappropriate conduct and failure to follow instructions were

supported by the facts and that removal was the appropriate penalty. Plaintiff was

removed from her position with the FDIC effective March 31, 2006.  Ex. 25, Compl. at p.

30.

On April 4, 2006, Gibson-Michaels moved to withdraw her request for a hearing

in EEO 39 and 56 and stated that she wanted to file in federal district court.  Plaintiff's

request was granted by order dated April 5, 2006, thereby withdrawing her case from the

EEOC's administrative hearing process.  Order attached to Plaintiff's Compl.

Plaintiff did not seek EEO counseling or file an EEO complaint regarding her

removal. She chose, instead, to appeal her termination to the MSPB on April 28, 2006.

*See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC - 0752-06-0515-

I-1. Ex. 27 (Index).  Plaintiff's removal appeal challenged the Agency's charges and the

removal penalty and alleged that her removal was discriminatory based on her age and

race. She further alleged that she was the victim of sexual harassment, that she was

subjected to a hostile work environment, and that the FDIC's action was effected in

retaliation for her prior EEO activities and violated her rights under the FMLA.  She also

sought consequential damages as the prevailing party in the earlier reinstatement appeal,

asserting eligibility for damages where the Board orders corrective action in a whistle

blower complaint.

In a July 12, 2006, order, the MSPB AJ denied Plaintiff's motion for damages in

connection with the reinstatement proceeding and found Plaintiff was not eligible for

11

consequential damages because, in the reinstatement decision, the FDIC took no action in reprisal for alleged whistleblowing activity. *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC-0752-06-0515-I-1 (Final Order, October 26, 2006), *appeal dismissed per motion to withdraw petitions for review*, No. 07-3107 (Fed. Cir. June 4, 2007). Exs. 15 and 26.

On July 12, 2006, Plaintiff filed a request to withdraw the appeal of her removal from the MSPB. Ex. 27 (Index). In a July 13, 2006 order, the AJ indicated that he would dismiss the appeal unless plaintiff advised him by July 19, 2006, that she did not intend to withdraw her appeal. *Id.* Plaintiff timely filed a request to reinstate the appeal of her removal and the AJ continued the proceeding. But, on both July 24 and 25, 2006, she moved again to withdraw her removal appeal. In accordance with these requests, the AJ *dismissed* plaintiff's removal appeal, finding that the withdrawal removed the appeal from the Board's jurisdiction. *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC-0752-06-0515-I-1. Ex. 27 (Index).

On August 4, 2006, Plaintiff filed a petition for review with the Board, but only of the AJ's order denying her request for damages in the reinstatement appeal; she did not appeal the voluntary dismissal of her removal appeal. Ex. 19, pp. 1-11.

The MSPB denied her petition for review on October 26, 2006, and Plaintiff filed an appeal of her damage claim with the Federal Circuit Court of Appeals. Plaintiff filed a motion to withdraw her appeals and dismiss for lack of jurisdiction on May 25, 2007. The Federal Circuit granted the motion to withdraw her petitions for review on June 4, 2007. A copy of the corrected order granting the motion to withdraw the appeals is attached as Ex. 15. *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No.

DC-0752-06-0515-I-1 (Final Order, October 26, 2006), *appeal dismissed per motion to withdraw petitions for review*, No. 07-3107 (Fed. Cir. June 4, 2007).

Because the Settlement Agreement was rescinded, EEO complaints 39 and 56 are now before this Court. As more fully set forth below, several claims are untimely and should be dismissed including the Nigro incident, the Hopkins investigation, and the five-day suspension. Those claims that are timely are not based on an adverse personal action including actions performed by agency officials in the Johnson investigation, the Lantelme incident and Plaintiff's leave issues. Plaintiff's hostile work environment claim likewise does not rise to the level of an actionable matter.

### E.  EEOC Complaint No. FDICEO-060043

On September 17, 2006, a year and a half after her "involuntary" resignation, Plaintiff filed a third EEO complaint FDICEO – 060043 (hereinafter "EEO 43"). Ex. 13.[9] Based on Gibson-Michaels' formal complaint, the EEO Counselor's Report and narratives submitted by Gibson-Michaels to the EEO counselor the following allegations were identified by the Office of Diversity and Economic Opportunity (ODEO) in EEO 43:

> Whether Gibson-Michaels was discriminated against on the bases of race, color, sex, religion, age, disability, reprisal (prior EEO and whistleblower activities), and parental status with respect to eighteen claims. They are: (1)Appointment/Hire; (2) Assignment/Duty; (3) Award; (4) Disciplinary Action; (5) Evaluation appraisal; (6) Expiration of appointment; (7) Harassment, non-sexual; (8) Harassment, sexual

---

[9] Plaintiff initiated informal EEO counseling on August 21, 2006. A copy of the Counselor's Report and EEO complaint FDICEO-060043 are attached as Exhibits 12 and 13. Plaintiff's complaint did not set forth any factual allegations. According to the counselor's report, however, Gibson-Michaels alleged she was discriminated against and harassed when, on August 18, 2006, she learned that a federal district judge ruled that wiretaps under the U.S. National Security Agency program were unconstitutional. A copy of the news article is attached to Plaintiff's Complaint.

harassment; (9) Promotion; (10) Reassignment/Transfer; (11) Reinstatement; (12) Reprimand; (13) Retirement, involuntary; (14) Suspension; (15) Termination; (16) Time and Attendance; (17) Working Conditions; (18) Other FMLA, Whistleblower, FDIC Bank Insider Trading.

*See* Ex. 14 at 3-6 (pp. 1-4 of 12).

On November 16, 2006, ODEO sent to Plaintiff the Final Agency Decision ("FAD") dismissing all claims alleged in EEO 43 as untimely.    The FAD also dismissed certain claims on various other legal grounds. Ex. 14 (pp. 8-10 of 12).    As Plaintiff was removed from her employment with FDIC on March 31, 2006, her September 17, 2006, complaint raising claims against the FDIC when she was employed there are beyond the required 45-day period to make them timely for judicial review purposes.    Thus, none of the claims in EEO 43 are properly before this Court.

In sum, the only claims from EEO 39 and 56 that are timely are the actions involved in the Johnson investigation, the alleged verbal assault by Lantelme in October of 2004, the alleged harassment by Hanas in connection with Plaintiff's leave issues in September through December of 2004, and Plaintiff's related reprisal and the hostile work environment claims.

### F.  This District Court Action

On November 14, 2006, Plaintiff filed her employment discrimination complaint in this case alleging claims against: Shelia Bair, Securiguard Incorporation, USEC Corporation, Work Violence Research Institute, Douglas Fahey, Jenekia Johnson and Robert Feldman.  Through this proceeding, Plaintiff has attempted to recast, at will, various claims that she previously asserted in multiple administrative forums in search of a more favorable outcome.  The only timely claims Plaintiff has properly brought before

14

this Court are those claims arising from two of her administrative complaints, case numbers EEO 39 and 56, related to the Johnson Investigation, Lantelme harassment, the Hanas alleged harassment and the leave issues.  For the reasons discussed below, these and the untimely claims should be dismissed with prejudice or summary judgment entered on behalf of Defendant.

## II. LEGAL STANDARDS AND DEFENSES

### A. <u>Dismissal Standard</u>

Under Fed. R. Civ. P. 12 (b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, the Plaintiff bears the burden of establishing the Court's jurisdiction.  *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  In determining whether jurisdiction exists, the Court is to regard the allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the motion to one for summary judgment.  *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a lawsuit when a plaintiff fails to state a claim upon which relief can be granted.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Thomas v. City Lights School, Inc., et al.*, 124 F. Supp.2d 707, 708 (D.D.C. 2000) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Hishon v. King and Spaulding*, 467 U.S. 69, 73, (1984).  Plaintiff's factual allegations must be accepted as true when reviewing the adequacy of the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995).  However, factual allegations "must be enough to raise a

15

right to relief above the speculative level," and a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'"  *Bell Atlantic Corp. v. Twombly*, --- U.S. --- , 127 S. Ct. 1955, 1964-65 (2007).

A Rule 12(b)(6) motion may be converted into a summary judgment motion pursuant to Fed. R. Civ. P. 56 when matters outside the pleadings are considered.  While the plaintiff need not plead the elements of a prima facie case in the pleadings, the plaintiff carries the burden of alleging a set of facts upon which relief can be granted. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

## B.  Summary Judgment Standard.

A motion for summary judgment under Rule 56 is appropriate when there is no genuine issue of material fact and the United States is entitled to judgment as a matter of law.  *Celotex Corp. v. United States*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Courts should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Celotex*, 477 U.S. at 322; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as

16

true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id*.

### C. Standard for Establishing Discrimination Based On Race, Sex, Religion and Age.

In an ADEA (age) case and a Title VII case (race, sex and religion), the applicable analytical framework is the three-stage, burden-shifting test set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this test, the plaintiff must initially prove by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. If the employer makes this showing, the burden then returns to the plaintiff to show that the employer's reason is pretextual. *Short v. Chertoff*, ___ F.Supp.2d ___, 2008 WL 2174856 *3 (D.D.C. May 27, 2008)) (*citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also id.* at *6 (*citing Brady v. Office of the Sergeant at Arms, U.S. House of Representatives,* 520 F.3d 490, 494 (D.C.Cir. 2008)). In an age, sex, race, and religion discrimination case, the ultimate burden of persuasion

17

remains at all times on the plaintiff to prove that the employer intentionally discriminated against her. *id.* (*citing Burdine*, 450 U.S. at 252-3).

In *Fogg v. Gonzales*, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter alia*, that the 1991 amendments to Title VII codified two alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part" or was a "substantial factor" in the employment decision. *Id*. at 451. Under either theory, plaintiff must demonstrate discrimination by a preponderance of the evidence and may rely on direct or circumstantial evidence to meet that burden. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-102 (2003).

In the absence of direct evidence, Plaintiff may attempt to establish that she was the victim of intentional discrimination on the basis of her race by relying on circumstantial evidence analyzed using the scheme first set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that scheme, the plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). If the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas*, 411 U.S. at 802. Once it is established that both parties have met their respective burdens of production (*i.e.*, plaintiff by presenting a *prima facie* case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant. *Hicks*, 509 U.S. at 510. Then, the plaintiff must

18

establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Desert Palace,* 539 U.S. at 101 (2003) (citing 42 U.S.C. § 2000e-2(m)).

Alternatively, plaintiff can meet the ultimate burden by demonstrating that the defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but for" reason for the challenged employment action. *Hicks,* 509 U.S. at 515-518. This a more difficult standard than the requirement under Section 2000e-2(m) to show that discrimination was a motivating factor.   In the single motive case, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Regardless of which standard is employed, Plaintiff fails to meet her burden of coming forward with evidence to create a triable issue.  As demonstrated below, the undisputed facts illustrate that Plaintiff cannot demonstrate that discrimination was a motivating factor, much less that it was the sole motivating factor in the challenged decision.

19

Had the Plaintiff made a *prima facie* case of discrimination, it would fall to the defendant to articulate a legitimate non-discriminatory reason for its behavior. Once an employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework-with its presumptions and burdens-disappears, and the sole remaining issue is discrimination *vel non*." *Short v. Chertoff*, 2008 WL 2174856 *3 (*citing Brady v. Office of the Sergeant at Arms*, *U.S. House of Representatives*, 520 F.3d at 494) (noting that "a the prima facie case is a largely unnecessary sideshow." (emphasis in text))). To survive summary judgment, a plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was the product of discrimination. *Holcomb v. Powell*, 433 F.3d 889, 896-897 (D.C. Cir. 2006). *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999) ("Courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment.") There is no evidence to suggest that a supervisor's treatment of Plaintiff was pretext for discrimination rather than a reflection of reality.

### D.  Standard for Retaliation Claim.

To prevail on a retaliation claim, a plaintiff must follow the *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). As noted above, plaintiff must first set forth evidence of a *prima facie* case of retaliation. Second:

> . . . if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, [non-retaliatory] reason for the

> employee's rejection' . . . Third, should the defendant carry
> this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the
> legitimate reasons offered by the defendant were not its
> true reasons, but were a pretext for [retaliation] . . .  The
> ultimate burden of persuading the trier of fact that the
> defendant intentionally [retaliated] against the plaintiff
> remains at all times with the plaintiff.

*See Baloch v. Norton*, 517 F. Supp. 2d 345, 353 (D.D.C. 2007) (*citing Burdine*, 450 U.S.

248, 252-53 (1981) (internal citations omitted) (*quoting McDonnell Douglas v. Green,

supra*).

      To establish a prima facie case of retaliation, "the plaintiff must present evidence

that (1) she engaged in protected activity; (2) the employer took a material adverse action

against her; and (3) the adverse action was causally related to the exercise of his rights."

*Moses v. Howard University Hosp.*,  2007 WL 442218, *5 (D.D.C. 2007) (*citing

Holcomb v. Powell,* 433 F.3d 889,  901-02 (D.C.Cir. 2006);  *Hussain v. Nicholson*, 435

F.3d 359, 366 (D.C.Cir. 2006).  Under these directives, a plaintiff must demonstrate that

the employer's challenged action would dissuade a "*reasonable* employee" from going to

the agency's EEO office, either to lodge a complaint or seek help in resolving an

allegation of discriminatory or retaliatory treatment.  *See Burlington Northern & Santa

Fe Ry. v. White*, 126 S. Ct. 2405, 2411-12, 2415 (2006).  Title VII does not seek to set a

mere "civility code for the American workplace," *Id*. at 2415.  Rather, proof of injury is

required.

      Once an employee satisfies the three elements of a *prima facie* case, it "raises a

'rebuttable presumption of unlawful discrimination,'" shifting the burden to the

defendant to rebut such presumption. *Id.*  (*citing Smith v. District of Columbia*, 430 F.3d

450, 455 (D.C.Cir.2005) and *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428,

433 (D.C.Cir.2000)).

 With regard to the first prong of the *prima facie* case, the alleged activity must be

statutorily protected activity.  *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir.

2002).  The second prong seeks to prohibit employer actions that cause harm, *i.e.,* that are

likely "to deter victims of discrimination from complaining; . . . And normally petty

slights, minor annoyances, and simple lack of good manners will not create such

deterrence.' *Burlington*, 126 S.Ct. at 2415.  "[T]he significance of any given act of

retaliation will often depend upon the particular circumstances.  Context matters." *Id.*

With regard to the third prong, the plaintiff may establish a causal connection "by

showing that the employer had knowledge of the employee's protected activity, and that

the [retaliatory] personnel action took place shortly after that activity."  *Cones v. Shalala*,

199 F.3d 512, 521 (D.C. Cir. 2000) (*quoting Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C.

Cir. 1985).  However, the temporal activity must be very close.  *Clark County Sch. Dist.*

*V. Breeden*, 532 U.S. 268, 273 (2001) (three or four-month period is insufficient to show

causal connection, and 20-month period suggests "no causality at all").

 If Plaintiff is able to establish a prima facie case of retaliation, the analysis then

follows that for a discrimination claim, Defendant must articulate legitimate non-

discriminatory reasons for its actions and Plaintiff then has the burden of proving that

Defendant's actions were taken for reasons other than those offered, but instead, for a

retaliatory purpose.  *Moses v. Howard University Hosp.*, 474 F.Supp. 2d 117 (D.D.C.

2007).

**E.  Standard for Hostile Work Environment Claim.**

The Supreme Court held in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) that hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. *Id.* at 116 (*citing Faragher v. Boca Raton*, 524 U.S. 775, 786-787 and n.1 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986)).

As this Court discussed in *Edwards v. United States EPA*, 456 F. Supp. 2d 72, 84 (D.D.C. 2006), *dismissed by Edwards v. EPA*, 2007 U.S. App. LEXIS 4681 (D.C. Cir., Feb. 6, 2007), a different standard applies to Plaintiff's claims that he was subjected to a hostile work environment as opposed to a disparate treatment claim:

> The workplace is 'hostile' for purposes of Title VII only when the offensive conduct 'permeates [the workplace] with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bell v. Gonzales*, 398 F. Supp. 2d 78, 91 (D.D.C. 2005) (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (*in turn quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993))).

In deciding whether the Plaintiff has met this threshold requirement, the Court must examine all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *George v. Leavitt*, 366 U.S. App. D.C. 11, 407 F.3d 405, 416 (D.C. Cir. 2005) (*quoting Harris*, 510 U.S. at 23 (internal quotation marks omitted)). *Edwards*, 456 F. Supp. 2d at 84.

23

A single act of harassment may not be actionable on its own. *See Morgan*, 536 U.S. at 114.   A claim of hostile work environment, by its very nature "involves repeated conduct."  *Id.* at 113-114.

### F.  Exhaustion of Administrative Remedies

In actions brought under Title VII and the Rehabilitation Act, a court has jurisdiction over only those claims that are (1) contained in the plaintiff's administrative complaint or claims that are "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff has exhausted administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir 1995); *Johnson v. Gonzales*, Civ. A. No. 04-1158, 2007 WL 901959 (D.D.C. 2007); *Jones v. Greenspan*, 402 F. Supp. 2d 294 (2005).

It is well settled that a plaintiff is required to *exhaust her administrative remedies* prior to filing a civil action in federal court for Title VII claims.  *See Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832 (1976); *Seigel v. Kreps*, 654 F. 2d 773, 776 (D.C. Cir. 1981) (Under Title VII, exhaustion of administrative remedies is a "prerequisite to court action.").

Likewise, the exhaustion requirement extends to individuals filing a claim under the Rehabilitation Act.  29 U.S.C. § 794a (a)(1).  *Thorne v. Cavazos*, 744 F. Supp. 348, 350 (D.D.C. 1990), *aff'd* No. 92-5137, 1993 WL 32323 (D.C. Cir. Jan. 29, 1993); *DuVall v. Postmaster General*, 585 F. Supp. 1374, 1376 (D.D.C. 1984).

Dismissal also is the proper result when a plaintiff fails to exhaust administrative remedies for claims brought under the ADEA.  *More v. Snow*, Civ. A. Nos. 99-3373, 02-321, 2007 WL 949779 (D.D.C. March 30, 2007); *Rann v. Chao*, 346 F. 3d 192, 194-95

24

(D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Johnson v. Gonzales*, 2007 WL 901959 at * 2.

Pursuant to regulations promulgated by the EEOC, a federal employee who believes he or she may have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must begin the administrative EEO process by contacting an agency EEO counselor within forty-five days of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1) (2004); *Bowden v. U.S.*, 106 F. 3d 433, 437 (D.C. Cir. 1997); *Seigal v. Kreps*, 654 F. 2d 773, 776 (D.C. Cir. 1981).[10]

Generally, "[a] court need not consider a complaint brought outside the [forty-five] day period, even if the agency itself investigated the untimely claim." *DuVall* at 1376, *citing Oaxaca v. Roscoe*, 641 F.2d 386, 390 (5th Cir. 1981) and *Stockton v. Harris*, 434 F. Supp 276, 280 (D.D.C. 1977).

If an employee does not contact an EEO counselor within the 45 day requirement, he or she will not ordinarily be permitted to maintain an action in federal court on that claim. *See Brown v. Marsh*, 777 F. 2d 8, 13 (D.C. Cir. 1985); *Miller v. Smith*, 603 F. Supp. 1244, 1246 (D.D.C. 1985). A plaintiff that fails to comply with the 45-day requirement bears the burden of pleading and proving reasons sufficient to excuse non-compliance with the deadline. *Bayer*, 956 F. 2d 332-33; *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).

---

[10] Although there is an alternative method to exhaust an age discrimination case [*see Stevens v. United States Department of Treasury*, 500 U.S. 1, 5 (1991)], in this case, Plaintiff has presented no evidence that she pursued that alternative route.

## III. ANALYSIS AND DISCUSSION

### A. Exhaustion of Claims Pursued Through the EEOC

Plaintiff's complaint contains a lengthy twenty-page chronology of events beginning in September 11, 2002, through March 31, 2006, which she contends were discriminatory and retaliatory acts taken against her by the FDIC. Compl., pp. 10-30. Plaintiff has failed to exhaust her administrative remedies with respect to the following claims: events that occurred prior to the filing of EEO 39, 56, 43 (EEO Complaints FDICEO – 040039 (filed 7/1/04), 040056 (filed 11/4/04) and 060043 (filed 9/20/06)).

### 1. EEO complaint FDICEO – 040039

Plaintiff first met with an EEO counselor on April 30, 2004. Ex. 1 at p. 1. Based on the authority cited above, that contact would permit Plaintiff to complain about EEO violations relating back up forty-five days or to March 16, 2004. Thus, the allegations of discriminatory and retaliatory conduct that occurred prior to March 16, 2004, including the September 2002 Nigro Investigation and the August 2003 Hopkins investigation accepted by ODEO for investigation are untimely and should be dismissed because Plaintiff has made these allegations without first timely contacting an EEO counselor, which is a prerequisite to making such a claim. 29 C.F.R. § 1614.105(a)(1). Thus, the only timely claims relate to the Johnson Investigation and the two singular acts of alleged harassment by Messrs Hanas and Lantelme on October 20, 2004.

### 2. EEO complaint FDICEO – 040056

Plaintiff first met with an EEO counselor on September 23, 2004. Ex. 6 at p. 1. Based on the authority cited above, that contact would permit Plaintiff to complain about EEO violations relating back forty-five days, or to August 9, 2004. Thus, Plaintiff's

26

allegations of discriminatory and retaliatory conduct that occurred prior to August 9, 2004, with respect to the denial of desk audit results, denial of office space, denial of advance sick leave under FMLA, and the folder archive project are untimely and should be dismissed because Plaintiff did not seek EEO counseling within the forty-five-day time limit required under 29 C.F.R. § 1614.105(a)(1). Thus, the leave claims brought under this complaint along with the hostile work environment claim are the only timely claims.

### 3. EEO complaint FDICEO-060043

Plaintiff first met with an EEO counselor on August 21, 2006. Ex. 12. Based on the authority cited above, that contact would permit Plaintiff to complain about EEO violations relating back forty-five days, or to July 7, 2006. Plaintiff was not employed by the FDIC during this time frame – her employment was terminated effective March 31, 2006. Compl. ¶ 12. Plaintiff initiated EEO counseling almost *five months* after her removal. Plaintiff does not allege, and there is no evidence that any causes of action with respect to the claims alleged in this EEO complaint occurred after her termination or within the forty-five-day time-frame.[11] Therefore, any allegations with respect to these claims are untimely and must be dismissed pursuant to 29 C.F.R. § 1614.105(a)(1).

### 4. Plaintiff's Five-Day Suspension and Removal from Office Were Not Pursued Under Title VII of the Civil Rights Act.

Because the Plaintiff did not seek EEO counseling for her suspension from duty or her removal from office, dismissal of these claims is appropriate. *See* Ex. 12

---

[11] Plaintiff's complaint FDICEO-060043 appears to recast claims that she alleged in her two prior EEO complaints as well as claims asserted before the MSPB while adding disability and parental status as additional bases of discrimination.

27

(outlining Plaintiff's various grievances in the relevant time period, not inclusive of removal or suspension complaints).  Plaintiff did not exhaust the remedies available to her with respect to these claims and they are, therefore, inappropriate for this Court's consideration. *Cf.*  III. B. Elections of Remedies, *infra.*

## B.  Election of Remedies

For the reasons discussed below, the Court should also dismiss Plaintiff's discrimination and reprisal claims regarding her removal from federal service, the calculation of her back pay award, the five-day suspension and the reprisal claims on the grounds that Plaintiff elected to pursue these claims in *other forums*; her choice of remedy is irrevocable whereby she is now barred from filing a civil action in federal court.

### 1.  Removal

Plaintiff has failed to establish subject matter jurisdiction over her termination claims. The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in various sections of title 5, United States Code), sets forth a comprehensive statutory framework for processing "mixed" cases by federal employees, i.e. cases which include claims of a personnel action which can be appealed to the MSPB and claims of prohibited discrimination based on race, color, religion, sex, national origin, age or disability.  *See* 5 U.S.C. § 7702; 5 C.F.R. §§ 1201.151 – 1201.175; 29 C.F.R. §§ 1614.302 – 1614.310.  Initially, an employee can either file a mixed case complaint with her agency's EEO office or a mixed case appeal directly with the MSPB. *See* 5 U.S.C. § 7702(a).  The Commission's regulations provide that an employee must choose one option or the other; *she cannot do both*.  29 C.F.R. § 1614.302(b).

28

Here, on April 28, 2006, Plaintiff challenged the FDIC removal decision in a mixed case appeal to the MSPB. By doing so, Plaintiff elected to pursue her claims through the MSPB process. Her election between the MSPB and EEO remedies is binding. 29 C.F.R. § 1614.302(b). Thus, because Plaintiff filed first with the MSPB, she elected to proceed in that forum and was bound to exhaust all her claims in the administrative arena before pursuing them in the district court. It is well established that an employee who withdraws an appeal before the MSPB fails to exhaust administrative remedies and is barred from filing a civil action in federal court. *See Powell v. Dep't of Defense*, 158 F.3d 597, 598 ( D.C.Cir. 1998) (quoting *Ballentine v. Merit Sys. Prot. Bd.*, 738 F. 2d 1244, 1246 (Fed. Cir. 1984))("'[w]hen an appeal has been taken to the [MSPB], until the discrimination issue and the appealable action have been decided on the merits by the [MSPB], an appellant is granted no rights to a trial de novo in a civil action in federal court'"). *See also McAdams v. Reno*, 64 F. 3d 1137 (8th Cir. 1995) (By electing to proceed with an appeal to the MSPB, rather than the EEOC, the employee had to bring all of her mixed claims there in order to exhaust her administrative remedies and have the right to sue in district court); *Vinieratos v. Dep't of Air Force*, 939 F 2d 762, 770-71 (9th Cir. 1991) ("Previous decisions by this court and others have held that abandonment of the administrative process may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review."); *Armstrong v. Mineta*, Civ. A. 04-01661, 2006 WL 1726674 (D.D.C. 2006); *Ikossi v. England*, 406 F. Supp. 2d 23 (D.D.C. 2005); *Frank v. Ridge*, 310 F. Supp. 2d 4, 7 (D.D.C. 2004).

29

Plaintiff failed to exhaust her administrative remedies when she affirmatively withdrew her MSPB appeal prior to a scheduled hearing on her claims.[12]  Therefore, she is now barred from pursuing discrimination claims regarding her removal in this action and those claims must be dismissed by the Court for lack of subject matter jurisdiction.

## 2.  Back-Pay Award

Plaintiff's complaint in this case also includes matters brought before the Federal Circuit Court of Appeals, *i.e.*, the FDIC's deduction of the buyout payment from her back pay award.  *See* Compl. ¶ 112.  Plaintiff may not circumvent the administrative process by having this Court review any discrimination claims arising from the reinstatement decision or the calculation of her back-pay award since these issues were not properly raised before the MSPB.

Plaintiff has twice contested the deduction of the buyout from her back pay award before the MSPB.  In challenging the MSPB's decisions that the FDIC had paid her the correct amount of back pay, Gibson-Michaels asserted, as she does again in this action, that the FDIC improperly deducted the $34,186 buyout payment from her back pay award.  *See* Compl. ¶ 100 and p. 42.  Having lost those challenges twice before the MSPB, Gibson-Michaels filed appeals with the U.S. Court of Appeals for the Federal Circuit which were dismissed pursuant to her motion.  *See* 15 & 26.

---

[12] Assuming arguendo that Plaintiff's withdrawal of her MSPB appeal prior to the scheduled hearing on her claims was valid, Plaintiff failed to contact an EEO counselor within forty-five days of her termination. Plaintiff was terminated effective March 31, 2006.  Plaintiff contacted an EEO counselor on August 26, 2006, 148 days after she was terminated. Thus, she failed to exhaust her administrative remedies before filing this suit in federal court.  *Rann v. Chao*, 346 F. 3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

By failing to raise her discrimination claims before the MSPB, Plaintiff failed to exhaust her administrative remedies and cannot now pursue these claims in federal district court.  Moreover, Plaintiff has admitted that she is not pursuing her back pay claims in federal district court when she filed her appeal with the Federal Circuit.  At that time, she filed a statement of discrimination with the U.S. Court of Appeals for the Federal Circuit stating that she has not filed a claim in federal district court from the MSPB's decision. Ex. 30.  Thus, Plaintiff has waived her right to pursue a discrimination claim concerning her back pay award by appealing the decisions of the MSPB to the U.S. Court of Appeals for the Federal Circuit.  Numerous courts have held that a statement disavowing a discrimination claim constitutes a valid waiver of an employee's right to proceed in U.S. District Court.  *See Smith v. Horner*, 846 F. 2d 1521, 1523-24 (D.C. Cir. 1988) (An employee waives discrimination claims by appealing to the Federal Circuit after an MSPB ruling on a mixed case appeal); *Pinson v. Rumsfeld*, 192 Fed. Appx. 811, 818 (11th Cir.2006) ("By electing to appeal the decision to the Federal Circuit, Pinson waived his ability to pursue the discrimination claims he raised before the MSPB or any other discrimination claims arising from the same facts to any federal district court."); *Otiji v. Heyman*, 47 F. Supp. 2d 6, 7 (D.D.C. 1998) (holding that an employee who had raised mixed claims before the MSPB and then appealed to the Federal Circuit waived his discrimination claims when he checked the box on the Statement Concerning Discrimination, "[n]o claim of discrimination … has been or will be made in this case").

### 3. Five-Day Suspension

As an employee of the FDIC, Plaintiff was covered under both the Civil Service Reform Act of 1978 ("CSRA") and the FDIC's Collective Bargaining Act ("CBA") with

her union, the latter of which permitted covered employees to file grievances alleging

unlawful discrimination.[13]  Plaintiff's appeal rights are governed by 5 U.S.C. § 7121(d),

which provides, *inter alia*, "[a]n aggrieved employee affected by a prohibited personnel

practice [including discrimination] which also falls under the coverage of the negotiated

grievance procedure may raise the matter under a statutory procedure or the negotiated

procedure, but not both."

　　　Here, Plaintiff filed a grievance under the CBA through her union representative,

grieving her five-day suspension on September 14, 2004.  By electing to use the union

grievance process to assert this claim, Plaintiff made an irrevocable election of the

grievance remedy and is now barred from bringing a discriminatory suspension claim in

this action.  *See Guerra v. Cuomo*, 176 F. 3d 547 (D.C. Cir. 1999).  *Wright v. Snow*, No.

03-1642, 2006 WL 1663490 (D.D.C. June 14, 2006) (The filing of a union grievance

constitutes an "irrevocable election of remedies" barring an employee from raising the

same claims in any other forum.); *Jeffers v. Chao*, No. Civ. A. 03-1762, 2006 WL 13241

(D.D.C. Jan. 3, 2006); *Rosell v. Wood*, 357 F. Supp. 2d 123 (D.D.C. 2004).  Therefore,

Plaintiff is barred from pursuing her discriminatory suspension claims in this action and

those claims must be dismissed by the Court for lack of subject matter jurisdiction.  As

noted above, she also did not seek EEO counseling on a timely basis of her five-day

suspension.

### C.  Plaintiff has Failed to Establish a Case of Discrimination Based on Race, Sex, Religion, Age or Retaliation.

### There were Legitimate, Non-Discriminatory Reasons for the FDIC's Actions that were Not Pretext.

---

[13] *See* Article 47, Section 1(D) of the CBA attached as Exhibit 9.

As set forth in *Holocomb*, once the defendants have set forth reasons for their "discriminatory" conduct, the burden falls on the plaintiff to provide evidence to the contrary. *Holcomb*, 433 F.3d at 896.[14]   With regard to EEO 39, both the Johnson investigation as well as the Hopkins investigation was conducted in compliance with standard FDIC workplace violence procedures.   Ex. 16 at 2.   Plaintiff's second line supervisor James Lantelme followed normal FDIC procedure when Ms. Johnson contacted him saying the Plaintiff threatened her.   *Id.*   The Management Response Team was contacted and initiated an investigation into the Plaintiff's behavior.   Compl., Document 1-3, pp. 34-37.   The investigation was not pursued because of Plaintiff's race, color, gender or any other factors, such as age, religion or reprisal. *Id.* at p. 36. The investigation was prompted by FDIC procedures.   The five-day suspension was put forth because of the Plaintiff's interference with an FDIC theft investigation (which prompted her conversation with Ms. Johnson), not for any other reason. Ex. 16. at p. 3.   All actions proposed and executed by Mr. Lantelme were in compliance with FDIC procedure, Plaintiff has been unable to proffer evidence of discrimination for the alleged conduct with regard to *either* EEO complaint, 39 or 56, and as such, her claims should be dismissed.

To the extent that Plaintiff suggests that she was sexually harassed and assaulted by Messrs. Lantelme and Hanas in EEO 39, they both deny these allegations.   Ex. 21 & 22.   Moreover, Plaintiff has not established that there is any basis in fact for these

---

[14] This Court has recently noted that if employers are asserting a valid, non-discriminatory reason for their actions, it is not necessary to determine whether the plaintiffs established a *prima facie* case.   *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).   However, to the extent that this Court wants to look toward the reasons buttressing the FDIC's conduct, the following reasons are set forth.

allegations.  At most, the facts show that Plaintiff entered their offices and raised issues

concerning her leave and the Johnson Investigation and would not leave. Ex. 21 at pp. 1-

3; Ex. 22 at pp.  1-2   Therefore, both supervisors had cause to be concerned about her

conduct.

   With respect to EEO 56, Plaintiff's supervisor, Stephen Hanas, asserted that

Plaintiff's leave has been continually excessive and unscheduled since she was placed

under his supervision.  Ex, 10 at pp. 5-6; Ex. 6 at p. 5.  From 2002 – 2004, Plaintiff was

tardy or used leave roughly sixty percent of her usual time.  *Id*.  Hanas' denial of

Plaintiff's request for advanced sick leave, FMLA and telework was based on her

"accruement" of 164 negative sick leave hours and 193 annual leave hours. *Id*. at 5-6*.

Plaintiff also continually failed to justify her excessive leave.  *Id*. at 6.  Initially, Hanas

did not charge Plaintiff with AWOL for her excessive leave and refusal to comply with

FDIC policies.  *Id*.   When Hanas sought to counsel the Plaintiff on these issues and

explain why her leave requests were denied, she became angry, rude and confrontational.

*Id*.  Plaintiff's leave was converted to annual leave because of her refusal to submit leave

statements accounting for her continual late arrivals and early departure or to comply

with the Agency's procedures for requesting leave.  *Id*.  Hanas eventually was forced to

place Plaintiff on AWOL when she continued to abuse the policies, not as a result of

Plaintiff's former EEO activity. Ex. 17 at 4-5.  Hanas' response towards Plaintiff's

actions was in compliance with normal procedure at the FDIC for employees with

continual attendance problems. *Id*.

   Likewise, Plaintiff's second line supervisor James Lantelme's denial of Plaintiff's

advanced sick leave was based on the negative hours of sick leave and accrued annual

leave relied on by Hanas.  *Id.*  The leave audit Plaintiff complains of was instituted not as

a reprisal or discriminatory reaction, but rather to reconcile the administrative time and

attendance system because Plaintiff refused to comply with the Agency's time and

attendance procedures and cooperate with Lantelme's and Hanas' requests.  *Id.* at 6-7.

In order to avoid summary judgment based on the aforesaid legitimate

nondiscriminatory reasons, Plaintiff must rebut these reasons with sufficient evidence for

a reasonable jury to find that the employer's asserted non-discriminatory reason was not

the actual reason and that the employer intentionally discriminated against her on the

basis of her race, sex and religion.  *See Short v. Chertoff,* 2008 WL 2174856 *6 (*citing*

*Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C.Cir. 2002) (*quoting Aka*

*v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (*en banc*)).

Defendant submits that Plaintiff is unable to do so in light of the total circumstances of

the case. *See Id.*

C.   Plaintiff Cannot Establish a Claim of Hostile Work Environment.

Plaintiff's hostile work environment claim focuses on her allegation that her

supervisor Steven Hanas' activities, namely not supplying her with additional team

members, speaking to her in an angry tone, and denying her a desk printer created a

hostile work environment.  Ex. 6 at 4.  In this case, there is no evidence that there was

any  "hostile" conduct toward Plaintiff.  Plaintiff's  "evidence" of hostile work

environment is: the various incidents outlined in her EEO 56 complaint, that Hanas

abused her by exhibiting a negative attitude, that he denied her work-related requests, and

that Plaintiff was ordered to request assistance through her supervisor, Hanas.

Nothing offered by Plaintiff shows that her race, gender, age, or any other protected category was the reason for the various investigations complained of and her treatment by the Agency.  Indeed, Mr. Hanas made it clear that his actions were generated strictly by FDIC policies relating to leave abuses and the Plaintiff's refusal to submit proper documentation when requested.  Ex. 17 at 4. Furthermore, nothing that Plaintiff has alleged is the type of *harassment* required by the law, i.e., conduct that permeates the workplace with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

To the extent that Plaintiff claims that her second line supervisor, Mr. Lantelme also created a hostile work environment by subjecting her to the Johnson Investigation and denying her leave requests and requesting a leave audit, Mr. Lantelme did not subject Plaintiff to an unwarranted investigation.  He appropriately followed FDIC policies by requesting that the Agency's Management Response Team investigate Ms. Gibson-Michaels' allegedly threatening behavior toward another employee.  Moreover, he supported Mr. Hanas' decisions with regard to Plaintiff's apparent leave abuses.  Ex. 16 at 3.  This conduct does not evidence that Mr. Lantelme was purposely creating a hostile work environment in retaliation because of Plaintiff's EEO activity or her race, age, religion or any other unlawful reason.

The bar for an actionable hostile work environment claim under Title VII is high; a plaintiff can succeed by showing that "the workplace is permeated with " "discriminatory intimidation, ridicule, and insult" . . . that is "sufficiently severe or

36

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Vank v. Venson*, 477 U.S. 57, 67 (1986). Under this standard the Plaintiff must prove both an objectively hostile or abusive environment through a reasonable person standard and a subjective perception that the environment is abusive. *Id*. The conduct on which the claim is based must also be more than "merely" offensive. *Harris v. Forklift Sytems, Inc.*, 510 U.S. 17, 21 (1993). The Plaintiff has not shown, through her allegations, the level of harassment and permeation required by law and has therefore not carried her burden of establishing a hostile work environment.

Finally, once a plaintiff has established a *prima facie* case for a hostile work environment, the employer is able to set forth legitimate reasons for its actions. Here, Mr. Hanas has asserted that his actions were in compliance with FDIC policies, in response to the Plaintiff's continual refusal to comply with paperwork submission requests and Plaintiff's continual absences from work. Ex. 17 at 3-5. After an employer offers legitimate non-discriminatory reasons to justify its actions, "the *McDonnell Douglas* framework falls away and [the court] must determine whether a reasonable jury . . . 'could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; (3) any further evidence of discrimination that may be available to the plaintiff.' " *Greer v. Paulson*, 505 F.3d 1306, 1318 (D.C. 2007) (*quoting Vickers v. Powell*, 493 F.3d 186, 195 (D.C. Cir 2007) (internal citations omitted)). The Plaintiff must therefore proffer evidence that raises a genuine issue with the employer's reasoning for his action in order to go forward, something the Plaintiff has failed to do here. *See Id*.

### D. **Plaintiff has Failed to Establish a Retaliation Claim in this Case.**

A review of the timely claims before the Court shows that none of them set forth a *prima facie* case of retaliation because none of them are adverse personnel actions:

The claims in EEO 040039 are the events of Johnson internal investigation in April 2004 (but not Plaintiff's five-day suspension or eventual termination), and the two alleged sexually harassing events by Plaintiff's first and second level supervisors by Messrs Hanas and Lantelme in October 2004.

Plaintiff's prior EEO activity occurred in the summer of 1997 and 1998 (These claims were later settled in June of 2003) [Ex. 1 at p. 1] and, therefore, it cannot be temporally connected to the events in April and October of 2004. *See Sullivan-Obst v. Powell*, 300 F.Supp.2d 85, 92-93 (D.D.C.2004) (lapses of over three months and over fifteen months were insufficient to support an inference of causation); *MECO Corp. v. Nat'l Labor Relations Bd.*, 986 F.2d 1434, 1437 (D.C.Cir.1993) (citing various cases noting that gaps of four-to-eight months were insufficient to support an inference of causation in a similar setting); *Devera v. Adams*, 874 F.Supp. 17, 21 (D.D.C.1999) (holding that "an eight month interval between the two events is not strongly suggestive of a causal link"), *aff'd*,1997 WL 404898.

Moreover, as both Messrs. Hanas and Lantelme testified, they were unaware of any previous EEO activity at that point in time.  Ex. 16, p. 1; Ex. 21, p. 4.  Therefore, they could not retaliate against plaintiff as she claims.   Moreover, Mr. Hanas is alleged to have told Plaintiff to "get the hell out of my office." Even if he did, which he denies [Ex. 21, p. 3], this comment is simply not enough to be considered an adverse personnel action.

38

The only timely claims left are in EEO 040056 and involve allegations of harassing activity by Mr. Hanas in connection with Plaintiff's leave issues, including AWOL. *See* Ex. 17, p. 3. Here, Plaintiff complains about two memoranda that question her compliance with time and attendance policies and various requirements imposed on her for reporting her leave. As explained by Mr. Hanas, Plaintiff was continually requesting excessive and unscheduled leave, without following proper procedures. Ex. 17, p. 3; *see also* Ex. 6 at 5. Plaintiff was tardy or used leave roughly sixty percent of her usual time between 2002 and 2004. *Id.* Mr. Hanas denied her request for advanced sick leave because of her apparent abuse of sick leave, reflected in the fact that she had 164 negative sick leave hours and 193 accrued annual leave hours. *Id.* at 5-6. Plaintiff also continually failed to justify her excessive leave requests. *Id.* at 6. Eventually, Mr. Hanas was forced to place Plaintiff on AWOL when she continued to abuse the policies. Ex. 17 at 4-5. Mr. Hanas' response to Plaintiff's action was not in retaliation for prior EEO activity but in compliance with normal procedure at the FDIC for employees with persistent attendance problems. *Id.* Accordingly, there were legitimate nondiscriminatory reasons for the actions that Mr. Hanas took in connection with Plaintiff's leave issues that were not in retaliation for protected activity.

  E. <u>Plaintiff's Emotional Distress Claims Must be Dismissed</u>.

  To the extent that Plaintiff's complaint can be read as seeking relief for negligent or intentional infliction of emotional distress the Court lacks jurisdiction over her claims.[15]

---

[15] *See* Compl., pp. 4, 38-40. In addition to the reasons set forth above, there is no evidence in the record that Plaintiff has filed an administrative charge, as is required to pursue an action under the Federal Torts Claims Act. *See* 28 U.S.C. §§ 1346(b), 2675(a).

Title VII, and the ADEA, provide the exclusive, pre-emptive remedies for Plaintiff's claims of employment discrimination. *See, e.g., Brown v. Gen. Services Admin.*, 425 U.S. 820, 829-32, 835, 96 S. Ct 1961, 48 L. Ed. 2d 402 (1976) (Title VII preempts the application of other laws to employment discrimination claims filed by federal employees); *Rattner v. Bennett*, 701 F. Supp. 7 (D.D.C. 1988) (The ADEA and the Rehabilitation Act provided the exclusive remedies for former federal employee pursuing age and disability discrimination claims requiring dismissal of claims for violation of the Fifth Amendment and intentional infliction of emotional distress). Because Plaintiff's emotional distress claims arise from her claims of employment discrimination they must be dismissed.

### III. CONCLUSION

For the reasons set forth herein, the Defendant Bair respectfully requests this Court to dismiss this civil action or enter summary judgment in Defendant's behalf. A proposed order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

TINA A. LAMOREAUX, Counsel
FEDERAL DEPOSIT INSURANCE CORPORATION
LEGAL DIVISION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
YOLANDA GIBSON-MICHAELS,               )
                                                              )
                Plaintiff,                                )
                                                              )
        v.                                                 )          C.A. No: 1:06CV01940  RMU
                                                              )
SHEILA C. BAIR, et al.                         )
                                                              )
                Defendants.                           )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. Plaintiff is a 48-year-old, African American female. Compl.¶ 4.

2. Plaintiff's civil action involves three EEO claims, hereinafter referred to as FDICEO 39 (EEO 39), FDICEO 56 (EEO 39) and FDICEO 43 (EEO 43). Exhibits ("Exs.") 1-7, hereto.

3. In EEO 39, Plaintiff raises claims of discrimination based on race, sex, age, reprisal, religion and hostile work environment grounded on five alleged incidents occurring between September 2002 and October 20, 2004.  Ex. 1 at pp. 3-7 & Ex. 4; Ex. 3.

4. Her prior EEO activity occurred in 1997 and 1998 (settled 6/17/03).  Ex. 1 at p. 1.

### Complaint FDICEO-040039

### Johnson Investigation

5. Plaintiff alleges that in April 2004 she was the subject of an investigation initiated by Mr. Lantelme after a student intern and co-worker, Jeneika Johnson, reported that she felt threatened by statements made by the Plaintiff.  *Id.*

6. Plaintiff was suspended for 5 days, for cause on August 23-27, 2004. Ex. 5.

7. The suspension claim was not pursued within 45 days of its occurrence. *See* Ex. 4 and Ex. 7.

<u>Hanas Incident</u>

8. On October 20, 2004, Plaintiff's first level supervisor, Stephen M. Hanas, Senior Counsel, allegedly sexually harassed and verbally assaulted Plaintiff by telling her to "get the hell out of my office." Ex. 4 at p. 2.

9. This claim was pursued within forty-five days of the incident, accordingly, it is timely. *Id.*

<u>Lantelme Incident</u>

10. On October 20, 2004, Mr. Lantelme allegedly sexually harassed and physically assaulted Plaintiff by grabbing her arm. *Id.* at p. 3.

11. There was no actionable verbal or physical abuse by either Mr. Lantelme or Mr. Hanas on October 20, 2004. Ex. 21, pp. 1-3; Ex. 22, p. 2.

<u>Suspension</u>

12. On September 14, 2004, pursuant to the FDIC's Collective Bargaining Agreement ("CBA") with the National Treasury Employees Union ("NTEU"), Plaintiff elected to file a grievance regarding the five-day suspension and the recording of her conversation with Ms. Johnson *instead of* a Title VII claim. Ex. 8 and Ex. 9; *see also* Compl. at ¶ 70.

13. The FDIC denied Plaintiff's grievance on October 22, 2004, and the NTEU did not invoke arbitration. Ex. 8 at p. 3. Plaintiff did not seek counseling for the five-day suspension. *See* Ex. 4 and Ex. 7.

2

**Complaint FDICEO-040056**

14.  On September 23, 2004, Plaintiff sought EEO counseling on a second set of claims. Ex. 7, (Acceptance of Formal Discrimination Complaint, dated 11/19/04), p. 1. She raised claims of sexual harassment, reprisal and FMLA violations which were directed toward her supervisor Stephen Hanas. *Id.* at p. 2.  The following are some of the discriminatory and retaliatory events that Plaintiff discussed with her EEO counselor before her final interview on 10/19/04:

> (1) On October 18, 2004, September 17, 2004, and August 20, 2004, Plaintiff was denied advanced sick leave;

> (2) On September 22, 2004, Plaintiff was notified that her requests for advance sick leave would not be approved as long as she had use/lose annual leave balance;

> (3) On September 1, 2004 and September 22, 2004, Plaintiff's telework requests were denied.

> (4) On August 30, 2004, Plaintiff's flex work schedule was closely scrutinized when her supervisor ordered Plaintiff to provide updated leave statements for certain dates.

> (5) On August 20, 2004, Plaintiff learned that based on an impromptu 3-year audit her annual leave was charged for approved sick leave she had used in 2002, 2003, and 2004
> . . . .

Ex. 6, p. 3.

15.  Although not mentioned in the counselor's report [Ex. 6], Plaintiff claims that two memos (dated November 1, 2004) further evidenced discrimination and reprisal in her Formal Complaint, dated November 3, 2004. Ex. 10.  The two memos are attached to Plaintiff's EEO complaint in EEO 56.  *Id.*, pp. 5-8.  The first memo outlined performance expectations and time and attendance issues involving Ms. Gibson-

3

Michaels. *Id.* at pp. 5-6. Mr. Hanas referenced Plaintiff's lack of compliance with FDIC time and attendance rules. He noted that although Plaintiff's hours were from 8 am to 4:45 pm, she routinely came in late and rarely called to indicate that she would not be on time. Ex. 10 at p. 5. She also failed to submit written leave requests when she returned from leave. *Id.* Mr. Hanas also instructed her that if she were late, that she call him directly. *Id.* He cautioned her that if she failed to follow FDIC policies, she would be placed on absence without leave ("AWOL"). *Id.* at p. 6; *see also* Ex. 17; ¶12. Mr. Hanas eventually had to charge her with AWOL. *Id.* at ¶15 & ¶ 20.

16. The second memo outlined workplace behavior issues involving Plaintiff. Ex. 10, pp. 7-8. Mr. Hanas referenced numerous incidents of disruptive behavior which had a detrimental impact on FDIC staff. For instance, when attending a meeting with her EEO counselor, she "walked through that office suite, disrupted staff who were working there, and told a number of Administrative Unit employees to 'tell the truth.'" *Id.* at p. 7. Mr. Hanas suggested that she participate in the WorkLife Program at FDIC. *Id.* at p. 8. Mr. Lantelme also noted that Plaintiff did not comply with FDIC leave policies and was appropriately placed on AWOL. Ex. 23, pp. 2-3.

17. On January 14, 2005, the Plaintiff, the FDIC and the NTEU signed a Settlement Agreement resolving, *inter alia*, EEO 39 and 56. Ex. 11.

18. Plaintiff rescinded her agreement after being given a period to do so and in June 2005, she filed a individual right of action ("IRA") with the MSPB and alleged that she was constructively discharged in connection with the rescinded settlement agreement, which the agency disputed. Compl. at p. 28 (¶105).

4

19.  Thereafter, the MSPB issued a decision finding that the FDIC had constructively removed Gibson-Michaels and ordered the agency to cancel her resignation and reinstate her to the position of Grade 11 Information Specialist with appropriate back pay, interest on back pay, and benefits.  Compl. at p. 4 (II.).

20.  On December 19, 2005, Plaintiff reported to work and the FDIC issued her a letter of proposed removal based on her failure to follow her supervisor's instructions, disrespectful and/or inappropriate conduct, and actions designed to intimidate her supervisors and coworkers, making it difficult or impossible to supervise her or work with her on a daily basis.  Compl. at p. 29; *see also* Ex. 25.  By letter dated March 27, 2006, the deciding official, Acting Deputy General Counsel, Henry R. F. Griffin, informed Plaintiff that after a full review of the record, that her disrespectful and inappropriate conduct and failure to follow instructions were supported by the facts and that removal was the appropriate penalty.  Ex. 25.

21.  Plaintiff was removed from her position with the FDIC effective March 31, 2006.  *Id.* at p. 4b-5; *see also* Compl. at p. 30.

22.  On April 4, 2006, Gibson-Michaels moved to withdraw her request for a hearing in EEO 39 and 56 and stated that she wanted to file in federal district court. *See* Notice of Intention to File Suit, dated April 4, 2006.  Compl, Document 1-3, p. 1. Plaintiff's request was granted by order dated April 5, 2006, thereby withdrawing her case from the EEOC's administrative hearing process.  *Id.* at 2-3.

23.  Plaintiff did not seek EEO counseling or file an EEO complaint regarding her removal.  She chose, instead, to appeal her termination to the MSPB on April 28, 2006.

5

*See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC - 0752-06-0515-I-1. Case File Index (Volume, 1, Tab 1). Ex. 27.

24. Plaintiff's removal appeal challenged the Agency's charges and the removal penalty and alleged that her removal was discriminatory based on her age and race. She further alleged that she was the victim of sexual harassment, that she was subjected to a hostile work environment, and that the FDIC's action was effected in retaliation for her prior EEO activities and violated her rights under the FMLA. She also sought consequential damages as prevailing party in the earlier reinstatement appeal, asserting eligibility for damages where the Board orders corrective action in a whistle blower complaint. *See Id.*

25. In a July 12, 2006, order, the MSPB AJ denied Plaintiff's motion for damages in connection with the reinstatement proceeding and found plaintiff was not eligible for consequential damages because, in the reinstatement decision, the FDIC took no action in reprisal for alleged whistle blowing activity. *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC-0752-06-0515-I-1 (Final Order, October 26, 2006), *appeal dismissed per motion to withdraw petitions for review*, No. 07-3107 (Fed. Cir. June 4, 2007). Ex. 15 and Ex. 28.

26. After Plaintiff filed a request to withdraw the appeal of her removal from the MSPB, then reinstated it, then withdrew it again, the Administrative Judge dismissed her removal appeal finding that the withdrawal removed the appeal from the Board's jurisdiction. Thus, she failed to exhaust her remedies before the MSPB. Ex. 29 (*See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC-0752-06-0515-I-1).

6

27.   On August 4, 2006, Plaintiff filed a petition for review with the Board, but only of the AJ's [July 12, 2006] order denying her request for damages in the reinstatement appeal; she did not appeal the voluntary dismissal of her removal appeal. Ex. 19, pp. 1-11.

28.   The MSPB denied her petition for review on October 26, 2006, and Plaintiff filed an appeal of her damage claim with the Federal Circuit Court of Appeals.  Plaintiff filed a motion to withdraw her appeals and dismiss for lack of jurisdiction on May 25, 2007.  The Federal Circuit granted the motion to withdraw her petitions for review on June 4, 2007.  A copy of the corrected order granting the motion to withdraw the appeals is attached as Ex. 15.  *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket No. DC-0752-06-0515-I-1 (Final Order, October 26, 2006), *appeal dismissed per motion to withdraw petitions for review*, No. 07-3107 (Fed. Cir. June 4, 2007). *See* also Ex. 26.

29.   Plaintiff filed two enforcement actions regarding her reinstatement and the calculation of her back pay. Gibson-Michaels claimed the FDIC did not pay her the correct amount of back pay because the buyout payment was deducted from her back pay award. The MSPB found in the FDIC's favor in both cases.  Plaintiff appealed these rulings to the U.S. Court of Appeals for the Federal Circuit.  *See Gibson-Michaels v. Fed. Deposit Ins. Corp.*, MSPB Docket Nos. DC-0752-05-0633-C-1 (Final Order, October 26, 2006); DC-0752-05-0633-C-2 (Final Order, October 26, 2006); *appeals dismissed per motion to withdraw petitions for review*, Nos. 07-3080; 07-3081 (Fed. Cir. June 4, 2007). In neither of these enforcement appeals did Plaintiff pursue her discrimination claims. *See* Ex. 26.

**Complaint FDICEO-060043**

30. On September 17, 2006, a year after her "involuntary" resignation, Plaintiff

filed a third EEO complaint FDICEO – 060043 (hereinafter "EEO 43"). Ex. 13.

31. Based on Gibson-Michaels' formal complaint, the EEO Counselor's Report

and narratives submitted by Gibson-Michaels to the EEO counselor the following

allegations were identified by the Office of Diversity and Economic Opportunity

(ODEO) in EEO 43:

> Whether Gibson-Michaels was discriminated against on the bases of race, color, sex,
> religion, age, disability, reprisal (prior EEO and whistleblower activities), and
> parental status with respect to eighteen claims. They are: (1)Appointment/Hire; (2)
> Assignment/Duty; (3) Award; (4) Disciplinary Action; (5) Evaluation appraisal; (6)
> Expiration of appointment; (7) Harassment, non-sexual; (8) Harassment, sexual
> harassment; (9) Promotion; (10) Reassignment/Transfer; (11) Reinstatement; (12)
> Reprimand; (13) Retirement, involuntary; (14) Suspension; (15) Termination; (16)
> Time and Attendance; (17) Working Conditions; (18) Other FMLA, Whistleblower,
> FDIC Bank Insider Trading.

*See* Ex. 14 at 3-6 (pp. 3-4 of 12).

32. On November 16, 2006, ODEO sent to Plaintiff the Final Agency Decision

("FAD") dismissing all claims alleged in EEO 43 as untimely.   The FAD also

dismissed certain claims on various other legal grounds. Ex. 14.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

8

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

TINA A. LAMOREAUX, Counsel
FEDERAL DEPOSIT INSURANCE CORPORATION
LEGAL DIVISION

9



**Federal Deposit Insurance Corporation**
Room 801-1231, 3501 N. Fairfax Drive, Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

## EEO COUNSELOR'S REPORT
### AGENCY DOCKET NUMBER FDICEO-040039

A.    **AGGRIEVED PERSON:**

| | |
|---|---|
| **Name:** | Yolanda C. Gibson-Michaels |
| **Job Title/Series/Grade:** | Information Specialist/ Series 301/ CG-11 |
| **Office/Division:** | Legal Division |
| **Work Address:** | 550 17th Street, NW, Room H-3081, Washington, DC 20429 |
| **Work Phone No.:** | (202) 736-0204 |
| **Home Address:** | 2210 Anvil Lane, Temple Hills, MD 20748 |
| **Home Phone No.:** | (301) 630-5062 |
| **Email Address:** | N/A |

B.    **AGGRIEVED PERSON'S REPRESENTATIVE** (if applicable)  N/A  (X)

   **Attorney:** Yes ( )  No ( )
   **Name:**
   **Address:**
   **Phone:**

C.    **COMPLAINT INFORMATION**

   **Complaint is:** An Individual Complaint (X)   A Class Action ( )
   **Aggrieved Person Waived Anonymity:** Yes (X)  No ( )
   **Negotiated Union Grievance Filed:** Yes ( )  No (X)
   **For Mixed Cases - Appeal Filed (or to be Filed) with MSPB:** Yes ( )  No ( )  N/A (X)
   **Has Aggrieved Person Filed Prior Complaint(s)?** Yes (X)  No ( )
      **If so, Docket Number(s)** FDIC 97-39, filed March 28, 1997, and FDIC 98-67, filed
      May 14, 1998.  On June 17, 2003, both cases were settled.

D.    **CHRONOLOGY OF EEO COUNSELING:**

| | |
|---|---|
| **Date of Initial Contact:** | 04/30/2004 |
| **Date of Initial Interview:** | 05/04/2004 |
| **Date of Occurrence of Alleged Discriminatory Event** (current incidents): | 04/19/2004 |
| | 04/28/2004 |
| | 05/07/2004 |
| **45th Day after Event (or Knowledge of Event):** | 06/03/2004 |
| **If contact is beyond the 45th day, explain the reason for the delay:** | N/A |
| **Date Notice of Rights and Responsibilities issued:** | 05/04/2004 |
| **Date Election of Informal Processing Procedure:** | 05/04/2004 |
| **Mediation [X]   Counseling [ ]** | |

Revised 4/2002



- 2 -

**Date of Extension of Counseling:** 05/10/2004                    **90th Day:** 07/29/2004
**Date of Final Interview:**                                                          07/01/2004
**Date Notice of Right to File a Formal Complaint issued:**                           07/01/2004

**E.      BASIS(ES) FOR ALLEGED DISCRIMINATION:**

1   (X)  Race (African-American)
2   ( )  Color (specify)
3   ( )  National Origin (specify)
4   (X)  Sex (female)
5   (X)  Age (date of birth April 1, 1959)
6   ( )  Mental Disability (specify)
7   ( )  Physical Disability (specify)
8   ( )  Religion (specify)
9   (X)  Reprisal (opposed practice(s), or docket number(s) of prior complaint(s), and date(s))
         **See Section C**
10  ( )  Sexual Orientation
11  ( )  Parental Status (specify)
12  ( )  Genetic Information (specify)

**F.      ISSUE(S): (actions, decisions, policies or practices alleged to be discriminatory)**

( ) Appointment/Hire, Assignment of Duties ( ), Awards ( ), Conversion to Full Time ( ),
Disciplinary Action – Demotion ( ), Disciplinary Action – Suspension ( ), Disciplinary Action –
Removal ( ), Disciplinary Action – **Other** ( ), Duty Hours ( ), Evaluation Appraisal ( ),
Examination Test ( ), Harassment – Non-Sexual (X), Harassment – Sexual ( ), Medical
Examination ( ), Pay Including Overtime ( ), Promotion ( ), Non-Selection ( ), Reassignment –
Denied ( ), Reassignment – Directed ( ), Reasonable Accommodation ( ), Reinstatement ( ),
Retirement ( ), Termination ( ), Terms/Conditions of Employment ( ), Time and Attendance ( ),
Training ( ), Other (X):  Under threat of disciplinary action, AP subjected to an investigative
interview regarding her conduct.

**G.      REMEDY REQUESTED:**

1.   Expunge the two allegedly illegal investigative interviews conducted on October 2003 and
     April 21, 2004 by Douglas Fahey (Contractor) and expunge all other records,
     memorandums and statements from personnel files relating to these investigations;
2.   Remove Douglas Fahey as an FDIC Securiguard contact;
3.   Rewrite policy and guidelines for management response team in handling work-related
     incidents;
4.   Appoint oversight board (Ombudsman) office or ODEO to oversee matters before
     employees are subjected to illegal unwarranted investigations requested by angry

Revised 03/2004

- 3 -

employees, biased managers, contractors and the use of these investigations as a personal method to retaliate against employees;

5. Refrain from sending or referring employees to security who reportedly "feel threaten" when the threat is not a "direct threat" of bodily harm;

6. Remove (discharge) Intern employee who admitted to "lying" on tape; and

7. Award compensatory damages (for humiliation, emotional pain, mental anguish, loss of enjoyment of life, embarrassment at work, overhearing gossip of co-workers, defamation of character, willful libel, violation of civil rights, and aggravation of pre-existing medical condition) and punitive damages in the amount of $10,000,000.[1]

## H.    SUMMARY OF COUNSELOR'S INQUIRY:

### (1)  Aggrieved Person:

#### a.  Harassment[2]

Yolanda C. Gibson-Michaels, the Aggrieved Person ("AP") alleges discrimination based on race (African-American), sex (female), age (date of birth April 1, 1959) and reprisal (prior EEO activity) when she suffered harassment that created a hostile work environment based on the following incidents:

#### Incident 1

AP states that on April 19, 2004, she was informed, via electronic message from Doug Fahey ("Fahey"), Contract Investigator, Division of Administration, and on April 21, 2004, by memorandum from James T. Lantelme ("Lantelme"), Assistant General Counsel, Legal Division, that Fahey needed to interview AP regarding AP's allegedly intimidating and threatening conduct towards a subordinate, Jenekia Johnson ("Johnson"), Student Intern, Legal Division.

According to AP, Johnson told AP about a theft of $120 from her work station and her belief that co-worker Kristian Beard ("Beard"), Writer Intern, Legal Division, took the money. Similarly,

---

[1] AP was informed that punitive damages are not available to federal employees and that the cap on compensatory damages is $300,000.

[2] AP states that on April 15, 2004, Jenekia Johnson ("Johnson") engaged AP in a conversation while wired with a tape recorder, which was allegedly approved by James Lantelme, Assistant General Counsel, Legal Division and Douglas Fahey, Contract Investigator, Division of Administration. AP believes this action was an attempt to entrap her because of Johnson's allegation of feeling threatened by AP. AP states that she filed a grievance with the National Treasury Employee Union, on June 3, 2004, regarding the alleged use of a concealed tape recorder.

- 4 -

Beard had informed AP of a $300 theft from her work station, and her suspicion that Johnson was the thief. AP states that on April 14 and 15, 2004, she met with both Johnson and Beard in an effort to advise them how to resolve the conflict. During these meetings, AP explains that she referred to Biblical parables and proverbs in an effort to emphasize the need to be truthful and honest.

Following AP's meetings with Johnson and Beard, AP states that Johnson met with investigator Fahey regarding the theft. During Johnson's interview with Fahey, she also discussed her meeting with AP, and AP's references to Biblical parables and proverbs. Fahey asked Johnson how she felt when AP was speaking, and Johnson told Fahey that she felt threaten. As a result, Lantelme ordered an investigation of AP's conduct.

AP states that she provided statements to Fahey regarding the conversation she had with both Johnson and Beard. In addition, AP informed Fahey that Johnson might have felt threaten because AP told Johnson that she was aware that Johnson had taken 4 or 5 days of unreported leave. AP further states that on April 21, 2004, Johnson informed Fahey she no longer felt threaten because AP reassured her that everything would be okay if she simply told the truth regarding her leave and the incident between Beard and herself. Nevertheless, Fahey continued the investigation of AP's conduct.

AP believes that both Lantelme and Fahey ignored AP's explanation of what had occurred; she also notes that Johnson never requested an investigation of AP's conduct. AP further believes that Lantelme and Fahey decided to go forward with the investigation because of AP's race (African-American), sex (female), age (over 40 years of age) and prior EEO activity.

## Incident 2

AP states that on April 28, 2004, she was forced to attend an investigative meeting with Fahey and was detained for more than five (5) hours against her will.

AP states that during this investigative meeting she was forced to answer open-ended questions and threaten with disciplinary actions by Lantelme, if she did not participate. AP states that during the investigative meeting she requested an attorney twice, which she was denied. AP explains that when she was denied an attorney, her NTEU

- 5 -

National Representative interrupted Fahey and stated that, "It's her right to request an attorney under the 5th Amendment." AP states that then Fahey contacted Lantelme, who in turn contacted James Lawrence ("Lawrence"), Senior Counsel, Legal Division. According to AP, the NTEU Representative asked Lantelme and Lawrence to guarantee that the investigation would not lead to any type of criminal charges against AP, but they refused to provide such a guarantee; yet, AP was not afforded the right to take the 5th when answering investigative questions.

AP states that because of this investigation, co-workers talk about her as if she is a threat or threatening person; she is shunned, blackballed, and given the cold shoulder by co-workers; she is called a trouble maker; and she feels humiliated and embarrassed. AP believes that this investigation constitutes a false arrest and defamation of character. AP further believes that this investigation of her was conducted because of AP's race (African-American, sex (female), age (over 40 years of age) and prior EEO activity.

## Incident 3

AP states that she was subjected to a prior investigation on August 12, 2003, when Terry Hopkins ("Hopkins") (Caucasian) informed Lantelme of an incident where she felt threatened by AP because AP's eyes were stretched wide open and she had a blank look.

According to AP, on August 12, 2003, she submitted to Hopkins an approved leave slip, dated July 30, 2003, which was signed by AP's immediate supervisor, Carl A. Polvinale, Senior Counsel, Legal Division; Hopkins, however, questioned whether AP's immediate supervisor had actually signed the leave slip. AP indicates that she answered Hopkins by stating, "Don't ask me any more stupid questions," and Hopkins replied that she had the right to question time submitted. AP recalls that she then reminded Hopkins about Hopkins' illegal use of government time when Hopkins adopted a pet bird and had a three hour Bird Baby Shower during official time. As a consequence of AP's exchange with Hopkins, AP claims that Lantelme referred AP to Fahey for a "Weingarten" investigation.

AP states that when she told Lantelme that Hopkins had a history of yelling, screaming, and acting mercurial towards other employees, Lantelme ignored AP's comments. AP believes that Lantelme elected not to investigate Hopkins because she is a Caucasian

female, but did elect to investigate AP because she is an African-American and had engaged in prior protected EEO activity.

### Incident 4

AP states that despite the threatening behavior by Frank Nigro ("Nigro") (Caucasian male), directed toward AP and others, no action was taken against Nigro.

AP states that Frank Nigro ("Nigro") (Caucasian male) had been disruptive in the legal services unit, Legal Division, for a period of eight (8) or more. His conduct included unpredictable explosive episodes; threats to his former supervisor, Alva Vaden; threats to co-workers within the Legal Division; and threatening behavior in the presence of AP and co-workers. AP states that Alva Vaden ("Vaden") (African-American), the former manager, informed AP about an incident she had with Nigro when he jumped on her desk, yelled, screamed, and began to hit each African-American picture that she had displayed on her office wall. Because of Nigro threatening behavior, AP states that in September 2002, she provided a statement concerning his behavior to the Supervisory Administrative Officer, Penny G. Elgas ("Elgas") and manager of the "Management Response Team." AP states that Elgas told her that he had spoken to William Kementz, Chief, Security, FDIC, regarding Nigro, and Kememtz stated that Nigro was not a threat. AP states that a year later Elgas told Vaden, who informed AP, "I should have done something regarding Nigro; because had he harmed Yolanda (AP), I could have been held liable." AP believes the situation with Nigro is another illustration of how Caucasians, especially Caucasian males, are treated more leniently than African-Americans females.

### Incident 5 – Denial of Assistance in Moving, Packing and Unpacking Files

AP further claims that on numerous occasions (last request date May 7, 2004, via electronic message) Lantelme denied AP assistance in lifting, moving, packing and unpacking over 3,000 files.

AP explains that since the beginning of the Legal Services Unit file project, in January 2004, she has had to push heavy carts and get on her hands and knees to stack, unpack, and move over 3,000 files, without the assistance of interns or others. AP believes that Lantelme would never have subjected Caucasian female co-workers to this form of treatment. AP states

- 7 -

that, in the past, Lantelme has expeditiously approved and requested movers, interns, or the records management group to facilitate any type of lifting, moving, or segregation of files and packing of files to assist Caucasian female employees in his group.

**(2) Involved Manager(s) Response**: Mediation elected-N/A.

**James L. Lantelme, Assistant General Counsel, Legal Division, 550 17th Street, NW, Room H-3123, Washington, DC 20429-0002. Telephone number (202) 736-0204.**

**Douglas Fahey, Contract Investigator (Securiguard Company), Federal Deposit Insurance Corporation, 550 17th Street, Room F-1C-27C, Washington, DC 20429-0002. Telephone number (202) 898-3584.**

**(3) Documents Reviewed (if any):**

**I. SUMMARY OF INFORMAL RESOLUTION ATTEMPT:**

Settlement:    Yes ( )   Date: (insert date)    No (X)

Through: Counseling_____ , Mediation ___X___

Withdrawal:   Yes ( )   Date: (insert date)    No (X)

_____
William E. Howard

(202) 416-2594
Telephone Number

ODEO, Room 801-1240, 801 17th Street, NW, Washington, DC 20434
Work Address

_____
EEO Counselor's Signature

07/01/2004
Date

Revised 03/2004

Federal Deposit Insurance Corporation
## FORMAL COMPLAINT OF DISCRIMINATION
### Agency Docket Number FDICEO-040039

 RECEIVED

**Note:** This form is to be used if you believe you have been discriminated against because of race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information. Read carefully the instructions of page 3 of this form prior to completion.

| Name of Complainant *(Last, First, MI)* | Position *(Job Title/ Pay Plan/ Series/ Grade)* | Individual ☒ Class ☐ *(Check type of complaint)* |
|---|---|---|
| Gibson-Michaels, Yolanda C. | Information Specialist, CG-11 | |

| Home Address *(Number Street, City, State, Zip Code)* | Home Phone *(Area Code-Number)*: 301-630-5062 |
|---|---|
| 2210 Anvil Lane Temple Hills, Maryland 20748 | Work Phone *(Area Code-Number)*: 202-736-0204 |
| | Fax Number *(Area Code-Number)*: 202-736-0420 |
| | E-mail Address: ygmichaels@fdic.gov |

| Organization Location/ Work Address *(Division/ Office & Number Street, Room No., City, State, Zip Code)* | Name & Address of Office you believe discriminated against you *(Division/ Office & Number Street, Room No., City, State, Zip Code)* |
|---|---|
| Federal Deposit Insurance Corporation (FDIC) 1717 H Street, N.W. Room H-3081 Washington, D.C. 20429 | James L. Lantelme, Assistant Director (FDIC) 1717 H Street, NW. H-3123(202)736-0120 Washington, D.C. 20429 (see Attached for others) |

| Complainant's Representative *(If applicable)* | Attorney: ☐ YES ☒ NO *(Check appropriate box if applicable)* |
|---|---|
| Representative's Name: | Name of Firm *(If applicable)*: |
| Address *(Number Street, City, State, Zip Code)* | Designation of Representative Form Completed and Attached ☐ YES ☐ NO |
| | Phone *(Area Code-Number)*: |
| | Fax Number *(Area Code-Number)*: |

**Basis(es) of Allegation(s) ("X" appropriate box(es) and specify)**

| RACE *(Specify)* Black Female ☒ COLOR *(Specify)* Afro-American ☐ NATION ORIGIN*(Specify)* ☐ Sex *(Specify)* | ☐ DISABILITY *(Specify)* ☐ RELIGION *(Specify)* ☐ SEXUAL ORIENTATION ☐ PARENTAL STATUS *(Specify)* | ☒ GENETIC INFORMATION *(Specify)* Female ☒ AGE *(Specify date of birth)* DOB: 4/1/1959 | ☒ REPRISAL *for participating in any stage of an administrative or judicial proceeding covered by the antidiscrimination complaint statutes or for opposing any practice made unlawful by such statutes (Specify the protected activity and date)*. Unfair Labor Prac |

**Claim(s) being complained of (Check appropriate box(es) and specify the date(s) the alleged discriminatory claim(s) occurred.)**

| Claim(s) | Date | Claim(s) | Date | Claim(s) | Date |
|---|---|---|---|---|---|
| ☐ Appointment/Hire | | ☒ Harassment, non-sexual | | ☐ Reprimand | |
| ☒ Assignment/Duty | 7/12/04 | ☐ Harassment, sexual | | ☐ Retirement | |
| ☐ Award | | ☐ Overtime | | ☐ Suspension | |
| ☐ Demotion | | ☐ Promotion | | ☐ Termination | |
| ☐ Disciplinary Action | | ☒ Reassignment/Transfer | 7/12/04 | ☐ Time and Attendance | |
| ☐ Evaluation/Appraisal | | ☐ Reduction-In-Force | | ☐ Training | |
| ☐ Expiration of Appointment | | ☐ Reinstatement | | ☒ Working Conditions | |
| ☒ Other (Specify): Reprisal, Disparate Treatment, Age-Discrimination, Retaliation, Hate Crime, Constitutional | | | | | |

Have you raised this claim(s) in another forum *(As a grievance or with the Merit System Protection Board or U.S. District Court)?* ☐ YES ☒ NO
If Yes, specify the forum and give the date(s) filed: Conspiracy

Have all alleged discriminatory matters in this complaint been discussed with a FDIC EEO Counselor? ☒ YES ☐ NO

| Name of EEO Counselor: | Date you received the Notice of Right to File a Formal Complaint: |
|---|---|

**What corrective action are you seeking?**
(1) Jim Lantelme relinquish his position (Retire/Removed), (2) Management Response Team (MRT) Reestablish, (3) $300,000.00 damages, compensatory, punitive relief for maltreatment, pain embarassment, suffering, defamation of character, libel, violations of constitutional rights

| Complainant's Signature | Date of Complaint 7/12/04 |
|---|---|

FDIC 2710/01 (Reviewed 03/2004)    (See Page 3 for Instructions in Completing Form and Privacy Act Statement)

GOVERNMENT EXHIBIT

Federal Deposit Insurance Corporation
## FORMAL COMPLAINT OF DISCRIMATION
Agency Docket Number FDICEO-[Insert Number]

CLAIM NUMBER 1

I believe that I suffered discrimination based on [choose one or more: race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information]
_____, when on _____, [Explain what happened]
_____
_(Basis(es))_                                                                         _(Date)_

(See Attached)

[Provide names of involved management official(s) and or witnesses]

..plain why you believe the action was discriminatory, e.g. discriminatory statements, others who were treated more favorably, l/or any other reason(s)]

(See Attached)

CLAIM NUMBER 2
[Use same format as for Claim Number 1 above] Attach additional sheets, if necessary.

FDIC 2710/01 (Reviewed 03/2004)



**Federal Deposit Insurance Corporation**
Room 801-1231, 3501 N. Fairfax Drive, Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

## DESIGNATION OF REPRESENTATIVE[1]

### Agency Docket Number FDICEO-040039

I, Yolanda C. Gibson-Michaels, hereby designate the individual listed below to serve as my representative in all matters pertaining to my discrimination claim against the Federal Deposit Insurance Corporation.

Name of Representative: _____

Address: _____

_____

Telephone Number: _____

Facsimile Number: _____

E-Mail Address: _____

I understand that the authority and responsibility granted to the above person by this designation may be terminated by me at any time. If this should occur I will notify, in writing, the EEO Counselor, as indicated below:

> EEO Counselor
> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> ATTN: WILLIAM E. HOWARD, EEO COUNSELOR
> ROOM 801-1204
> 3501 N. FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500
> Facsimile Number: (202) 416-2520

Although my representative may act for me in all matters pertaining to my discrimination claims, I understand that in the event I withdraw my claim during the EEO process or reach a settlement with the Federal Deposit Insurance Corporation, I must personally sign any withdrawal notice or settlement agreement.

_____                   _____7/12/04_____
Yolanda C. Gibson-Michaels                          Date

Please sign, date and return a copy of this form via facsimile, fax number: (202) 416-2486. Mail or hand-deliver the original form to:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> ATTN: WILLIAM E. HOWARD, EEO COUNSELOR
> ROOM 801-1204
> 3501 N. FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500

---

[1] All official correspondence will be sent to representative, with copies to Aggrieved Person, unless Aggrieved Person directs the FDIC in writing to send official correspondence directly to him or her. 29 C.F.R. § 1614.605(d).

Reviewed 03/2004



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

# FORMAL DISCRIMINATION COMPLAINT[1]
## Agency Docket Number FDICEO-040039

1.     FORMAL EEO Complaint:

       I believe that I have been discriminate against based on race (African-American),
sex (female), tape recorded, deliberately subjected to intimidating 'weingarten'
investigations, reprisal (prior EEO activity, when I suffered harassment that created a
hostile work environment based on the following incidents:

**Incident 1**

       On April 19, 2004, I was informed, via electronic message from Douglas Fahey
("Fahey"), Contract Investigator, Division of Administration, and again on April 21,
2004, by memorandum from James T. Lantelme ("Lantelme"), Assistant General
Counsel, Legal Division, that Doug Fahey needed to interview me regarding an
impromptu counseling session initiated by Jenekia Johnson ("Johnson"), student intern
on April 14, 2004, and April 15, 2004, in which she ("Johnson") alleged that she felt
"threaten" by a counseling session she (Johnson) initiated. The feeling of threat was
initiated by James Lantelme, Assistant Director (See attached statement from
Lantelme).

       Ms. Johnson and Ms. Beard informed me that Ms. Johnson contacted Doug
Fahey, contracted investigator. Both employees (African-American)(Female) stated that
Doug Fahey was concerned that neither intern informed or consulted with their
managers (Jim Lanteleme, Assistant Director and Carl Polvinale, Senior Counsel)
instead of reporting the incident to me. Both interns stated to Mr. Fahey that, "Jim
Lantelme ("Caucasian") was prejudice, didn't speak to them, ignored them, and didn't
care about their existence, and that they have always felt comfortable with Yolanda
Gibson-Michaels or Carl Polvinale, Counsel regarding all work-related issues, concerns,
problems, assignments, guidance, training or personnel issues"

       I was always called upon both Ms. Johnson and Ms. Beard to serve as a liaison
on issues regarding their time, grades, metro card, school schedules, leave issues, and
personal issues which is documented throughout my outstanding performance
appraisals.

Agreement to Mediate and Extend Counseling
Agency Docket Number FDICEO-040039
Gibson-Michaels, Yolanda C.
July 12, 2004

Ms. Johnson informed me that she had contacted Doug Fahey, investigator ("Contractor") employed with Securiguard. Later, Ms. Beard ("Beard") student intern approached me with her version of the events which occurred during the week of April 6th, 2004, (**I was on official leave during the occurrence of the alleged theft**). However, James Lantelme deliberately interjected the 'feelings of threat' in order to initiate an internal investigation with Doug Fahey (Contractor).

On April 14 and 15, 2004, I was approached by Ms. Johnson and Ms. Beard regarding their situation which I have done so in the past in effort to advise them about how to best resolve a conflict. During our discussion, I interjected references to the Bible, parables, clichés, and old wife tales in effort to emphasize the need to be truthful and honest. I informed Ms. Johnson that I was aware that on 4 or 5 days that she didn't report to work or call into the office regarding her whereabouts; and needed to account for her time and informed management. I indicated to Ms. Johnson that not reporting to work is considered, "AWOL." I also informed Ms. Johnson that working for her Aunt JoAnn Williams is 'nepotism' which is illegal. JoAnn Williams is the secretary of James Lantelme, Assistant Director, Legal Services Unit.

On April 15, 2004, Ms. Johnson approached me and stated that, "I wanted to tell you that, I LIED". However, before I allowed Ms. Johnson to elaborate on her willful deceitfulness, I said don't worry, God will forgive you. On April 19th, 2004, I received an e-mail from Fahey regarding Ms. Johnson's 'feelings of threat' which was a fabrication (conspiracy) as documented within Doug Fahey's own statement (see attached) in which he (Doug Fahey and Jenekia Johnson) rehearsed and planned how to entrap me on April 15, 2004 which is 'aiding and abetting' (search and seizure) violations of my civil liberties. Furthermore, based on Doug Fahey's comment and unsolicited request to investigate me, constitutes a breach of contract, ethics, and neutrality as he is only empowered to gather facts, information, statements as it relates to the (who, what, when, were, and how) during the conduction of an investigation. Comments and assertions of one's personal opinions is bias, prejudice, and unconstitutional.

The investigation was initiated by James Lantelme (disparate treatment, harassment, racial, malicious, and deliberate violation of my civil, constitutional, and equal employment rights afforded under the constitution. Doug Fahey (white male) and Lantelme (white male) decided to go forward with the investigation because of my race (African-American), sex (female) and prior EEO activity.

July 12, 2004

Agreement to Mediate and Extend Counseling
Agency Docket Number FDICEO-040039
Gibson-Michaels, Yolanda C.
July 12, 2004

### Incident 2

On August 12, 2003, Lantelme told me that I was being investigated because Terry Hopkins ("Hopkins") (Caucasian) had informed Lantelme of an incident where she felt threatened by me because my eyes were stretched wide opened and I had a blank look after she (Terry Hopkins) had insulted my integrity.

On August 12, 2003, I gave Hopkins an approved leave slip, dated July 30, 2003, which was signed by my immediate supervisor, Carl A. Polvinale, Senior Counsel, Legal Division; Hopkins, however, questioned whether my immediate supervisor had actually signed the leave slip. In response to Hopkins, I said, "Don't ask me any stupid questions," and Hopkins replied that she had the right to question time submitted. I then reminded Hopkins that she should have question the illegal use of government time when Hopkins adopted a pet bird and had a three hour Bird Baby Shower during official time. As a consequence of my exchange with Hopkins, Lantelme referred me to Fahey for a "Weingarten" investigation.

I told Lantelme that Hopkins had a history of yelling, screaming, and acting mercurial towards other employees; Lantelme ignored my comments did not order an investigation of Hopkins' conduct because she is a Caucasian female; but, Lantelme did order an investigation of my conduct because I am an African-American and I engaged in prior protected EEO activity.

### Incident 3

Frank Nigro ("Nigro") (Caucasian male) had been disruptive in the legal services unit, Legal Division, for a period of more than 5 years. His conduct included unpredictable explosive episodes during or after staff meetings in the presence of Bill Stricker (Caucasian male); supervisor, and co-workers, direct threats to his former supervisor (decease), Alva Vaden; in which he literally jump on the top of her desk, bang on her office wall, and physically drew (balled up his fist) and forward punched framed pictures of African American art and said I 'hate these pictures, I'm tired of seeing all these black faces; threats to co-workers within the Legal Division; episodes of throwing office supplies, knocking, banging, and physically kicking office walls, computers, chairs.

Nigro verbal threaten to Anthony Boanton with direct threat of physical violence, and threatening behavior, and daily use extremely loud vulgarity daily. Threat to former African American employee Ugo Ukandu (former employee) in which the employee was threaten with violence, cursed, and told to 'Go Back to Africa' in the presence of witnesses both within the direct work area of the actual threat and outside the work area, episodes of unprovoked threats, psychotic behavior was exhibited in the presence of me, supervisors, managers, and co-workers.

Agreement to Mediate and Extend Counseling
Agency Docket Number FDICEO-040039
Gibson-Michaels, Yolanda C.
July 12, 2004

Because of Frank Nigro's unpredictable, unprovoked violent and threatening behavior, and psychotic 'blood curling' rampages of destruction of U.S. Government office equipment, doors, and furniture, in September 2002, I provided a statement concerning his evidenced, documented, and voluminous reports of his threatening behavior to the Supervisory Administrative Officer and manager of the "Management Response Team," Penny G. Elgas ("Elgas").

Ms. Elgas told me that she that she had spoken to William Kementz, Chief, Security, FDIC, regarding Frank Nigro's threats, behavior, statements from colleagues, supervisors, and the recent altercation with current FDIC employee Anthony Boanton, and the fact that I felt threaten and requested that Frank was removed from outside his work area. First, Ms. Eglas informed me that, I converse with Frank every morning at 6:30am and that Frank is a nice, guy. Secondly, I contacted William (Bill) Kemntz, Director of FDICs Security and he said that Frank is not a threat."

A year later Elgas confided to former employee (deceased) Alva Vaden via telephone between December 2003 and January 2004 that, "I should have done something regarding Frank when Yolanda said that she was threaten by his violent exhibited behavior and explosive nature; because had he harmed Yolanda; I could have been held liable." The former Alva Vaden personally informed me that Eglas made the comment during her (Eglas) interrogation of whether Ms. Vaden was utilizing her staff employees to retrieve her lunch, car from FDICs garage, and for other personal unrelated work issues.

The situation with Nigro is another illustration of how Caucasians, especially Caucasian males, are treated more leniently than African-Americans, and have never been subjected to investigations, search & seizure, violations of Miranda rights, 5th Amendment, 1st Amendment, 4th Amendment, 14th Amendment, taped, conspiracy against rights as a 24 year, outstanding Federal employee, video, taped, nor monitored for having engaged in prior protected EEO activity.

Yolanda C. Gibson-Michaels

_____
Signature

7/12/04
_____
Date

**Attachment to Agency Docket Number FDICEO-040039**

**Gibson-Michaels, Yolanda**

**Name & Address of Office you believe discriminated against you**

1) **Jim Lantelme, Assistant Director, Legal Services Unit (LSU)1717 H Street, N.W. H-3123- (202) 736-0120**
2) **Penny G. Elgas, Manager, 550 17th Street, N.W. (202) 898-6950**
3) **Doug Fahey (Contractor) Securiguard 550 17th Street, N.W., (202) 898-3584**
4) **William A. Kmetz, Assistant Director Security, 1776 F Street, N.W. (202) 898-6850**

(James Lantelme, Assistant Director, made a false statement on April 14, 2004, as he willfully asked a leading question of an intern involved in an alledge theft in which he stated: "A bit later I asked Ms. Johnson did she "feel threaten" by Yolanda, she stated that she did.) After the initiation of this statement, Jim Lantelme contacted FDICs Mgmt. Response Team (MRT) and the Securiguard contract employee (Doug Fahey). Fraud and False statements violation of Section 1001.

TITLE 18--CRIMES AND CRIMINAL PROCEDURE

PART I--CRIMES

CHAPTER 47--FRAUD AND FALSE STATEMENTS

Sec. 1001. Statements or entries generally

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(James Lantelme, Assistant Director, Legal Services Unit, Doug Fahey,Contractor, Jenekia Johnson, (Intern), et. al. agreed to interception my oral communication on April 15, 2004. Doug Fahey (Contractor) with Securiguard and Jenekia Johnson (Intern) met each as documented, on April 15, 2004, in which both discussed plans of approached, rehearsed scripts, describe recording device, position of recorder, and later Johnson met Fahey and he confiscated tape. Conspiracy Against Rights- Violation of Section 241. (See attached Documentation)

(James Lantelme, Assistant Director, Legal Services Unit, Doug Fahey,Contractor, Jenekia Johnson, (Intern), et. al. agreed to interception my oral communication on April 15, 2004. Doug Fahey (Contractor) with Securiguard and Jenekia Johnson (Intern) met each as documented, on April 15, 2004, in which both discussed plans of approached, rehearsed scripts, describe recording device, position of recorder, and later Johnson met Fahey and he confiscated tape. Wire and Electronic Communications Intercpetion of Oral Communication - Violation of Section 119.

TITLE 18--CRIMES AND CRIMINAL PROCEDURE

PART I--CRIMES

CHAPTER 13--CIVIL RIGHTS

Sec. 246. Deprivation of relief benefits

Whoever directly or indirectly deprives, attempts to deprive, or threatens to deprive any person of any employment, position, work, compensation, or other benefit provided for or made possible in whole or in part by any Act of Congress appropriating funds for work relief or relief purposes, on account of political affiliation, race, color, sex, religion, or national origin, shall be fined under this title, or imprisoned not more than one year, or both.


TITLE 18--CRIMES AND CRIMINAL PROCEDURE

PART I--CRIMES

CHAPTER 13--CIVIL RIGHTS

Sec. 242. Deprivation of rights under color of law


TITLE 18--CRIMES AND CRIMINAL PROCEDURE

PART I--CRIMES

CHAPTER 13--CIVIL RIGHTS

Sec. 245. Federally protected activities


TITLE 18--CRIMES AND CRIMINAL PROCEDURE

PART I--CRIMES

CHAPTER 13--CIVIL RIGHTS

(2) intentionally obstructs, by force or threat of force, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so; amendment to the Constitution, to make actions of private citizens motivated by race, color, or ethnicity that interfere with the ability of citizens to hold or use religious property without fear of attack, violations of Federal criminal law.''

**REMEDIES SEEKING**:

1) Expunged both illegal investigative interviews conducted on October, 2003 and April 21, 2004 by Doug Fahey (Contractor). Expunge all records, memorandums, statements.

2) Remove Doug Fahey from Securiguard contract violations of 1st Amendment, 4th Amendment (Search&Seizure), 5th Amendment (Self Incrimination/Miranda Rights), Violation of Federal Trade Commission Act contractors are prohibited to conduct investigative interviews as Fahey is considered a consumer reporting agency.

3) Remove Jim Lantelme, Assistant Director for willful "Lie", Initiation of investigation, Willful lie to Manager (Erica Bovenzi) and Lie to Management Response Team regarding intern "feeling threaten"

4) Rewrite policy and guidelines for management response team handling work-related incidence

5) Appoint oversight board (Ombudsman) office or EEO office to oversee matters before employees are subjected to illegal unwarranted investigations requested by angry employees, bias managers, contractors and used as a personal method to retaliate against employees

6) Refrain from sending or referring employees to security whom reportedly "Feel Threaten" feelings of threat is not a "Direct Threat" of bodily harm which is orally communicated to an employee.

7) Intern employee is removed (discharged) for admission of having "Lied" on tape, Entrapment, Pretext, Illegal Interception of oral communication without authorization 18 U.S.C., Section 119, prohibited to disclosed, identity theft (Biometrics voice on tape), Nepotism (Niece of JoAnn Williams, (Jim Lantelme's Secretary).

7) Compensatory damages (for humiliation, emotional pain, mental anguish, and loss of enjoyment of life, embarrassment at work, overhearing gossip of co-workers, defamation of character, willful libel and tutorious plot, violation of civil rights, aggravation of pre-existing medical condition) in the amount of $600,000.00. Punitive damages in the amount of $500,000.00

Liability for Complainant's mental distress

In *Moyer v. Yellow·Freight System, Inc.,* 89-STA-7 (Sec'y Aug. 21, 1995), the Respondent relied on *Bossalina v. Lever Brothers,* 47 Fair Empl. Prac. Cases (BNA) 1264, 1167-68 (D. Md. 1986), to argue that it could not be held accountable for the Complainant's mental distress and that the Complainant must be responsible for his own well being. The Secretary rejected the reliance on *Bossalina,* noting that it was an Age Discrimination in Employment Act case. Rather, an employer who violates the employee protection provision of the STAA and in so doing caused the employee to experience mental and emotional distress may be held liable for compensatory damages. Slip op. at 23-24 n. 16.

An employer whose discriminatory conduct aggravates an employee's pre-existing condition is liable for the effects of its illegal action on the employee. Slip op. at 26-27.

FILE NUMBER. WASHINGTON                 Incident Number: 0-000000018~~6~~

(CONSPIRACY) DISCUSSION BETWEEN DOUG FAHEY AND ~~JENEKIA JOHNSON~~

I again contacted JOHNSON and arranged to meet her in the lobby of 1717 H St. NW at 12:10Hrs. on 15 April 2004. We met at that time and then moved to vacant FDIC office space on the 1st floor. I placed a Sony cassette recorder with a 90 minute tape (45+ minutes per side) into her purse. I attached an omni directional power condenser microphone to the recorder and positioned the microphone so that it extended slightly, but unobtrusively from her purse. I suggested the way in which she could begin a conversation with GIBSON-MICHAELS might be to tell her she had been thinking about what she told her the day before. JOHNSON then advised me that just before coming downstairs to meet me in the lobby, she walked past GIBSON-MICHAELS' cube, and GIBSON-MICHAELS poked her head out and asked her if she had thought about what they talked about. ~~JOHNSON told me she told GIBSON-MICHAELS no, that she was trying not to think about it. I then allowed JOHNSON to look at some notes I had handwritten on a piece of paper with potential ideas on how to begin a conversation with~~ GIBSON-MICHAELS. After looking at the suggestions, JOHNSON came up with her own idea. She asked if she could just go to her and tell her that she felt threatened by her the day before. She said that was how she really felt. I agreed that expressing her true feelings would probably be the easiest way for her to succeed in beginning a dialogue. I turned the recorder to the "record" position and recorded a brief introduction, saying the date (April 15) and the time was 12:20Hrs. and that it was the beginning of the tape. At that time, JOHNSON left the room enroute to the 3rd floor of the building to locate GIBSON-MICHAELS. The tape subsequently revealed that approximately 10 minutes after leaving the room, JOHNSON located GIBSON-MICHAELS and began a conversation with her. The tape continued to run and record their conversation for approximately the next 37 minutes. I located JOHNSON at 13:20Hrs. on the third floor and accompanied her back to the 1st floor where I then recovered the recorder and tape from her purse. JOHNSON reported that the tape ended before ~~their conversation did. She reported that at the end of the conversation, [off tape] GIBSON-MICHAELS hugged her. JOHNSON remarked that GIBSON-MICHAELS was "a lot nicer than yesterday." I asked~~ JOHNSON if there were any witnesses to the conversation they just had and she stated, no.

On 15 April 2004, at 13:44Hrs., GIBSON-MICHAELS sent JOHNSON and BEARD an e-mail with a subject, LIE DETECTOR TEST. The e-mail read:
    "This is a suggestion to get to the truth regarding your situation. Lie Detector test are 100 percent accurate. You both might want to consider taking a lie detector test; or volunteer since both of you are 100% certain that it wasn't you. Also, taking a lie detector to determine that it was someone else other than yourselves will give both of you a chance to resume your good friendship. Or the investigator might request that you are both tested regarding the facts surrounding your situation. The test only cost sometimes between $20.00 or $40.00 dollars.
    FDIC might be able to administer the test free. Since there is a possibility that there could have been someone other than yourselves; then you both should take the test together or separate and apart. If you are telling the TRUTH...then there shouldn't be a problem with taking a LIE detector test to save your friendship. (SMILE)... " (end of e-mail)

On 15 April 2004, at 14:11Hrs., GIBSON-MICHAELS sent JOHNSON an internet link regarding polygraphs. The subject was, Information regarding the Polygraph (Lie Detector Test). JOHNSON forwarded that message to me on 19 April, stating that she wasn't able to review the link due to a virus warning.

On 16 April 2004, at 10:20Hrs., I left a voice message for JOHNSON to call me. At 14:20Hrs., I had a telephone conversation with her. I asked her to reflect on the conversation she had with GIBSON-MICHAELS the day before and tell me how she was feeling about all of this. JOHNSON stated she wouldn't be as comfortable with GIBSON-MICHAELS from now on and

4

FILE NUMBER: WASHINGTON                    Incident Number: 0-0000000186

I would not do anything. She said that Jenekia should confess to taking Kristian's money and go to the Credit Union, withdraw $200 and give it to Kristian over two weeks. She said Jenekia would feel better if she confessed and then said that if she doesn't confess, her guilt will affect her child (Jenekia gave birth to a daughter a few months ago). Yolanda raised a possible affect on her child a number of times.

I told her that she did the right thing by coming to me. I told her to write down everything that she told me; what happened, who said what and when. I told her to call the investigator right away and tell him all that she told me. I told her that Yolanda's comments were improper. (LANTELME INITIATED "FEELINGS OF THREAT")

A bit later I called Jenekia and asked her if she felt threatened by Yolanda and she confirmed that she did. ~~Lantelme initiated "Feelings of Threat"~~

~~After she left, I called Bob Wooding and Randi Mendelsohn to tell them what I intended to do and to ask their advice for dealing with the situation.~~ I then called Erica Bovenzi to tell her what had happened. ~~I also left a message with Bill Kmetz~~ to invoke the Management Response Team.

After a conference call around 2pm between Randi Mendelsohn, Bill Kmetz, Doug Fahey and me, I called Jenekia to tell her how we were addressing her concerns. I reiterated that it was important for her to write down all that she told me and send it to Mr. Fahey today. I also told her to avoid Yolanda Gibson-Michaels and to tell me if Yolanda further talked to her about anything related to her concerns. She then told me that around 1:30 pm Yolanda had asked her whether she had made any decisions about Yolanda's earlier conversation telling her what to do. Jenekia said she would not drop her charges and would continue to talk to the investigators. She said ~~Yolanda~~ told her she wouldn't be believed and would go to jail for up to 10 years and this would affect her ability to get any other federal job. She sounded upset over the phone while telling me this." (end of memo from LANTELME)

*[handwritten: — Fahey wrote statement or Lantelme — Fahey]*

On 14 April 2004 at 15:43Hrs., JOHNSON e-mailed me the following statement of facts (ATTACHMENT A):

"Good Afternoon, Earlier this morning at 11:22am, I received a called from ~~Yolanda Michael~~ Gibson requesting me to come to her desk. Once I arrived she informed me that Kristian told her what took place Monday at the office, so she asked me to tell her my side of the story. After telling her the story she asked me to report with her to the project room. After being escorted and seated by Yolanda she stated she love me, I have and will do so much for you and Kristian, I care for you like my child. Next she stated I am not taking side but you know I got Kristian working here. After that she starts to tell me the story on her mistakes and how she asked God for forgiveness because she did not want anything to back firer on her disability child. After that she keep on repeatedly saying I took the money because I never needed it or didn't, after telling her so many times I do not have Kristian money, she finally told me that something bad is going to happen to me and if it doesn't it will happen to your daughter (Jayda). I told Yolanda that I was going to report it to Jim but she told me I shouldn't because he isn't going to do anything and she also keep on telling me that was the wrong thing to do, so leave it between us. Then repeatedly "Do you love you daughter" was all she kept on saying for like 3 minutes. "God will forgive you. Next she kept on asking me to send an e-mail to Mr. Fahey, telling him a lye that Kristian and I found our money and to drop the case, and then she wanted me to go over to the credit union and take out a loan for Kristian in the amount of $300.00, or to pay Kristian $200 out of pp#7 and $100 out of pp#8. Then she says if I don't god will punish me. So she tells me to go back to my desk and think about it!

Yolanda calls back at 12:25pm on 4/14/04 to come over to her desk then she say and gives example of Kristian moving slow because of her pregnancy and being unable to open the cabinet our purses were due in due to her belly. Then she states repeatedly Kristian could not have done it she moves to slow, and you to were the only one who new where the keys was, and since

2

CONFIDENTIAL

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
ATTN: D. MICHAEL COLLINS, DIRECTOR
ROOM 801-1201
3501 N. FAIRFAX DRIVE
ARLINGTON, VA  22226-3500

CONFIDENTIAL

Hand Delivered on 7/13/04

# FDIC

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

## FORMAL DISCRIMINATION COMPLAINT[1]
### Agency Docket Number FDICEO-040039

1.    FORMAL EEO Complaint:

   I believe that I have been discriminate against based on race (African-American), sex (female), tape recorded, deliberately subjected to intimidating 'weingarten' investigations, reprisal (prior EEO activity, when I suffered harassment that created a hostile work environment based on the following incidents:

### Incident 1

   On April 19, 2004, I was informed, via electronic message from Douglas Fahey ("Fahey"), Contract Investigator, Division of Administration, and again on April 21, 2004, by memorandum from James T. Lantelme ("Lantelme"), Assistant General Counsel, Legal Division, that Doug Fahey needed to interview me regarding an impromptu counseling session initiated by Jenekia Johnson ("Johnson"), student intern on April 14, 2004, and April 15, 2004, in which she ("Johnson") alleged that she felt "threaten" by a counseling session she (Johnson) initiated. The feeling of threat was initiated by James Lantelme, Assistant Director (See attached statement from Lantelme).

   Ms. Johnson and Ms. Beard informed me that Ms. Johnson contacted Doug Fahey, contracted investigator. Both employees (African-American)(Female) stated that Doug Fahey was concerned that neither intern informed or consulted with their managers (Jim Lanteleme, Assistant Director and Carl Polvinale, Senior Counsel) instead of reporting the incident to me. Both interns stated to Mr. Fahey that, "Jim Lantelme ("Caucasian") was prejudice, didn't speak to them, ignored them, and didn't care about their existence, and that they have always felt comfortable with Yolanda Gibson-Michaels or Carl Polvinale, Counsel regarding all work-related issues, concerns, problems, assignments, guidance, training or personnel issues"

   I was always called upon both Ms. Johnson and Ms. Beard to serve as a liaison on issues regarding their time, grades, metro card, school schedules, leave issues, and personal issues which is documented throughout my outstanding performance appraisals.

Revised 07/12/2004                                                              Page 1 of 1

Agreement to Mediate and Attend Counseling
Agency Docket Number PE.CEO-040039
Gibson-Michaels, Yolanda C.
July 12, 2004

Ms. Johnson informed me that she had contacted Doug Fahey, investigator ("Contractor") employed with Securiguard. Later, Ms. Beard ("Beard") student intern approached me with her version of the events which occurred during the week of April 6th, 2004, (**I was on official leave during the occurrence of the alleged theft**). However, James Lantelme deliberately interjected the 'feelings of threat' in order to initiate an internal investigation with Doug Fahey (Contractor).

On April 14 and 15, 2004, I was approached by Ms. Johnson and Ms. Beard regarding their situation which I have done so in the past in effort to advise them about how to best resolve a conflict. During our discussion, I interjected references to the Bible, parables, clichés, and old wife tales in effort to emphasize the need to be truthful and honest. I informed Ms. Johnson that I was aware that on 4 or 5 days that she didn't report to work or call into the office regarding her whereabouts; and needed to account for her time and informed management. I indicated to Ms. Johnson that not reporting to work is considered, "AWOL" I also informed Ms. Johnson that working for her Aunt JoAnn Williams is 'nepotism' which is illegal. JoAnn Williams is the secretary of James Lantelme, Assistant Director, Legal Services Unit.

On April 15, 2004, Ms. Johnson approached me and stated that, "I wanted to tell you that, I LIED". However, before I allowed Ms. Johnson to elaborate on her willful deceitfulness, I said don't worry, God will forgive you. On April 19th, 2004, I received an e-mail from Fahey regarding Ms. Johnson's 'feelings of threat' which was a fabrication (conspiracy) as documented within Doug Fahey's own statement (see attached) in which he (Doug Fahey and Jenekia Johnson) rehearsed and planned how to entrap me on April 15, 2004 which is 'aiding and abetting' (search and seizure) violations of my civil liberties. Furthermore, based on Doug Fahey's comment and unsolicited request to investigate me, constitutes a breach of contract, ethics, and neutrality as he is only empowered to gather facts, information, statements as it relates to the (who, what, when, were, and how) during the conduction of an investigation. Comments and assertions of one's personal opinions is bias, prejudice, and unconstitutional.

The investigation was initiated by James Lantelme (disparate treatment, harassment, racial, malicious, and deliberate violation of my civil, constitutional, and equal employment rights afforded under the constitution. Doug Fahey (white male) and Lantelme (white male) decided to go forward with the investigation because of my race (African-American), sex (female) and prior EEO activity.

July 12, 2004                                                    Page 2 of 2

Agreement to Mediate and Attend Counseling
Agency Docket Number FDICEO-040039
Gibson-Michaels, Yolanda C.
July 12, 2004

## Incident 2

On August 12, 2003, Lantelme told me that I was being investigated because Terry Hopkins ("Hopkins") (Caucasian) had informed Lantelme of an incident where she felt threatened by me because my eyes were stretched wide opened and I had a blank look after she (Terry Hopkins) had insulted my integrity.

On August 12, 2003, I gave Hopkins an approved leave slip, dated July 30, 2003, which was signed by my immediate supervisor, Carl A. Polvinale, Senior Counsel, Legal Division; Hopkins, however, questioned whether my immediate supervisor had actually signed the leave slip. In response to Hopkins, I said, "Don't ask me any stupid questions," and Hopkins replied that she had the right to question time submitted. I then reminded Hopkins that she should have question the illegal use of government time when Hopkins adopted a pet bird and had a three hour Bird Baby Shower during official time. As a consequence of my exchange with Hopkins, Lantelme referred me to Fahey for a "Weingarten" investigation.

I told Lantelme that Hopkins had a history of yelling, screaming, and acting mercurial towards other employees; Lantelme ignored my comments did not order an investigation of Hopkins' conduct because she is a Caucasian female; but, Lantelme did order an investigation of my conduct because I am an African-American and I engaged in prior protected EEO activity.

## Incident 3

Frank Nigro ("Nigro") (Caucasian male) had been disruptive in the legal services unit, Legal Division, for a period of more than 5 years. His conduct included unpredictable explosive episodes during or after staff meetings in the presence of Bill Stricker (Caucasian male); supervisor, and co-workers, direct threats to his former supervisor (decease), Alva Vaden; in which he literally jump on the top of her desk, bang on her office wall, and physically drew (balled up his fist) and forward punched framed pictures of African American art and said I 'hate these pictures, I'm tired of seeing all these black faces; threats to co-workers within the Legal Division; episodes of throwing office supplies, knocking, banging, and physically kicking office walls, computers, chairs.

Nigro verbal threaten to Anthony Boanton with direct threat of physical violence, and threatening behavior, and daily use extremely loud vulgarity daily. Threat to former African American employee Ugo Ukandu (former employee) in which the employee was threaten with violence, cursed, and told to 'Go Back to Africa' in the presence of witnesses both within the direct work area of the actual threat and outside the work area, episodes of unprovoked threats, psychotic behavior was exhibited in the presence of me, supervisors, managers, and co-workers.

Agreement to Mediate and ⟨tend Counseling
Agency Docket Number F⟩.CEO-040039
Gibson-Michaels, Yolanda C.
July 12, 2004

Because of Frank Nigro's unpredictable, unprovoked violent and threatening behavior, and psychotic 'blood curling' rampages of destruction of U.S. Government office equipment, doors, and furniture, in September 2002, I provided a statement concerning his evidenced, documented, and voluminous reports of his threatening behavior to the Supervisory Administrative Officer and manager of the "Management Response Team," Penny G. Elgas ("Elgas").

Ms. Elgas told me that she that she had spoken to William Kementz, Chief, Security, FDIC, regarding Frank Nigro's threats, behavior, statements from colleagues, supervisors, and the recent altercation with current FDIC employee Anthony Boanton, and the fact that I felt threaten and requested that Frank was removed from outside his work area. First, Ms. Eglas informed me that, I converse with Frank every morning at 6:30am and that Frank is a nice, guy. Secondly, I contacted William (Bill) Kemntz, Director of FDICs Security and he said that Frank is not a threat."

A year later Elgas confided to former employee (deceased) Alva Vaden via telephone between December 2003 and January 2004 that, "I should have done something regarding Frank when Yolanda said that she was threaten by his violent exhibited behavior and explosive nature; because had he harmed Yolanda, I could have been held liable." The former Alva Vaden personally informed me that Eglas made the comment during her (Eglas) interrogation of whether Ms. Vaden was utilizing her staff employees to retrieve her lunch, car from FDICs garage, and for other personal unrelated work issues.

The situation with Nigro is another illustration of how Caucasians, especially Caucasian males, are treated more leniently than African-Americans, and have never been subjected to investigations, search & seizure, violations of Miranda rights, 5th Amendment, 1st Amendment, 4th Amendment, 14th Amendment, taped, conspiracy against rights as a 24 year, outstanding Federal employee, video, taped, nor monitored for having engaged in prior protected EEO activity.

Yolanda C. Gibson-Michaels

Signature

Date 7/12/04

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

# REQUEST TO AMEND FORMAL COMPLAINT

## Agency Docket Number: FDICEO-040039

I, Yolanda C. Gibson-Michaels, request the amendment of my formal EEO complaint,

Agency Docket Number FDICEO-040039, to include the following basis:

I was discriminated against on the basis of religion (Christianity) on April 14, 2004, when second level supervisor, James Lantleme, Assistant Director, Legal Services Unit (LSU) asked a student intern if she felt threaten by me after I spoke of my religious faith and shared my religious beliefs with her. Additionally, James Lantleme's action caused me emotional distress, embarrassment, ridicule, defamation of character as I have overheard whispers of my using the word of GOD, Bible, and scriptures to threaten an intern in which the word threaten and false statement of threat was willfully, and maliciously fabricated by James Lantelme against my character.

I have been subjected to scorn, hatred, whispers, stares, leers from colleagues, a 2-3 hours interrogation on April 28, 2004, an unwarranted (search and seizure) as the intern conspired with a contractor on April 15, 2004 to approach me wearing a 'wire' tape recorder which is illegal and further violated my rights all initiated by James Lantelme as he violated my freedom of speech, religious belief, and tarnished the word of God with 'false doctrine' as reflected within the proposed 10-day suspension he requested after the willful initiation of an investigation based on a false statement. I have suffered uncontrollable emotional outburst of cries or sobering during discussions of the bible, family outings, while reading scriptures for comfort.

I continually have nightmares, periods of happiness, sadness, joy and disbelief of how my providing comfort using the word of **GOD** to two interns involved in a theft, was twisted, tainted, misconstrued into a 'feeling of threat' and later used against me as being inappropriate and misconduct after James Lantelme initiated the entire episode with the instigation of ill will towards me by asking if the intern 'felt threaten' by me.

Because of James Lantelme's violation and discriminatory practices of my freedom to exercise and express my religious beliefs, I'm labeled as a **'threat'** instead of a sustained outstanding employee with 25 years of dedicated, committed, Federal Service.

Revised 4/2002



GOVERNMENT EXHIBIT 3

July 21, 2000

A false, evil thought, and malicious statement tarnished, defamed *(**actual malice**), and smeared my character, religious beliefs, and violated by entire being (mental, physical, and spiritual) with the intent to destroy my career, entrap me, and incriminated me. James Lantelme knew that the intern never felt threaten as he made the false statement. After making the false statement, he contacted the FDICs Management Reponse Team (MRT), Security, and his manager, Erica Bovenizi; not once informing his own manager that the statement was False as he initiated the thought and 'feeling of threat'.

On April 15, 2004, the intern and contractor (conspired) to entrap me as both discussed per their statement of how to approach me, what to say, contractor wrote down statements, provided the sony tape recorder to the intern. After the intern approached me with her false statement of stating that she, "LIED" I was contacted on April 19, 2004 for an investigative interview of conversations I had with an intern which made her "feel threaten" However, James Lantelme on April 14, 2004, deliberately asked the intern as he has documented within his own statement, "**A bit later, I asked Jenekia if she 'felt threaten' by Yolanda?**" as he 'planted the seed of iniquity' into the thoughts of an intern whom sought his opinion regarding her own circumstances of being involved in a theft. Based on this leading question of ill will towards me, my life, family, and career has been affected by the planting of the venomous (poisonous) and deceitful false statement. Then, I was forced, coerced, and threaten with disciplinary actions if I didn't participate in an investigation that he initiated with a **LIE!!**

On April 28, 2004, I was interrogated for 2-3 hours by the contractor employee after he conspired with the intern to wire tape me on April 15, 2004. The information from the tape was used to phrase the 45 to 50 open-ended questions in effort to further entrap me into a plot initiated by James Lantelme. I was forced to attend the investigative meeting, answer questions, threaten with disciplinary actions by James Lantelme if I didn't attend the investigative meeting that he initiated by his malicious, false statement which is a violation of my exercise of freedom of speech, religious expression, and 1st amendment of the U.S. Constitution.

I'm seeking $300,000 dollars which is the maximum amount awarded under the Office of Equal Opportunity and 5 million dollars in punitive damages for the willful, deliberate, evil and malicious **actual malice** of James Lanteleme, Assistant Director, Legal Services Unit (LSU), in which has defamed my character, embarrassed, subjected me to ridicule, emotional outburst, hurt, shame, and insulted my religious beliefs, as he violated my freedom to express religious beliefs.

\* _____

Actual malice involves making a statement with "knowledge of falsity or reckless disregard as to truth or falsity." Masson, 501 U.S. at 511. See also Harte-Hanks Communications, Inc., 491 U.S. 657; Anderson v. Liberty Lobby, 477 U.S. 242, 244 (1986); New York Times, 376 U.S. at 279-280.

July 21, 2000

Signature of Complainant

7/29/04
Date

Please sign and return a copy of this form via facsimile to (202) 416-2520. Mail or hand-deliver the original to:

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
ATTN: OPHELIA JONES, EEO COUNSELOR
ROOM 801-1237
3501 N. FAIRFAX DRIVE
ARLINGTON, VA 22226-3500



**FDIC**
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                Office of Diversity and Economic Opportunity

REVISED NOTICE OF AUTHORIZATION

Mr. Barry Cohen, an investigator with the firm of US Investigations Services, is hereby authorized to conduct an investigation of all aspects of the following claim in the complaint of employment discrimination filed against the Federal Deposit Insurance Corporation by Yolanda C. Gibson-Michaels in complaint FDICEO - 040039.

ACCEPTED CLAIM

Whether Complainant was discriminated against on the basis of race (African-American), color (Black), sex (female), age (date of birth April 1, 1959), religion (Christianity), and reprisal when from August 12, 2003, to approximately April 28, 2004, she was allegedly harassed and subjected to a hostile work environment when the following incidents occurred:

1. On or about April 14, 2004, Complainant's second level supervisor, Mr. James T. Lantelme, Assistant General Counsel, Legal Division, initiated an investigation of Complainant after asking Ms. Jenckie Johnson, a Student Intern co-worker, if she felt threatened by Complainant. On April 15, 2004, Ms. Johnson surreptitiously tape recorded a conversation between herself and Complainant without Complainant's permission, and later allegedly approached Complainant and said, "I want to tell you, I lied." Mr. Lantelme forced Complainant to attend an investigative meeting on April 28, 2004, with Mr. Doug Fahey, a Contract Investigator with the Division of Administration. Complainant was interviewed by Mr. Fahey for two to three hours, forced to answer open-ended questions developed from the recording made by Ms. Johnson, and denied the right to an attorney and Miranda rights.

2. On or about August 12, 2003, Mr. Lantelme initiated an investigation of Complainant after Ms. Terry Hopkins (Caucasian) alleged that she felt threatened because Complainant's eyes were wide open with a blank look. Complainant was investigated and interrogated. Complainant alleged that Ms. Hopkins has historically yelled, screamed, verbally berated, and openly displayed mercurial behavior towards Ms. Connie Hunt. Ms. Hopkins has never been subjected to an investigative interview or interrogation.

3. Complainant was treated differently than Mr. Frank Nigro, a male Caucasian co-worker, who has engaged in threatening and disruptive behavior towards Complainant and others, but was not subjected to an administrative investigation or disciplined in any manner.

In connection with the investigation of the above stated claim(s), Barry Cohen is

Notice of Authorization, Gibson-Michaels FDICEO-040039                    Page 2 of 2

hereby authorized to:

    (1)    require all employees of the Corporation to cooperate in the investigation;

    (2)    require all Corporation employees having any knowledge of the alleged matters to furnish testimony under oath or affirmation without a pledge of confidentiality; and,

    (3)    review and/or obtain a copy of employment records and documents relevant to the accepted issues.


_for_ _Michael P. Yeoman_ _____                    _9/15/04_ _____
    Amy L. Del Valle                                      Date
    Oversight Manager
    Complaints Processing Branch


cc:    Yolanda C. Gibson-Michaels
    Chester Fisher, Senior EEO Specialist, Complaints Processing Branch, ODEO
    Stephanie Gordon, EEO Specialist, Complaints Processing Branch, ODEO
    G. Penny Higgs, Manager, Administration Unit, Legal Operations Section



**FILE COPY**

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

October 26, 2004

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>
#7002 0860 0004 7270 5114

Yolanda C. Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD 20748

Agency Docket No.:   FDICEO-040039
Date Filed:            July 13, 2004

Subject: <u>Partial Acceptance of Second Amendment to Formal Discrimination Complaint</u>

Dear Ms. Gibson-Michaels:

This is regarding the requests of Yolanda C. Gibson-Michaels ("Complainant"), received via e-mail in this office on October 20, 2004, and October 22, 2004, to amend the above-referenced formal discrimination complaint filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, and the Age Discrimination in Employment Act ("ADEA") of 1967, as amended, 29 U.S.C. § 633a.

By letter dated July 29, 2004, as amended by letter dated August 3, 2004, and revised by letter dated September 15, 2004, the Federal Deposit Insurance Corporation ("FDIC") notified Complainant that the following claims were accepted for investigation:

> Whether Complainant was discriminated against on the bases of race (African-American), color (Black), sex (female), age (date of birth April 1, 1959), religion (Christianity), and reprisal when from August 12, 2003, to approximately April 28, 2004, she was allegedly harassed and subjected to a hostile work environment when the following incidents occurred:
>
> 1. On or about April 14, 2004, Complainant's second level supervisor, Mr. James T. Lantelme, Assistant General Counsel, Legal Division, initiated an investigation of Complainant after asking Ms. Jenekia Johnson, a Student Intern co-worker, if she felt threatened by Complainant. On April 15, 2004, Ms. Johnson surreptitiously tape recorded a conversation between herself and Complainant without Complainant's permission, and later allegedly approached Complainant and said, "I want to tell you, I lied." Mr. Lantelme

GOVERNMENT EXHIBIT 4

forced Complainant to attend an investigative meeting on April 28, 2004, with
Mr. Doug Fahey, a Contract Investigator with the Division of Administration.
Complainant was interviewed by Mr. Fahey for two to three hours, forced to
answer open-ended questions developed from the recording made by Ms.
Johnson, and denied the right to an attorney and Miranda rights.

2. On or about August 12, 2003, Mr. Lantelme initiated an investigation of
   Complainant after Ms. Terry Hopkins (Caucasian) alleged that she felt
   threatened because Complainant's eyes were wide open with a blank look.
   Complainant was investigated and interrogated. Complainant alleged that Ms.
   Hopkins has historically yelled, screamed, verbally berated, and openly
   displayed mercurial behavior towards Ms. Connie Hunt. Ms. Hopkins has
   never been subjected to an investigative interview or interrogation.

3. Complainant was treated differently than Mr. Frank Nigro, a male Caucasian
   co-worker, who has engaged in threatening and disruptive behavior towards
   Complainant and others, but was not subjected to an administrative
   investigation or disciplined in any manner.

Based on a review of the e-mails that Complainant sent to this office on October 20, 2004, and
October 22, 2004, the following additional claims are identified:

Whether Complainant was discriminated against on the basis of reprisal when:

4. On September 22, 2004, Complainant's first level supervisor Stephen M.
   Hanas, Supervisory Counsel, Legal Division, allegedly sent a blind copy of
   an e-mail that was addressed to Complainant to James T. Lantelme,
   Assistant General Counsel, Legal Division, and to G. Penny Elgas,
   Manager, Administration Unit, Legal Division.

5. On October 20, 2004, Stephen M. Hanas allegedly sexually harassed and
   verbally assaulted[1] Complainant by telling Complainant to "get the hell out
   of my office."

---

[1] Complainant went to Stephen Hanas' office on October 20, 2004. In her e-mail to this office Complainant
described (in part) the events that occurred as follow: "I walked into Steve Hanas office regarding the e-mail that he
sent to my attention regarding leave. I asked Steve why his (sic) he harassing me. Why is he trying to make me take
leave? I told him I had the right to respond to EEO rebuttals and cases . . . I requested the return of medical
documentation for my son. Steve said that he wasn't going to return the documents, that the medical document is his
property. I told Steve that Dawn said he is to make a copy and return the documentation to me. Steve yelled to me
to get the hell out of his office. I told Steve don't you curse at me. . . Steve again told me to get the hell out of his
office. I left and went to Mr. Lantelme's office. I reported Steve to Mr. Lantelme around 11:48 this morning."

   6. On October 20, 2004, James T. Lantelme allegedly sexually harassed and
      physically assaulted[2] Complainant by grabbing her left arm.

Claim 4 is dismissed for failure to state a claim and will not be investigated. Claims 5 and 6
are accepted and will be forwarded for investigation.

## RATIONALE FOR DISMISSING CLAIM 4

### Legal Standards for Analysis

The U.S. Equal Employment Opportunity Commission ("EEOC") regulations state that an
agency shall dismiss a complaint that fails to state a claim under 29 C.F.R. § 1614.103 or §
1614.106(a), or states the same claim that is pending before or has been decided by the Agency
or the EEOC. 29 C.F.R. § 1614.107(a)(1).

The U.S. Supreme Court has held that an employee is aggrieved, or in other words has standing
to file a complaint, when some personal loss or harm has been suffered with respect to a term,
condition, or privilege of employment. Trafficante v. Metropolitan Life Insurance Co., 409 U.S.
205 (1972). Complainant must allege a loss or harm to a term, condition or privilege of
employment, including the right to work in an environment free from harassment. Byrnes v.
Dept. of State, EEOC Appeal No. 01930228 (January 14, 1993). Such loss or harm must be a
"direct or personal employment-related deprivation." See Jaquez v. Dept. of the Treasury,
EEOC Appeal No. 01940694 (June 14, 1994); Patel v. Runyon, Jr., Postmaster General, U.S.
Postal Service, EEOC Appeal No. 01963070 (January 2, 1997).

### Analysis and Conclusions

In this claim Complainant alleges that her first level supervisor sent a blind copy of an e-mail
addressed to Complainant, to her second level supervisor and another manager in the Legal
Division. While Complainant indicates that she was very upset over the alleged occurrence, she
has not alleged that she suffered any personal loss or harm with respect to a term, condition, or
privilege of her employment. Therefore, Complainant failed to raise a valid claim. Accordingly,
Claim 4 is dismissed pursuant to 29 CFR § 1614.107(a)(1) for failure to state a claim.

---

[2] Complainant left Hanas' office and proceeded to James Lantelme's office. Complainant described (in part) the
events that occurred in Lantelme's office as follow: "I greeted him (Lantelme) and told him that I'm tired of his
hatred towards me. You have been denying me my rights, denied my awards, denied my leave for my son, lied on
me, sent me to investigations, set me up, suspended me. Lantelme told me to shut up. I told him that he allowed his
secretary to employee her family members, defraud the government, she didn't get suspended from work. I told him
that he subjected me to a 3 hour investigation based on his lie that I made someone feel threaten. I told him that the
tape was illegal and I reported you to the Federal Protection Service; that man immediately grabs my left arm I
snatched is (sic) away and called the federal protection service. I told him I'm reporting you for assault."

## DISMISSED CLAIM 4

If a hearing is requested at the conclusion of the investigation of the accepted claim(s), an administrative judge appointed by the U.S. Equal Employment Opportunity Commission ("EEOC") may review the dismissed claim(s). However, there is no immediate right to appeal the dismissed claims. Any dismissed claim(s) may not be appealed until final agency action is rendered by the Agency on all the claims. 29 C.F.R. § 1614.107(b). A final agency action is either a Final Agency Order (if there is a hearing) or a Final Agency Decision (if no hearing is held). Complainant will be provided appeal rights with the final agency action.

## ACCEPTED CLAIMS 5 AND 6

Claims 5 and 6 are accepted as additional claims for investigation. If these claims are incorrectly identified, please inform Chester Fisher, Senior EEO Specialist, of the claims Complainant is alleging to be discriminatory, as well as the relevant date(s). This information must be provided, in writing, within five (5) calendar days of Complainant's receipt of this letter to Mr. Fisher at the address provided below. If this Office does not receive a written reply within five (5) calendar days of receipt of this letter, the above-identified claims will be forwarded for investigation. Due to delays with the Agency receiving mail sent through the U.S. Postal Service, a copy may also be sent by facsimile transmission to Chester Fisher at (202) 416-4295.

All correspondence regarding this complaint must include the Agency Docket Number FDICEO-040039 and the date filed, July 13, 2004. This information will assist us in responding promptly. Correspondence forwarded to this Office by regular and certified mail should be addressed in the format as indicated below:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> COMPLAINTS PROCESSING BRANCH
> ATTN: CHESTER FISHER
> ROOM 801-1234
> 3501 NORTH FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500

Overnight and express mail and hand-deliveries should be to:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> COMPLAINTS PROCESSING BRANCH
> ATTN: CHESTER FISHER
> 801 17TH STREET, NW (ROOM 1234)
> WASHINGTON, DC 20434

Gibson-Michaels, FDICEO-040039                                         Page 5 of 5

As previously stated in the FDIC's July 29, 2004 letter, Complainant will be notified of the
investigator assigned to conduct the investigation into the claims added to the complaint herein.
It may be the same investigator who is already investigating the previously accepted claims in
this complaint. The other terms of the July 29, 2004 letter still apply to this complaint.

Pursuant to the EEOC regulations at 29 C.F.R. § 1614.108(f), a copy of the Report of
Investigation ("ROI") is to be forwarded to Complainant within 360 calendar days of the date that
Complainant filed the formal complaint, or within 180 days of the most recent amendment unless
there is a written agreement to an extension. Prior to receipt of the ROI, Complainant may amend
this complaint to add claims that are like or related to the claim(s) raised in this complaint. 29
C.F.R. § 1614.106(d). There is no requirement that Complainant seek EEO counseling on these
new claims. However, if the new claim is not like or related, then Complainant will be referred to
an EEO counselor. Complainant must submit any new claim(s) to this Office to the address
indicated above.

If there are any questions, please contact Chester Fisher, Senior EEO Specialist, at (202) 416-
2523 or me at (202) 416-2014.

                                      Sincerely,

                                      Michael P. Moran
                                      Acting Chief
                                      Complaints Processing Branch

cc:    Chester Fisher, Senior EEO Specialist, Complaints Processing Branch, ODEO
       Stephanie M. Gordon, EEO Specialist, Complaints Processing Branch, ODEO
       Amy Del Valle, Oversight Manager, ODEO

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th Street NW, Washington, D.C. 20429-9990

_____
Legal Division

August 17, 2004

MEMORANDUM TO:    Yolanda Gibson-Michaels
                  Information Specialist

FROM:             Erica Bovenzi
                  Deputy General Counsel

SUBJECT:          Notice of Decision – Five (5) Calendar Day Suspension

By written notice dated June 9, 2004, Mr. James Lantelme, Assistant General Counsel, proposed your suspension from work without pay for ten (10) calendar days for unprofessional and/or inappropriate behavior and for providing inaccurate information to an FDIC investigator. This notice was issued to you on June 9, 2004 in the presence of Robert Wooding, Human Resources Specialist/Labor and Employee Relations. The notice of proposed suspension informed you of your right to reply orally and/or in writing within ten (10) workdays from the date you received the proposal. You provided an oral reply on June 25, 2004 with NTEU representatives Donna Schull and Michael C. Thorsteinson present. Also present at this meeting was Randi Mendelsohn, Assistant Director, HR Strategy and Labor and Employee Relations Section.

Based on my review of the proposed suspension and its supporting evidence, I have determined that your conduct as described in the notice of proposed suspension under Reason 1, Unprofessional and/or Inappropriate Behavior, warrants disciplinary action. Attempting to intimidate an employee and impede an internal investigation are behaviors that cannot be tolerated in the workplace. Based on my review of the record, and in consideration of your employment record I have decided that your behavior warrants a five (5) calendar day suspension from duty and pay. Accordingly, you will be suspended from work beginning August 23, 2004 and ending on August 27, 2004. You are expected to return to work on August 30, 2004.

As to Reason 2, Providing Inaccurate Information to an FDIC Investigator, I have chosen not to consider those specifications for any purpose. The specifications rely in large part on the tape recording of an April 15, 2004 conversation between you and a student intern. While the tape recording of the conversation was not a violation of law nor was it a violation of your Weingarten rights, I believe that taping the conversation was unnecessary to determine whether the underlying conduct took place. Accordingly, I have decided not to consider the specifications under Reason 2. In addition, I have not listened to the tape recording or relied on the portions of the transcript from the conversation that are contained in the record.

Further, I personally looked into the allegations that your representative made during the oral reply concerning the credibility of the student intern. I continue to believe that events relating to this disciplinary action did occur as described by the student intern and were not fabricated.



GOVERNMENT
EXHIBIT

5

Your conduct will be monitored in the future. You are cautioned that any repetition of this offense or any other act of misconduct could result in a proposal for more severe disciplinary action, up to and including removal from the Federal service.

If you are experiencing personal problems which may be contributing to your behavior, I suggest that you contact the LifeWorks Program at 1-877-881-1360.

If you believe that this suspension is not justified, you may appeal this action under the grievance procedures contained in the negotiated agreement between NTEU and FDIC. Your written grievance must be received within twenty (20) workdays after receipt of this notice. For further information about the grievance procedure, you may contact your NTEU representative.

cc: HR Strategy and Labor/Employee Relations Section

Receipt Acknowledged:

_____
Employee Signature

_8 | 17 / 04_
Date

2



**Federal Deposit Insurance Corporation**
Room 801-1231, 3501 N. Fairfax Drive, Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

# EEO COUNSELOR'S REPORT
## AGENCY DOCKET NUMBER FDICEO-040056

### A.   AGGRIEVED PERSON:

| | |
|---|---|
| **Name:** | Yolanda C. Gibson-Michaels |
| **Job Title/Series/Grade:** | Information Specialist/CG-301-11 |
| **Office/Division:** | Legal Division |
| **Work Address:** | 550 17th Street, NW |
| | Washington, DC 20429 |
| **Work Phone No.:** | (202) 736-0204 |
| **Home Address:** | 2210 Anvil Lane |
| | Temple Hills, Maryland 20748 |
| **Home Phone No.:** | (301) 630-5062 |
| **Email Address:** | YGMichaels@fdic.gov |

### B.   AGGRIEVED PERSON'S REPRESENTATIVE (if applicable)   N/A ( )

| | |
|---|---|
| **Attorney:** | Yes (x)   No ( ) |
| **Name:** | Nathaniel Johnson & Associates |
| **Address:** | 1717 K Street NW-Suite 600 |
| | Washington, DC 20036 |
| **Phone Number:** | (202)- 508-3645 |
| **Facsimile Number:** | (202) 331-3759 |
| **E-Mail Address:** | nathanielesquire@aol.com |

### C.   COMPLAINT INFORMATION

Complaint is:   An Individual Complaint (x)    A Class Action ( )
Aggrieved Person Waived Anonymity: Yes (x)   No ( )
Negotiated Union Grievance Filed: Yes ( )   No (x)
For Mixed Cases - Appeal Filed (or to be Filed) with MSPB: Yes ( )   No ( )   N/A (x)
Has Aggrieved Person Filed Prior Complaint(s)? Yes (x)   No ( )
Docket Numbers:  (1) FDIC- 97-39, filed March 28, 1997; (2) FDIC-98-67, filed
May 14, 1998; and (3) FDICEO – 040039, filed April 30, 2004.

### D.   CHRONOLOGY OF EEO COUNSELING:

| | |
|---|---|
| Date of Initial Contact: | 09/23/2004 |
| Date of Initial Interview: | 09/27/2004 |
| Date of Occurrence of Alleged Discriminatory Event: | 09/22/2004 |
| 45th Day after Event (or Knowledge of Event): | 11/05/2004[1] |

---

[1] AP raised several claims of alleged discrimination that occurred outside the 45th day time frame. She explained that she was not aware that she was being discriminated against at the time many of the allegedly discriminatory events occurred.

Revised 4/2002



- 2 -

If contact is beyond the 45th day, explain the reason for the delay:            N/A
Date Notice of Rights and Responsibilities issued:            09/30/2004
Date Election of Informal Processing Procedure:            09/30/2004
      Mediation [ ]   Counseling [x]
Date of Extension of Counseling:            90th Day:            N/A
Date of Final Interview:            10/18/2004
Date Notice of Right to File a Formal Complaint issued:            10/19/2004

## E.    BASIS (ES) FOR ALLEGED DISCRIMINATION:

    1    (x)  Race (African-American)
    2    (x)  Color (Black)
    3    ( )  National Origin (specify)
    4    (x)  Sex (female)
    5    ( )  Age (date of birth: )
    6    ( )  Mental Disability (specify)
    7    ( )  Physical Disability (specify)
    8    ( )  Religion (specify)
    9    (x)  Reprisal (see section C for details)
    10   ( )  Sexual Orientation (specify)
    11   ( )  Parental Status (specify)
    12   ( )  Genetic Information (specify)

## F.    ISSUE(S): (actions, decisions, policies or practices alleged to be discriminatory)

( ) Appointment/Hire, (x) Assignment of Duties, (x) Awards, ( ) Conversion to Full Time,
( ) Disciplinary Action – Demotion, ( ) Disciplinary Action – Suspension, ( ) Disciplinary Action
– Removal, ( ) Disciplinary Action – Other (specify), ( ) Duty Hours, ( ) Evaluation Appraisal,
( ) Examination Test, (x) Harassment – Non-Sexual, (x) Harassment – Sexual, ( ) Medical
Examination, ( ) Pay Including Overtime, ( ) Promotion, ( ) Non-Selection, ( ) Reassignment –
Denied, ( ) Reassignment – Directed, ( ) Reasonable Accommodation, ( ) Reinstatement,
( ) Retirement, ( ) Termination, ( ) Terms/Conditions of Employment, (x) Time and Attendance,
( ) Training, ( ) Other (explain):

## G.    REMEDY REQUESTED:

    1.  Reprimand or suspend  James Lantelme  and Steve Hanas;
    2.  Approve requests for advance sick leave, telework, flex-time schedule and desktop printer;
    3.  Provide written apologies from James Lantelme and Steve Hanas;

---

She alleges that the adverse actions occurring outside the 45th day are part of a continuing violation involving leave issues,
work assignments, revised position description, and harassment. AP was counseled about the 45-day time requirement for
contacting an EEO Counselor.  She also was notified that if she files a formal complaint, the alleged adverse actions may be
deemed to be discrete acts rather than a continuing violation, and therefore, untimely.

Revised 03/2004

*9 Aug 04*

4.  Assign new office work space;
5.  Reassign to another FDIC Unit/Division in the Washington, DC;
6.  Approve CSA and Cash Awards;
7.  Provide back-pay for Team Leader function at the CG-13 level;
8.  Insure cessation of maltreatment by Hanas and Lantelme; and
9.  Award $300,000 compensatory damages and $3,000,000 punitive damages.

## H.    SUMMARY OF COUNSELOR'S INQUIRY:

### (1) Aggrieved Person:

a.  Ms. Yolanda C. Gibson-Michaels, the Aggrieved Person ("AP"), alleges discrimination based on race (African-American), color (Black), sex (female) and reprisal (prior EEO activity) when, Supervisory Counsel Steven Hanas ("Hanas"), AP's first-level supervisor, held her to different standards than similarly situated employees with respect to leave approval, tour of duty and telework requests. AP alleged that Hanas is influenced by James Lantelme ("Lantelme"), AP's second level supervisor and the alleged discriminating official in AP's prior EEO complaint. The following are incidents in support of AP's claims:

1.  On October 18, 2004, September 17, 2004 and August 20, 2004, AP was denied advanced sick leave for September 9, 2004, August 13, 2004, August 18, 2004, October 14, 2004 and October 15, 2004.
2.  On September 22, 2004, AP was notified that her requests for advanced sick leave would not be approved as long as she had a use/lose annual leave balance. On the same date, Hanas commented that he only would approve advance sick leave if she was pregnant.
3.  On September 1, 2004 and September 22, 2004, AP's telework requests were denied.
4.  On August 30, 2004, AP's flex work schedule was closely scrutinized when Hanas ordered her to provide updated leave statements for August 16 and August 17, 2004 to account for her flex-time schedule; and, provide written justification of her work related tasks she accomplished while working after 5:00 p.m.
5.  On August 20, 2004, AP learned that based on an impromptu 3-year audit her annual leave was charged for approved sick leave she had used in 2002, 2003 and 2004.
6.  On August 20, 2004, AP was instructed to revise her CTAW to reflect her absence on August 13, 2004 as sick leave, and her absence on August 18, 2004 as annual leave. In addition, Timekeeper Eyvonne Bryant was instructed to charge six (6) hours of late arrivals to AP's annual leave.

-4-

b.  AP alleges discrimination based on race (African-American), color (Black), sex (female) and reprisal (prior EEO activities) when, Hanas harassed AP and created a hostile work environment. AP believes that Hanas was influenced by Lantleme. The following are incidents in support of AP's harassment claim:

   1.  October 8, 2004, Hanas denied AP work-related assistance request by returning her assignments with a memorandum stating that AP's position description included the duties for which she requested assistance. AP believes that similarly situated employees are supported by additional team members, support staff, interns or clerical assistance.
   2.  On September 22, 2004, Hanas spoke to AP in an aggressive angry tone stating "why are you still in my office since I don't have any more to say to you;" and "there's no law against yelling."
   3.  On September 15, 2004, AP was denied a dedicated desk printer.
   4.  On September 10, 2004, AP's acting team leader duties were removed and she was ordered to request work-related assistance through Hanas.
   5.  Since July 2004, Hanas has continuously humiliated AP by making personal attacks against her character. Hanas also treats AP in a disrespectful and abusive manner on a regular basis. In August 2004, the following events occurred:
       i.  Hanas displayed an antagonistic behavior toward AP by yelling in a loud voice: "you're the only one who asks questions; no one else asks questions, but you; you're the only one who has leave balance problems; you're the only one that's different; why do you repeat yourself; and what do you want now?"
       ii. When AP questioned Hanas about his negative attitude toward her, Hanas responded in a loud berating tone: "I make the rules; you do as I say; these are my rules, not your rules; I'm the boss; you're not the boss; this is my office; you don't make assignments to interns; I make assignments because you're not a supervisor."

c.  AP alleges discrimination based on reprisal (prior EEO activities), when Lantelme held her to different standards with respect to leave approval. The following are incidents in support of her claim:

   1.  On August 19, 2004, while reviewing her 2002-2004 leave audit, AP learned that Lantelme instructed Administrative Assistant Dawn Doy-Johnson ("Johnson") to change, all AP's approved requests for advanced sick leave to annual leave.
   2.  On August 19, 2004, Johnson requested AP for the medical documentation she previously had provided for approved advanced sick leave and friendly family medical leave in 2002 through 2004. AP states that changes, deletions and modification were made against her annual leave with the comment "medical documentation needed to restore annual leave."
   3.  On April 14, 2004, AP's learned that Lantelme rescinded her former first-level supervisor's approval of 32-hours advanced sick leave and ordered Secretary JoAnn Williams to charge 32-hours to AP's annual leave.

4

d. AP alleges discrimination based on reprisal (prior EEO activity) when Lantelme harassed AP and created a hostile work environment. The following are incidents in support of AP's harassment claim:

1. On August 20, 2004, AP learned that Lantelme challenged her entitlement to benefits under her May 2004 workman's compensation claim.

2. On June 18, 2004, AP received a revised position description ("PD") that deleted team leader duties consisting of administering, managing, and overseeing the Outside Counsel and Legal Support Services programs. AP states that she had been performing the CG-13 level team leader duties under Lantelme's supervision since 1998. G. Penny Eglas, Manager Administration Unit, operating under the supervision of Lantelme, rewrote and downgraded AP's position description to a clerical (secretary) level.

3. Since February 2004, Lantelme has continued to deny AP new office space. AP is the only employee forced to sit in a cubicle outside an office formerly occupied by a deceased co-worker.

4. Since October 2000, Lantelme has denied AP cash rewards and the Chairman's (CSA) award. Also, he has refused to give AP a desk audit report based on a CG-12 position.

5. Since 2000, only AP has been subjected to impromptu leave audits.

### (2) Involved Manager Response:

**Stephen M. Hanas ("Hanas"), (First Level Supervisor), Supervisory Counsel, Legal Division, 550 17th Street, NW, Washington, D.C. 20429. Telephone Number (202) 736-0353.**

Hanas states that AP has used excessive and unscheduled leave since she was placed under his supervision in July 2004. Specifically, Hanas states that a time and attendance leave audit covering the period of 2002 through April 2004 showed that AP used leave or was tardy in almost every pay period or about 60% of her official time. Hanas explains that his decision to deny AP's requests for advanced sick leave, FMLA and telework was based on AP's leave audit findings, which reflected 164 negative sick leave hours and 193 accrued annual leave hours. Hanas states that he wants AP to charge future unscheduled absences and tardiness to annual leave or leave without pay. In addition, Hanas indicates that AP was instructed to submit her leave statements and revised CTAWs timely to the timekeeper because AP's continuous failure to provide justification for her excessive leave and tardiness prolonged the administration process for the timekeeper. Hanas explains that he did not charge AP with AWOL for any of her unscheduled absences or tardiness. Instead, he elected to counsel AP about her abusive leave pattern and her continued failure

- 6 -

to comply with the leave requirements. AP, however, still came to Hanas demanding that her leave requests be approved, even though they were outside the Corporate leave policy. Hanas states that AP's leave requests were approved/disapproved in the same manner as other employees under his supervision. Hanas contends that during several discussions regarding AP's leave issues, their conversations escalated into verbal confrontations that resulted in AP speaking in a rude and disrespectful manner.

In addition, Hanas states that he asked his staff to provide work schedules of their tour of duty and to route all work assistance requests through him. According to Hanas, AP works a flexible schedule with a tour of duty of 8:00 a.m. to 4:45 pm based on a variable time option that allows her to come to work within the time band of 6:30 a.m.- 9:15 a.m. and work no later than 3:00 p.m.- 7:00 p.m. AP was verbally informed to apprise him, for time and attendance purposes, when she worked flex time. Hanas states that he counseled AP regarding her abusing the flex schedule when she came in at a different times or left work at a different time each day. He asked her to submit leave statements for her late arrivals and early departures, or she had the option to adjust her core hours. Hanas states that because AP refused to comply with his many requests for leave documents to support the days and hours when she did not report to work, he authorized the timekeeper to charge her annual leave. Additionally, Hanas states that he explained to AP that the purpose of the telework program is for work-related assignments that can be accomplished at home, not administrative duties such as time and attendance issues and EEO investigator's inquires. Hanas notes that AP's conduct was both disruptive and unprofessional regarding her responses to his many requests for time and attendance justification and documentation.

Hanas further indicates that he received a revised position description of AP's duties, and noted that the work described in her position description included four (4) assignments she had requested to be delegated to other staff members. Specifically, Hanas stated that the assignments included Xeroxing and distribution of monthly LCA reports, assembly of outside counsel and legal support desk books. Hanes states that he returned the assignments to AP after learning that they were part of her assigned tasks.

<u>James Lantelme ("Lantelme"), (Second Level Supervisor), Assistant General Counsel, Legal Division, 550 17th Street, NW, Washington, D.C. 20429. Telephone Number (202) 736-0120.</u>

Lantelme states that as AP's second line supervisor, he disapproved her 32-hour advanced sick leave, which was previously approved by her former first-level supervisor. According to Lantelme, he based his decision on AP's leave audit findings, which reflected a negative 164 hours of sick leave and 193 hours of accrued annual leave, plus missing medical documentation and leave statements. AP's leave audit was necessary in order to reconcile the administrative time and attendance system. In addition, Lantelme states that he disagreed with AP's allegations that she was subjected to unwarranted time and

7

attendance questions, scrutiny, repeated requests for medical documentation. Lantelme states that AP's harassment claims are without merit.

**(3) <u>Documents Reviewed</u> (if any): n/a**

## I. SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

Settlement:     Yes ( )     Date: (insert date)     No (x)

Through: Counseling_____, Mediation _____

Withdrawal:   Yes ( )     Date:  (insert date)     No (x)

<u>Ophelia Jones</u> _____          <u>(202) 416-2595</u>
Name of EEO Counselor                      Telephone Number

<u>Room 801-1237, 3501 N. Fairfax Drive, Arlington, VA  22226-3500</u>
Work Address

_EEO Counselor's Signature_                   <u>October 27, 2007</u>
                                              Date

FDIC
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500 · Office of Diversity and Economic Opportunity

November 19, 2004

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
# 7002 0860 0004 7269 5682

Nathaniel Johnson, Esquire
Nathaniel Johnson and Associates
1717 K Street NW, Suite 600
Washington, DC 20036

In Reply Refer To: Yolanda C. Gibson-Michaels
Agency Docket No.: FDICEO - 040056
Date Filed: November 4, 2004

Subject: Acceptance of Formal Discrimination Complaint

Dear Mr. Johnson:

This is regarding the formal discrimination complaint filed by Yolanda C. Gibson-Michaels ("Complainant")[1] against the Federal Deposit Insurance Corporation ("FDIC" or "Agency") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act ("ADEA") of 1967, as amended, 29 U.S.C. § 633a, and FDIC Circular 2710.4.

Complainant's formal complaint, dated November 4, 2004, was faxed to and received by our office on November 4, 2004, and is deemed filed on the date received. By e-mail dated November 5, 2004, Complainant forwarded to this office a proposed amendment to the formal complaint. By letter dated November 10, 2004, the Agency informed Complainant that she had not identified any specific claims in the formal complaint faxed to this office on November 4, 2004, and requested that Complainant clarify the specific claims being asserted. On November 14, 2004, Complainant responded by e-mail to the Agency's request for clarification.

Complainant initially contacted an Equal Employment Opportunity ("EEO") Counselor on September 23, 2004, alleging discrimination involving the Legal Division, Corporate Operations Branch, Legal Operations Section, Washington, DC. Informal EEO counseling was not successful in resolving the claim(s) raised and on October 19, 2004, Complainant was issued a Notice of Right to File a Formal Discrimination Complaint ("NRTF"). The NRTF advised Complainant of the procedures and time limit for filing a formal complaint.

[1] All official correspondence will be sent to Complainant's representative, with copies sent to Complainant, unless Complainant submits a written request directing the FDIC to send all correspondence directly to Complainant. 29 C.F.R. § 1614.605(d).

B3-1

GOVERNMENT EXHIBIT 7

Re: Yolanda C. Gibson-Michaels, FDICEO - 040056                                Page 2 of 5

Based on Complainant's formal complaint, Complainant's e-mails dated November 5, 2004, and November 14, 2004, and the enclosed EEO Counselor's Report, the following claims are identified:

1. Whether Complainant was subjected to continuing harassment that resulted in a hostile work environment on the bases of race (African American), color (Black), age (date of birth April 1, 1959), sexual orientation (unknown), and reprisal by her first level supervisor Stephen Hanas. The following incidents were cited by Complainant in support of this claim:

    a. On November 1, 2004, Mr. Hanas issued two memoranda to Complainant that accused Complainant of: (1) a failure to comply with the Corporation's time and attendance rules; and, (2) numerous instances of disruptive behavior in the workplace.

    b. Since July 12, 2004, Mr. Hanas has continuously subjected Complainant to ridicule, verbal insults, disparagement, and sexual harassment every day of the week.[2]

    c. Mr. Hanas is subjecting Complainant to an unwritten time and attendance sign-in procedure..

2. Whether Complainant was discriminated against on the basis of reprisal on or about November 7, 2004, when Complainant's rights under the Family Medical Leave Act ("FMLA") were allegedly violated by Stephen M. Hanas, Supervisory Counsel, Legal Division, and James T. Lantelme, Assistant General Counsel, Legal Division.

If the above-identified claims are incorrect, please inform Mr. Chester Fisher, Senior EEO Specialist of the claim(s) Complainant is alleging to be discriminatory, as well as the relevant date(s). This information must be provided, in writing, within five (5) calendar days of Complainant's receipt of this letter to Mr. Fisher at the address provided below. If this Office does not receive a written reply within five (5) calendar days of receipt of this letter, the above-identified claim will be forwarded for investigation. Due to delays with the Agency receiving mail sent through the U.S. Postal Service, a copy may also be sent by facsimile transmission to Mr. Fisher at (202) 416-4295.

---

[2] Complainant provided the following examples to the EEO Counselor: (1) On September 22, 2004, Mr. Hanas allegedly spoke to Complainant in an angry tone stating "why are you still in my office since I don't have any more to say to you:, and "there's no law against yelling"; (2) in August 2004, Mr. Hanas allegedly spoke to Complainant in a loud voice saying "you're the only one who asks questions; you're the only one who has leave balance problems; you're the only one that's different; (3) When Complainant questions Mr. Hanas about his negative attitude toward her, he allegedly responds in a loud berating tone: "I make the rules; you do as I say; I'm the boss; this is my office; you don't make assignments to interns; I make assignments because you're not a supervisor."

B3-2

Re: Yolanda C. Gibson-Michaels, FDICEO - 040056                                      Page 3 of 5

All correspondence regarding this complaint must include the Agency Docket Number (FDICEO-040056) and the date filed (November 4, 2004). This information will assist us in responding promptly. Correspondence forwarded to this Office by regular and certified mail should be addressed in the format indicated below:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> COMPLAINTS PROCESSING BRANCH
> ATTN: CHESTER FISHER
> ROOM 801-1234
> 3501 NORTH FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500

Overnight and express mail and hand deliveries should be to:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> COMPLAINTS PROCESSING BRANCH
> ATTN: CHESTER FISHER
> 801 17TH STREET, NW (ROOM 1234)
> WASHINGTON, DC 20434

Complainant will be notified of the investigator assigned to conduct the investigation. If evidence obtained during the investigation indicates that dismissal of a claim is appropriate, all decisions will be made in accordance with the U.S. Equal Employment Opportunity Commission ("EEOC") regulations at 29 C.F.R. § 1614.107. If a hearing is requested at the conclusion of the investigation of the accepted claim(s), an administrative judge appointed by the EEOC may review the dismissed claim(s). However, there is no immediate right to appeal the dismissed claim. Any partial dismissal may not be appealed until final agency action is rendered by the Agency on all the claims. 29 C.F.R. § 1614.107(b). A final agency action is either a Final Agency Order (if there is a hearing) or a Final Agency Decision (if no hearing is held). A complaint that is dismissed in its entirety may be appealed after a Final Agency Decision is issued. Complainant will be provided appeal rights with the final agency action.

Pursuant to the EEOC regulations at 29 C.F.R. § 1614.108, a copy of the Report of Investigation ("ROI") is to be forwarded to Complainant within 180 calendar days of the date that Complainant filed the formal complaint, unless there is a written agreement to an extension. Prior to receipt of the ROI, Complainant may amend this complaint to add claims that are like or related to the claim(s) raised in this complaint. 29 C.F.R. § 1614.106(d). There is no requirement that Complainant seek EEO counseling on these new claims. However, if the new claim is not like or related, then Complainant will be referred to an EEO counselor. Complainant must submit any new claim(s) to this Office to the address indicated above.

B3-9

Re: Yolanda C. Gibson-Michaels, FDICEO - 040056                                    Page 4 of 5

At the time the ROI is transmitted, a Notice about participating in the FDIC's EEO Mediation Program and the Right to Request a final agency action with or without a hearing will be provided. Complainant may elect to participate in the FDIC's EEO Mediation Program or request a hearing before an Administrative Judge appointed by the EEOC or request a Final Agency Decision without a hearing to be issued by Donald E. Powell, Chairman, FDIC, or his designee. The Notice will provide detailed information relating to the procedures and time limits imposed for making the election and requests.

The EEOC regulations also provide that if 180 calendar days have elapsed from the filing date of the formal complaint, and a copy of the ROI has not been received, then Complainant may request a hearing before an Administrative Judge appointed by the EEOC, or may file an action in federal district court. Unless this Office receives written notification from Complainant that one of these options is being exercised, this Office will continue processing this complaint.

When 180 calendar days have elapsed from the filing date of the formal complaint, and Complainant requests a hearing, Complainant must send the written request directly to the U.S. EEOC Washington Field Office to:

> U.S. Equal Employment Opportunity Commission
> Hearings Unit
> Washington Field Office
> 1801 L Street, N.W.
> Suite 100
> Washington, DC 20507-1002

Complainant must certify that a copy of the request for a hearing was also sent to the FDIC to Michael P. Moran, Acting Chief, Complaints Processing Branch at the FDIC address indicated above.

If there are any questions, please contact Mr. Fisher at (202) 416-2523 or me at (202) 416-2014.

                              Sincerely,

                              Michael P. Moran

                              Michael P. Moran
                              Acting Chief
                              Complaints Processing Branch

B3-4

Re: Yolanda C. Gibson-Michaels, FDICEO - 040056                           Page 5 of 5


Enclosure: EEO Counselor's Report

cc:    Yolanda C. Gibson-Michaels
       2210 Anvil Lane
       Temple Hills, MD 20748
           VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
           # 7000 0860 0004 7269 5699

       Chester Fisher, Senior EEO Specialist, Complaints Processing Branch, ODEO
       Stephanie M. Gordon, EEO Specialist, Complaints Processing Branch, ODEO

B3-5



B3-6

7002 0860 0004 7269 5699

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Yolanda C. Gibson Michaels
2210 Anvil Lane
Temple Hills, MD 20748

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
11/20/04

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

040056

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7002 0860 0004 7269 5699

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

Chester

Sent To
Yolanda C. Gibson Michaels
2210 Anvil Lane
Temple Hills, MD 20748

Total Postage & Fees    $    $4.88

Certified Fee    $1.75
Return Receipt Fee (Endorsement Required)    $1.75
Restricted Delivery Fee (Endorsement Required)    $0.00

040056
11/19/2004

PS Form

B3-7

**FDIC**

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500        Office of Diversity and Economic Opportunity

December 7, 2004

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>
#7002 0860 0004 7269 5705

Nathaniel Johnson, Esquire
Nathaniel Johnson and Associates
1717 K Street NW, Suite 600
Washington, DC 20036

In Reply Refer To:   Yolanda C. Gibson-Michaels
Agency Docket No.:  FDICEO-040056
Date Filed:         November 4, 2004

Subject: <u>Amendment of Formal Discrimination Complaint</u>

Dear Mr. Johnson:

This is regarding the December 3, 2004, request of Yolanda C. Gibson-Michaels ("Complainant")[1] to amend the above-referenced formal discrimination complaint filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, which was received via e-mail in this office on December 3, 2004.

Based on a review of Complainant's e-mail request, the formal complaint is amended as follows:

3. Whether Complainant was discriminated against and subjected to harassment on the bases of race (African-American), sex (female), and reprisal when the following incidents occurred on November 23, 2004, and December 1, 2004:

   a. Complainant was placed in an Absence without leave ("AWOL") status by her first level supervisor Stephen Hanas;

   b. Mr. Hanas allegedly denied leave to Complainant under the Family Medical Leave Act and charged time to her official time and attendance record without justification; and,

---

[1] All official correspondence will be sent to Complainant's representative, with copies sent to Complainant, unless Complainant submits a written request directing the FDIC to send all correspondence directly to Complainant. 29 C.F.R. § 1614.605(d).

B9-1

Gibson-Michaels, FDICEO-040056                                              Page 2 of 3

        c.  Mr. Hanas required Complainant to submit duplicate timesheets and leave
           slips for pay periods 21, 22, and 23.

The additional information that Complainant included in her e-mail is background information
and will not be investigated as a separate claim. A copy of Complainant's e-mail will be
forwarded to the EEO investigator assigned to conduct the investigation. Complainant may also
provide any additional background information and documents that she desires directly to the
EEO investigator.

If the above-identified claim is incorrect, please inform Chester Fisher, Senior EEO Specialist, of
the claims Complainant is alleging to be discriminatory, as well as the relevant date(s). This
information must be provided, in writing, within five (5) calendar days of Complainant's receipt
of this letter to Mr. Fisher at the address provided below. If this Office does not receive a written
reply within five (5) calendar days of receipt of this letter, all of the above-identified claims will
be forwarded for investigation. Due to delays with the Agency receiving mail sent through the
U.S. Postal Service, a copy may also be sent by facsimile transmission to Chester Fisher at (202)
416-4295.

All correspondence regarding this complaint must include the Agency Docket Number FDICEO-
040056 and the date filed, November 4, 2004. This information will assist us in responding
promptly. Correspondence forwarded to this Office by regular and certified mail should be
addressed in the format indicated below:

        FEDERAL DEPOSIT INSURANCE CORPORATION
        OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
        COMPLAINTS PROCESSING BRANCH
        ATTN: CHESTER FISHER
        ROOM 801-1234
        3501 NORTH FAIRFAX DRIVE
        ARLINGTON, VA 22226-3500

Overnight and express mail and hand-deliveries should be to:

        FEDERAL DEPOSIT INSURANCE CORPORATION
        OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
        COMPLAINTS PROCESSING BRANCH
        ATTN: CHESTER FISHER
        801 17TH STREET, NW (ROOM 1234)
        WASHINGTON, DC  20434

As previously stated in the FDIC's "Acceptance of Formal Discrimination Complaint" letter
dated November 19, 2004, Complainant will be notified of the investigator assigned to conduct
the investigation. The other terms of that letter still apply to this complaint.

B4-2

Gibson-Michaels, FDICEO-040056                                         Page 3 of 3

If there are any questions, please contact Chester Fisher, Senior EEO Specialist, at (202) 416-2523 or me at (202) 416-2014.

Sincerely,

*Michael P. Moran*

Michael P. Moran
Acting Chief
Complaints Processing Branch

cc:     Yolanda C. Gibson-Michaels
        2210 Anvil Lane
        Temple Hills, MD 20748
            VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
            #7002 0860 0004 7269 5712

        Chester Fisher, Senior EEO Specialist, Complaints Processing Branch, ODEO
        Stephanie M. Gordon, EEO Specialist, Complaints Processing Branch, ODEO
        Amy Del Valle, Oversight Manager, ODEO

B4-3

**Federal Deposit Insurance Corporation**
Room 801-1231, 3501 N. Fairfax Drive, Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

November 24, 2004

<u>VIA AIRBORNE EXPRESS OVERNIGHT MAIL</u>

Ms. Phyllis Griffith
US Investigations Services
6525 Belcrest Road, Suite 600
Hyattsville, MD 20782

Re:    <u>Investigation of the Complaint of Yolanda Gibson-Michaels (FDICEO-040056)</u>

Dear Ms. Griffith:

I am forwarding a copy of the administrative complaint file of Yolanda Gibson-Michaels for an
EEO investigation to be conducted. I appreciate your review of the information and request that
you forward the investigative plan to me for approval prior to initiating the investigation. Since
Barry Cohen is currently in the process of conducting a supplemental investigation in Ms.
Gibson-Michaels' previous complaint (FDICEO-040039), we request that he be assigned this
investigation if he is available.

You may e-mail the investigative plan and name of investigator to me at my e-mail address:
adelvalle@fdic.gov, prior to sending the hard copy by facsimile. In addition, please copy the
following individuals when you e-mail the investigative plan: Chester Fisher at
cfisher@fdic.gov and Michael P. Moran at mmoran@fdic.gov . You may fax the plan to (202)
416-4295.

Once the investigative plan, and travel request(s), if any, have been reviewed and approved, I
will forward the approval with a Notice of Authorization for the investigator to conduct the
investigation. The investigation is to be conducted at a cost consistent with the amount under the
terms and conditions of the GSA Contract Number GS-22F-9736H for Investigative Services
(ROIs) for the Office of Diversity and Economic Opportunity.

Thank you for your attention to this matter. If you have any questions, please do not hesitate to
contact me at (202) 416-2042.

Sincerely,

Amy L. Del Valle
Oversight Manager-Complaints Processing Branch

Enclosures
        Administrative File
        Travel Form

B4-4

| Sender Account Number 211777552 | Preprint Format No. 110807378 | Payment Sender Validated unless marked otherwise | Origin PL | Airbill Number 9562745043 |
|---|---|---|---|---|

**FROM (Company)**
FDIC/0100431HBK 00103

**Street Address** DQTRS
801 17TH ST NW   RM 108

| City WASHINGTON | State DC | ZIP CODE (Required) 20434 |
|---|---|---|

**Sent by (Name/Dept)**
Jury del Valle

**Phone (Required)**
202-416-6970

Bill to:
Receiver   3rd Party
Account No. (Required if 3rd Party)

Paid in Advance   Check No.   Amount

Billing Reference (will appear on invoice)
DETI

5 # of Pkgs   6 Weight (LBS)   7 Packaging   One box must be checked
Letter Express   Express Pack   Other Packaging

**4 Service Type**
☐ Express (Letter - 150 lbs)   10:30
☐ Noon   10:30 A.M. Extra charge.
Next Afternoon over 5 lbs charged at the Express rate.
☐ Next Afternoon (Letter - 5 lbs)
☐ Second Day

**2 TO (Company) PLEASE PRINT NEATLY**
USIS

**Street Address**
6525 Belcrest Road, Suite 600

| City Hyattsville | State MD | ZIP CODE (Required) 20782 |
|---|---|---|

**Attention: (Name/Dept)**

**Phone (Required)**
301 844 8235
Admin F/8

**Special Instructions**
☐ Saturday Delivery Extra charge Express only Not available to all locations
☐ Lab Pack Service
☐ Hold at Airborne

Declared Value ☐ or ☐ $
Asset Protection
Shipment Valuation .00

**Description**
Copy of Gibson-Michaels - 040056

**Sender's Signature**   M. Grace
**Date** 11/24/04
**Airborne Signature**   **Date**

Thank You for Shipping with Airborne

**AIRBORNE EXPRESS.**

PO BOX 662, SEATTLE, WA 98111-0662
1-800-247-2676

www.airborne.com   SENDER'S COPY

B4-5

7002 0860 0004

Yolanda C. Gibson Michaels
2210 Anvil Lane
Temple Hills, MD 20748

Total Postage & Fees $ $4.54

Postage $ $0.49
Certified Fee $2.30
Return Receipt Fee
(Endorsement Required) $1.75
Restricted Delivery Fee
(Endorsement Required) $0.00

0217
03

12/07/2004
Amended Complaint

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nathaniel Johnson & Associates
1717 K Street, N.W., Suite 600
Washington, D.C. 20036

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X ☐ Agent ☐ Addressee
B. Received by ( Printed Name) C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7002 0860 0004 7269 5705

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1035

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Yolanda C. Gibson Michaels
2210 Anvil Lane
Temple Hills, MD 20748

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X ☐ Agent ☐ Addressee
B. Received by ( Printed Name) C. Date of Delivery 12-8
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7002 0860 0004 7269 5712

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1035

B4-6

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

04 0056

1. Article Addressed to:

Nathaniel Johnson & Associates
1717 K Street, N.W., Suite 600
Washington, D.C. 20036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____    ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Lauren    1-13-5

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

V. Gibson Michaels
04 0056

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number    7099-3400-0006-4368-6010
(Transfer from service label)

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

---

Sidewall text / certified mail receipt:

7099 3400 0006 4368

Postage $  $0.60
Certified Fee  $2.30
Return Receipt Fee
(Endorsement Required)  $1.75
Restricted Delivery Fee
(Endorsement Required)  $0.00

Total Postage & Fees  $  $4.65

To: Nathaniel Johnson & Associates
1717 K Street, N.W., Suite 600
Washington, D.C. 20036

V. Gibson Michaels
04 0056
01/12/2005

B4-7

NTEU Chapter 207

Federal Deposit Insurance Corporation

## GRIEVANCE

| | |
|---|---|
| Employee's Name: | Yolanda Gibson Michaels |
| Employee's Title: | Information Specialist, CG11 |
| Employee's Division/Branch/Section: | Legal Division |
| Employee's Representative: | NTEU Chapter 207, Donna Schull |
| Representative's Address: | 550 17th Street, NW, Room 2123, Washington, DC |
| Representative's Telephone Number: | 202-898-8703 |
| Date Submitted: | September 14, 2004 |

*Summary*

*Statement of the Violation:*

*Ms. Gibson-Michaels was given a disciplinary action of five business days suspension for unprofessional and/or inappropriate behavior that management found her guilty of. The three specifications that are given under Reason 1 to support the disciplinary action are not accurately reported in the memo from Mr. James Lantelme, Assistant General Counsel. This is the foundation that the five day suspension was based on. We are grieving that the employee was unfairly reprimanded and the information that this suspension was based on was collected through a third party that is no longer available to verify the testimony to the accuracy of the information. The manner in which this information was obtained is also questionable and in our opinion has violated several articles in the negotiated agreement. This action is based on three accusations that another employee has stated Ms. Gibson-Michaels said to her to make her feel uncomfortable, but the actions of management with regard to these statements do not support their statement that they felt any real threat was an issue.*

I.  *Violations to agreements and programs charged:*
   1. *Article 3, Section 4 of the Negotiated Agreement*
   2. *Article 3, Section 7 (d)(1) and (2) of the Negotiated Agreement*
   3. *Article 31, (6)*
   4. *Article 45, Section 2*
   5. *Privacy Act of 1974*
   6. *All other appropriate rules, procedures and guidance's.*


GOVERNMENT EXHIBIT

## II.   *Relief Requested*

Remedy Requested:

1. That the suspension be rescinded and Ms. Gibson-Michaels be paid back full compensations for the 40 hours she was suspended and that all references records related to the suspension be expunged and destroyed from all FDIC records and files
2. Monetary Compensation be awarded as allowed under the Privacy Act of 1974 for each violation.
3. All other remedies allowed by law.
4. Attorneys' fees.

Yolanda Gibson Michaels

Donna Schull
NTEU/Chapter 207

Cc:   Yolanda Gibson Michaels
Barbara J. Moffett, Employee & Labor Relations
Elizabeth Coll, NTEU President, Chapter 207
Joanna Hopkins, Chief Steward, Chapter 207
Robert Wooding, Employee & Labor Relations

Office of the Vice Chairman

October 22, 2004

MEMORANDUM TO:        Yolanda C. Gibson-Michaels
                      Information Specialist

FROM:                 Robert W. Russell
                      Deputy to the Vice Chairman

SUBJECT:              Step Four Grievance Response

This is the Step Four response to your grievance dated September 14, 2004, concerning the issuance of a five calendar day suspension for unprofessional and/or inappropriate behavior. I received your grievance at step four on October 12, 2004, after your representative requested that steps 1, 2, and 3 be waived.

The relief requested includes:

1. That the suspension be rescinded and Ms. Gibson-Michaels be paid back full compensations for the 40 hours she was suspended and that all references records related to the suspension be expunged and destroyed from all FDIC records and files.

2. Monetary Compensation be awarded as allowed under the Privacy Act of 1974 for each alleged violation.

3. All other remedies allowed by law.

4. Attorneys' fees.

I have thoroughly reviewed the relevant portions of the grievance file.

The record clearly reflects that you repeatedly approached Ms. Jeneka Johnson, a student intern, in an attempt to intimidate her and to influence an internal investigation. I agree with the deciding official that your conduct under Reason 1, Unprofessional and/or Inappropriate Behavior warrants disciplinary action. I also agree with her decision to reduce the proposed suspension from ten days to five days.

As a result, it is my decision to deny your grievance and all requested remedies in their entirety.

cc:
Donna Schull, NTEU
Robert Wooding, LERS

**Wooding, Robert**

| | |
|---|---|
| **From:** | Berman, Susan |
| **Sent:** | Tuesday, September 21, 2004 2:37 PM |
| **To:** | Wooding, Robert A |
| **Cc:** | Fisher, Chester; Moran, Michael P. |
| **Subject:** | RE: Gibson-Michaels Grievance Filing |

Ms. Gibson Michaels' EEO complaint does not include her suspension. She specifically informed ODEO that she would raise her suspension in "another forum."

-----Original Message-----
**From:** Wooding, Robert A
**Sent:** Tuesday, September 21, 2004 1:57 PM
**To:** Berman, Susan
**Subject:** FW: Gibson-Michaels Grievance Filing

I got Mike's out of office. Could you look at this for me.

Thanks

Robert Wooding
HR Specialist
Labor and Employee Relations
(202) 942-3072
(202) 942-3379(FAX)

-----Original Message-----
**From:** Wooding, Robert A
**Sent:** Tuesday, September 21, 2004 1:30 PM
**To:** Moran, Michael P.
**Subject:** FW: Gibson-Michaels Grievance Filing

I understand from Jim Lantelme that Ms. Gibson Michaels has already filed a EEO complaint covering the same action as this grievance. Can you review and let me know if they are materially the same.

Thanks

Robert Wooding
HR Specialist
Labor and Employee Relations
(202) 942-3072
(202) 942-3379(FAX)

-----Original Message-----
**From:** Schull, Donna
**Sent:** Tuesday, September 14, 2004 6:57 PM
**To:** Moffett, Barbara J.; Wooding, Robert A
**Cc:** Coll, Elizabeth A.; Gibson-Michaels, Yolanda C.; Schull, Donna
**Subject:** Gibson-Michaels Grievance Filing

NTEU Chapter 207

Federal Deposit Insurance Corporation

**GRIEVANCE**

# Nationwide
# *Agreement*

*between*

**FDIC**

## Federal Deposit
## Insurance Corporation

*and*



## National Treasury
## Employees Union

## ARTICLE 47
### GRIEVANCE PROCEDURE

### SECTION 1

A.    A grievance means any complaint --

    1.    by any employee concerning any matter relating to the employment of that employee;

    2.    by the UNION concerning any matter relating to the employment of any employees in the bargaining unit;

    3.    by any employee, the UNION, or the EMPLOYER concerning:

        a.    the effect of interpretation, or claim of breach, of this Agreement; or

        b.    any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment.

    4.    except that this Article shall not apply with respect to a grievance concerning:

        a.    any claimed violation relating to prohibited political activities;

        b.    retirement, life insurance or health insurance;

        c.    a suspension or removal in the interest of National security;

        d.    any examination, certification or appointment;

        e.    the classification of any position which does not result in the reduction in grade or pay of any employee;

        f.    filling of supervisory positions or other positions outside the bargaining unit;

        g.    a preliminary warning or proposal of an action which, if effected, would be covered under this procedure or under a statutory appeals procedure;

        h.    separations of probationary employees; and

        i.    an appeal by an employee of a RIF action

B.    Grievances may be initiated by employees, singly or jointly, by the UNION for itself, by the UNION on behalf of one or more employees, or by the EMPLOYER.

C.  This grievance procedure shall be the exclusive procedure available to the Parties and the employees for resolving a grievance, except as provided in Subsections 1.D. and E. of this Article; provided, however, that if an alleged grievance also constitutes an alleged unfair labor practice, the aggrieved Party has the option to seek redress under this Article or under the unfair labor practice procedure, but not both.

D.  A grievance involving an adverse or unacceptable performance action is defined as removal, suspension for more than fourteen (14) calendar days, reduction in grade, reduction in pay, or furlough of thirty (30) calendar days or less. Such a grievance may be raised either under the appropriate appellate procedure or under this negotiated grievance procedure, but not both. An employee shall be deemed to have exercised his or her option at such time as he or she timely files a notice of appeal under the applicable appellate procedure or timely files a grievance in writing in accordance with the provisions of Section 3 of this Article, whichever event occurs first.

A grievance involving discrimination based upon race, color, religion, sex, national origin, age, handicapping condition, marital status or political affiliation may, in the discretion of the aggrieved employee, be raised either under the appropriate statutory appeal procedure or under this negotiated grievance procedure, but not both. Pursuant to 5 U.S.C. Section 7121(d), an employee shall be deemed to have exercised his or her option to raise a matter either under the applicable appellate procedure or under this negotiated grievance procedure at such time as the employee timely files a formal complaint of discrimination or timely files a grievance in writing in accordance with the provisions of this Article, whichever event occurs first.

E.  A grievance involving all issues concerning travel and relocation (General Travel Regulations (GTR); Travel Card Program (TCP); and Frequent Traveler Lodging Stipend Program (FTLSP)) must be raised under this section of the negotiated grievance procedure. However, grievances filed over disciplinary actions related to the abuse or misuse of any travel-related program, or the non-payment of amounts due, must be filed under Article 45, Section 6 or Article 46. Similarly, a challenge to any adverse action based on a violation of a travel-related program must be processed under the procedures contained in Article 46. The employee must file such grievance within twenty (20) workdays after receipt of the notification from the Chief, Employee Services Section, Division of Finance (DOF) of a final determination covering a claim or a policy interpretation. The grievance must be filed with the Director, DOF who will be considered the Step Three official (there is no Step One or Step Two in this procedure). The grievance must be in writing and present the name(s) of the grieving employee(s). In addition, the grievant must present an account of the incident giving rise to the grievance, reference the appropriate contractual provision, law, rule, regulation or policy alleged to have been violated, and a statement of the remedy sought. The Director, DOF or designee will issue a final decision within ten (10) workdays after receipt of the grievance. If the grievant is not satisfied with the Step Three decision, the matter may be referred to arbitration by the UNION in accordance with the provisions of Article 48, Arbitration. The referral to arbitration must be made within twenty (20) workdays after receipt of the written decision of the Director, DOF or designee.

118

**SECTION 2**

A.    It is understood that an employee processing a grievance under this Article shall be limited to UNION representation, self-representation, or a representative approved by the UNION. If an employee presents a grievance without UNION representation, the UNION will be given the opportunity to be present at all formal discussions of the grievance and at the adjustment of the grievance. To the maximum extent possible the UNION will be given reasonable advance notice of such meetings.

B.    An employee will be given a reasonable amount of official time as provided in Article 9 of this Agreement to prepare and present a grievance or appeal, including attendance at meetings with the EMPLOYER. The employee must seek the consent, in writing, of his or her supervisor to use a reasonable amount of official time by using Form 2200/07, Appendix G. If the official time is denied for any reason the supervisors will inform the employee of alternate dates when they can be granted official time to meet with the UNION.

**SECTION 3**

Procedure for handling a grievance involving an adverse or unacceptable performance action.

An employee who receives a notice of final action regarding an adverse action (see Section 1.D. of this Article) has thirty (30) calendar days beginning with the day after the effective date of the action to appeal the action to the Merit Systems Protection Board. If the employee decides to seek recourse through this negotiated grievance procedure and the UNION decides to invoke arbitration, notice of a decision to seek arbitration must be served upon the EMPLOYER within twenty (20) workdays beginning with the day after the effective date of the action.

**SECTION 4**

Employees, designated representatives and employee witnesses will be assured freedom from restraint, interference, coercion, discrimination, intimidation, or reprisal arising out of their initiation or participation in the resolution of a grievance.

**SECTION 5**

Procedure for handling a grievance relating to all other grievable matters presented by, or on behalf of, an employee or group of employees.

A grievance as defined in Subsections 1.A. and 1.E. of this Article shall be processed as follows:

A.    STEP ONE

1.    The employee must present a written grievance to his or her immediate supervisor within twenty (20) working days from the date of the action giving rise to the grievance or twenty (20) working days after the employee becomes aware of the action.

119

2.   If, because of the nature of the grievance, either the UNION or the EMPLOYER believes the immediate supervisor is not the appropriate Step One official, that party may contact the HR Strategy and Labor Relations Section to discuss whether the immediate supervisor should hear the grievance. LERS will then consult with the appropriate official and designate the Step One official.

3.   Every grievance filed pursuant to this Article must be in writing and present the name(s) of the grieving employee(s) or a statement that the grievance is filed on behalf of the UNION. In addition, the grievant must present an account of the incident giving rise to the grievance, reference the appropriate contractual provision, law, rule, regulation or policy alleged to have been violated, and a statement of the remedy sought. The EMPLOYER agrees it will not dispose of the grievance solely because of an incorrect citation.

4.   a.   The Step One official shall meet with the grievant and a UNION representative within ten (10) working days after the receipt of the grievance for the purpose of discussing the grievance unless it is mutually agreed that the meeting be waived. If the Step One official is not located at the grievant's work site, the meeting will be conducted via video conference or by telephone.

     b.   The Step One official will issue a written decision to the grievant, with a copy to the UNION representative, within five (5) working days after the date of the meeting or the date on which the meeting was waived.

B.   STEP TWO

1.   If the grievant is not satisfied with the Step One decision, the grievant may appeal the grievance in writing to the Step Two Official, or designee within ten (10) working days after receipt of the Step One decision.

2.   The written appeal shall include a copy of the original grievance filed and a copy of the Step One official's decision.

3.   Unless mutually waived, the Step Two official or designee shall meet with the grievant and UNION representative (no more than one) within ten (10) working days after receipt of the appeal. If the Step Two official is not located at the grievant's work site, the meeting will be conducted by telephone. The Step Two official shall issue a written decision to the grievant with a copy to a designated UNION representative within seven (7) working days after the meeting or within ten (10) working days after receipt of the appeal if no meeting is held.

C.    STEP THREE

    1.    If the grievant is not satisfied with the Step Two decision, the grievant may appeal the grievance in writing to the appropriate Division/Office Director or designee located in Headquarters within ten (10) working days after receipt of the Step Two decision.

    2.    The written appeal shall include a copy of the original grievance filed, and a copy of the Step One and Step Two officials' decisions (if provided).

    3.    The Step Three official or designee shall meet with the grievant and no more than two (2) UNION representatives within ten (10) workdays after receipt of the written appeal unless the meeting is mutually waived by the Parties. If the Step Three official is not located at the grievant's worksite, the meeting will be conducted by telephone.

    4.    The Step Three official shall issue a written decision to the grievant with a copy to the designated UNION representative within ten (10) working days after the meeting or within ten (10) working days after the receipt of the appeal if no meeting is held.

E.    STEP FOUR (optional)

    1.    If the UNION is not satisfied with the Step Three decision it may at its option, appeal the grievance in writing to the Chairman or designee within ten (10) working days after receipt of the written decision of the Division Director/designee or communication of the mediator at Step Three.

    2.    This step of the grievance procedure is not available to those who are self-represented.

    3.    The written appeal should include a copy of the original grievance filed, and a copy of the step one, two and three officials' decisions.

    4.    The Chairman or designee shall issue a written decision to the grievant with a copy to the designated UNION representative within ten (10) working days of the receipt of the appeal.

F.    STEP FIVE

    1.    If the grievant is not satisfied with the Step Three or Four decision, as applicable the matter may be referred to arbitration by the UNION in accordance with the provisions of Article 48, Arbitration.  The referral to arbitration must be made within twenty (20) workdays after receipt of the written decision of the Division Director or designee (or, if timely elevated to Step 4

121

by the UNION, within twenty (20) workdays after receipt of the decision at Step 4.)

2.  The EMPLOYER shall provide the UNION with a listing of the names, titles, addresses, and telephone numbers of each management official referenced in this grievance procedure upon execution of this Agreement.

3.  Grievances involving a group or groups of employees within a work unit (such as an office or division) may be filed directly at Step 2 of this grievance procedure with the appropriate management official. Grievances involving a group or groups of employees in more than one (1) work office or division may be filed directly at Step 3 of this grievance procedure with the appropriate management official.

4.  All decisions at each step of the grievance procedure shall be delivered to the grieving employee, and his or her designated representative.

**SECTION 6**

A.  All time limits referred to in this Article, except those referring to arbitration, may be extended by mutual consent of the Parties prior to the expiration of such time limits.

B.  Failure of the EMPLOYER to observe the time limits where no extension has been agreed to shall entitle the grievant to advance the grievance to the next step.

C.  Failure of the grievant to observe the time limits contained in this procedure where no extension has been granted, will result in termination of the grievance unless the EMPLOYER has failed to respond timely at that step of the grievance process for the particular grievance in question.

**SECTION 7**

A.  Upon advance written request, the Parties have the obligation to produce, during official time and during the steps of the grievance procedure, available witnesses who have relevant information on the matter at issue.

B.  When two (2) or more employees file individual grievances involving the same facts, events and the same issues arising out of the same incident or a mass grievance, the grievances shall be consolidated and processed through the grievance and arbitration procedure together.

C.  All grievants and employee representatives required to travel to locations when meeting with EMPLOYER officials pursuant to this procedure shall be on official time and shall be paid travel and per diem expenses by the EMPLOYER in accordance with this Agreement.

122

**SECTION 8**

A.  If the EMPLOYER alleges that a grievance is not grievable and/or is not arbitrable the EMPLOYER shall notify the UNION in writing, stating all the reasons for such determination.

B.  When the EMPLOYER alleges an issue to be nongrievable or nonarbitrable, the UNION will have five (5) working days to amend and refile the grievance if it wishes.  It will be resubmitted at the level at which the issue was raised and proceed as a normal grievance.

C.  Questions that cannot be resolved by the Parties as to whether a grievance is on a matter subject to the negotiated grievance procedure or arbitration, shall be resolved by submitting the issue to the arbitrator assigned the full case.

D.  If a question of grievability is raised, the grievance shall proceed through the grievance procedure with the question of grievability joined to the grievance.

**SECTION 9**

In lieu of the step-by-step procedure set out in Section 5 of this Article, the UNION may submit a written grievance to the EMPLOYER when it alleges that the EMPLOYER has violated terms and conditions specifically granted to the UNION by statute or under this Agreement.  Such a grievance must be submitted in writing to the Assistant Director, Human Resources Branch, Division of Administration, within twenty (20) workdays after the occurrence of the act which gave rise to the grievance or twenty (20) workdays after the UNION became aware of the action. Upon receipt of the grievance, the UNION and EMPLOYER representative (no more than two representatives for each Party unless mutually agreed otherwise) shall meet within ten (10) workdays to discuss the grievance.  A written decision will be issued to the UNION within ten (10) workdays after the meeting.  If the UNION is not satisfied with the decision, it may appeal the decision to arbitration in accordance with the provisions of Article 48, Arbitration, such appeal to be made within twenty (20) working days after receipt of the written decision.

**SECTION 10**

When EMPLOYER grievances arise, they will be submitted in writing to the NTEU Chapter President.  Such a grievance must be submitted in writing to the Chapter President within twenty (20) workdays after the occurrence of the act which gave rise to the grievance or twenty (20) workdays after the EMPLOYER became aware of the action.  The management official who filed the grievance, or designee, will meet within ten (10) workdays with the Chapter President or designee, and/or National NTEU representative to assure that all pertinent facts are made available.  The Chapter President or designee will provide a written decision to the management official or designee within ten (10) workdays after the date of the meeting.  If the grievance is not settled by this method, the matter may be referred to arbitration by the EMPLOYER.  The decision to seek arbitration shall be made within twenty-one (21) calendar days after receipt of the written decision.  A letter invoking the grievance for arbitration must be served on the UNION's National President within twenty (20) workdays of the written decision.

123

## ARTICLE 48
## ARBITRATION

### SECTION 1

A.    Upon written notification by either the EMPLOYER or the UNION, any unresolved grievance processed under Article 47, Grievance Procedure, may be appealed to binding arbitration.

B.    Such appeals must be hand-delivered or sent by certified mail to the regional National Counsel, NTEU or the Assistant Director, HR Strategy and Labor Relations Section, FDIC, 550 17th Street, N.W., Room PA-1730, 5018, Washington, D.C. 20429.  Any appeal to arbitration must be made within the time limits set out in Sections 3, 5, and 9 of Article 48, Grievance Procedure. In order to expedite the optional arbitrator selection procedures outlined in Section 2, below, a courtesy copy of the invocation will be provided (normally by fax) to the senior counsel, FDIC, Legal Division, Labor and Employment Law Section, Washington D.C.

### SECTION 2

The procedure for selecting an arbitrator for grievances arising under this Agreement is set forth below.

    A.    Optional procedure: when arbitration is invoked, the moving party may, at its option, contact the Senior Counsel, FDIC Legal Division, Labor and Employment Law Section or the Regional National Counsel, NTEU, as appropriate, and request to use the next member, in rotational order, of the parties expedited arbitration panel.  If the parties mutually agree to do so, no further "striking" procedure is required. The expedited arbitration panel is the panel referenced in Article 49, Section 2.

    B.    When arbitration is invoked and there is no mutual agreement to appoint an arbitrator from the expedited arbitration panel to hear the case, or no response from the other party concerning such request, the moving Party will, within ten (10) workdays after invocation, request a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service (FMCS).  A copy of the letter to FMCS shall be delivered to the other Party.

    C.    The moving party will attempt to contact the other party within five (5) workdays after receipt of the list from FMCS to seek agreement on an arbitrator.

    D.    If the Parties cannot mutually agree on an arbitrator, the following procedure shall be used to select an arbitrator:

        1.    If the date of the transmittal letter from FMCS is an even number, e.g., the second, fourth, the EMPLOYER shall select the first name to strike from the list.

124

2. If the date of the transmittal letter from FMCS is an odd number, e.g., the first, third, the UNION shall select the first name to strike from the list.

3. The other Party shall then strike one name from the list. The Parties shall repeat the procedure until one person remains on the list, which person shall be the duly selected arbitrator.

4. The parties will attempt to contact the selected arbitrator for the purpose of scheduling a hearing date within ten (10) workdays after the selection.

E. The FMCS shall be empowered to make a direct designation of an arbitrator to hear the case in the event either Party refuses to participate in the selection of an arbitrator.

F. If the Parties fail to agree on a joint submission of the issue for arbitration, each shall present a separate submission, with a copy to the other Party, and the arbitrator shall determine the issue(s) to be heard.

G. Failure to prosecute a grievance referred to arbitration shall render the grievance and arbitration request null and void. If a party who has referred a grievance to arbitration does not actively pursue the grievance for a period of four (4) months, the other party may thereafter provide written notice of at least sixty (60) days of its intent to declare the grievance null and void. If no arbitration hearing has been held during the notice period, then the case will be considered closed. The parties agree to cooperate on the scheduling of arbitration hearings within any such notice period.

## SECTION 3

A. The arbitrator's fees and expenses, if any, shall be borne equally by the Parties, unless otherwise stated in this Agreement. It is understood that any per diem costs of the arbitrator are governed by the applicable rules and regulations. The arbitration hearing will be held at a mutually agreed upon location, normally the EMPLOYER's premises, during the regular day shift hours of the basic workweek.

B. The grievant(s), the grievant's Chapter representative (one employee) and all employees who are called by the arbitrator as witnesses, and who are on active duty status, shall be excused from duty to the extent necessary to participate in the arbitration proceedings without loss of pay. If an employee must be excused from duty, the amount of time necessary to testify shall be granted in accordance with Article 9 of this Agreement.

C. A verbatim transcript of the arbitration proceedings shall be made unless the Parties mutually agree that one is not needed. The cost of the transcript will be shared equally by the Parties.

D. Either Party may file an exception to the arbitrator's award with the Federal Labor Relations Authority under regulations prescribed by the

Authority except—that exceptions to an arbitrator's award in connection with a grievance filed under Section 1.D. of Article 47, Grievance Procedure, shall be handled in accordance with the requirements of 5 U.S.C. Section 7121 (f). A copy of such exception shall be provided concurrently to the other Party.

E.  An arbitrator has the authority to award reasonable attorney fees in accordance with the standards established under 5 U.S.C. Section 5596.

## SECTION 4

A.  The arbitrator shall have the authority to make all grievability and/or arbitrability determinations. The arbitrator will render a decision on issues of grievability and/or arbitrability prior to addressing the merits of the original grievance. This does not preclude either party from petitioning the arbitrator to render a decision on issues of grievability and/or arbitrability prior to hearing the merits of the original grievance.

B.  The arbitrator shall have no power to add to, subtract from, or modify the terms of this Agreement. The award will be limited to the issues presented at arbitration. The arbitrator's decision will be final and binding and the arbitrator will have the authority to make an aggrieved employee whole to the extent such remedy is not limited by law.

C.  The arbitrator shall have the obligation of assuring that all necessary facts and considerations are brought before him or her by the representatives of the Parties.

126

Signed at Washington, D.C. this _17th_ day of _January_ , 2003.


FOR THE NATIONAL TREASURY          FOR THE FEDERAL DEPOSIT
   EMPLOYES UNION                     INSURANCE CORPORATION



Colleen M. Kelley                  Miguel A. Torrado, Associate
National President                 Director, Division of
                                   Administration, Human Resources
                                   Branch


****************


APPROVED at Washington, D.C. this  25th  day of February  , 2003



Donald Powell, Chairman
Federal Deposit Insurance Corporation

165

NOV-04-2004 11:58   FDIC   202 736 0612   P.01/08

ieral Deposit Insurance Corpor...

**RNAL COMPLAINT OF DISCRI...TION**

**Agency Docket Number FDICEO-040056**

OFFICE OF DIVERSITY
AND ECONOMIC OPPORTUNITY

NOV 4 2004

**Note:** This form is to be used if you believe you have been discriminated against because of race, color, national origin, sex, age, ~~mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information. Read carefully~~ the instructions of page 3 of this form prior to completion.

| Name of Complainant (Last, First, MI) | Position (Job Title/ Pay Plan/ Series/ Grade) | Individual ☑  Class ☐ |
|---|---|---|
| Gibson, Michaels, Yolonda C. | Information Specialist, CG-11 | (Check type of complaint) |

**Home Address** (Number Street, City, State, Zip Code)
2210 Arritt Lane
Temple Hills, MD 25748

Home Phone (Area Code-Number): 301-630-3061

Work Phone (Area Code-Number): 202 7360204

Fax Number (Area Code-Number):

E-mail Address: Ygmakalye@yaho.com

**Organization Location/ Work Address**
(Division/ Office & Number Street, Room No., City, State, Zip Code)
Federal Deposit Insurance Corporation
550 17th Street NW
Washington, D.C. 20429

**Name & Address of Office you believe discriminated against you** (Division/ Office & Number Street, Room No., City, State, Zip Code)
FDIC - 1771 H St. NW
James Cantellos (white male) supervisor
Steve Manas (white male) supervisor

| Complainant's Representative (If applicable) | Attorney: ☑ YES  ☐ NO (Check appropriate box if applicable) |
|---|---|
| Representative's Name: | Name of Firm (If applicable): |

**Address** (Number, Street, City, State, Zip Code)
Delphia Jones
FDIC
1801 17 St., NW., Washington, D.C.

**Designation of Representative Form Completed and Attached** ☑ YES  ☐ NO

Phone (Area Code-Number):

Fax Number (Area Code-Number): (202) 416-2520

**Basis(es) of Allegation(s)** ("X" appropriate box(es) and specify)

| ☑ RACE (Specify) | ☐ DISABILITY (Specify) | ☐ GENETIC INFORMATION (Specify) | ☑ REPRISAL for participating in any stage of an administrative or judicial proceeding covered by the antidiscrimination complaint statutes or for opposing any practice made unlawful by such statutes (Specify the protected activity and date). |
|---|---|---|---|
| ☑ COLOR (Specify) | ☐ RELIGION (Specify) | ☑ AGE (Specify date of birth) DOB: 4/1/59 | |
| ☐ NATION ORIGIN (Specify) | ☑ SEXUAL ORIENTATION | | |
| ☐ Sex (Specify) | ☐ PARENTAL STATUS (Specify) | | |

**Claim(s) being complained of** (Check appropriate box(es) and specify the date(s) the alleged discriminatory claim(s) occurred.)

| Claim(s) | Date | Claim(s) | Date | Claim(s) | Date |
|---|---|---|---|---|---|
| ☐ Appointment/Hire | | ☑ Harassment, non-sexual | | ☐ Reprimand | |
| ☐ Assignment/Duty | | ☑ Harassment, sexual | | ☐ Retirement | |
| ☐ Award | | ☐ Overtime | | ☐ Suspension | |
| ☐ Demotion | | ☐ Promotion | | ☐ Termination | |
| ☐ Disciplinary Action | | ☑ Reassignment/Transfer | | ☑ Time and Attendance | |
| ☑ Evaluation/Appraisal | | ☐ Reduction-In-Force | | ☐ Training | |
| ☐ Expiration of Appointment | | ☐ Reinstatement | | ☑ Working Conditions | |
| ☑ Other (Specify): Hostile Environment, REPRISAL, ABUSIVE | | | | | |

Have you raised this claim(s) in another forum (as a grievance or with the Merit System Protection Board or U.S. District Court)? ☐ YES  ☑ NO
If Yes, specify the forum and give the date(s) filed:

Have all alleged discriminatory matters in this complaint been discussed with a FDIC EEO Counselor? ☑ YES  ☐ NO

| Name of EEO Counselor: | Date you received the Notice of Right to File a Formal Complaint: |
|---|---|

**What corrective action are you seeking?**
3 million dollars damages
Reassignment Removal of Merit James Cantellos, Asst. Director and Steve Manas, Supervisor

Complainant's Signature

Date of Complaint: 11/3/04

DIC 2710/01 (Revised 03/2004)   (See Page 3 for Instructions in Completing Form and Privacy Act Statement)

GOVERNMENT EXHIBIT

Federal Deposit Insurance Corporation
FORMAL COMPLAINT OF DISCRIMINATION
Agency Docket Number FDICEO-040056

**CLAIM NUMBER 1**

I believe that I suffered discrimination based on [choose one or more: race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information]

Race, Sex, Color _____, when on 11/11/04 _____, [Explain what happened]
_____(Basis(es))_____                 _____(Date)_____

( Documentation Attached )

[Provide names of involved management official(s) and or witnesses]

[Explain why you believe the action was discriminatory, e.g. discriminatory statements, others who were treated more favorably, or any other reason(s)]

**CLAIM NUMBER 2**
[Use same format as for Claim Number 1 above]  Attach additional sheets, if necessary.

Jones, Ophelia

| | |
|---|---|
| **From:** | Gibson-Michaels, Yolanda C. |
| **Sent:** | Tuesday, October 12, 2004 1:28 PM |
| **To:** | Jones, Ophelia |
| **Subject:** | Designation of Rep-Informal1.doc |

## DESIGNATION OF REPRESENTATIVE

### Agency Docket Number FDICEO-040056

I, Yolanda C. Gibson-Douglas, hereby designate the individual listed below to serve as my representative in all matters pertaining to my discrimination claim(s) against the Federal Deposit Insurance Corporation.

Name of Representative:     Attorney Nathaniel Johnson & Associates

Address:                    1717 K Street NW - Suite 600

                            Washington, DC 20036

Telephone Number:          202-508-3645

Facsimile Number:          202-331-3759

E-Mail Address:            nathanielesquire@aol.com

I understand that the authority and responsibility granted to the above person by this designation may be terminated by me at any time. If this should occur, I will notify, in writing, the EEO Counselor, as indicated below:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> ATTN: OPHELIA JONES, EEO COUNSELOR
> ROOM 801-1235
> 3501 NORTH FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500
> Facsimile Number: (202) 416-2520

Although my representative may act for me in all matters pertaining to my discrimination claims, I understand that in the event I withdraw my claim during the EEO process or reach a settlement with the Federal Deposit Insurance Corporation, I must personally sign any withdrawal notice or settlement agreement.

Please sign, date, and return this form to the EEO Counselor via mail to the address indicated above or via facsimile transmission to (202) 416-2520.

Yolanda C. Gibson-Michaels {SIGNED}

Yolanda C. Gibson-Michaels                                    10/13/2004

10/12/2004

5

NOV-04-2004  11:58      FDIC                           202 736 0012    P.03/08

_____                    _____
Signature of Aggrieved Person                     Date    11/3/04

All official correspondence will be sent to the above designated representative, with copies to Aggrieved Person, unless Age
Person directs the FDIC in writing to send official correspondence directly to him or her.  29 C.F.R. § 1614.605(d).

10/12/2004

4

**FDIC**
Federal Deposit Insurance Corporation
550 17th Street NW, Washington, D.C. 20429-9990                              Legal Division

---

| | |
|---|---|
| **MEMORANDUM TO:** | Yolanda C. Gibson-Michaels<br>Information Specialist |
| **FROM:** | Stephen M. Hanas<br>Senior Counsel |
| **DATE:** | November 1, 2004 |
| **SUBJECT:** | Performance Review Meeting and Time and Attendance<br>Expectations |

---

This memorandum will memorialize the discussion we had, and the instructions I gave to you, last week during the meeting in which I gave you your performance rating under your annual Performance Management Plan (PMP). Specifically, we discussed your performance rating for the 2003-2004 rating cycle, my expectations for your performance in the new rating cycle, and my expectations regarding your time and attendance. Also present were Donna Schull, your NTEU representative, and Penny Elgas, Manager for the Administration Unit.

<u>Performance Expectations</u>

On October 27, 2004, we met to discuss your Performance Rating for the rating period 2003-2004; at which time I presented you with your performance appraisal that included the list of accomplishments for the rating period that you provided to me. During your performance review, we discussed your Position Description and the duties that are assigned to you. To eliminate any confusion, I have attached your current position description to this memorandum. If you are still unclear about what work is assigned to you, I will be happy to meet with you again to go over it with you. As we discussed at your performance review, you need to bring all of your work assignments up to date. Your responsibilities include, among other duties, updating data on several database systems, including LMIS and LPS, the Legal Division's management information and payment systems. Specifically, you need to input data on to the OCATS system so it is current. Currently, there are no entries on the system for 2004.

<u>Time and Attendance Expectations</u>

In the course of reviewing your PMP, we discussed your lack of compliance with the Corporation's time and attendance rules. Your current official hours are 8:00 am to 4:45 pm, including a 45 minute lunch period. Since July 12, 2004, I have observed that you have regularly been arriving between 9:00 am and 10:30 am, or later, virtually every day. You rarely, if ever, call in to say you will be late. When you take off the entire day, you call in that same day at about 10:30 am to one of the section's secretaries but never to me. I have had to ask you to put in

for Annual Leave or Leave Without Pay for those late arrivals and/or absences because you have failed to submit written leave requests upon your return to duty in accordance with Corporation leave policy. Effective immediately and as we discussed, I am directing that you either comply with your present declared work schedule or submit, in writing, a change in that schedule if you cannot make it in to work by 8:00 am. Note that under the Corporation's time and attendance policies for full-time work schedules, your starting time must be no later than 9:00 am.

Requests for annual leave or leave without pay are to be submitted by you and approved by me in advance of your absence, except in emergency situations.

I also direct that if you find that you are going to be late or cannot come in due to unexpected illness of yourself or family member, or another emergency, you are to call me at 202-736-0353 at or before your established starting time to inform me of your request for leave. If I do not answer the phone, you are to either leave an Audix message or leave a message with the secretary who answers the phone, and include a phone number where you can be reached in the event I need to speak with you about your leave request. If you comply with these procedures and have submitted appropriate documentation, I will grant either annual leave (to the extent it is available) or Leave Without Pay. Note that because you have a negative sick leave balance and still have available annual leave, I will not grant additional advanced sick leave at this time. Your failure to comply with my instructions will result in you being considered to be Absent Without Leave (AWOL) for the period of your absence. While AWOL is not a disciplinary action, charges of AWOL and your continued failure to comply with the terms of the Corporation's time and attendance policies can serve as the basis for disciplinary action to be taken against you, up to and including removal.

If you have personal or family issues that prevent you from arriving at work at your scheduled start time, we can pursue alternatives within the Corporation's policies such as a part-time tour of duty. In addition, the LifeWorks program is available to you 24 hours a day at 1-877-881-1360 to provide free, confidential assistance with all the issues of daily living.

Attachment

Cc:    Donna Scholl-NTEU Representative
       Penny Elgas- Manager of Administration

NOV-04-2004  11:59          FDIC                                    202 736 0012   P.07/08

**FDIC**

**Federal Deposit Insurance Corporation**
1717 H. Street NW, Washington, D.C. 20429-9990                                    Legal Division

November 1, 2004

**TO:**        Yolanda Gibson-Michaels
               Information Specialist

**FROM:**      Stephen M. Hanas
               Senior Counsel

**SUBJECT:**   Workplace behavior

This memorandum is to put you on clear notice concerning my expectations for your workplace behavior. Since becoming your first-line supervisor on July 12, 2004, I have had the opportunity to observe your behavior working within the Legal Services Unit and among others on the floor. I have noted numerous incidents of disruptive behavior which I describe below and which are having a detrimental impact on staff within our organization:

You have on many occasions come in to my office unannounced and interrupted ongoing conversations even when my door was closed. You continue to ask for advanced sick leave even after I and others have explained to you on many occasions that you have no entitlement at this time to additional advanced sick leave, and I will not grant it. You continually raise events that occurred before I was your supervisor and which have been closed. You have falsely accused a secretary and the Assistant General Counsel on this floor of physically assaulting you and me of verbally assaulting you. You repeated these false claims to other employees on the floor yet have refused to meet and cooperate further with the Corporation's investigators on this matter.

Recently, Penny Elgas, Manager for the Administration Unit, had to send you a memo in which she directed that you contact her first before you go to her suite of offices in the Main Building. This was occasioned by your showing up at those offices on September 22, 2004 for your appointment with an EEO investigator. Rather than just meet with the investigator, you walked through that office suite, disrupted staff who were working there, and told a number of Administration Unit employees to "tell the truth".

I have also learned that prior to my becoming your supervisor, you displayed numerous instances of disruptive behavior regarding previous time and attendance issues and an approved office social activity. After being advised that the issues you raised were reviewed by management, or in some cases, the Corporation's Management Response Team or the Office of Inspector General, and were found to be consistent with FDIC policy and/or practice, you continued to make references to your complaints.

While management in no way is attempting to diminish your rights, there are specific expectations that are essential for you to adhere to each and every workday.

It is critical that you avoid creating disruptions in the workplace, and that you conduct yourself in an appropriate manner when dealing with all individuals during the course of your workday.

7

202 736 0012    P.08/08

You must immediately discontinue interrupting staff while they are working just so that you may vent your frustrations. When a situation arises in the course of your work day that causes you concern, you should arrange a time to meet with me to discuss the issue. It is not appropriate for you to enter my office without invitation when the door is closed, or to interrupt conversations among staff members to air your concerns.

I expect you to conduct yourself in a professional manner with all individuals—this includes your supervisors as well as co-workers. I also expect that you will not use official corporate time to handle personal issues, but will focus your time on your assigned duties as set forth in your position description.

You have repeated many statements to me since I became your supervisor concerning issues that you have raised in past years. I have told you each time that the matters you raise were addressed by other FDIC management officials, and those issues are closed. Yet, you continue to reiterate these same issues.

The examples provided above cause me to have deep concern for your personal well being and your ability to conduct yourself on the job. Since these concerns have an impact on your capability to contribute to the work of the Corporation, I encourage you to seek counseling.

The WorkLife Program is a voluntary program which provides expert guidance and counseling to employees who desire to overcome problems related to daily life. An appointment has been made for you with the on-site counselor, Ms. Laurie Preston, on Wednesday, November 3rd, at 10:00AM. You are scheduled to meet with Ms. Preston in 1730 Pennsylvania Avenue, Room 2012. If you have any questions regarding the program prior to your scheduled appointment, you may contact Ms. Preston at (202) 942-3672.

During your appointment, please sign a consent statement (FDIC Form 2800/27) so that the counselor can inform me of your attendance. Ms. Preston is a licensed clinical social worker and your conversations with her will remain confidential. You are entitled to official time for this appointment, and may be granted additional official time at your request for up to six counseling sessions. If you choose to continue with the counseling program, future sessions during duty hours will need to be requested as annual leave, sick leave (to the extent that it is available), or leave without pay.

I strongly encourage you to participate in the program. While I have no desire to intrude in your private life, I am interested in your ability to fully perform your job for the FDIC. Further, while this program is voluntary, I believe that your concerns can be overcome with the proper assistance.

If you wish to discuss this matter, please feel free to contact me.

Cc: Donna Schull

# SETTLEMENT AGREEMENT

Between,
> Yolanda Gibson-Michaels,

> > Employee,

> > and

> Federal Deposit Insurance Corporation,

Date: January 14, 2005

> > Agency.

The parties to this Settlement Agreement (Agreement) are Yolanda Gibson-Michaels (Employee) and the Federal Deposit Insurance Corporation (FDIC). The parties agree to enter into this Agreement to resolve all employment related issues between the Employee and the FDIC. The terms of this Agreement are as follows:

1. The FDIC agrees to approve the Employee's application for the buyout under the terms of the current buyout program. Upon the effective date of the Employee's resignation, the FDIC shall process the buyout payment to the Employee under that program.

2. The Employee shall be placed on paid administrative leave for the period of January 13th through January 21st, 2005. During this period of paid administrative leave, the Employee will not report to her office, and the Employee will not be in or around FDIC premises without prior coordination with James Lawrence, Senior Counsel, or her current supervisor.

3. The FDIC agrees that it will not issue a proposed removal action against the Employee, nor will it issue any other type of proposed disciplinary action. In addition, the FDIC agrees that it will not file any claim or complaint against the Employee on the basis of any statements she has made or actions she has taken, up to the date of this Agreement in federal and state courts and any federal, state or local government administrative agency, based upon information known, or which reasonably should be known, on or before the effective date of this Agreement.

GOVERNMENT
EXHIBIT
11

4. The FDIC agrees to expunge the SF-50 and any other documentation of the 5 day suspension from the Employee's official personnel folder or records. If there are any references to AWOL charges in the employee's OPF they will be expunged. The expungement of this suspension and other leave changes from the personnel records and other records shall not result in the payment of any money to the Employee.

5. In consideration for the Agency's performance of the requirements of Paragraphs 1 through 4 above:

   a. The Employee agrees to resign from the FDIC with an effective date of January 21, 2005;

   b. The Employee hereby withdraws, with prejudice, all of the Equal Employment Opportunity (EEO) complaints which she has filed against the FDIC, regardless of where her complaints are in the EEO complaints process and the Employee agrees that she will cooperate in the processing of any paperwork necessary to effect these withdrawals; and

   c. The Employee agrees that her resignation from the FDIC on January 21, 2005 is irrevocable.

6. The Employee agrees that her resignation is completely voluntary and that this Agreement resolves her disputes with the FDIC to her satisfaction.

7. The Employee agrees that she will direct any and all requests for information about her employment with the Agency to the Division of Administration, Human Resources Branch, 550 17th Street, NW, PA 1730- 5040A, Washington, DC (202-942-3148). The only information that will be released is the dates of the Employee's employment, her grade, her salary and that she was performing at a fully successful level at the time of her resignation.

8. The parties agree and acknowledge that this Agreement was reached freely and in good faith, in complete resolution of any and all claims which may otherwise be asserted by the Employee, and in consideration of the terms and provisions provided in this Agreement. The parties agree that no money or other relief of any kind shall be provided to the Employee except as expressly stated in this Agreement. The FDIC and the Employee will bear their own expenses, including attorney's fees.

9. The Employee agrees to waive any and all rights to file a grievance, Office of the Inspector General complaint, Federal Labor Relations Authority charge, Merit Systems Protection Board appeal, or Equal Employment Opportunity Commission complaint, or to initiate any other administrative or legal action against the FDIC or any of the FDIC's current or former employees, or anyone else a party to this settlement, regarding any personnel action involving the Employee up to the effective date of this Agreement. This includes, but is not limited to, filing any action or complaint with the FDIC, the FDIC's Office of Diversity and Economic Opportunity, the FDIC's OIG, the FLRA, the EEOC, the MSPB, the Office of Special Counsel, federal and state courts and any federal, state or local government administrative agency, based upon information known, or which reasonably should be known, on or before the effective date of this Agreement.

B5-2

10. The Employee fully releases and forever discharges the FDIC, its present and former employees, representatives, officers, and directors, from any and all complaints, grievances, claims, demands, actions or causes of action that she has held, or may now or in the future hold, in any capacity whatsoever, as a result of her employment or as a result of any personnel action involving her, including, but not limited to, the claims set forth in her pending EEOC complaints.

11. This Agreement does not constitute and shall not be construed as an admission of liability on the part of the FDIC or as an admission by either party of the validity of the positions and contentions of the other party, including all present and former officials, officers, employees or agents of the FDIC, with regard to any claims which have been or may otherwise be raised by either party.

12. This Agreement has no precedential value for any current or future disputes, proceedings or settlements.

13. This Agreement is subject to the review and approval of the FDIC Office of Diversity and Economic Opportunity.

FOR THE EMPLOYEE:

_____     1/14/05
Yolanda C. Gibson-Michaels          Date

_____     1/14/2005
Donna Schull                         Date
National Treasury Employees Union

FOR THE FDIC:

_____     1/14/05
James R. Lawrence                    Date
Senior Counsel

REVIEWED AND APPROVED BY:

_____     14Jan06
Office of Diversity and Economic     Date
Opportunity

B5-3

3

**FDIC**

**Federal Deposit Insurance Corporation**
3501 Fairfax Drive, E-2070, Arlington, VA  22226-3500

Office of Diversity and Economic Opportunity

## EEO COUNSELOR'S REPORT
### AGENCY DOCKET NUMBER FDICEO-060043

**A.     AGGRIEVED PERSON:**

|   |   |
|---|---|
| **Name:** | Yolanda C.  Gibson-Michaels |
| **Job Title/Series/Grade:** | **Former FDIC Employee** |
| **Office/Division:** | N/A |
| **Work Address:** | N/A |
| **Home Address:** | 22210 Anvil Lane |
|  | Temple Hills, Maryland 20748 |
| **Home Phone No.:** | (301) 630-5062 |
| **E-mail Address:** | ygmichaels@yahoo.come |

**B.     AGGRIEVED PERSON'S REPRESENTATIVE** (if applicable) N/A (X)

Attorney:  Yes ( ) No ( )
Name:
Address:
Phone:

**C.     COMPLAINT INFORMATION**

Complaint is:    An Individual Complaint (X)    A Class Action ( )
Aggrieved Person Waived Anonymity: Yes (X)  No ( )
Negotiated Union Grievance Filed: Yes ( ) No (X)
For Mixed Cases - Appeal Filed (or to be Filed) with MSPB: Yes ( )  No ( ) N/A (X)
Has Aggrieved Person Filed Prior Complaint(s)? Yes (X)  No ( )

Docket Numbers: **(1)** FDIC- 97-39, filed March 28, 1997; **(2)** FDIC-98-67, filed
May 14, 1998; **(3)** FDICEO – 040039, filed April 30, 2004; **(4)** FDICEO-040056 filed
September 23, 2004; **(5)** FDIC-050054, filed April 27, 2005; **(6)** FDICEO-060013, filed
1/6/2006; and **(7)** FDICEO- 060025, filed 3/30/2006.

**D.     CHRONOLOGY OF EEO COUNSELING:**

| | |
|---|---|
| Date of Initial Contact: | 08/21/2006 |
| Date of Initial Interview: | 09/01/2006 |
| Date of Occurrence of Alleged Discriminatory Event: | 08/18/2006 |
| 45th Day After Event (or Knowledge of Event): | 11/01/2006 |
| If contact is beyond the 45th day, explain the reason for the delay: | n/a |
| Date Notice of Rights and Responsibilities issued: | 09/06/2006 |
| Date of Extension of Counseling:               90th Day: | n/a |
| Date of Final Interview: | 09/15/2006 |

Revised 03/2006



- 2 -

**Date Notice of Right to File a Formal Complaint issued:**        09/15/2006

**E.**     **BASIS(ES) FOR ALLEGED DISCRIMINATION:**

1   (x) Race (African American)
2   (x) Color (dark skin)
3   ( ) National Origin (specify)
4   (x) Sex (female)
5   (x) Age (date of birth: 04/01/59)
6   ( ) Mental Disability (specify)
7   ( ) Physical Disability (specify)
8   ( x) Religion (Christian)
9   (x ) Reprisal  (See Section C)
10 ( ) Sexual Orientation
11 ( ) Parental Status (specify)
12 ( ) Genetic Information (specify)

**F.**     **ISSUE(S): (actions, decisions, policies or practices alleged to be discriminatory)**

| | | |
|---|---|---|
| ( ) Appointment/Hire | ( ) Training | ( ) Promotion |
| ( ) Time & Attendance | ( ) Pay | ( ) Overtime |
| ( ) Reassignment | ( ) Reduction-In-Force | ( ) Retirement |
| ( ) Reinstatement | ( ) Assignments/Duties | ( ) Termination |
| ( ) Awards | ( ) Suspension | ( ) Transfer |
| ( ) Reprimand | ( ) Work Conditions | ( ) Demotion |
| ( ) Evaluation/Appraisal | (x) Harassment (non-sexual) | |
| (x) Sexual Harassment | (x) Other explain:  violations of rights as a federal employee | |

**G.**     **LOCATION OF ALLEGED DISCRIMINATORY EVENT**

Legal Division ("Legal")
3501 N. Fairfax Drive, Room D-5072
Arlington, Virginia 22226

**H. REMEDY REQUESTED:**

1. Reinstate to federal service effective January 21, 2005;
2. Deposit an additional $34,186.01 into checking account;
3. Restoration of annual and sick leave, and health benefits;
4. Award compensatory damages;
5. Attorney's Fees; and

Revised 1/2006

- 3 -

6. Removal of all FDIC's officials who violated rights and denied due process.

**H.    SUMMARY OF COUNSELOR'S INQUIRY:**

**(1)  Aggrieved Person:**

Ms. Yolanda C. Gibson-Michaels, the Aggrieved Person ("AP"), alleges she was discriminated against and harassed on the bases of race (African-American), color (dark skin), sex (female), age (DOB: 04/01/59), and reprisal (prior EEO complaints) when, on August 18, 2006, she learned that the surveillance (wiretap) FDIC subjected her to was unlawful and effectively violated her rights to due process.

Background

In January 2005, AP entered into a settlement agreement with the FDIC in which she agreed, in part, to resign from her position with the FDIC. AP challenged the validity of the agreement and in November 2005, the Merit Systems Protection Board ("MSPB") found the agreement was invalid. Therefore, the MSPB nullified the terms of the agreement and ordered the FDIC to reinstate AP with back-pay and benefits from January 2005. On December 19, 2005, the FDIC initiated the cancellation of AP's resignation to return her to an active pay status. AP was reinstated at full pay and placed on administrative leave pending a decision on the proposal to remove her from federal service. AP's employment with the Agency was effectively terminated on March 31, 2006. AP's prior allegations of discrimination are addressed in EEO complaints listed under Section C.

AP requested to enter informal counseling based on a new harassment claim. AP states that her rights under the No Fear Act, Whistleblower Protection Act and OPM prohibited personnel practices were allegedly violated by FDIC employees and management officials. The most recent incident occurred on August 18, 2006 when, AP learned that U.S. District Judge Ann Diggs Taylor ruled that surveillance (wiretaps) were unconstitutional. AP alleges that her rights were violated when a former FDIC contract investigator was authorized by FDIC management to access FDIC's security databases and illegally recorded her conversation with an employee without a court order. According to AP, she reported the FDIC for unlawful violations of her rights under ADEA, Title VII, whistleblower retaliation, deprivation of rights (salary, benefits and employment) and the Family Medical Leave Act ("FMLA") to the U.S. Attorney's Office, U.S. Congress and U.S. OPM.

As a result of the alleged discrimination practices, AP contends that she has suffered and continues to suffer damage to her career, personal and professional humiliation, and economic harm that have adversely affected her enjoyment of life. In addition, AP believes that she is the

Revised 1/2006

- 4 -

only FDIC former employee who was illegally tape recorded, suspended from duty, interrogated and physically escorted from FDIC's premises.

**(2) Involved Manager(s) Response:**

**James R. Lawrence ("Lawrence"), Assistant General Counsel, Legal Division, 3501 Fairfax Drive, Arlington, Virginia 22226. Telephone Number (703) 516-2216**

Lawrence states that as consideration for AP entering into a settlement agreement with the FDIC on January 14, 2005 and voluntarily resigning from the FDIC, she received a buyout of 50% of her salary. On January 12, 2005, AP signed a Statement of Intent to Resign with a Buyout from the Federal Deposit Insurance Corporation, which obligated AP to repay the FDIC the gross amount of the buyout if she were to return to employment with the FDIC within 5 years of her separation with a buyout. Lawrence notes that on December 19, 2005, the settlement agreement was cancelled and AP was retroactively restated in an active pay status and placed on administrative leave until she was effectively terminated on March 31, 2006.

Lawrence further states that AP pursued her age based discrimination claims under FDICEO-040039 (See Section C), which included the claim that AP was allegedly harassed and subjected to a hostile work environment when her conversation with another employee was surreptitiously tape recorded without AP's permission.

**(3) Documents Reviewed (if any):** n/a

## I.  SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

Settlement:     Yes ( )     Date: (insert date)     No (x)

Through: Counseling_____ , Mediation _____

Withdrawal:    Yes ( )    Date: (insert date)     No (x)

Ophelia Jones___                                    (703) 562-6082
EEO Counselor                                       Telephone Number

3501 Fairfax Drive, Room E-2072, Arlington, VA. 22226
Work Address

_____                     September 18, 2006
EEO Counselor's Signature                           Date

Revised 1/2006

09-20-2006 17:02                                                              PAGE4

## Federal Deposit Insurance Corporation
## FORMAL COMPLAINT OF DISCRIMINATION
### Agency Docket Number FDICEO-060043

le: This form is to be used if you believe you have been discriminated against because of race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information.  Read carefully the instructions of page 3 of this form prior to completion.

| Name of Complainant *(Last, First, MI)* | Position *(Job Title/ Pay Plan/ Series/ Grade)* | Individual ☒ Class ☐ *(Check type of complaint)* |
|---|---|---|
| Gibson-Michaels, Yolanda | Information Specialist - CG-11 (Former) | |

| Home Address *(Number Street, City, State, Zip Code)* | Home Phone *(Area Code-Number):* 301 630-5062 |
|---|---|
| 2210 Anvil Lane Temple Hills MD 20748 | Work Phone *(Area Code-Number):* Pending Reinstatement |
| | Fax Number *(Area Code-Number):* |
| | E-mail Address: Ycmichaels@yahoo.com |

| Organization Location/ Work Address *(Division/ Office & Number Street, Room No., City, State, Zip Code)* | Name & Address of Office you believe discriminated against you *(Division/ Office & Number Street, Room No., City, State, Zip Code)* |
|---|---|
| FDIC 550 17th Street, NW Washington, DC 20049 | FDIC Legal, Security, OIC and ODEO Director Michael Collins (FDIC) |

| Complainant's Representative *(If applicable)* | Attorney: ☐ YES   ☐ NO *(Check appropriate box if applicable)* |
|---|---|
| Representative's Name: | Name of Firm *(If applicable):* |
| Address *(Number Street, City, State, Zip Code)* Yolanda C Gibson-Michaels (Prose) 2210 Anvil Lane Temple Hills, MD 20748 | Designation of Representative Form Completed and Attached ☒ YES  ☐ NO |
| | Phone *(Area Code-Number):* 301-630-5062 |
| | Fax Number *(Area Code-Number):* |

**Basis(es) of Allegation(s) ("X" appropriate box(es) and specify)**

| RACE *(Specify)* ☒ Afro African | DISABILITY *(Specify)* ☒ FMLA | GENETIC INFORMATION ☐ *(Specify)* | REPRISAL ☒ *for participating in any stage of an administrative or judicial proceeding covered by the antidiscrimination complaint statutes or for opposing any practice made unlawful by such statutes (Specify the protected activity and date).* Whistle Blowing EEO |
|---|---|---|---|
| COLOR ☒ *(Specify)* Dark Complexion | RELIGION ☒ *(Specify)* Christian | AGE ☒ *(Specify date of birth)* DOB: 4/1/59 | |
| NATION ORIGIN ☐ *(Specify)* | SEXUAL ORIENTATION ☐ | | |
| Sex ☒ *(Specify)* Black Female | PARENTAL STATUS ☒ *(Specify)* | | |

**Claim(s) being complained of** *(Check appropriate box(es) and specify the date(s) the alleged discriminatory claim(s) occurred.)*

| Claim(s) | Date | Claim(s) | Date | Claim(s) | Date |
|---|---|---|---|---|---|
| ☒ Appointment/Hire | 12/9/05 | ☒ Harassment, non-sexual | | ☒ Reprimand | |
| ☒ Assignment/Duty | | ☒ Harassment, sexual | | ☒ Retirement-Involuntary | 8/27/06 |
| ☒ Award | | ☐ Overtime | | ☒ Suspension | |
| ☐ Demotion | | ☒ Promotion | | ☒ Termination | |
| ☒ Disciplinary Action | | ☒ Reassignment/Transfer | | ☒ Time and Attendance | FMLA |
| ☒ Evaluation/Appraisal | | ☐ Reduction-In-Force | | ☐ Training | |
| ☒ Expiration of Appointment | | ☒ Reinstatement | 12/9/05 | ☒ Working Conditions | |
| ☒ Other (Specify): FMLA, Whistleblower, FDIC Bank, Inside Trading, Signatory to Kenneth Lay (Enron) | | | | | |

| Have you raised this claim(s) in another forum *(As a grievance or with the Merit System Protection Board or U.S. District Court)?* ☒ YES  ☐ NO |
|---|
| If Yes, specify the forum and give the date(s) filed:  6/21/05, 9/27/06 Involuntary Separation for FDIC |
| Have all alleged discriminatory matters in this complaint been discussed with a FDIC EEO Counselor? ☒ YES  ☐ NO |

| Name of EEO Counselor: | Date you received the Notice of Right to File a Formal Complaint: |
|---|---|

What corrective action are you seeking?
Reinstatement, BackPay w/ Interest, Punitive Damages, Removal of Reputable FDIC Officials, mandatory, severances James Castentine/Joseph Honey/ Clarence

| Complainant's Signature | Date of Complaint 9/17/06 |
|---|---|

FDIC 2710/01 (Revised 03/2004)        (See Page 3 for Instructions in Completing Form and Privacy Act Statement)

GOVERNMENT EXHIBIT 13.3

09-20-2006 17:02                                                                                    PAGES

**Federal Deposit Insurance Corporation**
**FORMAL COMPLAINT OF DISCRIMINATION**
**Agency Docket Number FDICEO-060043**

**CLAIM NUMBER 1**

I believe that I suffered discrimination based on [choose one or more: race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information]

_Age, Race, Color, FMLA, Sex, etc_ , when on _2002, 2003, 2004, 2005, 2006_ [Explain what happened]
    _(Basis(es))_                              _(Date)_

( See Attached )

[Provide names of involved management official(s) and or witnesses]

James T. Hanklme          John Bovenzi
Stephen Hanas             Rosa Cooper Bovenzi Spouse to John Bovenzi
James R Lanigce           May Lovely
Heavy Griffon             Michael Collins, Director FDIC (ODEO) et. Al

[Explain why you believe the action was discriminatory, e.g. discriminatory statements, others who were treated more favorably, d/or any other reason(s)]

(See Attached)

**CLAIM NUMBER 2**
[Use same format as for Claim Number 1 above]  Attach additional sheets, if necessary.

( See Attached )

09-20-2006 17:01                                                                                    PAGE2



**Federal Deposit Insurance Corporation**
3501 Fairfax Drive, Room E-2070, Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

## DESIGNATION OF REPRESENTATIVE[1]
### Agency Docket Number FDICEO-060043

I, Yolanda C. Gibson-Michaels, hereby designate the individual listed below to serve as my representative in all matters pertaining to my discrimination claim against the Federal Deposit Insurance Corporation.

Name of Representative:    *Yolanda C. Gibson-Michaels (Prose)*

Address:    *220 Anvil Lane*
*Temple Hills MD 20748*

Telephone Number:    *(301) 630-5062*

Facsimile Number:

E-Mail Address:    *ygmichaels@yahoo.com*

I understand that the authority and responsibility granted to the above person by this designation may be terminated by me at any time. If this should occur I will notify, in writing, the EEO Counselor, as indicated below:

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
ATTN: OPHELIA JONES, EEO COUNSELOR
ROOM E-2072
3501 FAIRFAX DRIVE
ARLINGTON, VA 22226-3500

Although my representative may act for me in all matters pertaining to my discrimination claim, I understand that in the event I withdraw my claim during the EEO process or reach a settlement with the Federal Deposit Insurance Corporation, I must personally sign any withdrawal notice or settlement agreement.

_____                    _____
Signature of Aggrieved Person                                    Date   9/20/06

Please sign, date and return a copy of this form via facsimile, fax number: (703) 562-6088. Mail or hand-deliver the original form to:

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
ATTN: OPHELIA JONES, EEO COUNSELOR
ROOM E-2072
3501 FAIRFAX DRIVE
ARLINGTON, VA 22226-3500

---

[1] All official correspondence will be sent to representative, with copies to Aggrieved Person, unless Aggrieved Person directs the FDIC in writing to send official correspondence directly to him or her. 29 C.F.R. § 1614.605(d).

Revised 01/2006



**Federal Deposit Insurance Corporation**
3501 Fairfax Drive, Room E-2070, Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

November 16, 2006

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>
# 7000 1670 0000 0946 8947

Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland 20748

                     Agency Docket Number:     FDICEO - 060043
                     Date Filed:                 September 20, 2006

Dear Ms. Gibson-Michaels:

Enclosed is the Final Agency Decision of the Federal Deposit Insurance Corporation in the above-referenced complaint you filed.

If you have any questions, please contact me at (703) 562-6092.

                     Sincerely,

                     *Vincent L. Johnson*
                     Vincent L. Johnson
                     Deputy Director

Enclosures:    Final Agency Decision
              EEOC Form 573, Notice of Appeal/Petition

cc:    Tina Lamoreaux, Counsel and Agency Representative, Legal Division
       Edith Murphy, EEO Specialist, Complaints Processing Branch, ODEO
       Amelia White, Program Assistant, Complaints Processing Branch, ODEO

GOVERNMENT EXHIBIT
14

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits. 96c0043

1. Article Addressed to:

Yolanda Gibson-Michael / care
3210 Anvil lane
Temple Hills, MD 20748

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X _____  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Copy from service label)
   7000 1670 0000 0946 8947

PS Form 3811, July 1999   Domestic Return Receipt   102595-00-M-0952

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage)

TMPA HILLS MD 20748

| | |
|---|---|
| Postage | $1.11 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $5.36 |

Recipient's Name (Please Print Clearly) (to be completed by mailer)
Yolanda G. bson - Miche
Street, Apt. No.; or PO Box No.
3210 Anvil ln
City, State, ZIP+4
Temple Hills, MD 20-

7000 1670 0000 0946 8947

PS Form 3800, February 2000

# FDIC

**Federal Deposit Insurance Corporation**
3501 Fairfax Drive, Room E-2104, Arlington, VA 22226-3500                     Office of Diversity and Economic Opportunity

---

| | |
|---|---|
| YOLANDA GIBSON-MICHAELS )<br>    Complainant, )<br> )<br>                    v.        )<br> )<br>FEDERAL DEPOSIT INSURANCE )<br>  CORPORATION, )<br>        Agency.        ) | Agency Docket No.:  FDICEO - 060043<br>Date Filed:              September 20, 2006 |

## FINAL AGENCY DECISION

This is the Final Agency Decision of the Federal Deposit Insurance Corporation ("FDIC" or "Agency") dismissing the above-referenced complaint of employment discrimination filed against the Agency by Yolanda Gibson-Michaels ("Complainant") under Title VII of the Civil Rights Act ("Title VII") of 1964, as amended, 42 U.S.C. § 2000e-16, the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, and the Age Discrimination in Employment Act ("ADEA") of 1967, as amended, 29 U.S.C. § 633a.

I.     ADMINISTRATIVE PROCEDURES

Complainant initiated informal EEO Counseling on August 21, 2006, alleging discrimination involving the Legal Division, Washington, DC.  Informal EEO counseling was not successful in resolving her allegations.  The EEO counselor issued Complainant a Notice of Right to File ("NRTF") a formal discrimination complaint on September 15, 2006.  Complainant received the NRFT on September 16, 2006 and filed a formal discrimination complaint on September 20, 2006.

The complaint listed actions Complainant believed were discriminatory and the bases for the alleged discrimination.  It also referenced narratives Complainant submitted during counseling.  Based on a review of the complaint, the EEO Counselor's report and narratives Complainant submitted to the EEO Counselor, the following allegations were identified:

Whether Complainant was discriminated against on the bases of race (African-American), color (dark complexion), sex (female), religion (Christian), age (date of birth ("DOB"): April 1, 1959 ), disability (FMLA), reprisal (prior EEO complaints and whistleblower activities), and parental status with respect to:

1. Appointment/ Hire (December 19, 2005)
2. Assignment /Duty
3. Award

    4.   Disciplinary Action
    5.   Evaluation appraisal
    6    Expiration of appointment
    7    Harassment, non-sexual
    8    Harassment, sexual harassment
    9    Promotion
    10   Reassignment/Transfer
    11   Reinstatement (December 19, 2005)
    12   Reprimand
    13   Retirement (Involuntary) (January 21, 2005 and March
         31, 2006)
    14   Suspension
    15   Termination
    16   Time and Attendance
    17   Working Conditions
    18   Other FMLA, Whistleblower, FDIC Bank Insider Trading
         (Enron)

II.    BACKGROUND

    A.    Merit Systems Protection Board ("MSPB" or "Board")Appeals

Complainant worked for the FDIC approximately 24 years. At the time of the events giving rise to this complaint, August 12, 2003-March 31, 2006, Complainant was an Information Specialist, CG-11, in the Legal Division. Stephen Hanas, Senior Counsel, was her first line supervisor, and James Lanteleme, Assistant General Counsel, was her second line supervisor.

On January 14, 2005, Complainant, the Agency and the National Treasury Employees Union ("NTEU") entered into a Settlement Agreement whereby she agreed to withdraw with prejudice her EEO complaints (FDICEO - 040039 and FDICEO - 040056[1]) and to resign from the Agency effective January 21, 2005. As consideration, the Agency agreed, in part, that it would not issue a proposed removal action or any other type of disciplinary action against her; that it would expunge her 5 (five) day suspension and AWOL charges from all official documents; and that upon the effective date of her resignation, it would process her buyout payment under the employee buyout program.

On April 20, 2005, the Agency notified Complaint that the Settlement Agreement she signed did not meet the requirements of the Older Worker's Benefit Protection Act ("OWBPA") for a valid release of her ADEA rights. The Agency gave Complainant the opportunity to ratify her ADEA waiver after the fact, but she elected not to do so. She maintained that the Settlement Agreement was void and asked to be reinstated. The agency disagreed. It believed that Complainant's waiver of her ADEA rights was

---

[1]   These complaints are discussed more fully in Section B below.

invalid and did not bar her from pursing those claims, but that the invalid ADEA waiver did not invalidate her waiver of her Title VII or sexual orientation claims. The Agency did not reinstate her.[2]

On April 27, 2005, Complainant initiated EEO counseling, and alleged that the Agency's failure to reinstate her constituted constructive removal. EEO counseling did not resolve the matter. On June 28, 2005, Complainant filed a MSPB appeal. She alleged that she cancelled the Settlement Agreement in accordance with the notice provisions of the OWBPA when the Agency made her aware of them on April 20, 2005, and that the Agency's failure to reinstate her amounted to a constructive discharge. By Decision, dated November 14, 2005 the MSPB Administrative Judge found that by refusing to give effect to Complainant's timely cancellation of the Settlement Agreement, the Agency effectively imposed the terms of her resignation, and that such a coerced, involuntary resignation constituted a constructive discharge within the MSPB's jurisdiction.

The Administrative Judge Ordered the Agency to: (1) cancel Complainant's resignation and to retroactively reinstate her to her position as an Information Specialist, effective January 21, 2005; (2) pay Complainant the appropriate amount of back pay, with interest; and (3) adjust her benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations. The initial decision became final on December 19, 2005.

On December 19, 2005, the FDIC cancelled Complainant's resignation and returned her to active pay status. Under the terms of the Settlement Agreement, the Agency had agreed not to propose Complainant's termination. Because the agreement was now void, the Agency reinstated Complainant at full pay and placed her on administrative leave pending a decision on the proposal to remove her from federal service. Complainant filed MSPB petitions for enforcement and enforcement appeals with the full Board regarding her reinstatement and back pay.

Effective March 31, 2006, the Agency terminated Complainant's employment. Complainant did not seek EEO counseling or file an EEO complaint regarding her termination. Instead she appealed her termination to the MSPB on April 27, 2006. On July 25, 2006, the Administrative Judge issued an Initial Decision dismissing Complainant's appeal of her termination. The Decision stated that she withdrew her appeal by written submissions received on July 24 and 25, 2006, and that the withdrawal of an appeal is an act of finality that removes an appeal from the Board's jurisdiction.

B.    Prior EEO Administrative Complaints FDICEO - 040039 AND FDICEO - 040056

On July 14, 2004, Complainant filed EEO complaint FDICEO - 040039. The Agency accepted the following claims for investigation:

Whether Complainant was discriminated against on the bases of race (African-American), color (black), sex (female), age (DOB: April 1, 1959), religion (Christian) and reprisal (prior EEO

---

[2] See, e.g., Campo v. US Postal Service, EEOC Petition No. 03A20012 (August 23, 2002) citing Oubre v. Energy Operations, Inc., 522 U.S. 422, 428 (1998). In Oubre, the Court noted that a failure to comply with the OWBPA's stringent safeguards renders a settlement agreement unenforceable against a plaintiff only insofar as it purports to waive or release an ADEA claim specifically, and that a release could be "effective as to some claims but not as to ADEA claims."

complaints) when from August 12, 2003 to approximately April 28, 2004, she was allegedly harassed and subjected to a hostile work environment, when:

1. On or about April 14, 2004, Complainant's second level supervisor, Mr. James T. Lanteleme, Assistant General Counsel, Legal Division, initiated an administrative investigation of Complainant after asking Ms. Jenika Johnson, a Student Intern and co-worker, if she felt threatened by Complainant. On April 15, 2004, Ms. Johnson surreptitiously tape recorded a conversation between herself and Complainant without Complainant's permission, and later allegedly approached Complainant and said, "I want to tell you, I lied." Mr. Lantelme forced Complainant to attend an investigative meeting on April 28, 2004, with Mr. Doug Fahey, a Contract Investigator with the Division of Administration. Complainant was interviewed by Mr. Fahey for two to three hours, forced to answer open-ended questions developed from the recording made by Ms. Johnson, and denied the right to an attorney and Miranda rights.

2. On or about August 12, 2003, Mr. Lanteleme initiated an investigation of Complainant after Ms. Terry Hopkins (Caucasian) alleged she felt threatened because Complainant's eyes were stretched wide open and Complainant had a blank look. Complainant was investigated and interrogated. Complainant alleged that Ms. Hopkins has "historically" yelled, screamed, verbally berated, and openly displayed mercurial behavior towards Ms. Connie Hunt. Ms. Hopkins has never been subjected to an investigation or interview.

3. Complainant was treated differently than Mr. Frank Nigro, a male Caucasian co-worker, who has engaged in threatening and disruptive behavior towards Complainant and others, but was not subjected to an administrative investigation or disciplined in any manner.

Based on a review of e-mails Complainant sent to ODEO on October 20, 2004 and October 22, 2004, ODEO identified three additional claims. By letter dated October 26, 2004, ODEO dismissed claim 4 (four) for failure to state a claim and amended FDICEO - 040039 to accept claims 5 (five) and 6 (six) which are as follows:

Whether Complainant was discriminated against on the basis of reprisal, when:

5. On October 20, 2004, Stephen M. Hanas allegedly sexually harassed and verbally assaulted Complainant by telling Complainant to "get the hell out of my office."

6 On October 20, 2004, James T. Lantelme allegedly sexually harassed and physically assaulted Complainant by grabbing her left arm.

On November 4, 2004, Complainant filed EEO complaint FDICEO - 040056. By emails variously dated, she amended and revised this complaint. On November 19, 2004, the Agency accepted the following claims:

Claim 1: Whether Complainant was subjected to continuing harassment that resulted in a hostile work environment on the bases of race (African American), color (Black), age (DOB: April 4, 1959), sexual orientation (unknown), and reprisal by her first level supervisor Stephen Hanas. The following incidents were cited by Complainant in support of her claim:

    a.   On November 1, 2004, Mr. Hanas issued two memoranda to Complainant that accused Complainant of: (1) a failure to comply with the Corporation's time and attendance rules; and, (2) numerous instances of disruptive behavior in the workplace.

    b.   Since July 12, 2004, Mr. Hanas has continuously subjected Complainant to ridicule, verbal insults, disparagement, and sexual harassment every day of the week.

    c.   Mr. Hanas is subjecting Complainant to an unwritten time and attendance sign-in procedure.

Claim 2: Whether Complainant was discriminated against on the basis of reprisal on or about November 7, 2004, when Complainant's rights under the Family Medical Leave Act ("FMLA") were allegedly violated by Stephen M. Hanas, Supervisory Counsel, Legal Division, and James T. Lantelme, Assistant General Counsel, Legal Division.

Claim 3: Whether Complainant was discriminated against and subject to harassment on the bases of race (African-American), sex (female) and reprisal when the following incidents occurred on November 23, 2004, and December 1, 2004:

a.    Complainant was placed in an absence without leave ("AWOL") status by her first level supervisor Stephen Hanas.

b.    Mr. Hanas allegedly denied leave to Complainant under the FMLA and charged time to her official time and attendance record without justification; and,

c.    Mr. Hanas required Complainant to submit duplicate timesheets and leave slips for pay periods 21, 22, and 23.

The Agency contracted out FDICEO - 040039 to an investigative firm. The investigative firm submitted the Report of Investigation ("ROI") for Claims 1-3 and 5-6 to the Agency on December 3, 2004 and January 12, 2005 respectively. By letter, dated January 11, 2005, the Agency notified Complainant that a contract investigator had been assigned to FDICEO - 040056 and that the investigation was beginning. However, because Complainant withdrew her EEO complaints with prejudice pursuant to the Settlement Agreement she entered into on January 14, 2005, the Agency ceased processing both complaints.

As previously discussed, Complainant declined to ratify the waiver of her ADEA claims under the Settlement Agreement when given the opportunity to do so, and the Agency determined that she was entitled to pursue these claims. The Agency, however, took the position that Complainant waived her Title VII claims under Settlement Agreement. Accordingly, the June 2, 2005 cover letter transmitting the ROI for FDICEO - 040039, which had been completed shortly before the effective date of the Settlement Agreement, contained a footnote stating that by transmitting the ROI and supplemental ROI which contained claims under Title VII, the Agency did not waive its right to argue that Complainant relinquished her Title VII rights when she entered into the Settlement Agreement.

Because FDICEO - 040056 had not been investigated, the Agency issued a modified acceptance letter for this complaint striking the Title VII claims and claims rendered moot by the Settlement Agreement. On June 23, 2005, the Agency notified Complainant that FDICEO - 040056 had been contracted out to an investigative firm and that the investigation was beginning.

On June 23, 2005, Complainant requested a hearing before an EEOC administrative judge on FDICEO - 040039 and FDICEO - 040056. And on July 12, 2005, the Agency transmitted the administrative file and ROI for FDICEO - 040039 to the EEOC as well as the administrative file for FDICEO – 040056. In addition, the Agency informed the Commission that it would transmit the ROI for FDICEO - 040056 when the investigation was completed. The Agency transmitted this ROI to the Commission on September 30, 2005.

By order dated January 24, 2006, the EEOC administrative judge consolidated FDICEO - 040039 and FDICEO - 040056 for processing. By order, dated April 5, 2006, he granted Complainant's request to withdraw FDICEO - 040039 and FDICEO - 040056 from the EEOC administrative process based on her attorney's representation that she intended to file suit in federal district court.[3] She did not do so and the Order effectively remanded the complaints to the Agency for processing.

Because the MSPB Initial Decision voided the Settlement Agreement, the Agency withdrew the modified acceptance letter for FDICEO – 040056, which dismissed Complainant's Title VII claims and claims rendered moot by the Agreement. The Agency has contracted out the stricken claims to an investigative firm. The Agency anticipates that the investigation will be completed by November 30, 2006. At the conclusion of the investigation, Complainant will be informed of her right to elect a hearing before an EEOC Administrative Judge or a final agency decision.

C      Union Grievance

The Agency suspended Complainant from duty and pay for five (5) days from August 23, 2004 through August 27, 2004. On September 14, 2004, she filed a grievance with the NTEU regarding her suspension, which she pursued to Step Four. The Agency denied her grievance on October 22, 2004.

---

[3] By letter dated August 31, 2006, the attorney informed the Agency that he no longer represents Complainant.

## II.    LEGAL STANDARDS FOR ANALYSIS

U.S. Equal employment Opportunity Commission ("EEOC") regulation 29 C.F.R. § 1614.107(a)(2) states that an agency shall dismiss a complaint that fails to comply with applicable time limits. A complaint is considered timely if the matter at issue was brought to the attention of an EEO Counselor within 45 calendar days of the effective date of the decision or personnel action. 29 C.F.R. § 1614.105(a)(1). The time limit may be extended when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from submitting the matter within the time frame, or for other reasons considered sufficient by the agency. 29 C.F.R. § 1614.105(a)(2).

Pursuant to EEOC regulations, if an employee files a grievance under a negotiated grievance process that permits the individual to raise employment discrimination issues, and thereafter files a discrimination complaint on the same matter, the complaint must be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure. 29 C.F.R. §§ 1614.301 and 1614.107(a)(4).

Pursuant to EEOC regulations, if an employee files an appeal to the MSPB and the employee indicates that she has elected to pursue the non-EEO process, and thereafter files a discrimination complaint on the same matter, the complaint must be dismissed without prejudice to the employee's right to appeal the matter through the MSPB procedure. 29 C.F.R. §§ 1614.302 and 1614.107(a)(4).

EEOC regulations state that an agency shall dismiss a complaint that fails to state a claim under 29 C.F.R. § 1614.103 or § 1614.106(a), or states the same claim that is pending before or has been decided by the Agency or the EEOC. 29 C.F.R. § 1614.107(a)(1).

## III.    ANALYSIS AND CONCLUSIONS

### A.    Claims 1-18 are Dismissed because They are Untimely.

29 C.F.R. § 1614.105(a)(1) requires an employee to seek counseling within 45 days of an alleged discriminatory act, or within 45 days of the date the employee should have reasonably suspected discrimination. The Agency terminated Complainant effective March 31, 2006. Complainant does not allege and there is no evidence that any causes of action with respect to Claims 1-18 occurred after this date. Complainant initiated EEO counseling with respect to the present complaint on August 21, 2006, almost 5 months after her removal. Therefore, any allegations with respect to Claims 1-18 that Complainant is raising here for the first time are untimely and must be dismissed pursuant to 29 C.F.R. § 1614.107(a)(2).

B.    The Portions of Claim 18 Pertaining to Whistleblower, Bank Fraud and Enron
      Violations are also Dismissed because They Fail to State a Claim.

Furthermore, even if Complainant's allegations regarding whistleblower, bank fraud and Enron
violations were timely, which they are not, they must still be dismissed because they fail to state a
claim under 29 C.F.R. § 1614.107(a)(1). An agency must accept a complaint from any aggrieved
person or applicant for employment who believes that he or she has been discriminated against by the
agency because of race, color, religion, sex, national origin, age or disabling condition. 29 C.F.R.
1614.103(a). The Commission defines an "aggrieved employee" as one who suffers a present harm
with respect to a term, condition, or privilege of employment for which there is a remedy. Diaz v.
Department of the Air Force, EEOC Request No. 05931049 (April 21, 1994). The EEOC has
previously held that whistleblower activities are outside the purview of the EEO process. See Giannu
v. HUD, EEOC Request No. 05860403 (February 13, 1989) (holding that appellant failed to state a
claim regarding allegations of retaliation for her whistleblower activities); Foley v. Department of the
Navy, EEOC Request No. 0586043 (July 2, 1987) (holding that whistleblowing is not within the
confines of Title VII.) Similarly, concerns regarding bank fraud and ENRON are not within the
confines of any statute EEOC enforces. Therefore, these allegations do not state a claim under 29
C.F.R. § 1614.107(a)(1) and must be dismissed.

C.    Claim 14 (Suspension) is also Dismissed because it was the Subject of a Prior
      Grievance under a Negotiated Grievance Process that Permits Individuals to Raise
      Discrimination Issues

An agency is required to dismiss a complaint or a portion of a complaint where the complainant has
previously elected to raise the matter in a negotiated grievance procedure that permits allegations of
discrimination. 29 C.F.R. §1614.107(a)(4).

As previously discussed, the Agency suspended Complainant from duty and pay for
five (5) days from August 23, 2004 through August 27, 2004. On September 14, 2004,
she filed a grievance regarding her suspension with the NTEU which she pursued to
step four. Complainant filed the present complaint, which contains a suspension claim,
on September 20, 2006.

29 C.F.R. § 1614.301 provides, in pertinent part, that:

> Where a person is employed by an agency subject to 5 U.SC. § 7121(d)
> and is covered by a collective bargaining agreement that permits
> allegations of discrimination to be raised in a negotiated grievance
> procedure, a person wishing to file a complaint or a grievance on
> the matter of alleged employment discrimination must elect to raise
> the matter under either part 1614 or the negotiated grievance procedure,
> but not both an election to proceed under a negotiated grievance procedure
> is indicated by the filing of a timely written grievance. An aggrieved
> employee who files a grievance which alleges discrimination may not

thereafter file a complaint on the same matter under this part 1614. Any such complaint filed after the grievance has been filed on the same matter shall be dismissed.

As a former FDIC employee, Complainant was employed by an agency subject to 5 U.S. C. § 7121(d). Also, she was covered by a collective bargaining agreement that permits allegations of discrimination to be raised in the negotiated grievance process. The collective bargaining agreement that governed her employment states at Article 48, Section 1D "A grievance involving discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition may, in the discretion of the aggrieved employee, be raised either under the appropriate statutory appeal procedure or under the negotiated grievance procedure, but not both…" Therefore, Complainant's suspension claim must be dismissed pursuant to 29 C.F.R. § 1614.107(a)(4), because it alleges a matter raised in a prior grievance.

D.    Claim 15 (Termination) is also Dismissed because Complainant's Constructive Discharge and Removal Were the Subject of Prior MSPB Appeals

On September 20, 2006 Complainant filed an EEO complaint raising the issue of constructive discharge when the agency failed to reinstate her in April 2005. Approximately 15 months earlier on June 28, 2005, she filed an appeal with the MSPB regarding this matter. On November 14, 2005, the MSPB administrative judge issued an initial decision, which reinstated her with back pay and benefits retroactive to January 21, 2005.

EEOC regulation 29 C.F.R. § 1614.302 provides that an aggrieved person may initially file a mixed case complaint with the agency or an appeal on the same matter with the MSPB but not both. This section further provides that if a person files both a mixed case complaint and MSPB appeal on the same matter, whichever is filed first shall be considered an election to proceed in that forum. Therefore, Complainant's constructive discharge claim is dismissed pursuant to 29 C.F.R. § 1614.107(a)(4) because it alleges a matter raised in a prior MSPB appeal.

Effective March 31, 2006, the Agency terminated Complainant's employment. On April 7, 2006 she filed an appeal regarding her removal with the MSPB. She withdrew her appeal by written submissions the MSPB received on July 24 and 25, 2006. On September 20, 2006, she filed the present EEO complaint regarding her removal. Complainant initially elected to challenge her removal through the MSPB process, and her withdrawal of her MSPB appeal did not negate her prior election. See Hammond v. General Services Administration, EEOC Request No. 05940428 (August 25, 1994); Dean v.United States Postal Service, EEOC Appeal No. 01942928 (June 29, 1994). Therefore, Complainant's removal claim is dismissed pursuant to 29 C.F.R. § 1614.107(a)(4) because it alleges a matter raised in a prior MSPB appeal.

E.    Claims Raised in the Present Complaint that are Pending before the Agency in FDICEO
      - 040039 and FDICEO - 040056 are Dismissed.

29 C.F.R. § 1614.107(a)(1) requires an agency to dismiss a complaint or portion of a complaint that is
pending before or has been decided by the agency. Complainant initiated EEO Counseling on August
21, 2006 and alleged, in part, that a co-worker surreptitiously tape recorded a conversation with her.
To the extent Complainant's claims regarding harassment or working conditions on the basis of race,
color, sex, age, religion, disability and reprisal encompass this incident they must be dismissed because
they are the subject of a pending complaint, FDICEO - 040039. In FDICEO - 040039 Complainant
alleged that on April 15, 2004, Jenika Johnson, a co-worker, surreptitiously tape recorded a
conversation with her at the request of an EEO contract investigator and that this constituted
discrimination on the bases of race, color, sex, age, religion, and reprisal and created a hostile work
environment. Furthermore, to the extent Complainant is alleging discrimination with respect to this
incident on the basis of disability, a basis she did not initially allege, the allegation is untimely.

Similarly, to the extent Complainant's allegations of FMLA and time and attendance violations,
harassment (non-sexual and sexual) raised in her present complaint encompass the claims of FMLA
and time and attendance violations, harassment (non-sexual and sexual) raised in FDICEO - 040039
and/or FDICEO - 040056, they must be dismissed because they are the subject of pending complaints.

Therefore, it is the Final Agency Decision that Complainant's formal administrative complaint
docketed as Agency Docket Number FDICEO - 060043 be dismissed.

If Complainant is dissatisfied with the Final Agency Decision in this complaint, pursuant to the EEOC
regulations at 29 C.F.R. §§ 1614.401 to 1614.409 (Appeals and Civil Actions), Complainant may file
an appeal with the EEOC or file a civil action in a U.S. District Court. In the event an appeal is filed,
Complainant must include the correct Agency Docket Number, FDICEO - 040063, in all
correspondence involving the appeal to avoid any undue delay in processing the appeal.

IV.    RIGHT TO APPEAL THE FINAL AGENCY DECISION

An appeal may be filed with the EEOC at any time up to thirty (30) calendar days from Complainant's
receipt of this decision. If Complainant is represented by an attorney of record, the 30-day period for
filing an appeal begins to run from the date that the attorney receives this decision.

An appeal may be mailed, delivered in person, or sent by facsimile transmission. The appeal may be
mailed to:

            Equal Employment Opportunity Commission
            Office of Federal Operations
            P. O. Box 19848
            Washington, DC  20036

The appeal may be hand-delivered to:

Equal Employment Opportunity Commission
Office of Federal Operations
Appellate Review Program
1801 L Street, NW
Washington, DC 20507

The appeal may be sent by facsimile transmission to (202) 663-7022. The EEOC has indicated that it will not accept facsimile transmissions over 10 pages.

If mailed, the appeal must be postmarked no later than the end of the 30-day filing period. If hand-delivered or sent by facsimile transmission, the appeal must be received by the EEOC no later than the end of the 30-day filing period.

Complainant should use the enclosed EEOC Form 573, Notice of Appeal/Petition, and should indicate what is being appealed. Complainant must furnish a copy of the appeal to the FDIC at the same time an appeal is filed with the EEOC. If an appeal is not filed within the above time limits, the appeal will be untimely and may be dismissed by the EEOC. The EEOC may exercise its discretion to extend the time limit for filing an appeal based upon a written statement showing that Complainant was not notified of the prescribed time limit and was not otherwise aware of it, or that circumstances beyond Complainant's control prevented the Notice of Appeal from being filed within the prescribed time limit.

Any statement or brief in support of the appeal must be submitted to the U.S. Equal Employment Opportunity Commission and to the FDIC within thirty (30) calendar days of filing the Notice of Appeal. **Service on the FDIC by mail or hand-delivery must be made on <u>both</u> of the following designated FDIC officials and addressed in the format indicated below:**

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
ATTN: D. MICHAEL COLLINS, DIRECTOR
3501 FAIRFAX DRIVE (ROOM E-2104)
ARLINGTON, VA 22226-3500

and

FEDERAL DEPOSIT INSURANCE CORPORATION
LABOR, EMPLOYMENT & ADMINISTRATION SECTION, LEGAL DIVISION
ATTN: JAMES R. LAWRENCE, ASSISTANT GENERAL COUNSEL
3501 FAIRFAX DRIVE (ROOM D-6134)
ARLINGTON, VA 22226-3500

Due to the delays experienced by the Agency with receiving mail sent through the U.S. Postal Service, in addition to mailing a copy of the appeal, brief, or statement, a copy may also be sent by facsimile transmission to D. Michael Collins at (703) 562-6088 and to James R. Lawrence at (703) 562-2468.

Final Agency Decision                                                Page 12 of 12

## V.    RIGHT TO FILE A CIVIL ACTION

If Complainant elects not to appeal to the EEOC, Complainant has the right to file a civil action in federal district court on claims raised in the administrative process. A civil action may be filed in an appropriate U.S. District Court **within ninety (90) calendar days** of the date Complainant receives this decision. If Complainant files an appeal with the EEOC, a civil action may also be filed in a U.S. District Court **within ninety (90) calendar days** of receipt of the EEOC's final decision on appeal. A civil action may also be filed any time **after one hundred eighty (180) calendar days** from the date the appeal is filed with the EEOC, if a final decision has not been issued by the EEOC.

If Complainant files a civil action, and does not have or is not able to obtain the services of an attorney, Complainant may request the court to appoint an attorney as a representative in the matter and to permit Complainant to file the action without payment of fees, costs, or other security. **The decision to grant or deny the request is within the sole discretion of the court.** Filing a request for an attorney does not extend Complainant's time in which to file a civil action. Both the request and the civil action **must be filed within the time frames specified above.**

Complainant is further notified that if a civil action is filed, **Sheila C. Bair, Chairman, Federal Deposit Insurance Corporation,** must be named as the defendant and failure to do so may result in the dismissal of the action filed.

_Vincent L. Johnson_                              16 Nov 2006
D. Michael Collins                                _____
Director                                          Date

Enclosure:     EEOC Form 573 (Notice of Appeal/Petition)

Yolanda Gibson-Michaels (Complainant)
2210 Anvil Lane
Temple Hills, Maryland 20748
        VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
        # 7000 1670 0000 0946 8947

Tina Lamoreaux, Counsel and Agency Representative, Legal Division
Edith Murphy, EEO Specialist, Complaints Processing Branch, ODEO
Amelia P. White, EEO Program Assistant, Complaints Processing Branch, ODEO



Home | Help

## Track & Confirm

### Search Results

Label/Receipt Number: 7000 1670 0000 0946 8947
Status: **Delivered**

Your item was delivered at 2:20 PM on November 17, 2006 in TEMPLE
HILLS, MD 20748.

( Additional Details > )   ( Return to USPS.com Home > )



**Track & Confirm**

Enter Label/Receipt Number.

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( Go > )

---

POSTAL INSPECTORS    site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust          Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

Corrected order:  June 4, 2007

NOTE:  This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3080, -3081, -3107

YOLANDA C. GIBSON-MICHAELS,

Petitioner,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

Respondent.

ON MOTION

ORDER

Upon consideration of Petitioner's motion to withdraw her petitions for review,

IT IS ORDERED THAT:

(1)    The motion is granted.

(2)    Each party will bear its own costs.

FOR THE COURT

JUN - 5 2007
Date

Jan Horbaly
Clerk

cc:   Yolanda C. Gibson-Michaels
       Kathleen V. Gunning, Esq.

ISSUED AS A MANDATE: _____

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

JUN  5 2007

JAN HORBALY
CLERK


GOVERNMENT
EXHIBIT
15

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
## 717 MADISON PLACE, N.W.
## WASHINGTON, D.C. 20439

JAN HORBALY
CLERK

**JAN 1 5 2008**

TELEPHONE: 633-6550
AREA CODE 202

Yolanda C. Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD 20748

     Re:   Gibson-Michaels v. FDIC, 2007-3080, -3081, -3107

Dear Ms. Gibson-Michaels:

     This is in response to your "motion to reinstate" case nos. 2007-3080, -3081, -3107.

     Your case was withdrawn and dismissed in an order dated June 5, 2007. The mandate issued on July 23, 2007. The time to ask for reconsideration or reinstatement has long passed. Fed. R. App. P. 40 (a)(1) (a request for reconsideration must be filed within 45 days after entry of judgment). Thus, your motion is untimely and your case is over in this court.

     Very truly yours,

*Jan Horbaly*

Jan Horbaly

jh/ds

cc:   Kathleen V. Gunning, Esq.

## AFFIDAVIT

CITY OF WASHINGTON D.C. }

DISTRICT OF WASHINGTON D.C. }


**I, James T. Lantelme,** hereby solemnly swear that I am employed in the position

of Assistant General Counsel, grade EM, Legal Division, Federal Deposit Insurance

Corporation (FDIC), 550 17th Street, NW, Room H-3123, Washington D.C. 20429. My

race is Caucasian, my color is white, my gender is male, my date of birth is November

10, 1953, and my religion is Lutheran. I have had prior EEO activities. I have undergone

EEO training regarding the preventing, reporting and mitigating of harassment. My first

line supervisor is Deputy General Counsel Erica Bovenzi.

I have read the Investigator's Letter of Authorization with the Accepted Issues

regarding Ms. Yolanda Gibson-Michaels' EEO Complaint. I have read and signed the

Notice of Rights of Witnesses in EEO Investigations form.

I have known Ms. Gibson-Michaels since 1998. Our relationship is purely

professional. I am currently Ms. Gibson-Michaels' second line supervisor. I have had

some contacts with Ms. Gibson-Michaels since she came to this section in 1998 including

during an FDIC reduction-in-force during 2002 and 2003. I am aware that Ms. Gibson-

Michaels is an African-American female, skin color black. I was not aware of Ms.

Gibson-Michaels' age or religion or of any prior EEO activity by Ms. Gibson-Michaels

until I was told about them during the course of this investigation. I learned of the

specifics of Ms. Gibson-Michaels' EEO Complaint when I read the Investigator's Letter

of Authorization during my interview on September 20, 2004.

Affiant's Initials_____  _____

GOVERNMENT EXHIBIT
16

Regarding Accepted Issue One, I did initiate an FDIC administrative investigation against Ms. Gibson-Michaels on or about April 14, 2004 for allegedly threatening Student Intern Jenika Johnson. On or about April 14, 2004, Ms. Johnson came to my office visibly upset. Ms. Johnson stated, in substance, that approximately 15 minutes prior, Ms. Gibson-Michaels had threatened Ms. Johnson in connection with an investigation of a theft of her money on FDIC property. Ms. Johnson stated that a few days prior she had reported a theft of money to FDIC Security and that a fellow FDIC Student Intern was a suspect. Ms. Johnson indicated that Ms. Gibson-Michaels talked to her and urged her to drop the charges against the other Student Intern as well as give the other Student Intern money. Ms. Gibson-Michaels had asked Ms. Johnson to do the right thing and indicated to Ms. Johnson that if she did not something bad could happen to Ms. Johnson's child. I asked Ms. Johnson to prepare a write-up of her conversation with Ms. Gibson- Michaels.

FDIC procedures indicate that when an employee receives a threat the FDIC Management Response Team (MRT) should be contacted. I contacted William Kmetz of FDIC Security and reported my conversation with Ms. Johnson. I did take some notes of my conversation with Ms. Johnson which I believe that I gave to Investigator Douglas Fahey. I am unaware who informed Ms. Gibson-Michaels that she was the subject of an administrative investigation. To the best of my knowledge the resultant investigation was conducted by Investigator Fahey and Mr. Kmetz. I was not involved in the resultant investigation or the investigative decisions made by Investigator Fahey and Ms. Kmetz.

I was aware that sometime later in April 2004, Investigator Fahey planned to have Ms. Johnson speak to Ms. Gibson-Michaels about the alleged threat. Investigator Fahey

Affiant's Initials_____

had asked Ms. Johnson to conceal an electronic recorder on her person in order to record the conversation between herself and Ms. Gibson-Michaels. The decision to employ a hidden electronic recorder on Ms. Johnson's person was made by either Investigator Fahey or Security Chief Kmetz. I did ask the FDIC Assistant Director for the Labor and Employee Relations Section Randi Mendelsohn about the use of the hidden electronic recorder. I was told that she was aware of and approved the use of the hidden electronic recorder.

After the completion of the investigation, I received a report on Ms. Gibson-Michaels' actions from the MRT. The report indicated that there was no likelihood of physical violence against Ms. Johnson by Ms. Gibson-Michaels. It was nonetheless plain to me that Ms. Gibson-Michaels had interfered with the FDIC theft investigation and had lied about it to the investigators. I proposed that Ms. Gibson-Michaels receive a ten day suspension. Subsequently, the deciding official reduced the ten day suspension to a five day suspension. Ms. Gibson-Michaels has served the five day suspension.

My actions and decisions in connection with Accepted Issue One were not influenced in any manner by Ms. Gibson-Michaels' race, color, gender or any other factors such as her age, and religion. I deny that my actions and decisions in connection with Accepted Issue One constituted any type of reprisal against Ms. Gibson-Michaels. Ms. Gibson-Michaels was treated as any other FDIC employee would have been treated regarding an employee threat allegation.

Regarding Accepted Issue Two, on or about August 12, 2003, I did initiate an administrative investigation against Ms. Gibson-Michaels for allegedly threatening Ms. Terry Hopkins. On or about August 12, 2003, Ms. Hopkins came to my office and

Affiant's Initials _____

informed me that as an Acting Supervisor she had asked Ms. Gibson-Michaels questions about a leave slip that Ms. Gibson-Michaels had given to Ms. Hopkins. I believe that the initial conversation took place in Ms. Hopkins' office. Ms. Hopkins stated, in substance, that Ms. Gibson-Michaels had objected to Ms. Hopkins' questioning of a signature on the leave slip. Ms. Hopkins felt intimated and left her office. Ms. Hopkins stated that Ms. Gibson-Michaels had followed her down a hall berating Ms. Hopkins. I believe that FDIC Secretary Eyvonne Bryant witnessed Ms. Gibson-Michaels berating Ms. Hopkins.

I contacted the MRT and a subsequent investigation was conducted. The investigation resulted in a conclusion that there was no likelihood of violence. Subsequently, I did orally counsel Ms. Gibson-Michaels about her behavior toward Ms. Hopkins. I do not believe that I made a written comment about my counseling session with Ms. Gibson-Michaels.

My actions and decisions in connection with Accepted Issue Two were not influenced in any manner by Ms. Gibson-Michaels' race, color, gender or any other factors such as her age, and religion. I deny that my actions and decisions in connection with Accepted Issue One constituted any type of reprisal against Ms. Gibson-Michaels. Ms. Gibson-Michaels was treated as any other FDIC employee would have been treated regarding an employee threat allegation.

Regarding Accepted Issue Three, Ms. Gibson-Michaels has been treated differently than Mr. Frank Nigro. Mr. Nigro is no longer a FDIC employee. Mr. Nigro retired from FDIC in 2003. I have been told that Mr. Nigro did have an explosive temper. I believe Mr. Nigro received an official admonishment that if he did not retire he would have been subject to severe disciplinary action. I believe that Ms. Gibson-

Affiant's Initials_____

Michaels had complained to FDIC about Mr. Nigro's behavior. I was Mr. Nigro's fourth level supervisor and did not personally know Mr. Nigro. I believe that Mr. Nigro is a white Caucasian male. I do not know Mr. Nigro's religion. I assume Mr. Nigro's age is over 50 since he was able to retire from the FDIC.

I have no knowledge that Mr. Nigro's race, color, gender, age and religion played any role or influenced in any manner FDIC Officials' decisions and actions about Mr. Nigro's on the job behavior. I have no knowledge of any type of favorable treatment given to Mr. Nigro by FDIC Officials due to Mr. Nigro's race, color, gender, age, and religion.

I am unaware that the events involving the Accepted Issues have affected Ms. Gibson-Michaels' job performance. I believe that Ms. Gibson-Michaels is performing her current duties in a competent manner. I have been asked the question of whether the events involving the Accepted Issues have affected Ms. Gibson-Michaels' job opportunities. I am unaware of any such FDIC job opportunities for Ms. Gibson-Michaels. FDIC has been in the process of becoming smaller and losing positions.

In summary, I have no knowledge of any type of discrimination by FDIC Officials based on Ms. Gibson-Michaels' race, color, sex, age, and religion.

I have nothing further to add to my affidavit.

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

Affiant's Initials_____

I declare under the penalty of perjury that the foregoing is true and correct. Executed this

_27th_ day of _September 2004_ (date)

James T. Lantelme

Sworn and Subscribed by _____ Barry Cohen, EEO Contract

Investigator, on ___9/27/04___ (date).

Affiant's Initials_____

## PRIVACY ACT NOTICE TO INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to **FDIC** activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of **FDIC** employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____        _____
Signature of Interviewer                Signature of Witness (person providing statement)

                                        Date: _____

                                        Place: _____

City of Washington                    }
                                      }
                                      }
                                      }
                                      }
District of Columbia                  }

# A F F I D A V I T

I, Stephen Hanas, do solemnly swear or affirm that:

1. Please state your name, position title, pay plan, occupational series and grade, organizations, and organizational address (city/county/state).

*Answer:* My name is Stephen Hanas. I am the Senior Counsel, Series 905 CM-2, Legal Division, Corporate Operations Branch with the Federal Deposit Insurance Corporation, in Washington, DC. My phone number is 202-736-0353.

2. How long have you worked for the federal government?

*Answer:* I have worked for the Federal Government since January 1989.

3. How long with the Agency?

*Answer:* I have worked for the FDIC since January 1989.

4. How long in your current position?

*Answer:* I have been Senior Counsel since January 1996.

5. Who is your first line supervisor (name/position title), with dates? Who is your second line supervisor, with dates? (If different) Who were your first and/or second-line supervisors between November 7, 2004 and December 1, 2004?

*Answer:* My first line supervisor is currently Henry Griffin, Assistant General Counsel. He has been my supervisor since July 2005.
My second line supervisor is Erica Bovenzi, Deputy General Counsel. She has been my second line supervisor since 1996.
During the period of this complaint, my second line supervisor was Erica Bovenzi, Deputy General Counsel. My first line supervisor was James Lantelme, Assistant General Counsel.

6. What was your organizational relationship with Complainant between November 7, 2004 and December 1, 2004?

Page 1 of 8                                          Initials _____

GOVERNMENT
EXHIBIT
17

*Answer:* I was the Complainant's first line supervisor.

7. For the record, do you have knowledge of any EEO activity, either as a Complainant, responsible management official, or management witness?

*Answer:* Yes.

8. When this claim arose, were you aware of Complainant's prior EEO activity? If so, when and how did you become aware of this?

*Answer:* Yes. I was aware of Ms. Gibson-Michaels'EEO activity. I was interviewed by an EEO investigator as a responding management official for one of her other complaints. She told me on a number of occasions about her other complaints.

9. Were you involved in Complainant's selection as an Information Specialist, CG-301-11, in the Legal Division? If so, what was your involvement in her selection?

*Answer:* No. I was not involved in Ms. Gibson-Michaels selection. She was employed as an Information Specialist, CG-301-11, when I became her supervisor.

10. What were the duties of Complainant's position as Information Specialist?

*Answer:* Ms. Gibson-Michaels worked on outside counsel management matters. She was responsible for cataloging inquiries from law firms and logged legal service agreements into our database. She maintained and updated information into the database, such as changes in attorneys and attorney fees. She also maintained the physical files that contained legal services agreements.

11. The Investigator reviewed with me the issues accepted for this investigation.

*Answer:* The Investigator told me that Ms. Gibson-Michaels has made the following allegations of discrimination:
    1) that Complainant was discriminated against on the basis of reprisal on or about November 7, 2004 when her rights under the Family Medical Leave Act (FMLA) were allegedly violated by Stephen M. Hanas, supervisory Counsel, Legal Division, and James T. Lantelme, Assistant General Counsel, Legal Division; and
    2) that she was allegedly discriminated against and subject to harassment on the basis of reprisal (prior ADEA activities) when the following incidents occurred on November 23, 2004, and December 1, 2004:
        a) Complainant was placed in an absent without leave ("AWOL") status;
        b) Complainant was allegedly denied leave under the FMLA and charged time to her official time and attendance record without justification.

Initials

12. Please respond to Complainant's claim that she was discriminated against on the basis of reprisal on or about November 7, 2004 when her rights under the Family Medical Leave Act (FMLA) were violated by Stephen M. Hanas, supervisory Counsel, Legal Division, and James T. Lantelme, Assistant General Counsel, Legal Division.

*Answer:* It is not clear what Ms. Gibson-Michaels was requesting FMLA leave for on that date. She routinely requested FMLA incorrectly and indicated that she was taking other categories of leave as well. On several occasions, Ms. Gibson - Michaels requested both FMLA and FFLA on the same form which prevented me from approving it as submitted. I am not sure why she selected November 7th as the basis for her complaint, because, from reviewing the calendar, November 7th was a Sunday. I do have record of a leave request from her for Friday, November 5th and Monday, November 8th. On those dates, she checked the boxes for both Family Medical Leave (FMLA) and Family Friendly Leave (FFLA) on the same form. She also made a handwritten note on the request form next to the FMLA box that indicates something about EEO retaliation. The note is hard to read. I did tell her that I could not sign a leave request that contained a statement about EEO retaliation. Although I asked her what the statement meant on the form, she never explained what the statement was referring to. I also asked her to resubmit the leave request with the proper documentation and without this additional statement. When she did not comply, I had no alternative but to charge her AWOL to account for the time out of the office.

The forms she submitted were confusing because she requested two types of leave for the same date and time and they were not properly filled out. I could not tell exactly what type of leave she was requesting. I explained to her that Family Medical Leave is not a separate pool of leave time you can draw from, that she had to use either annual leave, sick leave or leave without pay for the time she was not in the office. She disagreed and argued that annual leave was "her time" and that I could not take that from her. I also explained that once an employee has exhausted other leave categories, as Yolanda did with sick leave, the employee cannot continue to draw from it. I explained this to her several times and provided her with copies of the FDIC's leave policy.

13. Did you make the decision to deny her leave request or was that decision made by Mr. Lantelme?

*Answer:* I made the decision to deny Ms. Gibson-Michaels leave request under FMLA. I may have discussed her request with James Lantelme, but it was my decision. Time and attendance matters are the responsibility of the first line supervisor.

14. Were other employees in a similar job position denied FMLA leave at that time?

Initials *SMH*

*Answer:*  I did not have anyone else in a job position similar to Ms. Gibson-Michaels.  I do not recall granting FMLA leave requests to any other employees at that time.  I was responsible for the supervision of the office.  Ms. Gibson-Michaels' prior EEO activity did not have anything to do with my denial of her FMLA leave request.

15. Please respond to Complainant's claim that she was discriminated against and subject to harassment on the basis of reprisal (prior ADEA activities) when the following incidents occurred on November 23, 2004: a) Complainant was placed in an absence without leave ("AWOL") status; b) Complainant was allegedly denied leave under the FMLA and charged time to her official time and attendance record without justification.

*Answer:*  On November 23, 2004, I charged Ms. Gibson-Michaels two hours AWOL and she worked six hours regular time.  She arrived in the office two hours late without any prior notification. I requested that she submit a leave slip for that time and later that day she submitted a FMLA request for "Serious Health Condition of Self" for those two hours.  However, she did not provide any medical documentation in support of the request, such as a statement from her doctor.  I explained the need for medical documentation and that I could not approve the request without proper documentation.

The decision to grant FMLA medical leave is in the supervisor's discretion. However, the request must be properly documented. If I receive a request without proper supporting documents. I typically ask my employees about the nature of their request and give them a chance to submit proper documentation before I place them on AWOL status. I asked Ms. Gibson-Michaels to provide the proper documentation and when she did not, I had no alternative but to charge her AWOL for the time she was not in the office.

16. Did you place any other employees on AWOL at that time?

*Answer:*  I cannot recall any other employees I placed on AWOL status at that time.

17. Did Complaint's prior EEO complaints have anything to do with your placing her on AWOL?

*Answer:*  I was Ms. Gibson-Michaels supervisor for only the last half of 2004, so I was not involved in her earlier EEO complaints.  Complainant's EEO activity was not a factor in my decision to place her on AWOL.

18. Did she complain about your decision?

*Answer*:  Ms. Gibson-Michaels did complain to me about the decision.  She told me she felt she was being harassed. I explained that she needed to follow the corporation's time and attendance policy.  She sent me a lengthy email about

placing her on AWOL on November 23. She carbon copied the email to Donna Schull, NTEU representative; Ophelia Jones, ODEO; and Chester Fisher. I do not know who Mr. Fisher is. My response to her was that my action had nothing to do with her EEO activity. I was just trying to get her to follow FDIC policy. Her response was argumentative. She did not provide the medical documentation I requested.

19. Did Complainant suffer any harm from being placed on AWOL status?

*Answer:* I don't know of any harm Ms. Gibson-Michaels may have suffered from being placed on AWOL other than she did not get paid for the time.

20. Please respond to Complainant's claim that she was discriminated against and subject to harassment on the basis of reprisal (prior ADEA activities) when the following incidents occurred on December 1, 2004: a) Complainant was placed in an absence without leave ("AWOL") status; b) Complainant was allegedly denied leave under the FMLA and charged time to her official time and attendance record without justification.

*Answer:* On December 1, 2004, I charged Ms. Gibson-Michaels 1 hour AWOL for late arrival to work. My records do not show a FMLA request from her for that day. I do not recall that she complained to me about the AWOL charge for that day. My action did not have anything to do with her EEO activity. She would have been on non pay status for the AWOL time.

21. Did you place any other employees on AWOL at that time?

*Answer:* I cannot recall any other employees I placed on AWOL status at that time.

22. Again, did Complainant's EEO activity have anything to do with your actions in this matter?

*Answer:* No.

23. Have you had training on the prevention/reporting/mitigation of harassment? If so, when, by whom, and by what means?

*Answer:* Yes. FDIC provides supervisors with annual training on EEO matters including harassment issues. My last training was in March or April 2005.

24. Do you have anything to add, which is not covered above, on the claims at issue in this complaint?

*Answer:* No.

25. Is there anything else you would like to add that we have not covered above?

Initials

*Answer:* I have no further information about this matter.

I have read the foregoing statement consisting of___ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of _____, 2005.

_____
(Signature)

Subscribed and sworn before me in Washington, DC
This ____ day of _____, 2005.

_____
Elbert Bishop, Investigator

Initials _____



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

<div align="center">

NOTICE OF RIGHTS OF WITNESSES
IN
EEO INVESTIGATIONS

</div>

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.   To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.   To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.   To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.   To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

·5.   To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _~Stephen Arthur~_  DATE: _9/9/05_

TAB E

Initials _SWA_  .

## PRIVACY ACT NOTICE TO WITNESS
### FOR EMPLOYMENT DISCRIMINATION COMPLAINT REVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1984), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. The information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to **Federal Deposit Insurance Corporation (FDIC)** activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of **FDIC** employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

_____
Signature of Interviewer

_____
Signature of Witness (person giving statement)

Date: _____

Place: _____

Initials



**FDIC**

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

| Lawrence, James R. | |
|---|---|
| **From:** | Lawrence, James R. |
| **Sent:** | Wednesday, April 20, 2005 3:56 PM |
| **To:** | 'Yolanda Gibson-Michaels'; Schull, Donna |
| **Cc:** | Moran, Michael P. |
| **Subject:** | Settlement Agreement |

**Follow Up Flag:**    Follow up
**Flag Status:**    Flagged

Ms. Gibson-Michaels:
This concerns the Settlement Agreement which was signed by you, NTEU and the FDIC on January 14, 2005. As you know, all of your existing EEO complaints were withdrawn as a part of that Agreement. However, it has come to our attention that at least one of your complaints contained an age discrimination basis. Due to the requirements of the ADEA, as amended by the Older Workers' Benefit Protection Act, you must be provided the right to cancel the Agreement within seven (7) days after you have signed it. Since that right was not given to you at the time of your signature, we are providing that right to you now.

You are advised to consult with an attorney, the Union or other personal representative before making this decision. Please be advised as to the following:

- You have seven (7) calendar days from today to cancel the Agreement. Any such cancellation must be by e-mail or letter. If you cancel by e-mail, you must respond to James R. Lawrence at JLawrence@fdic.gov, with an electronic copy to MMoran@fdic.gov, no later than 5:00 pm on the seventh calendar day following this notice (April 27, 2005). If you cancel by writing, it must be signed by you, and sent by certified mail to the Complaints Processing Branch, Office of Diversity and Economic Opportunity, FDIC, 801 17th Street, NW, Room 1231, Washington, DC 20429 so that it is postmarked no later than the seventh calendar day following today's date (April 27, 2005).

- If you do nothing during this seven (7) day period, then the Agreement will continue to remain in effect and be enforceable by all parties.

- If you do cancel the Agreement during this seven (7) day period, in accordance with the language above, the Agreement shall be null and void and have **no force or effect whatsoever.** This means that both sides will be placed in the position they were in as of the date of the signed agreement. Among other items, the following would occur:
  - You will be required to pay back all money received under the Agreement.
  - You will be reinstated to your last position of record in the same work group under the same supervisor.
  - The FDIC will be free to immediately issue a proposed removal letter against you, which the FDIC had agreed in the Settlement Agreement to not issue.
  - The prior 5-day suspension, which had been expunged from your records, will be reinstated.

October 2002

GOVERNMENT EXHIBIT
18

Settlement Agreement
[INSERT FULL NAME OF AGGRIEVED PERSON]


Please be assured that the FDIC is not attempting to undo the Settlement Agreement, and has no
interest in undoing that Agreement. The FDIC is fully committed to all of the terms of the
Agreement, for as long as it remains in place. This notice is only being provided because of the
requirements of the ADEA. You do not need to respond if you are willing to permit the
Settlement Agreement to remain in place.

Please feel free to contact me directly if you have any questions on any part of this.    Thank you,
                                                        James Lawrence
                                                        202-736-0272

4 a 2.

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

YOLANDA C. GIBSON-MICHAELS )
)
Appellant )    DOCKET NUMBER
)    DC-0752-06-0515-I-1
)
v. )    DATE: August 3, 2006
)
FEDERAL DEPOSIT INSURANCE )
CORPORATION, )
)
Agency )

PETITION FOR REVIEW

APPELLANT'S 3rd REQUEST FOR AN AWARD OF
COMPENSATORY DAMAGES -- PREVAILING PARTY
NOVEMBER 14, 2005 (Constructive Discharge)

NOW COMES the Appellant and respectfully files a **Petition for Board Review** pursuant to

Board's regulations at 5 C.F.R. § 1201.114, 5 C.F.R. § 1201.120. Civil Service law (5 U.S.C. 2301(b))

requires that federal personnel management be implemented consistent with the following merit system

principles.

Appellant requests a Hearing of an Award of Consequential and Compensatory Damages of

appellants involuntary constructive discharged on reversed by MSPB on November 14, 2005.

Honorable Judge Raphael Ben-Ami erred in his ruling that Appellant was not eligible for a hearing

for an award of Consequential and Compensatory damages. In support thereof, appellant states the

following:

By order dated July 12, 2006, Judge Ben-Ami **DENIED** appellant's request for an

award of Compensatory and Consequential damages.

Judge Ben-Ami's 2nd Denial of appellant's request creates bias against appellant's

right to an award of Compensatory and Consequential damages.



Honorable Judge Ben-Ami by Court order dated <u>November 14, 2005</u>, ruled that:

"Although the appellant request a hearing, I did not schedule one light of the documentary evidence already of record establishing that the appellant's resignation was involuntary." However, Judge Ben-Ami's order dated <u>July 12, 2006</u>, ruled that: "By motion dated July 11, 2006, the appellant request Compensatory and Consequential damages in connection with my November 14, 2005 decision reversing her constructive removal.

The appellant's request is <u>DENIED</u>. First, the appellant made no such request in connection with that prior proceeding and the Boards regulation at 5 C.F.R. 1201.204(a) required that such request be made during the proceeding on the merits and no later than the end of the conferences held to define the issues in the case...." (Refer to Judge Ben-Ami's Order dated July 12, 2006)(Exhibit I)

Respectfully, Judge Ben-Ami did not hold a hearing, proceeding and/or held a Conference. Judge Raphael Z. Ben-Ami by his ruling dated <u>November 14, 2005</u> ruled: "Although the appellant request a hearing, I did not schedule one light of the <u>documentary evidence</u> already of record establishing that the appellant's resignation was involuntary."

Subsequently, Judge Ben-Ami's ruling dated <u>November 14, 2005</u> did not reference by written word, cite, or provision appellant's entitlement to availability of compensatory and/or consequential damages. Judge Ben-Ami's ruling only addressed attorney fees. Appellant won her case (Prose).

Nonetheless, appellant hereby assert all rights to Attorney fees w/interest to be decided upon at a hearing at a date and time provided by the Merit System Protection Board (MSPB).

2

Aug 05 06 02:57a    Sandra Edwards    301-630-2935    p.4

Judge Ben-Ami's order dated July 12, 2006 further states that: "Third, the appellant is in any event not entitled to an award of compensatory or consequential damages. An employee who prevails in a Board appeal based on a finding of [I]intentional employment discrimination under Title VII of the Civil Rights Act of 1964 or a finding that the agency failed to make a reasonable accommodation for a qualified disabled person may recover compensatory damages from the agency pursuant to the Civil Rights Act of 1991.

Judge Ben-Ami by ruling dated July 12, 2006 concluded that: "I made no finding of employment discrimination in connection with the aforementioned decision...."

Employment discrimination refers to employment practices that are prohibited by law such as bias in hiring, promotion, job assignment, termination, compensation, and various types of harassment.

Laws prohibit employers from discriminating on the basis of race, color, sex, religion, national origin, physical or mental disability, or AGE.

There is also a growing body of law preventing or occasionally justifying employment discrimination based on genetic testing.

Employment discrimination in the United States is governed by both federal and state law.

## AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

29 United States Code (USC) 621-633a.

(Pub. L. 90-202) (ADEA), as amended The ADEA prohibits employment discrimination against persons 40 years of age or older.

Note: The Older Workers Benefit Protection Act (Pub. L. 101-433) amends several sections of the ADEA. In addition, section 115 of the Civil Rights Act of 1991 (P.L. 102-166) amends section 7(e) of the ADEA (29 U.S.C. 626(e)).

3

The purpose of the law is to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

The law makes it illegal for an employer:

¥   to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

¥   to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

¥   to reduce the wage rate of any employee in order to comply with this law.

It is also unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

Furthermore, it is unlawful for a labor organization:

¥   to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age;

¥   to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age; ¥ to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

It is unlawful for an employer, employment agency or labor organization to discriminate against an employee who has opposed any practice made unlawful by the ADEA, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

By order dated November 14, 2005, Honorable Ben-Ami ruled that the FDIC constructively discharged appellant in violation of the ADEA (age discrimination) Statue Judge Ben-Ami ruled that: "[b]y improperly refusing to give effect to the [A]appellant's timely cancellation of the settlement agreement... the agency constructively removed appellant..."

4

## Employment Discrimination (Disparate Treatment)—Definition

The plaintiff must prove that she was discriminated against because of [religion / race / color / national origin / age / sex / height / weight / marital status]. The discrimination must have been intentional. It cannot have occurred by accident. Intentional discrimination means that one of the motives or reasons for plaintiff's [discharge / failure to be hired / failure to be promoted / failure to be trained / harassment / [other]] was [religion / race / color / national origin / age / sex / height / weight / marital status]. [Religion / race / color / national origin / age / sex / height / weight / marital status] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to [discharge / hire / promote / train / harass / [other]] the plaintiff.

Intent to discriminate need not be proven by direct evidence, United States Postal Service Board of Governors v Aikens, 460 US 711; 103 S Ct 1478; 75 L Ed 2d 403 (1983). Where circumstantial evidence is relied on, _____ _____ should be given.

By e-mail dated January 12, 2005, at approximately 4:12pm the FDIC e-mailed appellant with its coercive terms and conditions which involuntary separated appellant on January 21, 2005. Refer to number 8, which reads: ("IF YOU CHOOSE TO PULL BACK YOUR BUYOUT PAPERS, A PROPOSAL LETTER WILL BE ISSUED BY THE LEGAL DIVISION SHORTLY FOLLOWING YOUR RESCINDING OF THE BUYOUT PAPERS") See 5 USC Sec. 2302 Prohibited Personnel Practices.

5

Judges has ruled that: "when an employer requires an employee as part of a separation agreement to give up her right to file a charge with the EEOC in exchange for severance benefits, the employer violates the anti-retaliation provisions of the laws enforced by the EEOC. The provision of an Separation Agreement conditioning severance payments on an employee agreeing not to file a charge with the EEOC is facially retaliatory in violation of the ADA, ADEA, EPA, and Title VII."

Appellant's request for compensatory and consequential damages had clearly addressed the Federal Deposit Insurance Corporation's 1st constructive removal of appellant. FDIC reported corrupt officials forced, threaten, and harassed appellant in its attempt to conceal Bank Fraud, Receivership, Money Laundering, and inside trading; to and including signatory to infamous Kenneth Lay (Enron) and Halliburton.

Wherefore, in accordance to provisions set forth under 5 U.S.C. 7121(d), the Board may: (1) Consider both the merits and the request for damages and issue a final decision;

(2) Remand the case to the judge for a new initial decision, either on the request for damages only or on both the merits and the request for damages; or

(3) Where there has been no prior proceeding before a judge, forward the request for damages to a judge for hearing and a recommendation to the Board, after which the Board will issue a final decision on both the merits and the request for damages.

(i) *EEOC review of decision on compensatory damages.* A final decision of the Board on a request for compensatory damages pursuant to the Civil Rights Act of 1991 shall be subject to review by the Equal Employment Opportunity Commission as provided under subpart E of this part.

Aug 05 06 02:59a   Sandra Edwards   301-690-2935   p.8

**Wherefore**, Appellant did not receive <u>compensatory</u> and <u>consequential</u> damages for matters decided upon on <u>November 14, 2005</u>. An immediate request to a hearing is warranted.

**Wherefore**, appellant is requesting an award of $500,000.00 in Compensatory Damages and <u>$500,000.00</u> in Consequential Damages.

I.   <u>History of Appellants Involuntary (Constructive) Removals</u>

Appellant filed an IRA with the MSPB on <u>June 21, 2005</u> against the FDICs 1st coercive constructive discharge. Appellant's IRA clearly requested an immediate hearing of the FDICs <u>unlawful 5-day suspension</u> , FDIC illegal interception of appellants' oral communication (tape recording) without a court order, FMLA violations, AWOL in which the Board ruled in appellant's favor as the prevailing party on ALL issues November 14, 2005.

Appellant timely filed an IRA with the Board on <u>April 27, 2006</u> to appeal the agency's <u>2nd involuntary</u> (constructive) discharge of appellant based on the same set of EEO claims, facts, issues, 5-day suspension, assault, abuses, FMLA violations filed against James Lantelme and Stephen Hanas <u>reopened by the agency for adjudication and decision on June 16, 2006</u>. (See Tab 2)(IRA filed <u>June 21, 2005</u> and <u>April 27, 2006</u>).

Honorable Ben-Ami <u>never issued a decision</u> regarding pending issues. Nonetheless, Judge Ben-Ami permitted FDIC to effectuated appellant's removal by the very same exact issues Appellant filed against the FDIC by Individual Right of Action on June 21, 2005. The same issues Judge Ben-Ami failed to rule upon i.e., physical assault, illegal interception (tape recording), FMLA violations. <u>See Gibson-Michaels (prose) vs the Federal Deposit Insurance Corporation ("FDIC") docket number DC-0752-05-0633-I-1.</u>

*7*

Wherefore, appellant is seeking an award as the prevailing party (November 14, 2005) decision of treble Compensatory and Consequential damages against the FDICs intentional, willful, deceitful, treacherous and retaliatory 2nd constructive removal of appellant.

I.    Consequential and Compensatory damages IRA filed June 21, 2005

A.    Unwarranted 5-Day Suspension

Appellant (prevailing party) by reverse constructive discharge removal decided November 14, 2005 by Judge Raphael Ben-Ami provided evidence that FDIC approved for an unlicensed contractor Douglas Fahey without a court order to illegally intercept appellant's oral communications (18 U.S.C. – 119) as she quoted a verse from the King James bible to a 25-year old intern involved in a Federal Theft, employed, hired, and supervised by her aunt (nepotism).

II.   Consequential and Compensatory damages IRA filed June 21, 2005

B.    FMLA – Family Medical Leave Act Violations

Appellant (prevailing party) by reverse constructive discharge removal decided November 14, 2005 by Judge Raphael Ben-Ami by evidence that the FDIC allowed James T. Lantelme to marked, scratch, altered, and delete approved leave under the Family Medical Leave Act on April 14, 2004.

Appellant is seeking payment for 32-hours of approved FMLA previously approved by appellant's former supervisor Carl Polvinale in accordance to the Family Medical Leave Act (FMLA). Appellant (prevailing party) provided evidence that her former unlicensed lawyer supervisor Stephen Hanas and James T. Lantelme (unlicensed) provided false affidavits in violation of appellant's leave under the FMLA Act.

Aug 05 06 03:00a    Sandra Edwards         301-630-2555                p.10

Appellant is seeking compensatory and consequential damages and sanctions against both managers' false affidavits involuntary separation appellant on January 21, 2005. Steve Hanas (Appellant's former first-line reported official) affirmed that he had all approvals of appellant's telework, FMLA leave approvals, outstanding performances ratings, medical documentation since August, 2003. Appellant provided evidence at the 2nd 'mock' removal hearing.

Appellant is seeking immediate compensatory and consequential damages for the blatant, unconscionable, outrageous persecution of my religious belief, illegal removal from federal service to and including the MSPB failure to correct the FDICs illegal deduction of appellant's salary of well over $34.186.00 without due process. Moreover, appellant' is not indebted to the FDIC. Honorable Judge Raphael Ben-Ami denied Appellant her lawful right to recover compensatory and consequential damages from the Federal Deposit Insurance Corporation (FDIC) without justification.

Appellant provided Honorable Ben-Ami evidence from the FDICs discovery that appellant was not removed for Performance or Insubornation.

Whereas, the Civil Rights Act of 1991 (42 U.S.C. 1981a) authorizes an award of compensatory damages to a prevailing party who is found to have been intentionally discriminated against based on age, race, color, religion, sex, national origin, or disability.

Whereas, for good cause shown appellant request is timely, ALJ's order did not informed appellant of entitlements and her right to claim compensatory or consequential damages. The Board provides an award for compensatory to prevailing parties.

9

Aug 05 06 03:00a    Sandra Edwards

The Civil Rights Act of 1991 (42 U.S.C. 1981a) authorizes an award of <u>compensatory damages to a prevailing party</u> who is found to have been <u>intentionally discriminated against based on race, color, religion, sex, national origin, or disability</u>.

The Federal Deposit Insurance Corporation (FDIC) intentionally denied appellant her right to lawful employment, caused intentionally infliction of emotional duress, subjected appellant to additional duress, pain, and suffering when the agency failed to reinstate appellant status on April 27, 2005 reverse by MSPB.

Wherefore, appellant has provided evidence to Honorable Judge Ben-Ami that warrants an award of Compensatory and Consequential damages.

Wherefore, the FDIC has no basis other than pure <u>HATRED</u> to remove a former sustained outstanding employee based on protected disclosures of the FDICs receivership, bank, inside trading, and money laundering.

Wherefore, appellant has a right to lawful employment earned by hard work, dedication, loyalty and outstanding performances tarnished by reported FDIC officials since 2002.

Respectfully submitted,

Yolanda C. Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland 20748
(301) 630-5062

10

Aug 05 06 03:00a     Sandra Edwards          301-630-2935          p. 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th Day of August, 2006, a true and exact copy of

Appellant's Petition for Review 3rd request for Compensatory Damages and Consequential

Damages under Docket Number DC-0752-06-0515-I-1 was faxed, and mailed by certified mail

delivery to the Merit System Protection Board (MSPB) and FDICs representative Tina A.

Lamoreaux, Federal Deposit Insurance Corporation, FDIC, Legal Division, Room VS-D6116,

3501 N. Fairfax Drive, Arlington, VA, 22226 counsel for the Agency.


Yolanda C. Gibson-Michaels (prose)
FDIC Information Specialist
2210 Anvil Lane
Temple Hills, Maryland 20748
(301) 630-5062

cc:     Chairman Neil McPhie, Chairmember
        1615 M Street, N.W.
        Washington, D.C. 20429

        Committee on Financial Services
        U.S. House of Representatives
        2129 Rayburn House Office Building
        Washington, DC 20515

        Chairman Howard Dean
        Democratic National Committee
        430 S. Capitol St. SE
        Washington, DC 20003

        Senator Lieberman Office
        613 Hart Office Building
        Washington, DC 20510

        NAACP National Headquarters
        4805 Mt. Hope Drive
        Baltimore, MD 21215

11

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

YOLANDA C. GIBSON-MICHAELS,
Appellant,

DOCKET NUMBER
DC-0752-06-0515-I-1

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,
Agency.

DATE: July 12, 2006

## ORDER

By motion dated July 11, 2006, the appellant requests compensatory and consequential damages in connection with my November 14, 2005 decision reversing her constructive removal. The appellant's request is DENIED.

First, the appellant made no such request in connection with that prior proceeding and the Board's regulations at 5 C.F.R. § 1201.204(a) require that such requests be made during the proceeding on the merits and no later than the end of the conference held to define the issues in the case. Second, a request for compensatory or consequential damages will be decided in an addendum proceeding, and a motion for initiation of an addendum proceeding must be filed no later than 60 days after the date on which a decision becomes final. *See* 5 C.F.R. § 1201.204(d)(1) and (e). My aforementioned initial decision became the final decision of the Board on December 19, 2005. Third, the appellant is in any event not entitled to an award of compensatory or consequential damages. An employee who prevails in a Board appeal based on a finding of intentional employment discrimination under Title VII of the Civil Rights Act of 1964 or a finding that the agency failed to make a reasonable accommodation for a

2

qualified disabled person may recover compensatory damages from the agency pursuant to the Civil Rights Act of 1991. *See* 42 U.S.C. § 1981a(a); *Schultz v. U.S. Postal Service*, 70 M.S.P.R. 633, 639 (1996). I made no finding of employment discrimination in connection with the aforementioned decision. Finally, consequential damages are available under 5 U.S.C. § 1221 only in those cases where the Board orders corrective action upon finding that the agency took or failed to take a personnel action in reprisal for an appellant's protected whistleblowing activity. I made no such finding in connection with the aforementioned decision.

FOR THE BOARD:

Raphael Ben-Ami
Administrative Judge

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail                     Yolanda C. Gibson-Michaels
                              2210 Anvil Lane
                              Temple Hills, MD 20748

<u>Agency's Representative</u>

Electronic Mail               Tina A. Lamoreaux, Esq.
                              Federal Deposit Insurance Corporation
                              FDIC Legal Division
                              3501 N. Fairfax Drive
                              Room VS-D6138
                              Arlington, VA 22226


_____July 12, 2006_____                    Eric W. Hawthorne
              (Date)                             Paralegal Specialist

Aug 05 06 02:56a    Sandra Edwards    301-630-2935    P.1

IMMEDIATE DELIVERY REQUESTED

August 4, 2006

Facsimile To:    MSPB-Petition for Review
1615 M Street, N.W.
Washington, D.C.  20429
(202) 653-7130

PJ Winzer
Regional Director and
Chief Administrative Judge
1800 Diagonal Road
Suite 205
Alexandria, VA 22314-2840
FAX (703) 756-7112

FDIC Tina Lamoreaux (703) 562-2482 (Fax)

From:    Yolanda C. Gibson-Michaels
Former FDIC Whistleblwoer
Case No. DC-0752-06-0515-I-1

Subject:    3rd Request for Compensatory and Consequentional – Petition for Review

Attached hereto is appellant's 3rd Request for Compensatory and Consequentional

Damages (Prevailing Party) Case number DC-0752-06-0515-I-1.

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th Street NW, Washington, D.C. 20429-9990

Legal Division

March 27, 2006

Ms. Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD  20748

Dear Ms. Gibson-Michaels:

On December 19, 2005, Stephen M. Hanas, Senior Counsel, informed you by written notice of a proposal to remove you from your position of Information Specialist, CG-301-11, with the Federal Deposit Insurance Corporation and the Federal service due to Disrespectful and/or Inappropriate Conduct and Failure to Follow Instructions.

I have been designated the agency official authorized to make the final decision in this matter. In the letter proposing your removal, you were informed that you had the right to reply orally and/or in writing to the charges against you. I have carefully considered the materials constituting the record in this action, including the oral response presented by you on January 19, 2006, and the written documents you submitted during your oral presentation.

**PROPOSED ACTION**

The Corporation issued a notice of adverse action proposing your removal from your position and the Federal service. The basis for the proposal is Disrespectful and/or Inappropriate Conduct and Failure to Follow Instructions. The notice is very specific in detailing your misconduct. All materials provided have been reviewed and considered by me in reaching a decision in this matter.

**RESPONSE TO NOTICE OF PROPOSED REMOVAL**

The oral response provided by you raised several issues/defenses to the proposed removal. While not all-inclusive, they are summarized as follows:

You alleged that the FDIC's proposal for your removal was in retaliation for whistle-blowing, EEO retaliation, age, and Family Medical Leave Act (FMLA) violations. You also stated that you had exemplary Federal service, and provided a historical summary of your employment. You stated that all of the specifications in the notice of proposed removal were your EEO claims. You denied that you had engaged in any type of misconduct.

**REVIEW AND DISCUSSION**

The notice of proposed adverse action states that the removal is proposed for Disrespectful and/or Inappropriate Conduct and Failure to Follow Instructions, and to promote

4b-1


GOVERNMENT EXHIBIT 20

2

the efficiency of the service. During the period October 20, 2004 through December 17, 2004, you engaged in a series of behaviors amounting both singly and in the aggregate to disrespectful and/or inappropriate conduct by making various unfounded allegations against your supervisors, behaving in an intimidating manner toward your co-workers and supervisors, and failing to follow instructions as demonstrated by your numerous absences from work at various times without advance approval of leave, contrary to explicit written and oral direction given to you about how to handle such absences.

I note that in regard to specification 1 of the charge Disrespectful and/or Inappropriate Conduct, the proposal stated that an officer was dispatched and met with you in your FDIC office on the three dates listed, yet no police report was filed or taken concerning your allegations. During the oral reply meeting on January 19, 2006, you produced a copy of a partial report that was taken on October 20, 2004. The copy of the report you produced was incomplete as the attachment was missing. I find that this information was not material to the substance or basis for the specification, and that your actions of continuing to contact law enforcement officials to respond to the same matter you had already reported was disrespectful and/or inappropriate conduct.

The record is clear that you committed the misconduct with which you have been charged. Although you alleged that the specifications describing the instances of misconduct were the same as your EEO claims, I disagree. The specifications describe the various instances of your disrespectful and/or inappropriate conduct directed to your supervisors. Further, you acknowledged during your oral reply that you had personal reasons why you were late to work, yet you failed to justify your failure to follow instructions regarding proper leave approval.

## CONSIDERATION OF THE DOUGLAS FACTORS:

I have also given consideration to the factors set forth in Douglas v. Veterans Administration, 81 FMSR 7037, which I must consider as the Deciding Official in reaching a decision regarding the appropriate penalty in an action for misconduct. Following are the Douglas Factors and a summary of consideration given to those factors in regard to this case, although not all-inclusive:

**1. The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated.**

Based on my review of the record, you engaged in misconduct that was serious in nature and directly impacted your ability to perform and carry out the duties of a CG-11 Information Specialist. Such misconduct was frequently repeated, and was by no means merely technical or inadvertent. Due to your behavior and unscheduled absences as described in the various specifications, your own work was adversely affected, your supervisor was distracted on numerous occasions from working on matters germane to the mission of the agency, and other employees were hindered in performing their own work.

4b-2

2. **The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position.**

You are a CG-11 Information Specialist and are expected to conduct yourself in a fitting manner in your workplace in the Legal Division and to conform to reasonable supervisory instruction. Despite repeated efforts to counsel you, however, you continually engaged in disrespectful and/or inappropriate conduct and failed to follow instructions regarding reporting to work on time or obtaining advance approval for annual leave or leave without pay.

3. **The employee's past disciplinary record.**

You have a history of past actions based on disrespectful and/or inappropriate conduct and failure to follow instructions. You were suspended for similar reasons in August 2004 for five calendar days. Prior to that suspension, you were counseled in August 2003 for unprofessional and inappropriate conduct toward your acting supervisor.

4. **The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.**

You were transferred to the FDIC from the FSLIC on October 8, 1989, as a Secretary, GS-6, and were later reassigned to a Legal Technician position on January 14, 1990. You were temporarily promoted to a series of CG-7 Assistant positions during the period October 1993 to January 1998. You were temporarily promoted to a CG-7 Information Specialist on December 19, 1999, and to a CG-9 on December 17, 2000. You were permanently promoted to the CG-9 position on September 23, 2001, and then to the CG-11 on December 16, 2001.

Your record reflects as the most recent recognition a Suggestion Award of $500 on December 11, 2003. You received STAR awards on December 2, 2001, June 18, 2000, February 28, 1999, and September 15, 1996. You received Special Act Awards on November 4, 2001, November 21, 1999, July 6, 1997, February 19, 1995, November 27, 1994, and December 2, 1990. Your past three performance appraisals were: 2003/2004 - Meets Expectations; 2002/2003 - Meets Expectations; and 2001/2002 - Meets Expectations.

5. **The effect of the offense upon the employee's ability to perform at a satisfactory level and its effects upon supervisor's confidence in the employee's ability to perform assigned duties.**

It is clear from the record that the misconduct and failure to follow instructions complained of against you have had a significant negative impact on management's confidence in your ability to perform your assigned duties. Over the period from October 2004 through December 2004, management was unable to depend upon you to report to work on a regular basis, nor could you be depended upon to provide the required timely notice in the event of an unplanned absence, and when you were at work you frequently engaged in behaviors amounting to unprofessional and/or inappropriate misconduct.

4b-3

6. **Consistency of the penalty with those imposed upon other employees for the same or similar offenses.**

I have been advised by Legal Division counsel and the human resources section of the Division of Administration that the decision to remove you is consistent with actions taken for the same or similar offenses at FDIC.

7. **Consistency of penalties with applicable table of penalties.**

There is no FDIC table of penalties.

8. **The notoriety of the offense or its impact upon the reputation of the agency.**

Based on my review of the record, you are unable to fulfill adequately the duties and responsibilities of a CG-11 Information Specialist. In particular, your conduct and refusal to follow instructions show a degree of disrespect for supervisory authority and obstreperousness that is totally inconsistent with the good order of the FDIC workplace. While your actions do not directly impact the reputation of the FDIC, they have adversely affected management's confidence in your ability to effectively carry out the responsibilities of your position.

9. **The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question.**

The record shows that you had been counseled on several previous occasions and disciplined regarding the unacceptability of your conduct, and that you proceeded in your course of action despite clear warning.

10. **Potential for the employee's rehabilitation.**

Despite repeated counseling and a 5-day suspension from duty without pay, you continually insulted and made inappropriate allegations against supervisors, and failed to follow supervisory instructions about advance approval of annual leave or leave without pay, therefore being repeatedly marked absent without leave. The lengthy record of your disrespect to supervisors, your repeated inappropriate behavior in the workplace, your attendance problems and failure to follow related instructions, coupled with your failure to respond to discipline and counseling, all indicate that there is very little or no potential for rehabilitation.

11. **Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of other involved in this matter.**

My review of the record finds no circumstances that mitigate your repeated disrespectful and/or inappropriate behavior or your failure to follow instructions regarding advance approval of absences. I heard nothing in the oral presentation that would excuse your repeated misconduct as described in the specifications and borne out elsewhere in the record. Although you have

4b-4

referred to the medical condition of your son as a mitigating factor, I find that your repeated negative behaviors and course of conduct were not excused or excusable on that basis.

**12. The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.**

The entire record raises questions about your reliability, dependability, and ability to efficiently carry out the responsibilities of your position. Progressive discipline has been used in an attempt to induce you to adopt behaviors that would not adversely affect the workplace and to follow supervisory instruction on leave matters. However, your continued outrageous behaviors in the workplace, insulting management and acting inappropriately toward co-workers, and refusing to follow instructions, have resulted in your supervisor having no confidence in your reliability and ability to perform your assigned duties. Continuing to have you in the workplace would represent an extremely negative example that could only adversely affect morale among employees and undermine supervisory authority.

## AGENCY DECISION:

I have carefully considered all of the information in your case file, along with the information provided during the oral reply and in the written document submission. Based on my review of the entire record, I find that each of the specifications in the notice of proposed removal is supported by the evidence. Your oral reply and written submissions failed to controvert the facts set out in the specifications. I agree with the proposal by Mr. Hanas that misconduct was committed on your part, and that your behavior is unacceptable. Due to your contempt for the good order of the workplace and the authority of your supervisor, your intimidating or disrespectful actions, the continual disregard of supervisory instruction, and your repeated unexcused absence from the workplace, management has lost its trust in you to serve in any position. I have determined that the proposed removal is fully supported and warranted.

Therefore, per Board Resolution 060188, as deciding official for the Corporation, it is my decision that you are **removed from your position and from the Federal Service, effective March 31, 2006.** This action is taken to promote the efficiency of the service.

You have the right to appeal this action to the Merit Systems Protection Board (MSPB). Your appeal may be filed electronically or by paper. If you choose to appeal electronically, you must do so by accessing the MSPB website at https://e-appeal.mspb.gov/ to create and file your appeal. However, if you choose to file a paper appeal, it must be directed to the Regional Director, U.S. Merit Systems Protection Board, Washington Regional Office, 1800 Diagonal Road, Suite 205, Alexandria, Virginia 22314-2840, telephone (703) 756-6250, Facsimile (703) 756-7112. In order for your appeal to be timely filed, it must be submitted to the MSPB no later than 30 calendar days after the effective date of this action or 30 calendar days after the date of receipt of the agency's decision, whichever is later. If the FDIC and you mutually agree in writing to attempt to resolve the dispute through an alternative dispute resolution process prior to

4b-5

the timely filing of an appeal, however, the time limit for filing the appeal is automatically extended by an additional 30 days - for a total of 60 days.

If you believe that this personnel action constitutes discrimination against you on the basis of your race, color, religion, sex, national origin, age (40 or over), or physical or mental handicap, and you wish to initiate a complaint, you must follow the procedures in FDIC Circular 2710.2, EEOC Discrimination Complaint Procedures. However, if you believe that this personnel action constitutes discrimination against you on the basis of your sexual orientation, genetic information, or parental status and you wish to initiate a complaint, you must follow the procedures in FDIC Circular 2710.4, FDIC Discrimination Complaint Procedures. A complaint under either one of these procedures must be brought to the attention of an EEO Counselor within 45 calendar days of the effective date of this action. A list of EEO Counselors is enclosed. You may also appeal this decision to the MSPB as previously mentioned and allege discrimination in that appeal. However, you may not file both a discrimination complaint and an MSPB appeal.

Should you elect to file a complaint of discrimination, your complaint will be processed in accordance with EEOC regulations at 29 C.F.R. Part 1614, Subpart A. Should you elect to file an appeal, your appeal will be processed in accordance with MSPB regulations at 5 C.F.R. Part 1201, Subpart D.

Should you have any questions concerning your appeal rights, you may contact Mary Laverty, Lead Human Resources Specialist, at (703) 562-2171.

Sincerely,

Henry R. F. Griffin
Acting Deputy General Counsel

Enclosures (6):

Notice of Proposed Removal dated December 19, 2005
MSPB Appeal Form
MSPB Regulations
FDIC Circular 2710.2, EEO Procedures
FDIC Circular 2710.4, FDIC Complaint Procedures
EEO Counselors List

4b-6

*EEO 040039*

## AFFIDAVIT

**CITY OF WASHINGTON D.C. }**

**DISTRICT OF WASHINGTON D.C. }**


    **I, Stephen M. Hanas,** hereby solemnly swear that I am employed in the position of Senior Counsel, grade CM-2, Legal Division, Federal Deposit Insurance Corporation (FDIC), 550 17th Street, NW, Washington D.C. 20429.  My race is Caucasian, my color is white, my gender is male and my date of birth is June 1, 1954.  My religion is Methodist.  My first line supervisor is James Lantelme.  I have undergone normal FDIC EEO training regarding the mitigation and prevention of harassment.

    I have been Ms. Gibson-Michaels' first-line supervisor since July, 2004. I am aware of Ms. Gibson-Michaels' race (African-American), her color (black), her gender (female), and her approximate age in the mid-forties.  Our relationship is purely professional.  I have known Ms. Gibson-Michaels since July, 2004.    In August or September, 2004, I became aware that Ms. Gibson-Michaels had made an EEO complaint by means of office conversations with Mr. Lantelme or with Ms. Gibson-Michaels. I was not unaware of the specific issues of Ms. Gibson-Michaels' EEO complaint.   During my interview on November 15, 2004, I did learn of the specifics of Ms. Gibson-Michaels' EEO complaints involving accepted issues five and six when I read portions of the FDIC Partial Acceptance of Second Amendment to Formal Discrimination Complaint Letter to Ms. Gibson-Michaels, dated October 26, 2004.

    Regarding Accepted Issue five, Ms. Gibson-Michaels and I have had several

Affiant's Initials *SMH*

GOVERNMENT EXHIBIT
21

discussions and some disagreement in the area of Ms. Gibson-Michaels' attendance and leave. Ms. Gibson-Michaels claimed to be on a flex-time work schedule. FDIC rules and regulations provide that the core hours for the flex-time work schedule are from 6:30 a.m. to 9:15 a. m. FDIC rules and regulations provide that an employee on a flex-time schedule must report to work no later than 9:15 a.m. On numerous occasions, Ms. Gibson-Michaels has reported to work at 10:30 a.m., or 11:00 a.m., or later. On those occasions when she has reported late to work, Ms. Gibson-Michaels has taken the position that she should be allowed the to work extra time at the end of working day in order to make up for the period of time that she was not in office after 8:00 am, her stated start time. Since FDIC regulations provide that an employee must report for work no later than 9:15 a.m., I have asked Ms. Gibson-Michaels to take annual leave or leave without pay for those periods of time when she arrives at the office after 9:15 a.m. I normally communicated these annual leave requests to Ms. Gibson-Michaels via email. I maintain that these leave requests to Ms. Gibson-Michaels did not constitute any type of reprisal due to Ms. Gibson-Michaels' EEO activities. As a first-line supervisor, I was simply following FDIC rules and regulations about flex-time schedules, employee core hours and reporting time. I would have and did treat other FDIC employees in the same manner I treated Ms. Gibson-Michaels regarding her late reporting to work and subsequent annual leave requests. Ms. Gibson-Michaels' race and gender did not influence me in any manner regarding my supervisory decision to ask her to take annual leave or leave without pay for the period of time she was late to work.

Prior to October 20, 2004, I had sent Ms. Gibson-Michaels an email message asking her to submit annual leave forms to me regarding the time that she had reported to

Affiant's Initials _____

the office after her start time.  On October 20, 2004,  Ms. Gibson-Michaels appeared at my office to discuss my recent email.  Regarding the hours in question, Ms. Gibson-Michaels stated, in substance, that she had been working at home on her EEO rebuttal, and that she was entitled to the time.  I replied that she could have worked on her EEO rebuttal at her desk and that she should have reported to work at 8:00 am.  I indicated that there was no way that I could verify that she was working on her EEO rebuttal at home, nor had she notified me she was coming in late.  Ms. Gibson-Michaels continued to insist and argue that she was entitled to the time due to her EEO activities.

Ms. Gibson-Michaels changed the subject and began asking for the documentation she had submitted  in connection with her request for additional advanced sick leave under the provisions of the Family Medical Leave Act.  Ms. Gibson-Michaels had submitted this  request in December 2003.   I did have a supervisory copy of Ms. Gibson-Michaels' request and copies of the documentation she had previously submitted. I informed Ms. Gibson-Michaels that the copy of her request and the copies of the documentation that she had previously provided were part of her official time and attendance records and that I could not return the documentation to her.  At this point in our conversation,  I calmly asked Ms. Gibson-Michaels to leave my office.   My secretary, Ms. Ann Laterra, was on duty outside my office on October 20, 2004, and she may have heard portions of my conversation with Ms. Gibson-Michaels.

Ms. Gibson-Michaels' allegation that I sexually harassed and verbally assaulted her by telling Ms. Gibson-Michaels to "get the hell of my office" is a total falsehood.  I never used the term "Hell" with her during my conversation with Ms. Gibson-Michaels on October 20, 2004.  I have never used the term "Hell" with any of my subordinates.  I

Affiant's Initials _____

deny that I sexually harassed Ms. Gibson-Michaels during our conversation on October 20, 2004 or at any time. I deny that any of my actions and conversation on October 20, 2004, with Ms. Gibson-Michaels constituted a reprisal due to Ms. Gibson-Michaels' EEO activities. I deny that I have ever harassed Ms. Gibson-Michaels. I have never denied any of Ms. Gibson-Michaels' requests for office time to engage in EEO activities.

Regarding Accepted Issue six, I have no first-hand knowledge of the events that took place in Mr. Lantelme's office on October 20, 2004, between Mr. Lantelme and Ms. Gibson-Michaels. I have never seen or witnessed Mr. Lantelme grabbing any employee, including Ms. Gibson-Michaels.

I am unaware that the events involving the Accepted Issues five and six have affected, in any manner, Ms. Gibson-Michaels' job performance or her conditions of employment. I recently evaluated Ms. Gibson-Michaels performance as fully acceptable.

I have no knowledge of any type of FDIC discrimination, including sexual harassment, involving Ms. Gibson due to her African-American race and female gender. I have no knowledge of any form of FDIC reprisal against Ms. Gibson-Michaels based on her EEO activities and complaints.

I have nothing further to add to my affidavit.

I have read the foregoing statement consisting of ____5____ pages, each of which I initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement is made of my free will without any threat, promise of immunity, or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to interested parties.

_____
Signature

Subscribed and sworn before me in _Washington_

this ___30th___ day of ___November___ , 2004

_____
Investigator

Affiant's Initials _____

## PRIVACY ACT NOTICE TO INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to **FDIC** activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of **FDIC** employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____
Signature of Interviewer

_____
Signature of Witness (person providing statement)

Date: _NOV. 19, 2004_

Place: _Washington, DC_



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                      Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.    To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.    To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.    To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.    To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.    To review your affidavit and make corrections or other changes <u>prior to</u> signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____    DATE: 11/15/04

TAB E

**AFFIDAVIT**

**CITY OF WASHINGTON}**

**DISTRICT OF COLUMBIA}**


     **I, James T. Lantelme,** hereby solemnly swear that I am employed in the position of Assistant General Counsel, grade EM, Legal Division, Federal Deposit Insurance Corporation (FDIC), 550 17th Street, NW, Washington D.C. 20429. My race is Caucasian, my color is white, my gender is male, and my date of birth is November 10, 1953. My religion is Lutheran. My first line supervisor is Deputy General Counsel Erica Bovenzi. I have completed a previous affidavit, dated October 10, 2004, regarding Accepted Issues one, two, and three of Ms. Gibson-Michaels' EEO complaint.

     Mr. Stephen Hanas is Ms. Gibson-Michaels' first-line supervisor. I am Mr. Hanas' first-line supervisor. I am Ms. Gibson-Michaels' second-line supervisor. I learned of the specifics of Ms. Gibson-Michaels' supplemental EEO complaint when I read portions of the FDIC Partial Acceptance of Second Amendment to Formal Discrimination Complaint Letter to Ms. Gibson-Michaels, dated October 26, 2004, during my interview on November 15, 2004.

     Regarding Accepted Issue five, I do not have any first-hand knowledge regarding Ms. Gibson-Michaels' allegations involving Mr. Hanas. I have no knowledge that Mr. Hanas has engaged in any form of discrimination, harassment, or reprisal involving Ms. Gibson-Michaels. I have never heard Mr. Hanas use the term "hell" in any manner to any subordinate employee, including Ms. Gibson-Michaels.

     Affiant's Initials _____

GOVERNMENT EXHIBIT 22

Regarding Accepted Issue six, on October 20, 2004, Ms. Gibson-Michaels came to my office, without an appointment, and stated, in substance, that Mr. Hanas had been harassing her. Ms. Gibson-Michaels appeared agitated throughout our conversation. Ms. Gibson-Michaels asked if she could be transferred to my direct supervision, in order to avoid Mr. Hanas' harassment. She gave me no examples of the alleged harassment or basis for her claim. I denied her request and told her that there was no work for her under my direct supervision. Ms. Gibson-Michaels changed the subject and stated that I had done nothing about nepotism in the office. I asked Ms. Gibson-Michaels what she meant by this statement. Ms. Gibson-Michaels responded by stating that there had been no consequences to Jenekia and Jo Anne referring to an intern, Ms. Jenekia Johnson, and my secretary, Ms. Jo Anne Williams. I told Ms. Gibson-Michaels that I would not discuss any disciplinary action regarding any other employee with her. Ms. Gibson-Michaels raised the issue of Mr. Hanas turning down her leave requests. I informed Ms. Gibson-Michaels that what Mr. Hanas had told her about FDIC leave policy and its applicability to her requests was correct.

Ms. Gibson-Michaels began to raise and argue issues involving prior incidents. After she began raising these issues, I asked her to leave my office three different times. Ms. Gibson-Michaels stated that because of the earlier taping of a conversation she had with Ms. Johnson I would go to jail. At this point, Ms. Gibson-Michaels left my office. There were no witnesses to our conversation.

On October 20, 2004, I did make some brief handwritten notes regarding my conversation with Ms. Gibson-Michaels on my daily calendar. I have given the

investigator a copy of my handwritten notes regarding my conversation with Ms. Gibson-Michaels.

Ms. Gibson-Michaels' allegation that I sexually harassed and physically assaulted her by grabbing her left arm is a total falsehood. I did not touch Ms. Gibson-Michaels during our conversation on October 20, 2004. I have never physically touched Ms. Gibson-Michaels. I have never sexually harassed Ms. Gibson-Michaels. I have been informed that when an individual from FDIC Security attempted to speak to Ms. Gibson-Michaels about the alleged physical assault on October 20, 2004, Ms. Gibson-Michaels refused to meet with the FDIC Security individual.

I deny that my conversation or any of my actions, concerning Ms. Gibson-Michaels, on October 20, 2004, or any other date, constituted any form of reprisal against her due to her EEO activities and complaints. I have no knowledge of any form of FDIC reprisal against Ms. Gibson-Michaels based on her EEO activities and complaints.

I am unaware that the events involving the Accepted Issues five and six have affected, in any manner, Ms. Gibson-Michaels' job performance or her conditions of employment. I have no knowledge of any type of FDIC discrimination involving Ms. Gibson-Michaels.

I have nothing further to add to my affidavit.

I have read the foregoing statement consisting of ___4___ pages, each of which I initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement is made of my free will without any threat, promise of immunity, or inducement. I

understand that the information I have given is not to be considered confidential and that it may be shown to interested parties.

_____
Signature

Subscribed and sworn before me in _Washington S.C.,_
this _____30th_____ day of _november_ _____, 2004

_____
Investigator

Affiant's Initials _____



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

<div align="center">

NOTICE OF RIGHTS OF WITNESSES
IN
EEO INVESTIGATIONS

</div>

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.    To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.    To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.    To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.    To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.    To review your affidavit and make corrections or other changes <u>prior to</u> signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____    DATE: 11/15/04

TAB E

## PRIVACY ACT NOTICE TO INTERVIEW WITNESSES
### (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to **FDIC** activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of **FDIC** employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____
Signature of Interviewer

_____
Signature of Witness (person providing statement)

Date: _11/19/04_

Place: _Washington D.C._

*EEO 040056*

City of Washington            }
                              }
                              }
                              }
                              }
District of Columbia          }

# **AFFIDAVIT**

I, James T. Lantelme, do solemnly swear or affirm that:

1. Please state your name, position title, pay plan, occupational series and grade, organizations, and organizational address (city/county/state).

   a. My name is James T. Lantelme. I am an Assistant General Counsel, EM, Legal Division, with the Federal Deposit Insurance Corporation, in Washington, DC. My phone number is 202- 898-6615.

2. How long have you worked for the federal government?

   a. I have worked for the Federal Government for twenty-five years.

3. How long with the Agency?

   a. I have worked for the FDIC since 1989.

4. How long in your current position?

   a. I have been an Assistant General Counsel since August 1989.

5. Who is your first line supervisor (name/position title), with dates? Who is your second line supervisor, with dates? (If different) Who were your first and/or second-line supervisors between November 7, 2004 and December 1, 2004?

   a. My first line supervisor is Douglas Jones, Senior Deputy General Counsel. He has been my supervisor since May 2005. My second line supervisor is William Kroener, III, FDIC General Counsel. He has been my second line supervisor since 1996. During the period of this complaint, my first line supervisor was Erica Bovenzi, Deputy General Counsel.

6. What was your organizational relationship with Complainant between November 7, 2004 and December 1, 2004?

   a. I was the Complainant's second line supervisor.

Initials

GOVERNMENT EXHIBIT 23

7. For the record, do you have any EEO activity, either as a Complainant, responsible management official, or management witness?

   a. Yes.

8. When this claim arose, were you aware of Complainant's prior EEO activity? If so, when and how did you become aware of this?

   a. Yes. I was aware of Complainant's EEO activity. Complainant filed an EEO complaint against me as her second line supervisor. I was interviewed by an EEO investigator and gave a statement for the investigation.

9. Were you involved in Complainant's selection as an Information Specialist, CG-301-11, in the Legal Division? If so, what was your involvement in her selection?

   a. No. I was not involved in her selection.

10. What were the duties of Complainant's position as Information Specialist?

    a. Complainant was responsible for maintaining databases that stored information about outside counsel used as Agency contactors. She sent informational packages to prospective contractors, entered information into the databases and kept the databases updated. She was responsible for generating monthly reports. She also maintained the paper files containing applications, contracts, and contract amendments.

11. The Investigator has reviewed with me the issues accepted for this investigation. I understand them to be as follows: 1) that Complainant was discriminated against on the basis of reprisal on or about November 7, 2004 when her rights under the Family Medical Leave Act (FMLA) were violated by Stephen M. Hanas, supervisory Counsel, Legal Division, and James T. Lantelme, Assistant General Counsel, Legal Division; and 2) that she was discriminated against and subject to harassment on the basis of reprisal (prior ADEA activities) when the following incidents occurred on November 23, 2004, and December 1, 2004: a) Complainant was placed in an absence without leave ("AWOL") status; b) Complainant was allegedly denied leave under the FMLA and charged time to her official time and attendance record without justification.

12. Please respond to Complainant's claim that she was discriminated against on the basis of reprisal on or about November 7, 2004 when her rights under the Family Medical Leave Act (FMLA) were violated by Stephen M. Hanas, supervisory Counsel, Legal Division, and James T. Lantelme, Assistant General Counsel, Legal Division.

Initials _VL_

D2-2

a. I don't recall this request, specifically. Complainant asked for leave time on many dates. She would have asked her supervisor, Stephen Hanas for leave under FMLA, not me. I have no idea what she asked for. I had no involvement. Her supervisor may have mentioned her request to me, but I have no specific recollection of that date. I believe her supervisor denied her request. Either she was not eligible for leave under FMLA, or she did not have the proper documentation, or both. I don't recall.

b. Complainant's prior EEO activity was not a factor in allegedly denying her rights under FMLA. I don't recall any employees similarly situated to Complainant – if there were any -- who were exercised FMLA rights and had no prior EEO activity.

13. Please respond to Complainant's claim that she was discriminated against and subject to harassment on the basis of reprisal (prior ADEA activities) when the following incidents occurred on November 23, 2004, and December 1, 2004: a) Complainant was placed in an absence without leave ("AWOL") status; b) Complainant was allegedly denied leave under the FMLA and charged time to her official time and attendance record without justification.

a. I knew Complainant was placed on AWOL status November 23, 2004. She did not follow FDIC procedures to take leave time. I believe she had exhausted her sick leave. An employee is usually placed on AWOL status if he or she does not appear for work as scheduled and has not followed leave procedures and fails to get permission to take leave. All leave must be approved. Complainant did not comply with the requirements.

b. My role was to discuss with Mr. Hanas what was going on. His decision was not one that required my approval. I fully supported his decision. I did not need to make a recommendation to him about what action to take.

c. Complainant's prior EEO activity was not a factor in deciding to place her on AWOL status. I am not aware of any other employees similarly situated to Complainant who were placed on AWOL status.

d. The Complainant complained to me about the decision. She was not happy about it and she did not agree with the decision. I do not recall if she asked me to do anything specific about it.

e. I do not recall the specifics of her request for FMLA leave on December 1, 2004. Complainant's request for FMLA leave would not have been unusual. She made numerous requests for leave. Her requests were denied where she failed to comply with FMLA requirements or had exhausted her available leave. I do not remember why she asked for FMLA leave in that instance. Her supervisor made the decision to deny her request. I was aware of his decision and supported him. I did not have to give him approval for his action. Complainant's prior EEO

Initials _____

D2-3

activity was not a factor in this matter. I do not recall if other employees similarly situated to Complainant requested FMLA leave. I do not think anyone did.

    f.  I do not recall if Complainant complained to me about this specific denial. I did not have to approve her supervisor's decision. If she were eligible and had followed the rules, her supervisor would have granted FMLA leave. If she complained to me, I would have told her that.

14. Did you attempt to influence Mr. Hanas' decision with respect to Complainant's leave requests or placing her on AWOL status?

    a.  I did not have to direct Mr. Hanas' decisions, nor did I attempt to direct his decisions. As Complainant's first line supervisor, he was responsible for making those decisions on his own.

15. To your knowledge, did Complainant suffer any harm by being place on AWOL status or by being denied FMLA leave?

    a.  I cannot speculate about any harm Complainant may have suffered. She did not express any to me.

16. Did you consult anyone else about Complainant's claims?

    a.  Yes. I consulted Mary Laverty in Human Resources, Penny Elgas and Catherine Spencer in the Administration Unit and James Lawrence and Nestor Ramirez, Corporate Affairs attorneys. They confirmed to me that the correct actions were taken with respect to Complainant's requests.

17. Again, did Complainant's EEO activity have anything to do with your actions in this matter?

    a.  No.

18. Have you had training on the prevention/reporting/mitigation of harassment? If so, when, by whom, and by what means?

    a.  Yes. I do not recall the exact date. FDIC provides standard training every two years. I would have taken my last training on that cycle.

19. Do you have anything to add, which is not covered above, on the claims at issue in this complaint?

    a.  I have no further information about this matter.

I have read the foregoing statement consisting of___ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any

Initials _JL_

D2-4

corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _23_ day of _August_ , 2005.

_____
(Signature)

Subscribed and sworn before me in Washington, DC
This _23rd_ day of _August_ , 2005.

_____
Elbert Bishop, Investigator

My Commission Expires
September 14, 2005

Initials _JL_

D2-5



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

NOTICE OF RIGHTS OF WITNESSES
IN
EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.  To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.  To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.  To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.  To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.  To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____  DATE: 8/23/05
TABE

Page 6 of 7                                   Initials _JL_
                                                    D2-6

## PRIVACY ACT NOTICE TO WITNESS
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT REVIEW

### GENERAL

**This information is provided pursuant to Public Law 93-579 (Privacy Act of 1984), December 31, 1974, for individuals supplying information for inclusion in a system of records.**

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. The information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to **Federal Deposit Insurance Corporation (FDIC)** activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of **FDIC** employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

_____     _____
Signature of Interviewer                      Signature of Witness (person giving statement)

Date: _8/23/c5_____

Place: _Washington D.C._____

Initials _____

DZ-7

**Lawrence, James R.**

| | |
|---|---|
| **From:** | Lawrence, James R. |
| **Sent:** | Monday, May 02, 2005 3:18 PM |
| **To:** | 'Yolanda Gibson-Michaels'; Schull, Donna |
| **Cc:** | Moran, Michael P. |
| **Subject:** | Settlement Agreement |

**Follow Up Flag:**    Follow up
**Flag Status:**    Flagged

Dear Ms. Gibson-Michaels,
On January 14, 2005, you, NTEU and the FDIC signed a Settlement Agreement. The primary purpose of that Agreement was to settle the FDIC's stated intent to propose your removal. As part of that settlement, you agreed to withdraw your existing EEO complaints. However, management discovered that at least one of your complaints contained an age discrimination basis. Because you were agreeing to waive rights under the ADEA, you should have been provided certain explicit rights in the Agreement. For example, you were entitled to 21 days before signing a waiver of your ADEA claims, and 7 days after signing the waiver to rescind your agreement to waive the claim.

By e-mail of April 20, 2005, I communicated with you on behalf of the FDIC. That communication was an attempt, in essence, to provide you an opportunity to ratify the waiver of your ADEA claims. It was explained that if you canceled the Agreement, then the parties would be placed back in the position that they were in prior to the Agreement.

You responded by e-mail on April 25, 2005 with proposed "terms" of your reinstatement. Several of these terms were materially different than the terms I had laid out to you. For example, you stated that you would work as the "sole individual responsible for all matters associated with the FDIC's Corporate-Wide Outside Counsel and Legal Support Services Program area," when that does not reflect your prior responsibilities. Similarly, you demanded restoration of advanced sick leave and annual leave, along with assorted other conditions. These leave issues related to some of the reasons for your proposed removal, and could not be changed without impacting management's proposed removal action.

Thus, although you indicated your intent to cancel the Agreement, you clearly did not cancel the Agreement under the terms of the notice which I provided to you. There was no "meeting of the minds" and the Agreement is <u>not</u> canceled.

Nevertheless, it is clear that there was a defective waiver of your ADEA rights in the Agreement, and that you chose not to ratify that waiver. In other words, you did not have the initial opportunity to make a "knowing and voluntary" waiver of your age claims at the time of the Agreement and you did not wish to make a knowing and voluntary waiver after-the-fact. Accordingly, as a legal matter, the waiver in the Agreement cannot bar you from pursuing the age claims. Please be advised that the FDIC recognizes your legal right to pursue the following claims on the basis of age discrimination:

<u>**FDICEO-040039**</u>



Whether Complainant was discriminated against on the bases of **age (date of birth April 1, 1959)** when from August 12, 2003, to approximately April 28, 2004, she was allegedly harassed and subjected to a hostile work environment when the following incidents occurred:

1. On or about April 14, 2004, Complainant's second level supervisor, Mr. James T. Lantelme, Assistant General Counsel, Legal Division, initiated an investigation of Complainant after asking Ms. Jenekia Johnson, a Student Intern co-worker, if she felt threatened by Complainant. On April 15, 2004, Ms. Johnson surreptitiously tape recorded a conversation between herself and Complainant without Complainant's permission, and later allegedly approached Complainant and said, "I want to tell you, I lied." Mr. Lantelme forced Complainant to attend an investigative meeting on April 28, 2004, with Mr. Doug Fahey, a Contract Investigator with the Division of Administration. Complainant was interviewed by Mr. Fahey for two to three hours, forced to answer open-ended questions developed from the recording made by Ms. Johnson, and denied the right to an attorney and Miranda rights.

2. On or about August 12, 2003, Mr. Lantelme initiated an investigation of Complainant after Ms. Terry Hopkins (Caucasian) alleged that she felt threatened because Complainant's eyes were wide open with a blank look. Complainant was investigated and interrogated. Complainant alleged that Ms. Hopkins has historically yelled, screamed, verbally berated, and openly displayed mercurial behavior towards Ms. Connie Hunt. Ms. Hopkins has never been subjected to an investigative interview or interrogation.

3. Complainant was treated differently than Mr. Frank Nigro, a male Caucasian co-worker, who has engaged in threatening and disruptive behavior towards Complainant and others, but was not subjected to an administrative investigation or disciplined in any manner.

**FDICEO-040056**

1. Whether Complainant was subjected to continuing harassment that resulted in a hostile work environment on the bases of **age (date of birth April 1, 1959)** by her first level supervisor Stephen Hanas. The following incidents were cited by Complainant in support of this claim:

   a. On November 1, 2004, Mr. Hanas issued two memoranda to Complainant that accused Complainant of: (1) a failure to

4e 2.

      comply with the Corporation's time and attendance rules; and,
      (2) numerous instances of disruptive behavior in the workplace.

   b. Since July 12, 2004, Mr. Hanas has continuously subjected
      Complainant to ridicule, verbal insults, disparagement, and
      sexual harassment every day of the week.

   c. Mr. Hanas is subjecting Complainant to an unwritten time and
      attendance sign-in procedure.

If you wish to pursue any or all of these claims, you should contact Michael Moran, Chief, Complaints Processing Branch, Office of Diversity and Economic Opportunity, FDIC, 801 17th Street, NW, Room 1231, Washington, DC 20429, no later than 10 calendar days from today.

Even though the waiver issues relating to your ADEA claims cannot bar you from pursuing your age claims, they do not affect the validity of the rest of the Settlement Agreement as to other claims and commitments. Accordingly, notwithstanding prior communications, please be advised that the FDIC is enforcing the rest of the Settlement Agreement as to all commitments and considerations. In other words, except for the age discrimination waivers and withdrawals, the remainder of the Settlement Agreement shall continue to be in effect. For example, the following terms will continue to exist: approval of your buyout application, paid administrative leave, the FDIC's agreement to not issue a letter of proposed removal, expungement of your prior suspension from your OPF, your resignation, and your withdrawal of your EEO complaints on all bases other than age. You will not be reinstated.

As described above, you should contact Michael Moran if you wish to pursue the identified age-based discrimination claims. If you have other questions, you may direct them to my attention.

          Sincerely,

          James R. Lawrence
          Senior Counsel
          Legal Division

H e.3.

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th Street NW, Washington, D.C. 20429-9990

Legal Division

March 27, 2006

Ms. Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD 20748

Dear Ms. Gibson-Michaels:

On December 19, 2005, Stephen M. Hanas, Senior Counsel, informed you by written notice of a proposal to remove you from your position of Information Specialist, CG-301-11, with the Federal Deposit Insurance Corporation and the Federal service due to Disrespectful and/or Inappropriate Conduct and Failure to Follow Instructions.

I have been designated the agency official authorized to make the final decision in this matter. In the letter proposing your removal, you were informed that you had the right to reply orally and/or in writing to the charges against you. I have carefully considered the materials constituting the record in this action, including the oral response presented by you on January 19, 2006, and the written documents you submitted during your oral presentation.

## PROPOSED ACTION

The Corporation issued a notice of adverse action proposing your removal from your position and the Federal service. The basis for the proposal is Disrespectful and/or Inappropriate Conduct and Failure to Follow Instructions. The notice is very specific in detailing your misconduct. All materials provided have been reviewed and considered by me in reaching a decision in this matter.

## RESPONSE TO NOTICE OF PROPOSED REMOVAL

The oral response provided by you raised several issues/defenses to the proposed removal. While not all-inclusive, they are summarized as follows:

You alleged that the FDIC's proposal for your removal was in retaliation for whistle-blowing, EEO retaliation, age, and Family Medical Leave Act (FMLA) violations. You also stated that you had exemplary Federal service, and provided a historical summary of your employment. You stated that all of the specifications in the notice of proposed removal were your EEO claims. You denied that you had engaged in any type of misconduct.

## REVIEW AND DISCUSSION

The notice of proposed adverse action states that the removal is proposed for Disrespectful and/or Inappropriate Conduct and Failure to Follow Instructions, and to promote

4b-1



2

the efficiency of the service. During the period October 20, 2004 through December 17, 2004, you engaged in a series of behaviors amounting both singly and in the aggregate to disrespectful and/or inappropriate conduct by making various unfounded allegations against your supervisors, behaving in an intimidating manner toward your co-workers and supervisors, and failing to follow instructions as demonstrated by your numerous absences from work at various times without advance approval of leave, contrary to explicit written and oral direction given to you about how to handle such absences.

I note that in regard to specification 1 of the charge Disrespectful and/or Inappropriate Conduct, the proposal stated that an officer was dispatched and met with you in your FDIC office on the three dates listed, yet no police report was filed or taken concerning your allegations. During the oral reply meeting on January 19, 2006, you produced a copy of a partial report that was taken on October 20, 2004. The copy of the report you produced was incomplete as the attachment was missing. I find that this information was not material to the substance or basis for the specification, and that your actions of continuing to contact law enforcement officials to respond to the same matter you had already reported was disrespectful and/or inappropriate conduct.

The record is clear that you committed the misconduct with which you have been charged. Although you alleged that the specifications describing the instances of misconduct were the same as your EEO claims, I disagree. The specifications describe the various instances of your disrespectful and/or inappropriate conduct directed to your supervisors. Further, you acknowledged during your oral reply that you had personal reasons why you were late to work, yet you failed to justify your failure to follow instructions regarding proper leave approval.

## CONSIDERATION OF THE DOUGLAS FACTORS:

I have also given consideration to the factors set forth in <u>Douglas v. Veterans Administration</u>, 81 FMSR 7037, which I must consider as the Deciding Official in reaching a decision regarding the appropriate penalty in an action for misconduct. Following are the Douglas Factors and a summary of consideration given to those factors in regard to this case, although not all-inclusive:

**1. The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated.**

Based on my review of the record, you engaged in misconduct that was serious in nature and directly impacted your ability to perform and carry out the duties of a CG-11 Information Specialist. Such misconduct was frequently repeated, and was by no means merely technical or inadvertent. Due to your behavior and unscheduled absences as described in the various specifications, your own work was adversely affected, your supervisor was distracted on numerous occasions from working on matters germane to the mission of the agency, and other employees were hindered in performing their own work.

4b-2

**2. The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position.**

You are a CG-11 Information Specialist and are expected to conduct yourself in a fitting manner in your workplace in the Legal Division and to conform to reasonable supervisory instruction. Despite repeated efforts to counsel you, however, you continually engaged in disrespectful and/or inappropriate conduct and failed to follow instructions regarding reporting to work on time or obtaining advance approval for annual leave or leave without pay.

**3. The employee's past disciplinary record.**

You have a history of past actions based on disrespectful and/or inappropriate conduct and failure to follow instructions. You were suspended for similar reasons in August 2004 for five calendar days. Prior to that suspension, you were counseled in August 2003 for unprofessional and inappropriate conduct toward your acting supervisor.

**4. The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.**

You were transferred to the FDIC from the FSLIC on October 8, 1989, as a Secretary, GS-6, and were later reassigned to a Legal Technician position on January 14, 1990. You were temporarily promoted to a series of CG-7 Assistant positions during the period October 1993 to January 1998. You were temporarily promoted to a CG-7 Information Specialist on December 19, 1999, and to a CG-9 on December 17, 2000. You were permanently promoted to the CG-9 position on September 23, 2001, and then to the CG-11 on December 16, 2001.

Your record reflects as the most recent recognition a Suggestion Award of $500 on December 11, 2003. You received STAR awards on December 2, 2001, June 18, 2000, February 28, 1999, and September 15, 1996. You received Special Act Awards on November 4, 2001, November 21, 1999, July 6, 1997, February 19, 1995, November 27, 1994, and December 2, 1990. Your past three performance appraisals were: 2003/2004 - Meets Expectations; 2002/2003 - Meets Expectations; and 2001/2002 - Meets Expectations.

**5. The effect of the offense upon the employee's ability to perform at a satisfactory level and its effects upon supervisor's confidence in the employee's ability to perform assigned duties.**

It is clear from the record that the misconduct and failure to follow instructions complained of against you have had a significant negative impact on management's confidence in your ability to perform your assigned duties. Over the period from October 2004 through December 2004, management was unable to depend upon you to report to work on a regular basis, nor could you be depended upon to provide the required timely notice in the event of an unplanned absence, and when you were at work you frequently engaged in behaviors amounting to unprofessional and/or inappropriate misconduct.

4b-3

**6. Consistency of the penalty with those imposed upon other employees for the same or similar offenses.**

I have been advised by Legal Division counsel and the human resources section of the Division of Administration that the decision to remove you is consistent with actions taken for the same or similar offenses at FDIC.

**7. Consistency of penalties with applicable table of penalties.**

There is no FDIC table of penalties.

**8. The notoriety of the offense or its impact upon the reputation of the agency.**

Based on my review of the record, you are unable to fulfill adequately the duties and responsibilities of a CG-11 Information Specialist. In particular, your conduct and refusal to follow instructions show a degree of disrespect for supervisory authority and obstreperousness that is totally inconsistent with the good order of the FDIC workplace. While your actions do not directly impact the reputation of the FDIC, they have adversely affected management's confidence in your ability to effectively carry out the responsibilities of your position.

**9. The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question.**

The record shows that you had been counseled on several previous occasions and disciplined regarding the unacceptability of your conduct, and that you proceeded in your course of action despite clear warning.

**10. Potential for the employee's rehabilitation.**

Despite repeated counseling and a 5-day suspension from duty without pay, you continually insulted and made inappropriate allegations against supervisors, and failed to follow supervisory instructions about advance approval of annual leave or leave without pay, therefore being repeatedly marked absent without leave. The lengthy record of your disrespect to supervisors, your repeated inappropriate behavior in the workplace, your attendance problems and failure to follow related instructions, coupled with your failure to respond to discipline and counseling, all indicate that there is very little or no potential for rehabilitation.

**11. Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of other involved in this matter.**

My review of the record finds no circumstances that mitigate your repeated disrespectful and/or inappropriate behavior or your failure to follow instructions regarding advance approval of absences. I heard nothing in the oral presentation that would excuse your repeated misconduct as described in the specifications and borne out elsewhere in the record. Although you have

4b-4

referred to the medical condition of your son as a mitigating factor, I find that your repeated negative behaviors and course of conduct were not excused or excusable on that basis.

**12. The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.**

The entire record raises questions about your reliability, dependability, and ability to efficiently carry out the responsibilities of your position. Progressive discipline has been used in an attempt to induce you to adopt behaviors that would not adversely affect the workplace and to follow supervisory instruction on leave matters. However, your continued outrageous behaviors in the workplace, insulting management and acting inappropriately toward co-workers, and refusing to follow instructions, have resulted in your supervisor having no confidence in your reliability and ability to perform your assigned duties. Continuing to have you in the workplace would represent an extremely negative example that could only adversely affect morale among employees and undermine supervisory authority.

**AGENCY DECISION:**

I have carefully considered all of the information in your case file, along with the information provided during the oral reply and in the written document submission. Based on my review of the entire record, I find that each of the specifications in the notice of proposed removal is supported by the evidence. Your oral reply and written submissions failed to controvert the facts set out in the specifications. I agree with the proposal by Mr. Hanas that misconduct was committed on your part, and that your behavior is unacceptable. Due to your contempt for the good order of the workplace and the authority of your supervisor, your intimidating or disrespectful actions, the continual disregard of supervisory instruction, and your repeated unexcused absence from the workplace, management has lost its trust in you to serve in any position. I have determined that the proposed removal is fully supported and warranted.

Therefore, per Board Resolution 060188, as deciding official for the Corporation, it is my decision that you are **removed from your position and from the Federal Service, effective March 31, 2006.** This action is taken to promote the efficiency of the service.

You have the right to appeal this action to the Merit Systems Protection Board (MSPB). Your appeal may be filed electronically or by paper. If you choose to appeal electronically, you must do so by accessing the MSPB website at https://e-appeal.mspb.gov/ to create and file your appeal. However, if you choose to file a paper appeal, it must be directed to the Regional Director, U.S. Merit Systems Protection Board, Washington Regional Office, 1800 Diagonal Road, Suite 205, Alexandria, Virginia 22314-2840, telephone (703) 756-6250, Facsimile (703) 756-7112. In order for your appeal to be timely filed, it must be submitted to the MSPB no later than 30 calendar days after the effective date of this action or 30 calendar days after the date of receipt of the agency's decision, whichever is later. If the FDIC and you mutually agree in writing to attempt to resolve the dispute through an alternative dispute resolution process prior to

4b-5

the timely filing of an appeal, however, the time limit for filing the appeal is automatically extended by an additional 30 days - for a total of 60 days.

If you believe that this personnel action constitutes discrimination against you on the basis of your race, color, religion, sex, national origin, age (40 or over), or physical or mental handicap, and you wish to initiate a complaint, you must follow the procedures in FDIC Circular 2710.2, EEOC Discrimination Complaint Procedures. However, if you believe that this personnel action constitutes discrimination against you on the basis of your sexual orientation, genetic information, or parental status and you wish to initiate a complaint, you must follow the procedures in FDIC Circular 2710.4, FDIC Discrimination Complaint Procedures. A complaint under either one of these procedures must be brought to the attention of an EEO Counselor within 45 calendar days of the effective date of this action. A list of EEO Counselors is enclosed. You may also appeal this decision to the MSPB as previously mentioned and allege discrimination in that appeal. However, you may not file both a discrimination complaint and an MSPB appeal.

Should you elect to file a complaint of discrimination, your complaint will be processed in accordance with EEOC regulations at 29 C.F.R. Part 1614, Subpart A. Should you elect to file an appeal, your appeal will be processed in accordance with MSPB regulations at 5 C.F.R. Part 1201, Subpart D.

Should you have any questions concerning your appeal rights, you may contact Mary Laverty, Lead Human Resources Specialist, at (703) 562-2171.

Sincerely,

Henry R. F. Griffin
Acting Deputy General Counsel

Enclosures (6):

Notice of Proposed Removal dated December 19, 2005
MSPB Appeal Form
MSPB Regulations
FDIC Circular 2710.2, EEO Procedures
FDIC Circular 2710.4, FDIC Complaint Procedures
EEO Counselors List

4b-6

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| YOLANDA C. GIBSON-MICHAELS,<br>Appellant,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION,<br>Agency. | DOCKET NUMBER<br>DC-0752-05-0633-C-2<br><br><br>DATE: October 26, 2006 |

Yolanda C. Gibson-Michaels, Temple Hills, Maryland, pro se.

Tina A. Lamoreaux, Esquire, Washington, D.C., for the agency.

## BEFORE

Neil A. G. McPhie, Chairman
Mary M. Rose, Vice Chairman
Barbara J. Sapin, Member

## FINAL ORDER

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d).

00011



GOVERNMENT
EXHIBIT
26

2

Therefore, we DENY the petition for review. We have not considered the appellant's submission filed after the record on petition for review closed because it was untimely filed and she has not shown that it was based on evidence that was not previously available. *See* 5 C.F.R. § 1201.114(i). The initial decision of the administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management,* 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the

3

court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.

FOR THE BOARD:

Bentley M. Roberts, Jr.
Clerk of the Board

Washington, D.C.

00013

## CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:

Electronic Mail       Yolanda C. Gibson-Michaels
                                        2210 Anvil Lane
                                        Temple Hills, MD 20748

Electronic Mail       Tina A. Lamoreaux, Esq.
                                        Federal Deposit Insurance Corporation
                                        550  17th Street, NW, Rm. H-2104
                                        Washington, DC 20429

_____
        October 26, 2006
            (Date)

Dorothy Plummer
Paralegal Specialist

00014

●                              ●

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

YOLANDA C. GIBSON-MICHAELS,
      Appellant,

    v.

FEDERAL DEPOSIT INSURANCE
   CORPORATION,
      Agency.

DOCKET NUMBER
DC-0752-05-0633-C-1

DATE: March 7, 2006

Richard E. Patrick, Esquire, Patrick Henry LLP, Annandale, Virginia, for
   the appellant.

Tina A. Lamoreaux, Esquire, Arlington, Virginia, for the agency.

**BEFORE**
Raphael Ben-Ami
Administrative Judge

**INITIAL DECISION**

On December 23, 2005, the appellant filed a petition for enforcement of the
Board's November 14, 2005 order reversing her constructive removal. For the
following reasons, the appellant's petition for enforcement is DENIED.

<u>ANALYSIS AND FINDINGS</u>

<u>Jurisdiction/burden of proof</u>

The Board has jurisdiction to consider an appellant's claim of agency
noncompliance with a Board order. *See Kerr v. National Endowment for the Arts*,
726 F.2d 730, 733 (Fed. Cir. 1984). The burden is on the agency to submit proof

2

of compliance with the Board's order. *See Gomez v. Department of Agriculture,* 68 M.S.P.R. 202, 205 (1995).

The agency is in compliance with the Board's order.

In my initial decision reversing the appellant's constructive removal, I ordered the agency to cancel the appellant's resignation and to reinstate her to her position as an Information Specialist, effective January 21, 2005. *See Gibson-Michaels v. Federal Deposit Insurance Corporation,* MSPB Docket No. DC-0752-05-0633-I-1 (Initial Decision, Nov. 14, 2005). I also ordered the agency to pay the appellant the appropriate amount of back pay, with interest, and to adjust the appellant's benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations no later than 60 calendar days after the date my initial decision became final. My initial decision became the final decision of the Board on December 16, 2005.

In her petition for enforcement, the appellant contends, among other things, that the agency failed to comply with the Board's order by proposing her removal and placing her on administrative leave immediately upon her return to duty on December 19, 2005, and by not restoring all of her benefits in connection with her retroactive reinstatement. *See* Compliance Appeal File (CAF), Tab 1. In its January 13, 2006 response to the appellant's petition, the agency stated that it retroactively reinstated the appellant to her position in accordance with my order. *See id.,* Tab 3. The agency further stated that the appellant's request for enforcement of her back pay award and restoration of benefits was premature as the agency had until February 17, 2006, to comply with my order in that regard. As proof of compliance, the agency submitted a January 12, 2006 sworn declaration by Lucille McCabe, Supervisory Human Resources Specialist in the agency's Division of Administration, who averred that the agency on December 19, 2005, initiated the correction/cancellation of the appellant's resignation and returned her to her former position of Information Specialist in an active pay status. *See id.* McCabe further averred that the agency was working diligently to

3

process the back pay award and restore the appellant's benefits by the Board's deadline.

In her January 27, 2006 reply to the agency's response, the appellant reiterated her argument that she was not properly reinstated to her position because she was given a notice of proposed removal and placed on administrative leave immediately upon her return to duty, thereby being denied "all the benefits, accouterments and full privileges of her position." *See* CAF, Tab 6, reply at page 2. The agency thereafter supplemented its initial response with evidence and argument showing that all necessary and appropriate adjustments and corrections to the appellant's back pay, current pay, benefits, and leave have been made as of February 14, 2006. *See* CAF, Tab 8.

An appellant's entitlement upon the reversal of a personnel action is to be returned to the status quo ante. *See Brown v. U.S. Postal Service*, 80 M.S.P.R. 375, 377 (1998). Although placing an employee on paid administrative leave upon reinstatement is not generally considered a complete return to the status quo ante, an agency is not precluded from taking legitimate personnel actions after the Board reverses an appealable action as long as valid reasons exist for the later actions. *See Conaway v. U.S. Postal Service*, 93 M.S.P.R. 6, 12 (2002); *De Luca v. U.S. Postal Service*, 76 M.S.P.R. 487, 488 (1997).

Here, the agency by letter dated December 19, 2005, proposed the appellant's removal based on two charges of misconduct with multiple specifications. *See* CAF, Tab 1, attachment to appeal. The stated grounds for that proposed action appear to be valid and are in any event entirely unrelated to my prior ruling finding the appellant's January 21, 2005 resignation involuntary. Moreover, given the disruptive nature of some of the alleged charged misconduct, the agency's determination to place her on administrative leave until a decision is made regarding her proposed removal would appear to have been appropriate.

In sum, the record shows that the agency reinstated the appellant and granted her the correct amount of back pay, interest on back pay, and other

4

benefits in accordance with the Board's order. The appellant's petition for enforcement therefore must be denied.

## DECISION

The appellant's petition for enforcement is DENIED.

FOR THE BOARD:                              *[signature]*

Raphael Ben-Ami
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on ___APR 1 1 2006___, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if this initial decision is received by you more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition, with supporting evidence and argument, must be filed with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

5

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. The date of filing by mail is determined by the postmark date. The date of filing by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. See 5 C.F.R. § 1201.4(j).

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC  20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 60 calendar days after the date this initial decision becomes final.

00008

6

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

00009

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail

Yolanda C. Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD  20748

<u>Appellant's Representative</u>

U.S. Mail

Richard E. Patrick, Esq.
Patrick Henry LLP
7619 Little River Turnpike, Suite 340
Annandale, VA  22003

<u>Agency Representative</u>

Electronic Mail

Tina A. Lamoreaux, Esq.
Federal Deposit Insurance Corporation
Legal Division
3501 N. Fairfax Drive, Room VS - D6116
Arlington, VA  22226

| March 7, 2006 | |
|---|---|
| (Date) | Eric W. Hawthorne |
| | Paralegal Specialist |

00010

●                              ●

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

YOLANDA C. GIBSON-MICHAELS,
Appellant,

DOCKET NUMBER
DC-0752-05-0633-C-1

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,
Agency.

DATE: October 26, 2006

Yolanda C. Gibson-Michaels, Temple Hills, Maryland, pro se.

Tina A. Lamoreaux, Esquire, Arlington, Virginia, for the agency.

## BEFORE

Neil A. G. McPhie, Chairman
Mary M. Rose, Vice Chairman
Barbara J. Sapin, Member

## FINAL ORDER

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d).

00001

2

Therefore, we DENY the petition for review. The initial decision of the administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

3

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

FOR THE BOARD:

Bentley M. Roberts, Jr.
Clerk of the Board

Washington, D.C.

00003



# U.S. MERIT SYSTEMS PROTECTION BOARD

**Washington Regional Office**
1800 Diagonal Road, Suite 205
Alexandria, VA 22314-2840

Phone: (703) 756-6250; Fax: (703) 756-7112; E-Mail: washingtonregion@mspb.gov

**Regional Director**

July 13, 2007

Barbara A. James
Federal Deposit Insurance Corp.
3501 Fairfax Drive, Room E6021b
Arlington, VA 22226

Dear Ms. James

 This is in reference to your June 28, 2007, request for a copy of the case file index in the appeal of *Yolanda Gibson-Michaels v. Federal Deposit Insurance Corporation*, DC-0752-06-0515-I-1. Your request is being handled under the Board's Privacy Act (PA) regulations at 5 C.F.R. Part 1205, which implement the Privacy Act.

 Enclose is the document identified as being responsive to your request. Due to the nominal cost, these documents are being furnished to you at no charge. 5 C.F.R. 1205.16(c).

     Sincerely,

     P. J. Winzer
     Regional Director

Enclosure:


GOVERNMENT
EXHIBIT

**INDEX**

Yolanda C. Gibson-Michaels v. Federal Deposit Insurance Corporation

Docket No. DC-0752-06-0515-I-1

Volume 1

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|-----|---------------------|------------------------------|
| 1 | Initial Appeal to MSPB | April 28, 2006 |
| 2 | Acknowledgment Order | May 1, 2006 |

Volume 2

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|-----|---------------------|------------------------------|
| 3 | Appellant's Submission | May 1, 2006 |
| 4 | Agency's Registration as E-Filer | May 5, 2006 |
| 5 | Appellant's Motion for Subpoenas | May 10, 2006 |
| 6 | MSPB Order and Notice of Hearing | May 11, 2006 |
| 7 | MSPB Order Denying Appellant's Motion for Subpoenas | May 11, 2006 |
| 8 | Agency's Motion for Postponement | May 12, 2006 |
| 9 | Appellant's Request for Interim Relief | May 15, 2006 |
| 10 | MSPB Order Denying Appellant's Request to Postpone Hearing and for Interim Relief | May 15, 2006 |
| 11 | Appellant's Request for Witnesses | May 15, 2006 |
| 12 | Appellant's Request to Suspend Appeal Processing | May 17, 2006 |
| 13 | Appellant's Correspondence Re: Settlement | May 17, 2006 |
| 14 | MSPB Rejection Order | May 16, 2006 |
| 15 | MSPB Order Denying Appellant's Request for Witnesses | May 17, 2006 |
| 16 | Agency's Response to Appellant's Settlement Request | May 18, 2006 |
| 17 | Order Denying Appellant's Request to Suspend Appeal | May 18, 200 |

Volume 3

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|
| 18 | Agency's Response File (Tabs 1 – 4e) | May 22, 2006 |

Volume 4

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|
| 18 | Agency's Response File (Tabs 4e - 4g) | May 22, 2006 |

Volume 5

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|
| 19 | Appellant's Request for Recusal | May 24, 2006 |
| 20 | MSPB Order Denying Appellant's Request for Recusal | May 26, 2006 |
| 21 | Appellant's Motion to Exclude Evidence | June 7, 2006 |
| 22 | Appellant's Motion to Dismiss Removal | June 7, 2006 |
| 23 | MSPB Order Denying Motions | June 8, 2006 |
| 24 | Appellant's Motion for Interlocutory Appeal | June 12, 2006 |
| 25 | Appellant's Motion for Affirmative Defenses | June 12, 2006 |
| 26 | MSOB Order Denying Motions | June 12, 2006 |
| 27 | Appellant's Motion to Compel | June 14, 2006 |
| 28 | MSPB Order Denying Motion to Compel | June 15, 2006 |
| 29 | Agency's Prehearing Submission | June 15, 2006 |
| 30 | Appellant's Request for Witnesses | June 15, 2006 |
| 31 | Appellant's Motion for Subpoenas | June 15, 2006 |

Volume 6

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|
| 32 | Appellant's Statement of Facts & Issues | June 16, 2006 |
| 33 | MSPB Order Denying Appellant's Motion for Subpoenas | June 21, 2006 |
| 34 | Appellant's Motion for Interlocutory Appeal | June 27, 2006 |
| 35 | MSPB Order Denying Motion for Interlocutory Appeal | June 28, 2006 |
| 36 | MSPB Summary of Prehearing Conference | June 29, 2006 |
| 37 | Agency's Additional Exhibit | June 29, 2006 |

| 38 | Appellant's Response to Conference Summary | July 6, 2006 |
| 39 | Appellant's Response to Conference Summary | July 6, 2006 |
| 40 | Appellant's Motion to Reverse Removal | July 6, 2006 |
| 41 | Appellant's Motion for Compensatory & Consequential Damages | July 10, 2006 |
| 42 | Appellant's Submission | July 10, 2006 |
| 43 | MSPB Order Denying Motion to Reverse Removal | July 10, 2006 |
| 44 | Appellant's Motion to Postpone Hearing | July 10, 2006 |
| 45 | MSPB Order Denying Appellant's Motion to Postpone Hearing | July 10, 2006 |

Volume 7

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
| --- | --- | --- |
| 46 | Appellant's Motion to Vacate Agency Removal | July 10, 2006 |
| 47 | MSPB Order Denying Appellant's Motion to Vacate Agency Removal | July 11, 1006 |
| 48 | MSPB Failure to Serve Order | July 11, 2006 |
| 49 | Appellant's Second Request for Damages | July 11, 2006 |
| 50 | Appellant's Submission | July 12, 2006 |
| 51 | Appellant's Withdrawal of Appeal and Hearing Request | July 12, 2006 |
| 52 | MSPB Order Denying Appellant's Second Request for Damages | July 12, 2006 |
| 53 | MSPB Order Regarding Withdrawal of Appeal | July 13, 2006 |
| 54 | Appellant's Request to Reinstate Appeal | July 19, 2006 |
| 55 | Appellant's Resubmission of July 19, 2006 Request | July 19, 2006 |
| 56 | MSPB Order Denying Request to Reinstate Hearing Request | July 19, 2006 |
| 57 | Appellant's Withdrawal of Appeal | July 24, 2006 |
| 58 | Appellant's Withdrawal of Appeal | July 25, 2006 |
| 59 | MSPB Initial Decision | July 25, 2006 |

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

YOLANDA C. GIBSON-MICHAELS,      DOCKET NUMBER
          Appellant,      DC-0752-06-0515-I-1

    v.

FEDERAL DEPOSIT INSURANCE      DATE: July 12, 2006
    CORPORATION,
          Agency.

## ORDER

By motion dated July 11, 2006, the appellant requests compensatory and consequential damages in connection with my November 14, 2005 decision reversing her constructive removal. The appellant's request is DENIED.

First, the appellant made no such request in connection with that prior proceeding and the Board's regulations at 5 C.F.R. § 1201.204(a) require that such requests be made during the proceeding on the merits and no later than the end of the conference held to define the issues in the case. Second, a request for compensatory or consequential damages will be decided in an addendum proceeding, and a motion for initiation of an addendum proceeding must be filed no later than 60 days after the date on which a decision becomes final. *See* 5 C.F.R. § 1201.204(d)(1) and (e). My aforementioned initial decision became the final decision of the Board on December 19, 2005. Third, the appellant is in any event not entitled to an award of compensatory or consequential damages. An employee who prevails in a Board appeal based on a finding of intentional employment discrimination under Title VII of the Civil Rights Act of 1964 or a finding that the agency failed to make a reasonable accommodation for a



2

qualified disabled person may recover compensatory damages from the agency pursuant to the Civil Rights Act of 1991. *See* 42 U.S.C. § 1981a(a); *Schultz v. U.S. Postal Service*, 70 M.S.P.R. 633, 639 (1996). I made no finding of employment discrimination in connection with the aforementioned decision. Finally, consequential damages are available under 5 U.S.C. § 1221 only in those cases where the Board orders corrective action upon finding that the agency took or failed to take a personnel action in reprisal for an appellant's protected whistleblowing activity. I made no such finding in connection with the aforementioned decision.

FOR THE BOARD:

Raphael Ben-Ami
Administrative Judge

00051

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail                Yolanda C. Gibson-Michaels
                         2210 Anvil Lane
                         Temple Hills, MD  20748

                         Agency's Representative

Electronic Mail          Tina A. Lamoreaux, Esq.
                         Federal Deposit Insurance Corporation
                         FDIC Legal Division
                         3501 N. Fairfax Drive
                         Room VS-D6138
                         Arlington, VA  22226

July 12, 2006                              Eric W. Hawthorne
     (Date)                                Paralegal Specialist

00052

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

YOLANDA C. GIBSON-MICHAELS,
    Appellant,

DOCKET NUMBER
DC-0752-06-0515-I-1

    v.

FEDERAL DEPOSIT INSURANCE
    CORPORATION,
        Agency.

DATE: July 25, 2006

<u>Yolanda C. Gibson-Michaels</u>, Temple Hills, Maryland, pro se.

<u>Tina A. Lamoreaux</u>, Esquire, Arlington, Virginia, for the agency.

### BEFORE
Raphael Ben-Ami
Administrative Judge

### INITIAL DECISION

For the reasons set forth below, this appeal is DISMISSED. The appellant appealed her removal. The appellant withdrew her appeal by written submissions received in this office on July 24 and 25, 2006. *See* Appeal File, Tabs 57, 58. The withdrawal of an appeal is an act of finality that removes the appeal from the Board's jurisdiction. *See, e.g., Brown v. Department of the Navy*, 71 M.S.P.R. 451, 453 (1996). The appeal therefore must be dismissed.

00040



2

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:

Raphael Ben-Ami
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on  **AUG 29 2006** , unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition, with supporting evidence and argument, must be filed with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by

00041

3

electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (see 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. See 5 C.F.R. § 1201.4(j).

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 60 calendar days after the date this initial decision becomes final.

00042

4

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

U.S. Mail

Yolanda C. Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD  20748

### Agency's Representative

Electronic Mail

Tina A. Lamoreaux, Esq.
Federal Deposit Insurance Corporation
FDIC Legal Division
3501 N. Fairfax Drive
Room VS-D6138
Arlington, VA  22226

_____
July 25, 2006
(Date)

Cynthia L. Boston
Paralegal Specialist

00044

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

YOLANDA C. GIBSON-MICHAELS,
      Appellant,

DOCKET NUMBER
DC-0752-06-0515-I-1

    v.

FEDERAL DEPOSIT INSURANCE
    CORPORATION,
       Agency.

DATE:    JUL 1 9 2006

**ORDER**

By written submission dated July 18, 2006, and filed both on July 18 and 19, 2006, the appellant stated that it was not her intention to withdraw the instant appeal. *See* Appeal File, Tab 54 at page 1 and Tab 55 at page 1. The appellant also in her July 19 filing appeared to express her desire to reinstate her request for a hearing. *See id.*, Tab 55 at page 6. That request is DENIED.

The appellant in her July 13, 2006 "REQUEST TO WITHDRAW IRA APPEAL OF FDICS UNWARRANTED 2ND REMOVAL" (which request was received in this office at 4:37 p.m. on Wednesday, July 12, 2006) clearly and unequivocally stated that that submission "serves as my official withdrawal of appellant's request for a hearing scheduled for **Thursday, July 13, 2006**." AF, Tab 51 at page 3 (emphasis in original). I note that the appellant also orally confirmed her intention to dispense with a hearing during a phone conversation on July 12, 2006, with Eric Hawthorne, a Paralegal Specialist in this office. In light of the appellant's clearly expressed oral and written representations in this regard, I canceled the hearing which had been scheduled for July 13, 2006.

00045

2

    Accordingly, this appeal will be decided based solely on the information contained in the documentary record. In light of this disposition, I will keep the written record open <u>until July 28, 2006</u>, to permit the parties, if they so desire, to submit additional evidence and/or argument supportive of their respective positions in this appeal. <u>Any such additional evidence and/or argument must be filed in a manner so as to be received in this office by the close of business on July 28, 2006.</u>

FOR THE BOARD:

Raphael Ben-Ami
Administrative Judge

00046

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail

Yolanda C. Gibson-Michaels
2210 Anvil Lane
Temple Hills, MD 20748

<u>Agency's Representative</u>

Electronic Mail

Tina A. Lamoreaux, Esq.
Federal Deposit Insurance Corporation
FDIC Legal Division
3501 N. Fairfax Drive
Room VS-D6138
Arlington, VA 22226

JUL 19 2006
_____
(Date)

_Marie Sumner,_
for Tori Stewart
Legal Assistant

00047

●                              ●

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | |
|---|---|
| YOLANDA C. GIBSON-MICHAELS,<br>Appellant,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION,<br>Agency. | DOCKET NUMBER<br>DC-0752-06-0515-I-1<br><br><br>DATE:   JUL 1 3 2006 |

**ORDER**

By written submission dated July 13, 2006, and filed on July 12, 2006, the appellant withdrew her request for a hearing and further requested to withdraw the instant appeal. *See* Appeal File, Tab 51. The withdrawal of an appeal is an act of finality that removes the appeal from the Board's jurisdiction. *See, e.g., Brown v. Department of the Navy*, 71 M.S.P.R. 451, 453 (1996). Accordingly, I will dismiss this appeal based on the appellant's aforementioned written withdrawal unless advised by the appellant no later than the close of business on Wednesday, July 19, 2006, that it was not her intention to do so.

FOR THE BOARD:                   _____

Raphael Ben-Ami
Administrative Judge

00048

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

Federal Express      Yolanda C. Gibson-Michaels
                             2210 Anvil Lane
                             Temple Hills, MD  20748

### Agency's Representative

Electronic Mail      Tina A. Lamoreaux, Esq.
                             Federal Deposit Insurance Corporation
                             FDIC Legal Division
                             3501 N. Fairfax Drive
                             Room VS-D6138
                             Arlington, VA  22226

| July 13, 2006 | Eric W. Hawthorne |
| --- | --- |
| (Date) | Paralegal Specialist |

00049

Form 10.    Statement Concerning Discrimination

**FILED**
**U.S. COURT OF APPEALS FOR**
**THE FEDERAL CIRCUIT**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT    DEC 2 2 2006

_____    v.    _____

JAN HORBALY
CLERK

No. **2006-3080**

## PETITIONER'S FED. CIR. R. 15(c) STATEMENT CONCERNING DISCRIMINATION

### Please complete sections A, B, and C.

## SECTION A:

Check the statements in section A that apply to your case. Usually, it is one statement, but it may be more. Do not alter or add to any of the statements.

___ (1)    No claim of discrimination by reason of race, sex, age, national origin, or handicapped condition has been or will be made in this case.

___ (2)    Any claim of discrimination by reason of race, sex, age, national origin, or handicapped condition raised before and decided by the Merit Systems Protection Board or arbitrator has been abandoned or will not be raised or continued in this or any other court.

___ (3)    The petition seeks review only of the Board's or arbitrator's dismissal of the case for lack of jurisdiction or for untimeliness.

___ (4)    The case involves an application to the Office of Personnel Management for benefits.

___ (5)    The case was transferred to this court from a district court and I continue to contest the transfer.

## SECTION B:

Answer the following: Have you filed a discrimination case in a United States district court from the Board's or arbitrator's decision? _____ Yes _✗_ No
If so, identify any case. _____

## SECTION C:

Answer the following: Have you filed a discrimination case in the Equal Employment Opportunity Commission from the Board's or arbitrator's decision? _____ Yes _✗_ No _ _ _ _ _ _ _ _ _ _ _
If so, identify any case _____

12/20/06
Date

_____
Petitioner's signature

DEC 2 2 2006

United States Court of Appeals
for the Federal Circuit

Mail this form with the petition for review or within 14 days of the date of docketing of the petition for review to:

Clerk, United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

cc Kathy Gunny (FDIC)
* Case entails enforcement of involuntary removal and BrokRM
See November 14, 2005 Decision (Attached)

GOVERNMENT
EXHIBIT
30

Form 10.     Statement Concerning Discrimination

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT   DEC 2 2 2006

v.

**JAN HORBALY
CLERK**

No. **2007-3081**

## PETITIONER'S FED. CIR. R. 15(c) STATEMENT CONCERNING DISCRIMINATION

### Please complete sections A, B, and C.

**SECTION A:**

     Check the statements in section A that apply to your case. Usually, it is one statement, but it may be more. Do not alter or add to any of the statements.

    _X_ (1)   No claim of discrimination by reason of race, sex, age, national origin, or handicapped condition has been or will be made in this case.

    _____ (2)   Any claim of discrimination by reason of race, sex, age, national origin, or handicapped condition raised before and decided by the Merit Systems Protection Board or arbitrator has been abandoned or will not be raised or continued in this or any other court.

    _____ (3)   The petition seeks review only of the Board's or arbitrator's dismissal of the case for lack of jurisdiction or for untimeliness.

    _____ (4)   The case involves an application to the Office of Personnel Management for benefits.

    _____ (5)   The case was transferred to this court from a district court and I continue to contest the transfer.

**SECTION B:**

    Answer the following: Have you filed a discrimination case in a United States district court from the Board's or arbitrator's decision? _____ Yes _X_ No
If so, identify any case. _____

**SECTION C:**

    Answer the following: Have you filed a discrimination case in the Equal Employment Opportunity Commission from the Board's or arbitrator's decision? _____ Yes _X_ No
If so, identify any case _____

RECEIVED

12/20/06
Date

_(signature)_
Petitioner's signature

DEC 22 2006

Mail this form with the petition for review or within 14 days of the date of docketing of the petition for review to:

United States Court of Appeals
for The Federal Circuit

Clerk, United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

cc: Kathy Gwinny (FDIC)

* CASE entails enforcement of involuntary removal and Bankruptcy
See November 14, 2005 Decision [Attached]

Form 10

FORM 10.  Statement Concerning Discrimination

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FEB 2 0 2007

United States Court of Appeals
for the Federal Circuit

No. **2007-3107**

## PETITIONER'S FED. CIR. R. 15(c) STATEMENT CONCERNING DISCRIMINATION

### Please complete sections A, B, and C.

## SECTION A:

Check the statements in section A that apply to your case.  Usually, it is one statement, but it may be more.  Do not alter or add to any of the statements.

[✗] (1) No claim of discrimination by reason of race, sex, age, national origin, or handi-capped condition has been or will be made in this case.

[  ] (2) Any claim of discrimination by reason of race, sex, age, national origin, or handi-capped condition raised before and decided by the Merit Systems Protection Board or arbitrator has been abandoned or will not be raised or continued in this or any other court.

[  ] (3) The petition seeks review only of the Board's or arbitrator's dismissal of the case for lack of jurisdiction or for untimeliness.

[  ] (4) The case involves an application to the Office of Personnel Management for benefits.

[  ] (5) The case was transferred to this court from a district court and I continue to contest the transfer.

## SECTION B:

Answer the following: Have you filed a discrimination case in a United States district court from the Board's or arbitrator's decision?  [  ] Yes  [✗] No

If so, identify any case. _____

## SECTION C:

Answer the following:  Have you filed a discrimination case in the Equal Employment Opportunity Commission from the Board's or arbitrator's decision?  [  ] Yes  [✗] No

If so, identify any case _____

_____        _____
Date                                                          Petitioner's signature

Mail this form with the petition for review or within 14 days of the date of docketing of the petition for review to:

Clerk, United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC  20439

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

FEB 2 0 2007

JAN HORBALY
CLERK

cc  Kathleen V. Gunning, Esq.

[ Reset Fields ]

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
**YOLANDA GIBSON-MICHAELS**,     )
                                )
              Plaintiff,         )
                                )
        v.                       )         Case Number: 1:06CV01940 - RMU
                                )
**SHEILA C. BAIR, et al.**       )
                                )
              Defendants.        )
_____)

<u>**ORDER**</u>

Upon consideration of Federal Defendant Sheila C. Bair's motion to dismiss or for

summary judgment, the opposition and reply thereto, and for the reasons given in Ms. Bair's

motion and supporting documents, it is this ____ day of _____, 2008,

ORDERED, that said motion is granted. This case is dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE